## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SSGT. JASON A. ADKINS, USAF, | ) | C.A. NO.: 04-1453 (JJF) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS'** |
| | ) | **REPLY BRIEF IN** |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | **FURTHER SUPPORT** |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | **OF DEFENDANTS'** |
| GEN. JOHN W. HANDY,Commander Air Mobility | ) | **MOTION TO DISMISS** |
| Command; COL. JOHN I. PRAY, JR., 436th Air | ) | |
| Wing Commander, in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Dated: April 22, 2005

Of Counsel:

LT. COL. DONNA M. VERCHIO
Staff Judge Advocate
Dover Air Force Base

PETER D. KEISLER
Assistant Attorney General
COLM F. CONNOLLY
United States Attorney
RUDOLPH CONTRERAS
Assistant United States Attorney
VINCENT M. GARVEY
Deputy Branch Director
JEFFREY D. KAHN (MI Bar # P65270)
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
P.O. Box 883 Ben Franklin Station
20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel:  (202) 514-3716
Fax: (202) 616-8470
jeffrey.kahn@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## ARGUMENT

I.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
      TO ESTABLISH AN ESSENTIAL ELEMENT OF PLAINTIFF'S
      CAUSE OF ACTION AND FOR LACK OF STANDING  . . . . . . . . . . . . . . . . . 2

II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
      TO EXHAUST ADMINISTRATIVE REMEDIES  . . . . . . . . . . . . . . . . . . . . . 12

III.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE
      PLAINTIFF DID NOT ENGAGE IN PROTECTED SPEECH    . . . . . . . . . . 15

CONCLUSION       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adair v. England*, 183 F. Supp. 2d 31 (D.D.C. 2002) ..................................................... 14

*Ambrose v. Township of Robinson*, 303 F.3d 488 (3d Cir. 2002) .................................... 2

*Associated General Contractors of Cal. v. California State Counsel of Carpenters*, 459 U.S. 519 (1983) ............................................................................... 7

*Baldassare v. New Jersey*, 250 F.3d 188 (3d Cir. 2001) ........................................... 17, 18

*Brennan v. Norton*, 350 F.3d 399 (3d Cir. 2003) ..................................................... 15, 16

*In re CDNOW, Inc. v. Securities Litigation*, 138 F. Supp.2d 624 (E.D. Pa. 2001) ....................................................................................................................... 6, 7

*Commonwealth of Pennsylvania ex rel. Zimmerman v. Pepsico*, 836 F.2d 173 (3d Cir. 1988) ..................................................................................................... 2, 7

*Czurlanis v. Albanese*, 721 F.2d 98 (3d Cir. 1983) ....................................................... 15

*Downen v. Warner*, 481 F.2d 642 (9th Cir. 1973) ......................................................... 13

*Eichenlaub v. Township of Indiana*, 385 F.3d 274 (3d Cir. 2004) ................................... 2

*Feldman v. Philadelphia Housing Authority*, 43 F.3d 823 (3d Cir. 1994) .................... 18

*Glines v. Wade*, 586 F.2d 675 (9th Cir. 1978) .............................................................. 14

*Holder v. City of Allentown*, 987 F.2d 188 (3d Cir. 1993) ............................................ 19

*Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989) .......................................................... 8

*Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992) ........................................ 10

*Morse v. Lower Merion Sch. District*, 132 F.3d 902 (3d Cir. 1997) ........................... 9, 10

*Nelson v. Miller*, 373 F.2d 474 (3d Cir. 1967) .............................................................. 13

*O'Donnell v. Yanchulis*, 875 F.2d 1059 (3d Cir. 1989) ................................................. 19

*Papasan v. Allain*, 478 U.S. 265 (1986) ....................................................................... 11

*Pickering v. Board of Education*, 391 U.S. 563 (1968) ................................................... 19

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997) ....................................... 10

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) ..................................................... 19

*Roth v. U.S.*, 378 F.3d 1371 (Fed. Cir. 2004) ................................................................ 12

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988) .............. 3, 5, 7

*Springer v. Henry*, No. 00-885GMS, 2002 WL 389136 (D. Del. Mar. 11,
  2002) ........................................................................................................... 16, 19

*Thorne v. Department of Defense*, 916 F. Supp. 1358 (E.D. Va. 1996) ......................... 14

*Watters v. City of Philadelphia*, 55 F.3d 886 (3d Cir. 1995) .............................. 16, 17, 19

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) ............................................... 8

*Zuk v. Eastern Penn. Psychiatric Institute of the Medical Coll. of Penn.*,
  103 F.3d 294 (3d Cir. 1996) ...................................................................... 11

## FEDERAL STATUTES, REGULATIONS, AND RULES

10 U.S.C. § 1552 .......................................................................................................... 5, 12

32 C.F.R. § 865 ................................................................................................................ 12

Fed. R. Civ. P. 11, Advisory Committee Notes ............................................................... 11

## INTRODUCTION

Senior Master Sergeant Mahoney disciplined plaintiff for a violation of standing orders that threw a scheduled flight into disarray. Plaintiff's questions to his doctor did not cause his discipline because neither Mahoney nor the named defendants knew the content of plaintiff's speech when plaintiff was disciplined. Because plaintiff has failed to set forth a prima facie case of retaliation, plaintiff's complaint should be dismissed for failure to state a claim. Similarly, because plaintiff cannot demonstrate that he has suffered an injury fairly traceable to defendants' conduct, he lacks standing to bring suit.

