IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SSGT. JASON A. ADKINS, USAF, | : |
| Plaintiff, | : |
| v. | : Civ. Act. No. 04-1453-JJF |
| DONALD H. RUMSFELD, Secretary of Defense; JAMES G. ROCHE, Secretary of the Air Force; GEN. JOHN W. HANDY, Commander Air Mobility Command, COL. JOHN I. PRAY, JR., 436th Air Wing Commander, in their official capacities, | : |
| Defendants. | : |

Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire of THE NEUBERGER FIRM, P.A., Wilmington, Delaware.
Of Counsel: John W. Whitehead, Esquire and Douglas McKusick, Esquire of THE RUTHERFORD INSTITUTE, Charlottesville, Virginia.

Peter D. Keisler, Esquire, Assistant Attorney General; Colm F. Connolly, Esquire, United States Attorney; Rudolph Contreras, Esquire, Assistant United States Attorney; Vincent M. Garvey, Esquire, Deputy Branch Director; and Jeffrey D. Kahn, Esquire, Trial Attorney, Federal Programs Branch, Civil Division of the UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.
Of Counsel: Lt. Col. Donna M. Verchio, Esquire, Staff Judge Advocate, of DOVER AIRFORCE BASE, Dover, Delaware.

**MEMORANDUM OPINION**

September 16, 2005
Wilmington, Delaware

Farnan, District Judge.

    Pending before the Court is a Motion To Dismiss (D.I. 9) filed by Defendants, Secretary of Defense Donald H. Rumsfeld, Secretary of the Air Force James G. Roche, General John W. Handy and Colonel John I. Pray, Jr. For the reasons discussed, Defendants' Motion To Dismiss will be denied.

### BACKGROUND[1]

    Plaintiff is a Staff Sergeant in the United States Air Force. Plaintiff enlisted in October 1990, is a decorated airman, and had an unblemished military record until the incident giving rise to this lawsuit. Currently, Plaintiff serves as a flight engineer and technical sergeant on C-5 aircraft at Dover Air Force Base ("DAFB").

    Between 1998 and 2004, Plaintiff received a series of anthrax vaccinations, six of which Plaintiff alleges were tainted with squalene, a substance used to increase the potency of the vaccination, as part of an experimental program. Plaintiff alleges that the military engaged in a program to cover-up airmen's concerns about the health and safety of the tainted vaccine, and airmen were actively discouraged to speak about this topic. Beginning on October 10, 2004, and continuing through the present, the News Journal paper began a series of articles

---

[1]     The factual background of this action is taken from the factual allegations of Plaintiff's Complaint (D.I. 1) and the exhibits attached thereto.

1

investigating this issue. Plaintiff alleges that Defendants were angered and displeased by the media scrutiny and sought to do whatever they could to squelch the story, including pressuring senior officers and the chain of command to stifle all speech related to health concerns associated with the contaminated anthrax vaccine. At least one court has issued a permanent injunction against Defendant Secretary Rumsfeld preventing the use of the anthrax vaccine, absent informed consent or a Presidential waiver, "on the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of 10 U.S.C. § 1107." Doe v. Rumsfeld, 2004 WL 2397332, * 17 (D.D.C. Oct. 27, 2004).

On the evening of October 20, 2004, Plaintiff was on alert status for a high-priority mission. That evening, Plaintiff contends that he suffered from a severe and incapacitating headache which continued throughout the morning of October 21, 2004. At noontime, Plaintiff left his home in Smyrna to report to the flight surgeon at DAFB. Plaintiff did not contact DAFB before he left home and did not notify DAFB personnel that he had been experiencing debilitating headaches the night before.

While Plaintiff was en route to DAFB, Technical Sergeant Terry Miller telephoned Plaintiff's house to inform Plaintiff that he was required to participate in a high-priority alert mission the next morning. Plaintiff's wife contacted Plaintiff by cell phone to relay the message, and Plaintiff contacted TSgt.