Plaintiff's retreat to a respondeat superior theory of retaliation does not save his cause of action. The bald inferences and legal conclusions in plaintiff's complaint, alleging that the highest level military officials in Washington, Illinois and Delaware later approved the "retaliation" are unworthy of credence and do nothing to revive plaintiff's deficient pleadings. Plaintiff's refusal to seek review by the civilian authority responsible for investigating and correcting claims of error or injustice in military records did not create a legal duty for the Secretary of Defense and other high-ranking officials across the country to countermand the discipline plaintiff received on the basis of second-hand references in local newspaper articles. This Court should dismiss plaintiff's complaint for failure to exhaust this remedy.

Finally, as a matter of law, plaintiff's questions about his personal symptoms to his doctor in the confines of a closed-door examination room are not matters of public concern. Plaintiff's repeated mantra that he "spoke out" does nothing to obscure the fact that plaintiff's speech was private and personal in its content (his symptoms), its context (his medical examination), and its form (his questions).

<u>ARGUMENT</u>

I.    **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO ESTABLISH AN ESSENTIAL ELEMENT OF PLAINTIFF'S
CAUSE OF ACTION AND FOR LACK OF STANDING**

As plaintiff concedes, he must plead a <u>prima</u> <u>facie</u> case of retaliation to survive

defendants' motion to dismiss.  <u>See</u> Plaintiff's Answering Brief in Opposition to

Defendants' Motion to Dismiss (hereafter "Pl.'s Opp.") at 11-12.  Plaintiff has failed to do

so because the essential element of causation is missing from his claim of First

Amendment retaliation.  <u>See</u> <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 282 (3d

Cir. 2004).  Because the deciding official was unaware of plaintiff's protected activity, his

"First Amendment retaliation claim would necessarily fail."  <u>Ambrose v. Township of</u>

<u>Robinson</u>, 303 F.3d 488, 493 (3d Cir. 2002).

Plaintiff claims that his "short, plain statements of the elements of the retaliation

claim are all that are required by Fed. R. Civ. P. 8(a)(2) to survive a motion to dismiss."

<u>See</u> Pl.'s Opp. at 13, 26.  Plaintiff is wrong.  "Even given the teachings of <u>Conley [v.</u>

<u>Gibson]</u>, which we must follow in all events, the plaintiff must allege sufficient facts in

the complaint to survive a Rule 12(b)(6) motion."  <u>Commonwealth of Pennsylvania ex</u>

<u>rel. Zimmerman v. Pepsico</u>, 836 F.2d 173, 179 (3d Cir. 1988).  "[T]he form and

sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested by a

motion to dismiss for failure to state a claim upon which relief can be granted, Rule

12(b)(6), ... [T]he motion practice under Rule 12 may affect the practical operation of the

Rule 8 pleading standard."  5 Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u>,

§ 1202 (2004).  Rule 8 does not excuse plaintiff from the burden of establishing a <u>prima</u>

facie case. "We are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. ... But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988) (quoting with approval O'Brien v. DiGrazia, 544 F.2d 543, 546, n.3 (1st Cir. 1976)).

In any event, the "short, plain statements" that plaintiff asserts must "end[] the matter" provide him no traction toward establishing this essential element of his case. See Pl.'s Opp. at 25. Plaintiff can only refer the Court to his allegations in his complaint that assert defendants' knowledge of plaintiff's speech at some unspecified time, or knowledge of post-discipline media reports. See Pl.'s Opp. at 25-26 (citing Compl. ¶¶ 10-13, 77, 79-81). Viewed together and in the light most favorable to plaintiff, these assertions advance nothing more than the claim that defendants may have read about plaintiff's discipline in their newspapers. None of these allegations claim that any of the defendants knew about plaintiff's speech before the discipline occurred, let alone that Secretary of Defense Rumsfeld and Secretary of the Air Force Roche (both located at the Pentagon), General Handy (a four star general located at Scott AFB in Illinois), or Colonel Pray (Commander of Dover AFB) knew that one of the 4,000 airmen at Dover had been issued a letter of reprimand. In fact, the only individual whose knowledge is relevant – Mahoney, the disciplining official – has not even been named a defendant to this lawsuit.