2

Miller shortly thereafter. Plaintiff told TSgt. Miller that he was unsure whether he would be able to participate in the required flight, because the flight surgeon might change his status to "Duties Not to Include Flying." Plaintiff stated that he would notify TSgt. Miller once his status was determined by the flight surgeon.

The flight surgeon examined Plaintiff, and Plaintiff explained to him that he had been having severe headaches for a long time and that they might be migraines.[2] Plaintiff discussed with and told the flight surgeon that he believed his headaches were associated with the anthrax vaccine. The flight surgeon downplayed any connection between Plaintiff's headaches and the anthrax vaccine and told Plaintiff that the military would not have exposed him to any dangerous substances. At the conclusion of the examination, the flight surgeon changed Plaintiff's status to "Duties Not to Include Flying" ("DNIF") and prescribed medication for his symptoms.

Following his examination, Plaintiff notified TSgt. Miller of his change in flying status. Within 3 1/2 hours, Plaintiff was ordered to appear at DAFB the following morning in full uniform to meet with his squadron commander, Lieutenant Colonel

---

[2] The word "migraine" is considered a red flag for an aviator. Migraines are considered a permanently disqualifying medical condition, precluding airmen who are diagnosed with migraines from ever flying again. According to Plaintiff, migraines are a known side effect of the squalene tainted anthrax vaccine.

3

Cristos Vasilas and Chief Flight Engineer, Senior Master Sergeant Ronald J. Mahoney. After that meeting, Plaintiff met with SMSgt. Mahoney and TSgt. Miller, who accused Plaintiff of, among other things, dereliction of duty and faking his medical condition. SMSgt. Mahoney then gave Plaintiff an administrative letter of reprimand ("LOR") and an additional duty assignment. Plaintiff alleges that the LOR was issued in violation of military regulations concerning progressive discipline.

The LOR stated that Plaintiff was being reprimanded for actions that decreased the readiness of a high-priority alert mission, caused last minute schedule disruptions and could have resulted in a loss of training or the inability of the assets of the Department of Defense to execute their mission. The LOR advised Plaintiff that he was expected in the future to "stay in contact with the engineer scheduler and give him/her lead time when you decide to go DNIF for non-emergency conditions." (D.I. 1, Exh. 1). The LOR also warned Plaintiff that future incidents would result in more severe discipline and advised Plaintiff that he could submit matters pertaining to the LOR within three duty days for incorporation into the record. Plaintiff signed the LOR and indicated that he would submit matters pertaining to it within three duty days.

Plaintiff alleges that the LOR "killed Plaintiff's Air Force career," because it will bar him from future promotion, access to speciality schools, choice assignments and possibly even re-

4

enlistment. Plaintiff alleges that at least one Air Force attorney has characterized the LOR as a "bad one" and has indicated that it is unusual for an LOR to be issued for going on sick call. Other less severe forms of discipline require letters of counseling and letters of admonishment.

Plaintiff alleges that he was given the LOR in retaliation for his speech to the flight surgeon connecting his headaches with the tainted anthrax vaccine. Plaintiff alleges that we was made a public example at DAFB to discourage others from speaking out about the symptoms they were experiencing and questioning whether their medical conditions were related to the tainted anthrax vaccine.

Plaintiff also alleges that immediately after Plaintiff was retaliated against, Defendant Pray and Defendant Handy, through their public affairs staff, ordered that all uniformed personnel at DAFB be forbidden from speaking about the anthrax vaccine program and warned that they would be held accountable for violation of these orders. Plaintiff also alleges that the media informed Defendants about the retaliation against Plaintiff, but Defendants refused to void the adverse action taken against Plaintiff.

5

## STANDARD OF REVIEW

**I.   The Standard Under Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994). The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." Kost, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957). The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant. Young v. West Coast Industrial Relations Assoc., Inc., 763 F. Supp. 64, 67 (D. Del. 1991) (citations omitted).