- 3 -

Plaintiff argues in the alternative that his complaint nevertheless does allege that Mahoney knew what plaintiff asked his doctor before he disciplined plaintiff. See Pl.'s Opp. at 26 (citing Compl. ¶ 60). Plaintiff misrepresents the content of his complaint, which presents no allegations that plaintiff told <u>anyone</u> about his then-private questions to his doctor. Plaintiff alleged that he "described his debilitating symptoms" to his doctor and "discussed with and told the Flight Surgeon that he associated his headaches and current medical condition with the tainted anthrax vaccine." See Compl. ¶¶ 55, 57. Plaintiff states that the doctor "downplayed" his concerns about his inoculations, <u>see</u> Compl. ¶ 58, and then prescribed medication for his headaches and ordered that plaintiff be grounded (<u>i.e.</u> classified "DNIF," or "Duties Not to Include Flying"). <u>See</u> Compl. ¶ 59. Plaintiff relies on the next allegation to assert that his speech must have been made known to SMSgt. Mahoney through a subordinate, Technical Sergeant Miller:

> Plaintiff notified Miller [the flight scheduler] immediately and was required to turn in his beeper because he had been DNIF'd by the Flight Surgeon.

Compl. ¶ 60. It is clear from plaintiff's Complaint that plaintiff "notified" Miller of his new status, Duties Not to Include Flying, and was therefore required to return his beeper. Plaintiff's standing orders called for no more, and plaintiff's own response to his letter of reprimand, written five days after he was disciplined, corroborates this plain meaning. See Def.'s Ex. 1 at ¶¶ 3.6.6 and 4.4; <u>see also</u> Def.'s Ex. 2.[1] Plaintiff is not entitled to an

---

[1]Plaintiff urges this Court to disregard these exhibits as matters outside of plaintiff's complaint. <u>See</u> Pl.'s Opp. at 13-15. Plaintiff claims that "[t]his is not a case where a plaintiff is relying upon a document to support a claim and the defendant merely is seeking consideration of omitted portions of that document." <u>See</u> Pl.'s Opp. at 14. But, in essence, this is precisely what he has done. Although plaintiff insists that his letter of reprimand was retaliatory, he presents

inference based on a fact that he did not allege.  See Scheid, 859 F.2d at 437; see also 5B

Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 ("[T]he pleader must

set forth sufficient information to outline the legal elements of a viable claim for relief or

to permit inferences to be drawn from the complaint that indicate that these elements

exist.").  Read in the light most favorable to plaintiff, "notified" cannot be interpreted to

mean that plaintiff shared with Miller the conversation he had with his doctor.  Had

plaintiff actually told Miller any portion of that conversation, it is inexplicable that

plaintiff would not have clearly alleged that he did so.[2]

     Rather than accept this sentence on its face, plaintiff insists that this Court should

infer that (1) Plaintiff not only notified Miller that he had been "DNIF'd", but also shared

with him the substance of his private conversation with his doctor; (2) that this

---

only one half of the relevant documentation.  Exhibit A to plaintiff's complaint indicates, above
plaintiff's own signature, his intent to submit matters in response to the letter of reprimand.
Exhibit A also indicates that such a response "will become part of the record" of his discipline.
See Pl.'s Ex. A at ¶ 4.  Plaintiff did submit a written response, which together with the letter of
reprimand constitute the military record of discipline that would be considered by the Air Force
Board for the Correction of Military Records.  See 10 U.S.C. § 1552(g).  Plaintiff's response
nowhere references his speech to his doctor or alleges retaliation for "speaking out" on anything
at all.  Because plaintiff alleges that his discipline was retaliatory, and his contemporaneous
written response completes the record of plaintiff's discipline, that response is integral to
plaintiff's complaint and appropriately before the Court.  Likewise, the standing orders submitted
as defendants' exhibit 1 are also appropriately before the Court.  Plaintiff makes repeated
references to various military regulations, policies, and "written rules of progressive [military]
discipline."  See Compl. ¶¶ 64, 68-69, 73, 82(c); see also Pl.'s Opp. at 2, 7-11, 23, 28.  Plaintiff's
selective quotation of military orders and practices makes clear that the standing orders that were
the basis of plaintiff's discipline are equally integral to plaintiff's complaint.

    [2]Plaintiff also seems to assert that his telephone call to Miller before plaintiff met with his
doctor somehow permits the inference that Miller must have known what plaintiff told his doctor
after they met.  See Pl.'s Opp. at 26 (citing Compl. ¶ 53).  It is not reasonable to infer that Miller
knew the contents of plaintiff's conversation with his doctor from plaintiff's telephone call to
Miller indicating nothing more than plaintiff's intent to see his doctor.

conversation, contrary to his pleading, centered on a critique of the Air Force's anthrax program, not plaintiff's questions about his own symptoms, (3) that Miller then relayed to Mahoney the same substantive information; (4) that all of this occurred before Mahoney disciplined plaintiff, and finally that (5) Mahoney retaliated against plaintiff for this conversation with the doctor by disciplining him. Although plaintiff easily could have set forth each of these allegations in his complaint, he chose to allege none of them. Instead, he elusively suggests that the Court infer that "plaintiff may very well have discussed the specifics of his condition and his beliefs that he had been used as a guinea pig by the Pentagon during that telephone call to Miller." See Pl.'s Opp. at 26.