As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss. However, a court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting a motion to dismiss to a motion for summary judgment. In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999).

II. **Standard Under Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter. The standards that apply to Rule 12(b)(6) also apply to motions brought under Rule 12(b)(1). In reviewing a facial challenge to the court's subject matter jurisdiction under Rule 12(b)(1), a court may only consider the complaint and documents referenced in or attached to the complaint. Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). All factual allegations alleged in the complaint and the supporting documents must be accepted as true and viewed in the light most favorable to the plaintiff.

DISCUSSION

I. **Whether Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim**

By their Motion, Defendants contend that Plaintiff's Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. Specifically, Defendants contend that Plaintiff

7

has failed to plead causation, an essential element of his claim for retaliation under the First Amendment for the exercise of his free speech rights. Defendants also contend that Plaintiff's speech did not involve a matter of public concern, and Plaintiff has no interest in his speech which would outweigh the Air Force's countervailing interest in maintaining the obedience of its enlisted personnel.

Public employees have the right to speak on matters of public concern without fear of retaliation. To establish a claim for retaliation, the "[p]laintiff must prove that (1) he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004). In a free speech case involving a public employee, the speech must involve a matter of public concern to be constitutionally-protected. Once this threshold requirement is met, the "plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001). These determinations are questions of law for the court. Id.

If these requirements are established, the plaintiff must then show that the constitutionally-protected activity was a substantial or motivating factor in the alleged retaliatory

8

action taken by the government.  Id.  A public employer can rebut a prima facie case of retaliation by showing that it would have reached the same decision absent the protected conduct.  Id. These last determinations raise factual questions.

  A. <u>Whether Plaintiff Has Adequately Pled Causation</u>

  Defendants first contend that Plaintiff has failed to plead causation, because he does not allege that he was disciplined by anyone in his chain of command with knowledge of his private conversation with his treating physician.  Defendants also contend that Plaintiff cannot establish causation by asserting temporal proximity between the alleged speech and the alleged retaliation or by relying on inferences related to media attention on this issue after plaintiff was disciplined.

  Reviewing Plaintiff's Complaint in the light most favorable to him, the Court concludes that Plaintiff has adequately pled causation for the purposes of withstanding Defendant's motion to dismiss.  Contrary to Defendants' assertions, Plaintiff does plead that each Defendant "was aware of [P]laintiff's constitutionally protected speech . . . and it antagonized him." D.I. 1 at ¶ 10-13.  While it is true that Plaintiff does not specifically allege that SMSgt. Mahoney knew about Plaintiff's protected speech, SMSgt. Mahoney is not a defendant in this action, and SMSgt. Mahoney's knowledge of Plaintiff's protected speech is not necessarily a prerequisite to establishing

9

Plaintiff's claim against Defendants, particularly to the extent that those claims are based on supervisory liability.

Supervisory liability may be established by showing that the defendant had actual knowledge of and acquiesced in the alleged unconstitutional conduct of a subordinate. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e. tacitly assented to or accepted) the subordinate's conduct." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d. Cir. 1997). Although the LOR was administered by SMSgt. Mahoney, Plaintiff has adequately alleged supervisory liability on the part of Defendants such that Defendants can be said to be liable for SMSgt. Mahoney's actions, to the extent that those actions violate Plaintiff's rights.

In addition to the express allegations in the Complaint concerning Defendants' actual knowledge and acquiescence, Plaintiff makes allegations demonstrating temporal proximity between Plaintiff's speech and the alleged retaliation, as well as antagonism toward Plaintiff in the intervening period between Plaintiff's protected behavior and the issuance of the LOR. Plaintiff also make other allegations going to causation, including allegations of pretext, disparate treatment and violations of Air Force policy including the failure to adhere to

10

the Air Force's progressive discipline policy and the disciplining of an airmen who reported sick, an action contrary to Air Force custom and policy. Taking these allegations as a whole and in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently pled the causation element for a retaliation claim.[3]