Plaintiff should certainly be required to plead with more specificity as to actions he himself allegedly took. Plaintiff has not done so because he cannot do so. According to plaintiff's own contemporaneous response to his discipline, plaintiff only notified Miller "of my condition when I learned of the [scheduled flight] launch, and did likewise when I learned I was DNIF." See Def.'s Ex. 2 at ¶ 3. Plaintiff's preference for inferences when his own knowledge of the facts would suffice smacks of gamesmanship. Plaintiff presents this Court with no case for his proposition that facts entirely within his possession, and essential to a well-pled complaint, should be inferred by this Court when deliberately omitted from the complaint. To the contrary, his post-pleading hypotheticals and interpretive glosses should be rejected by this Court. See, e.g., In re CDNOW, Inc. v. Securities Litigation, 138 F.Supp.2d 624, 633 (E.D. Pa. 2001) ([F]actual allegations must be true to provide a basis for a cause of action, ... hyperbole and speculation cannot give rise to a claim of securities fraud."). "It is one thing to set forth theories in a brief; it is

- 6 -

quiet another to make proper allegations in a complaint. ... It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Commonwealth of Pennsylvania ex rel. Zimmerman v. Pepsico, 836 F.2d 173, 181 (3d Cir. 1988).

Although this Court may draw reasonable inferences from plaintiff's Complaint, those inferences are only appropriately drawn from the well-pled factual allegations in the Complaint, which are taken to be true. See Scheid, 859 F.2d at 437; see also 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357. Plaintiff's omission of facts essential to state a claim, therefore, preclude the bare inferences from them that he invites the Court to make. In any event, it is not reasonable to infer knowledge of plaintiff's private conversation with his doctor from plaintiff's allegations that he notified Miller about his flight status.[3]  "[I]t is not proper to assume that [a plaintiff] can prove facts that it has not alleged." Associated Gen. Contractors of Cal. v. California State Counsel of Carpenters, 459 U.S. 519, 526 (1983); see also, e.g., In re CDNOW, 138 F.Supp.2d at 633 (dismissing complaint because plaintiffs' "conclusory allegations" about defendants' knowledge "simply do not provide a sufficient factual basis to support this allegation.").

Plaintiff's parade of "substantial additional inferences" likewise fails to cure plaintiff's deliberate omission of this element essential to the survival of his cause of

---

[3]Similarly, it is not reasonable to infer that plaintiff's speech "was immediately sent up through the chain of command by both the Flight Surgeon and Miller, either by word of mouth, or by written report," when plaintiff has made no such allegations in his complaint. See Pl.'s Opp. at 26. In any event, as plaintiff's new theory appears for the first time in his opposition brief, rather than in his complaint, it is not appropriately before the Court. See Pepsico, 836 F.2d at 181 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

action. See Pl.'s Opp. at 27-29. Each of these sweeping generalizations may be dispatched quickly. First, plaintiff asks the Court to infer causation from "temporal proximity." Both cases cited for this proposition, however, involved defendants who knew of plaintiff's protected activity <u>before</u> they were alleged to have retaliated. <u>See</u> <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997) (defendant aware of plaintiff's EEOC complaint prior to plaintiff's discharge); <u>see also</u> <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989) (defendant acknowledged receipt of plaintiff's EEOC complaint prior to his discharge). Those cases stand for the principle that where a defendant's knowledge of the protected activity already has been established, temporal proximity may support an inference of causation. In this case, it is defendants' very knowledge of plaintiff's protected activity that plaintiff has failed to allege and that he now invites the Court to infer.

Second, plaintiff asserts that an "intervening pattern of antagonism" and defendants' "falsehoods and other pretextual reasons" should lead the Court to infer causation. See Pl.'s Opp. at 27-28. Plaintiff's argument is circular. Plaintiff would have this Court infer that plaintiff's discipline was retaliatory from the simple fact that plaintiff was disciplined.[4] These are precisely the sort of legal conclusions that this Court will not infer or accept as true in resolving a motion to dismiss for failure to state a claim. <u>See</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

------

[4]Plaintiff relies on <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997), for the proposition that the Court can infer causation from defendants' "pattern of antagonism." In <u>Woodson</u>, however, this "pattern" took shape over the course of two years and involved at least five separate instances of antagonistic behavior. In the present case, however, there is clearly no "pattern" of antagonism to be found in the single instance of discipline at issue.

- 8 -

Third, plaintiff argues that an inference of causality is supplied by his allegation that "the Air Force policy of progressive discipline was not applied." See Pl.'s Opp. at 28. Plaintiff's assertion that the Air Force violated its established procedures is a legal conclusion, from which no inference can or should be drawn.[5]

Finally, plaintiff retreats to a respondeat superior theory of retaliation. See Pl.'s Opp. at 25. This reconfiguration also must fail. Plaintiff alleged in his complaint that SMSgt. Mahoney disciplined him in retaliation for his questions to his doctor. See Compl. ¶ 3. Unable to establish causation for this alleged retaliation, plaintiff now seeks to reconfigure his claim to assert that the retaliation consisted not in the actual discipline plaintiff received, but in the failure of the Secretary of Defense and the other defendants to countermand SMSgt. Mahoney's letter of reprimand, on the theory that the Secretary of Defense and others at the Pentagon wanted to punish plaintiff for speaking to his doctor. Plaintiff concedes that even under this theory the law requires him to produce "sufficient evidence ... to demonstrate that the defendants knew of the protected activity," and that to establish supervisor liability he must allege "personal direction or actual knowledge and acquiescence" or "proof of direct discrimination by the supervisor." See Pl.'s Opp. at 25.