### B. Whether Plaintiff Has Alleged Speech Related To A Matter Of Public Concern

Defendants also contend that Plaintiff has failed to demonstrate that his speech related to a matter of public concern. "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social or other concern to the community.'" Baldassare, 250 F.3d at 195 (citations omitted). In evaluating speech under this standard, the Court must focus on the content, form and context of the speech. In this case, Plaintiff's allegations demonstrate that his speech pertained to the health of military personnel and the potential wrongdoing of military

---

[3] Defendants urge the Court to consider a DAFB order and Plaintiff's response to the LOR which contained no reference to his discussion with the flight surgeon about the anthrax vaccine. These documents are neither mentioned in nor relied upon in the Complaint, and while they are undoubtedly related to Plaintiff's claims, the Court is not persuaded that they are integral to the claims such that they should be considered in the context of a motion to dismiss. In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997) (recognizing that exception exists to allow consideration of documents external to the complaint on a Rule 12(b)(6) motion when the plaintiff "'has actual . . . and has relied upon these documents in framing the complaint") (emphasis added) (citations omitted).

officials in allegedly administering tainted anthrax vaccines to military personnel as part of an experimental program. Both of these issues are matters of public concern. See Brennan v. Norton, 350 F.3d 399, 415 (3d Cir. 2003) (holding that statements regarding exposure of public employees to hazards like asbestos are "fairly considered as relating to a matter of concern to the community"); Baldassare, 250 F.3d at 196-197 (recognizing that speech pertaining to fraud, illegality and corruption of government agencies is a matter of public concern). Defendants contend that the context of Plaintiff's speech had nothing to do with potential wrongdoing by government officials, because his speech was made privately to his physician in the context of focusing on his personal symptoms requiring medical treatment. However, there is case law suggesting that the private nature of a conversation does not impact its content as relating to a matter of public concern. Baldassare, 250 F.3d at 197 (noting that the focus is on the nature of the information and not its audience and that the private nature of a statement does not mean that it doesn't impact a matter of public concern). Accordingly, at this juncture, the Court concludes that Plaintiff has alleged facts sufficient to demonstrate that his speech impacted a matter of public concern.

    C.    <u>Whether Plaintiff Has Alleged An Interest In His Speech That Outweighs The Government's Countervailing Interests</u>

Defendants next contend that Plaintiff cannot establish an interest in his speech which is sufficient to outweigh the government's strong countervailing need to discipline its own personnel. Defendants contend that this need is particularly strong in the military context, and notes the distinctions the Supreme Court has made between civilian and military life.

In evaluating a claim for retaliation, the Court must "balance the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering v. Bd. of Education</u>, 391 U.S. 563, 568 (1968). To conduct this inquiry, the Court must weigh, on the one side, the public employee's interest in speaking out about a matter of public concern and the value to the community of her being free to speak on such matters. On the other side, the Court must consider the government's interest as the employer in promoting the efficiency of the services it performs through its employees. Although the balancing inquiry is considered a question of law, it is fact-intensive.

Defendants contend that Plaintiff presents no countervailing interests to be weighed, because his speech was not public. Thus, Defendants maintain that "the Court is not presented with,

13

and need not address, the counterfactual question of how serious an injury plaintiff's speech 'could cause to the interest of the state.'" (D.I. 10 at 23) (citations omitted). At this juncture, the Court concludes that Plaintiff has alleged speech addressing a matter of public concern, and therefore, the Court finds that Plaintiff has alleged a countervailing interest sufficient to state a retaliation claim. Defendants also reiterate their causation argument contending that Plaintiff was not disciplined for his speech, but for his actions in disobeying his commander's standing orders. However, the Court has concluded that Plaintiff has sufficiently alleged causation so as to withstand Defendants' motion to dismiss. Further, the balancing inquiry requires the Court to consider "the extent to which the employee's speech activity disrupts the working of the office, the extent to which the employee threatens the authority of the employer to run the office, and the extent to which the employee uses the speech activity to resolve an essentially private grievance." Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993). Reading the Complaint in the light most favorable to Plaintiff and considering that the balancing inquiry is fact-intensive and best resolved at a latter stage in the case, the Court cannot, at this time, conclude that Plaintiff's speech disrupts the interests of Defendants. Accordingly, the Court concludes that Plaintiff has sufficiently alleged a claim of retaliation under Rule 12(b)(6), and therefore, Defendants' Motion To Dismiss will be denied.