---

[5]Plaintiff appears to have assembled his parade of inferences from cases analyzing evidence under the burden-shifting framework at the summary judgment stage of a retaliation case. Thus, plaintiff's assertion that "evidence of disparate treatment can demonstrate causation," while theoretically true, is meaningless in the context of a motion to dismiss. See Pl.'s Opp. at 28. In any event, plaintiff produces no evidence of similarly-situated individuals who were treated differently than plaintiff, the standard test of disparate treatment. Likewise, plaintiff's entreaty to examine the "Big Picture" presented by the "totality of the evidence" presents nothing new for this Court's review because the well-pled factual allegations in plaintiff's complaint are already assumed to be true for purposes of defendant's motion to dismiss. Viewed in their totality, these bare allegations and legal conclusions still fail to meet plaintiff's burden to plead the essential elements of his action.

None of the defendants were plaintiff's immediate supervisor; in any event, plaintiff has not alleged any direct discrimination by them. Nor has plaintiff offered anything beyond bare allegations of personal direction or knowledge by any of these individuals.

The two cases plaintiff cites in support of this theory, Keenan v. City of Philadelphia, 983 F.2d 459 (3d Cir. 1992), and Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997), are factually distinguishable. In both cases, plaintiffs presented direct evidence of having personally brought their complaints to the knowledge of their supervisors. See Robinson, 120 F.3d at 1291 (sexual harassment); Keenan, 983 F.2d at 463 (retaliation). In the present case, plaintiff makes clear that he chose not to give defendants any notice of his grievance by availing himself of the administrative process through which defendants are presented with the opportunity to correct "errors or injustice" alleged to exist in military records, the Air Force Board for the Correction of Military Records. See Pl.'s Opp. at 32-36. Further, plaintiff's allegations are nothing more than disguised legal conclusions that defendants Pray, Handy, and Roche became aware of "the retaliation" via unspecified "e-mails and telephone calls," emanating not from plaintiff, but from "[t]he media." See Compl. at ¶¶ 77, 79-80. As for Secretary Rumsfeld, plaintiff can only assert "[o]n information and belief" that the Secretary of Defense had knowledge of "the retaliation." See Compl. ¶ 81. It is hornbook law that "a complaint's bald assertions or legal conclusions" are unworthy of credit. See Morse, 132 F.3d at 906. The Court should disregard plaintiff's legal conclusion that defendants knew about "the retaliation." See Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the

- 10 -

complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

Plaintiff's insistent reliance on inferences to cover his omissions from his complaint should not be countenanced. Consistent with Rule 11 of the Federal Rules of Civil Procedure, plaintiff must possess some factual basis for these allegations. See Fed. R. Civ. P. 11, Advisory Committee Notes to the 1993 Amendments ("Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification."); see also Zuk v. Eastern Penn. Psychiatric Inst. of the Med. Coll. of Penn., 103 F.3d 294, 299 (3d Cir. 1996) (plaintiff is not entitled to file his "speculative pleading of a case first and then pursu[e] discovery to support it; the plaintiff must have some basis in fact for the action."). Plaintiff has not alleged timely knowledge on the part of any individual in plaintiff's chain of command because he cannot do so. Because plaintiff cannot allege knowledge of plaintiff's speech by Mahoney or any defendants before plaintiff's discipline, plaintiff cannot establish causation, an essential element of his cause of action and this Court should dismiss plaintiff's complaint.[6]

---

[6]Plaintiff presents no direct opposition to defendants' standing arguments under Rule 12(b)(1), appearing instead to rely on his arguments regarding his prima facie case. The Court is respectfully referred to defendants' memorandum of law for analysis of plaintiff's failure to demonstrate an injury in fact fairly traceable to defendants' actions. See Def.'s Mem. at 10-11.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
##        TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiff concedes that the Air Force Board for the Correction of Military Records

(the "Board") "may be an appropriate remedy for service members [sic] claims in run-of-

the-mill cases challenging military discipline." See Pl.'s Opp. at 33. Plaintiff's objections

notwithstanding, that is precisely this case. Plaintiff seeks to have his letter of reprimand

rescinded and argues that the Air Force's "progressive system of discipline" should be

applied in his case. see Compl. ¶¶ 64, 68-69, 73, 82(c); see also Pl.'s Opp. at 2, 7-11, 23,

28; see also Def.'s Ex. 2 at ¶ 5. The Board has broad authority and operates under an

"abiding moral sanction" to grant relief from any "error or injustice" that may exist in

plaintiff's records. See 32 C.F.R. § 865.4(l)(4); see also Roth v. U.S., 378 F.3d 1371,