14

## II. Whether Plaintiff's Complaint Should Be Dismissed For Lack Of Standing

Defendants also request dismissal of Plaintiff's Complaint for lack of standing. Defendants contend that because Plaintiff has not alleged causation, he cannot demonstrate that his injury is fairly traceable to the challenged conduct for purposes of establishing standing. Defendants also contend that Plaintiff cannot demonstrate an injury in fact, because he cannot show either the chilling of his speech or retaliatory discipline.

To raise a case or controversy under Article III of the Constitution, the plaintiff must demonstrate "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551 (1996). The Court has previously concluded that Plaintiff has stated a claim for retaliatory discipline under the First Amendment, and that Plaintiff has alleged facts sufficient to satisfy the causation element of his claim. Accordingly, the Court will not dismiss Plaintiff's Complaint based on a lack of standing.

## III. Whether Plaintiff's Complaint Should Be Dismissed For Failure To Exhaust Administrative Remedies

Defendants also contend that Plaintiff's Complaint should be dismissed, because he failed to pursue, let alone exhaust, his

15

administrative remedies before the Air Force Board for the Correction Of Military Records.  Defendants contend that this Board is best situated to hear and resolve Plaintiff's claim.

The Third Circuit has recognized that, in "the context of military regulation, the exhaustion requirement ensures that the military, a highly specialized society with goals separate from those of the general community, will be able to perform those tasks -- such as developing a factual record and applying its expertise -- for which it is uniquely qualified."  Taylor v. U.S., 711 F.2d 1199, 1206 (3d Cir. 1983).  Where, as here, a plaintiff has presented a claim based on the violation of a constitutional right, courts have not required exhaustion of administrative remedies by a military administrative board.  See e.g. Downen v. Warner, 481 F.2d 642, 643 (9th Cir. 1973); Adair v. England, 183 F. Supp. 2d 31 (D.D.C. 2002).  The interest in encouraging the use of administrative expertise are not implicated where a constitutional violation is alleged, because such allegations are particularly suited to the expertise of the judiciary.

Defendants contend that dismissal for failure to pursue administrative remedies is warranted in this case, because the matter involves a single service member's record, not a broad military policy, and detailed factual development of the record is required.  However, Defendants have not demonstrated that the Air Force Board can provide Plaintiff with the type of permanent

16

injunctive relief he requests against future retaliation. Defendants cite two cases for the proposition that administrative proceedings can afford service members an adequate remedy, <u>Roth v. United States</u>, 378 F.3d 1371 (Fed. Cir. 2004) and <u>Nelson v. Miller</u>, 373 F.2d 474 (3d Cir. 1976); however, both those cases deal with ensuring that military records do not reflect an injustice. In this case, the relief Plaintiff requests goes beyond the parameters of his service records and extends to injunctive relief against future violations of his First Amendment rights. See e.g. <u>Glines v. Ward</u>, 586 F.2d 675 (9th Cir. 1978), <u>rev'd on other grounds, sub nom</u> <u>Brown v. Glines</u>, 444 U.S. 348 (1980) (considering First Amendment claim raised by Air Force Reserves Captain and stating that "[r]esolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board"). Accordingly, the Court concludes that exhaustion of administrative remedies is not required in this case, and therefore, Plaintiff's failure to exhaust his administrative remedies provides no basis to support the dismissal of this action.

## CONCLUSION

For the reasons discussed, Defendants' Motion To Dismiss will be denied.

An appropriate Order will be entered.