1381 (Fed. Cir. 2004). Ironically, plaintiff has sued defendants for their alleged failure to

correct his military records but refuses to employ the process established by the Air Force

to review such a request and provide appropriate relief.[7]

Plaintiff claims that defendants have argued that plaintiff is "barred from seeking

redress for a Constitutional violation in the federal courts" and that this Court is somehow

"disabled from acting" until plaintiff exhausts his remedies before the Board. See Pl'.s

---

[7]Plaintiff's unsubstantiated assertion that the Board's review is somehow compromised by a "conflict of interest" caused by Secretary Rumsfeld's position at the apex of the military hierarchy deserves no credit by this Court. This conclusory allegation, like plaintiff's allegation "on information and belief" that the Secretary knew about plaintiff's "retaliation" and was "angered" by it, see Compl. ¶¶ 10, 81, provides no basis to believe that the Secretary would disregard the intent of Congress as expressed in statute, judicial precedent, or the Defense Department's own regulation of his delegation of authority to the Board for a fair hearing of plaintiff's appeal. See 10 U.S.C. § 1552(a)(1); see also Roth, 378 F.3d at 1381; see also 32 C.F.R. § 865.

Opp. at 1, 33. Defendants' argument is neither so broad nor so simplistic. As defendants argued in their opening brief, the Third Circuit has adopted a flexible doctrine of exhaustion. And there are good reasons why this Court should exercise its discretion under that doctrine to require plaintiff first to seek relief from the Board. See Def.'s Mem. at 15-18. The Board's action could entirely moot plaintiff's claims, alter the issues presented for adjudication, or render this Court's action a mere advisory opinion. Id. Plaintiff has not argued that any special circumstances exist that would counsel against requiring Board review and cannot do so because such review would neither be futile nor irreparably injure plaintiff through delay, and may avoid the unnecessary resolution of a constitutional question. Nelson v. Miller, 373 F.2d 474, 480 (3d Cir. 1967).

It is to this last issue that plaintiff clings, arguing that because he has pled a First Amendment violation this Court has no interest in the Board's development of a full factual record, its exercise of administrative expertise and discretion in plaintiff's individualized circumstances, and the opportunity this provides for judicial efficiency. See Pl.'s Opp. at 33 ("Those interests are not at stake ..."). However, the cases plaintiff cites offer no support for this proposition. Unlike the present case, in which Board review could result in the elimination of some or all of plaintiff's claims for relief, the need for Board review in the cases cited by plaintiff was wholly absent either because no factual record needed to be developed or because those plaintiffs made claims against service-wide polices or practices. See Downen v. Warner, 481 F.2d 642 (9th Cir. 1973) (claim based solely on constitutional question of regulatory interpretation did not require development of a factual record by the Board); Glines v. Wade, 586 F.2d 675, 678 (9th

- 13 -

Cir. 1978) (Board lacked authority to declare invalid an Air Force-wide regulation prohibiting the circulation of petitions on its bases); Thorne v. Dep't of Defense, 916 F.Supp. 1358, 1363-64 (E.D. Va. 1996) (constitutional challenge to statutory and regulatory "Don't Ask, Don't Tell" plan  did not require Board's expertise and the Board arguably lacked authority to strike down a service-wide regulation as unconstitutional); Adair v. England, 183 F.Supp.2d 31, 55 (D.D.C. 2002) (constitutional claims against Navy-wide policies and practices concerning its chaplaincy did not require exhaustion because the Board "is a clemency-oriented body, with authority to correct an error or remove an injustice, not to declare the law") (internal citations omitted).

Plaintiff does not challenge the constitutionality of a statute, regulation, or policy. He asks this Court to review an individualized decision by his military superior to discipline him, alleging that it constitutes retaliation.  By plaintiff's own admission, if he has pled a prima facie case, "plaintiff intends to conduct vigorous discovery" to build the voluminous factual record demanded by his burden of proof for each element.  See Pl.'s Opp. at 26.  It is precisely the need for such a factual record, and the Board's unique expertise and ability to moot the core of plaintiff's grievance by rescinding his letter of reprimand, that makes the Board the recognized appropriate first step in cases presenting individualized claims of error or injustice concerning a military record.

This Court should exercise its discretion to dismiss plaintiff's complaint for failure to exhaust his administrative remedy.

III.    **THE COMPLAINT SHOULD BE DISMISSED BECAUSE
        PLAINTIFF DID NOT ENGAGE IN PROTECTED SPEECH**

Plaintiff's questions about his physical symptoms to his doctor in the confines of a

private, closed-door medical examination do not present this court with speech on a

matter of public concern. Because plaintiff spoke to his doctor about "matters only of

personal interest," his speech is not protected by the First Amendment. See Czurlanis v.

Albanese, 721 F.2d 98, 103 (3d Cir. 1983).

Plaintiff would recast the content of plaintiff's speech to be "speech about illegal

experimentation on members of our armed forces and the exposure of servicemen and

women to a tainted anthrax vaccine with severe and debilitating side effects." See Pl.'s

Opp. at 18. Plaintiff misrepresents the allegations he originally presented in his

complaint, where he did not allege that he spoke to his doctor about experimentation

(illegal or otherwise) or about other servicemen and women. Plaintiff asked his doctor

about his headache and whether it might be related to his inoculation against anthrax. See

Compl. ¶¶ 55, 57. And, as plaintiff appears to concede, plaintiff did so in the isolation of

a private medical consultation.

The cases cited in plaintiff's opposition brief do not support his argument that, its

personal content and private context notwithstanding, plaintiff's speech was a matter of

public concern. First, plaintiff cites Brennan v. Norton, 350 F.3d 399, 415 (3d Cir. 2003),

for the proposition that speech addressing the health of government employees is a matter

of public concern. See Pl.'s Opp. at 18.[8] The plaintiff in Brennan, unlike plaintiff in the

---

[8]Plaintiff's argument here also contradicts the opinion expressed in the first case that he
attached to his opposition brief, in which Judge Sleet of this court found it "clearly establish[ed]

- 15 -

present case, spoke out on matters of public concern that included proposed fire station

closures and various employment policies at the local fire department.  See Brennan, 350

F.3d 406-07.  He did so by erecting signs, distributing leaflets, placing an advertisement

in a local newspaper, giving interviews to a local reporter, appearing on television, and

organizing a  public rally about these and other related issues.  Id.  In addition, plaintiff

sent a formal complaint to the state health department about the presence of asbestos in a

fire station.  Id.  at 408.  Plaintiff, by contrast, asked his doctor about his own symptoms,

and did so in the most private of settings.  Comparison with the Brennan plaintiff makes

clear that neither the content nor the context nor the form of plaintiff's speech marks it as

a matter of public concern.

      Plaintiff next cites Watters v. City of Philadelphia, 55 F.3d 886, 895 (3d Cir.

1995), for the proposition that the "public has a significant interest in learning about

problems which may have impaired the effective functioning of the [the program] and

which, in turn, could have affected the delivery of police services."  See Pl.'s Opp. at 18

(bracketed insertion in plaintiff's quotation).  As noted above, however, plaintiff did not

"speak out" against the United States military's then-existing inoculation program.

Plaintiff's complaint clearly alleges that plaintiff asked his doctor  singularly about his

personal symptoms and their relationship to his past inoculations.  Although the

complaint is rife with editorial comment about the military's policy of inoculating its

---

that health care issues are matters of public concern when addressed by medical professionals."
See Springer v. Henry, No. 00-885GMS, 2002 WL 389136, at *3 (D. Del. Mar. 11, 2002)
(emphasis added).  Pursuant to Local Civil Rule 7.1.3(a)(G), this unreported case has already
been attached to plaintiff's Answering brief, where it was first cited.

members against anthrax, the complaint does not allege that plaintiff made any comments

about that policy as it operated nationwide, in the Air Force, or at Dover Air Force Base.

This omission is bolstered by plaintiff's own response to his discipline, which was also

focused solely on his own medical concerns and makes no mention of any military policy,

let alone any mention of policies concerning anthrax inoculations.  See Def.'s Ex. 2.  In

Watters, by contrast, that plaintiff was terminated after publication by the Philadelphia

Inquirer of critical comments he made to a journalist about institutional deficiencies in a

police department substance abuse program that he supervised.  See Watters, 55 F.3d at

890, 892.  The Watters court specifically noted that the speech in question "arguably went

to the fundamental existence and efficacy" of the program.  Id. at 893.  Plaintiff's speech,

in contrast, was turned entirely inward.  As plaintiff himself wrote in response to his

discipline, "what my situation did constitute was a legitimate medical condition."  See

Def.'s Ex. 2 at ¶ 4.

Third, plaintiff draws the Court's attention to Baldassare v. New Jersey, 250 F.3d

188, 196 (3d Cir. 2001), for the proposition that plaintiff's speech is protected because it

exposed corruption, fraud and illegality in a government agency.  See Pl.'s Opp. at 19.  As

noted above, the complaint does not allege that plaintiff spoke to his doctor about Air

Force corruption, fraud, or illegality.  The complaint alleges that plaintiff described his

symptoms to his doctor and linked them with his past inoculations.  And, unlike

Baldassare, who drafted and submitted to his superiors a written internal investigative

report that "attempted to expose specific wrongs and abuses within the county

government," plaintiff told no one about his speech nor made any allegations in his

- 17 -

complaint that his doctor did so with any attribution to him. See Baldassare, 250 F.3d at 196.

Finally, plaintiff also refers to Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 829 (3d Cir. 1994), for the same unexceptional proposition that the exposure of corruption, fraud and illegality in a government agency is a matter of public concern. See Pl.'s Opp. at 19. Again, the juxtaposition of plaintiff's complaint with the facts in Feldman exposes only how private plaintiff's speech was in comparison to a genuine matter of public concern. The plaintiff in Feldman, the director of an internal audit department, was fired for circulating written internal auditing reports to a board of commissioners that oversaw the Philadelphia Public Housing Authority. See Feldman, 43 F.3d at 827-28. Unlike plaintiff's medical questions, "Feldman's speech was not related in any way to personal grievances; on the contrary, it clearly pertained to matters of important public concern. The very purpose of his auditing reports was to ferret out and highlight any improprieties that he found at [the Housing Authority]." Id. at 829.

Plaintiff also tries to deflect attention from the private nature of his medical inquiries by linking his speech to media coverage of the military's nationwide anthrax inoculation program. See Compl. ¶¶ 20-42; see also Pl.'s Opp. at 19-22. These links are irrelevant. Plaintiff makes no allegations that he was ever involved in any of the events described in this portion of his complaint; indeed, plaintiff does not appear in any meaningful way in the complaint's allegations until ¶ 43. Plaintiff is not alleged to have been involved in an unrelated lawsuit filed in Washington D.C. See Compl. ¶¶ 40-42. He is not alleged to have participated in (nor evinced any interest in) congressional

involvement in that matter.  See Compl. ¶¶ 38-39.  He is not alleged to have been either

quoted or otherwise referenced in newspaper articles on the subject.  See Compl. ¶¶ 30-

37.  And he is not alleged to have been involved in any way in the resignation of pilots

protesting the vaccine or the response of the base's wing commander to the program.  See

Compl. ¶¶ 20-29.

Nevertheless, plaintiff refers to all of these peripheral events and cites a variety of

cases for the proposition that "news coverage is relevant to determining whether speech

addresses a matter of public concern."  See Pl.'s Opp. at 19.  However, in each of the

cases cited by plaintiff, the news coverage was itself the very speech that plaintiff claimed

to be the cause of retaliation by the defendant.  See Watters, 55 F.3d at 890, 892 (plaintiff

fired after critical comments published in newspaper); Pickering v. Bd. of Educ., 391

U.S. 563, 564 (1968) (plaintiff fired after publication of critical letter in newspaper);

O'Donnell v. Yanchulis, 875 F.2d 1059, 1060 (3d Cir. 1989) (plaintiff fired after he made

allegations against employer to local television station); Holder v. City of Allentown, 987

F.2d 188, 191 (3d Cir. 1993) (plaintiff forced to resign after publication of critical letter

in newspaper); Rode v. Dellarciprete, 845 F.2d 1195, 1201-02 (3d Cir. 1988) (public

employee suspended after her critical comments published in newspaper).[9]  In this case,

---

[9]Plaintiff also cites Springer v. Henry, 2002 WL 389136, at *5, as support for this
proposition.  The Springer plaintiff, the director of a psychiatric hospital, had raised his concerns
about suicides, security lapses, poor care and other issues at his hospital in a memorandum to the
Governor of Delaware, the governing board of the hospital, and a supervisory official.  In dicta,
the Court noted that "[a]dditionally, several News Journal articles had also addressed the issues
Springer raised."  Id.  In the present case, however, plaintiff neither addressed his private
concerns to any public officials nor is their any overlap between news coverage of the military's
nationwide inoculation program and plaintiff's questions to his doctor about his symptoms.

however, plaintiff does not plead in his complaint, and his contemporaneous written

response to his discipline omits entirely, <u>any</u> reference to any military program at all, to

the coverage of these issues in the news media, or to any claims of retaliation for speech

on a matter of public concern.  Although plaintiff would like to link his personal speech

with what he alleges to be something of nationwide interest, none of the subjects he

references were remotely the subject of plaintiff's speech.

This Court should dismiss plaintiff's complaint because plaintiff's speech was not

protected by the First Amendment.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the complaint for lack of

subject matter jurisdiction and for failure to state a claim upon which relief can be

granted.

Dated:  April 22, 2005                    Respectfully submitted,

                                          PETER D. KEISLER
Of Counsel:                               Assistant Attorney General

LT. COL. DONNA M. VERCHIO                 COLM F. CONNOLLY
Staff Judge Advocate                      United States Attorney
Dover Air Force Base
                                          RUDOLPH CONTRERAS
                                          Assistant United States Attorney

                                          VINCENT M. GARVEY
                                          Deputy Branch Director


                                          JEFFREY D. KAHN (MI Bar # P65270)
                                          Trial Attorney, Federal Programs Branch
                                          Civil Division, U.S. Department of Justice

- 20 -

P.O. Box 883 Ben Franklin Station
20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel: (202) 514-3716
Fax: (202) 616-8470
jeffrey.kahn@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2005, I electronically filed the foregoing Defendants'
Reply Brief in Further Support of Defendants' Motion to Dismiss with the Clerk of the
Court using CM/ECF, which will send notification of such filing to the following:


Thomas S. Neuberger, Esq.
The Neuberger Firm, P.A.
2 East Seventh Street, Suite 302
Wilmington, DE 19801-3707


JEFFREY D. KAHN (MI # P65270)
U.S. Department of Justice
P.O. Box 883 Ben Franklin Station
20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel: (202) 514-3716
jeffrey.kahn@usdoj.gov

- 22 -