# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STAFF SERGEANT JASON A. ADKINS, USAF, )   C.A. NO.: 04-1453-JJF
                                       )

          Plaintiff,             )

                                  )

          v.                    )   **DEFENDANTS'**

                                  )   **MEMORANDUM OF**

DONALD H. RUMSFELD, Secretary of Defense; )   **LAW IN SUPPORT OF**

JAMES G. ROCHE, Secretary of the Air Force; )   **DEFENDANTS' MOTION**

GEN JOHN W. HANDY, Commander Air Mobility )   **TO DISMISS**

Command; COL JOHN I. PRAY, JR., 436th Airlift )

Wing Commander, in their official capacities, )

                                  )

          Defendants.        )

---

Dated: January 18, 2006

Of Counsel:

LT COL DONNA MARIE VERCHIO
Staff Judge Advocate
Dover Air Force Base
MAJ CHARLES D. MUSSELMAN, JR.
Military Personnel Branch
General Litigation Division
Air Force Legal Services Agency

PETER D. KEISLER
Assistant Attorney General
COLM F. CONNOLLY
United States Attorney
RUDOLPH CONTRERAS
Assistant United States Attorney
VINCENT M. GARVEY
Deputy Branch Director
JEFFREY D. KAHN (MI Bar # P65270)
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel: (202) 514-3716
Fax: (202) 616-8470
jeffrey.kahn@usdoj.gov

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i
INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>ARGUMENT</u>

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    THE ACTION SHOULD BE DISMISSED FOR
      LACK OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Plaintiff's action should be dismissed because the
            United States has not waived its sovereign immunity . . . . . . . . . . . . . . . . . . 11
      B.    Plaintiff's action should be dismissed because plaintiff's
            claims are essentially for money damages in excess of
            this Court's jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      C.    Count I should be dismissed for lack of standing
            because plaintiff's alleged injury is not fairly traceable
            to the challenged actions of the defendants . . . . . . . . . . . . . . . . . . . . . . . . . 17
      D.    Count I should be dismissed as moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.   THE ACTION SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM FOR RETALIATION . . . . . . . . . . . . . . . . . . . . 21

      A.    Plaintiff's Action Should be Dismissed Because
            Plaintiff Fails to Allege that Defendants Maintained
            Direct Supervisory Authority Over Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . 21
      B.    Count I Should be Dismissed for Failure to Plead
            an Essential Element of Plaintiff's Cause of Action . . . . . . . . . . . . . . . . . . . 24
      C.    Count II Should be Dismissed for Failure to Allege
            Adverse Actions Sufficient to Rise to the Level of
            Retaliatory Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
      D.    Plaintiff Fails to State a Claim for Relief in the Form
            of Blanket Release of Information or Letters of Apology . . . . . . . . . . . . . . . 34

III.  THE ACTION SHOULD BE DISMISSED FOR FAILURE
      TO EXHAUST ADMINISTRATIVE REMEDIES UNDER
      THE MILITARY WHISTLEBLOWER PROTECTION ACT . . . . . . . . . . . . . . . . 37

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF AUTHORITIES

### FEDERAL CASES

Pursuant to Local Rule 7.1.3(a)(G), copies of unreported opinions
cited in this memorandum are attached as Defendants' Exhibit 10

Alasevich v. United States Air Force Reserve,
        Civ. No. 95-CV-2572, 1997 WL 152816 (E.D. Pa. Mar. 26, 1997) ........................ 11, 39

Ambrose v. Township of Robinson, Pa., 303 F.3d 488 (3d Cir. 2002) ........................... 22, 24, 34

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997) ....................................................... 30

Student Finance Corp. v. Pepper Hamilton, et al.,
        --- B.R. -- 2005 WL 3525741 (D.Del. Dec. 22, 2005) ..................................................... 9

Baldassare v. State of New Jersey, 250 F.3d 188 (3d Cir. 2001) ................................................ 29

Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731 (1983) ................................................ 30

Bobula v. U.S. Dept. of Justice, 970 F.2d 854 (Fed. Cir. 1992) ................................................ 12

Borelli v. City of Reading, 532 F.2d 950 (3d Cir. 1976) ......................................................... 18

Bowers v. Mounet, Civ. No. 99-533-JJF, 2001 WL 826556 (D. Del. July 18, 2001) ................ 25

Breitigan v. New Castle County, Civ. No. 02-1333-GMS,
        2004 WL 2370701 (D. Del. Oct. 13, 2004) ................................................................. 10

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003) ............................................................ 30, 31, 33

Brookins v. Williams, Civ. No. 04-1250-SLR, 2005 WL 3263101 (D. Del. Nov. 30, 2005) .... 28

Brown v. George, Civ. No. 02-1686-KAJ, 2005 WL 2271922 (D. Del. Sept. 19, 2005) ........... 28

Capital Cities Media, Inc. v. Chester, 797 F.2d 1164 (3d Cir. 1986) ......................................... 35

Carlyle Gardens Co. v. Delaware State Housing Auth., 659 F.Supp. 1300 (D. Del. 1987) ....... 14

Chabal v. Reagan, et al., 822 F.2d 349 (3d Cir. 1987) ......................................................... 14, 16

Christopher Village v. U.S., 360 F.3d 1319 (Fed. Cir. 2004) ..................................................... 13

Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs, 426 F.3d 241 (3d Cir. 2005) ........... 11

Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004) ................................ 24, 29, 36

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) ...................................................... 27, 29

Fairview Township v. U.S. Envtl. Prot. Agency, 773 F.2d 517 (3d Cir. 1985) ............. 13, 15, 36

Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167 (2000) ................ 17

Hahn v. United States, 757 F.2d 581 (3d Cir. 1985) ................................. 13, 15, 16, 17

Holloman v. Watt, 708 F.2d 1399 (9th Cir. 1983) ...................................................... 12

Houchins v. KQED, Inc., 438 U.S. 1 (1978) ............................................................ 35

Jaffee v. U.S., 592 F.2d 712 (3d Cir. 1979) ........................................................ 12, 15

Jorden v. Nat'l Guard Bureau, 799 F.2d 99 (3d Cir. 1986) ....................................... 39

Khodara Envtl., Inc. v. Blakely, 376 F.3d 187 (3d Cir. 2004) .................................... 17

McDonnell v. U.S., 4 F.3d 1227 (3d Cir. 1993) ..................................................... 36

McIntyre v. City of Wilmington, Civ. A. No. 01-396-GMS,
    2002 WL 1586280 (D. Del. July 9, 2002) ...................................................... 9

McKee v. Hart, —F.3d —, 2006 WL 27474 (3d Cir. 2006) ........................... 31, 32, 34

Mele v. Fed. Reserve Bank of New York, 359 F.3d 251 (3d Cir. 2004) ..................... 10

Nelson v. Miller, 373 F.2d 474 (3d Cir. 1967) ...................................................... 39

Orff v. U.S., —U.S. —, 125 S.Ct. 2606 (2005) ..................................................... 11

Orloff v. Willoughby, 345 U.S. 83 (1953) ............................................................ 39

Parker v. Levy, 417 U.S. 733 (1974) .................................................................... 39

Pfizer Inc. v. Ranbaxy Laboratories Ltd., 321 F.Supp.2d 612 (D. Del. 2004) ........... 10

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) ............................ 21, 22

In re Rockefeller Center Properties Securities Litigation, 184 F.3d 280 (3d Cir. 1999) ............ 10

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) ..................................................... 21, 26, 27

Rostker v. Goldberg, 453 U.S. 57 (1981) ................................................................... 39

San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994) ............................................ 30

Scalisi v. Limerick Township, Civ. No. 05-CV-3413,
    2005 WL 3032507 (E.D. Pa. Nov. 10, 2005) ............................................... 33

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950) ..................................... 12

Southmark Prime Plus v. Falzone, 776 F.Supp. 888 (D. Del. 1991) ............................ 10

Suppan v. Dadonna, 203 F.3d 228 (3d Cir.2000) ...................................................... 31

Swaaley v. U.S., 376 F.2d 857 (Ct. Cl., 1967) .......................................................... 16

Taylor v. U.S., 711 F.2d 1199 (3d Cir. 1983) ........................................................... 38

U.S. v. Sherwood, 312 U.S. 584 (1941) ................................................................... 11

U.S. v. White Mountain Apache Tribe, 537 U.S. 465 (2003) ....................................... 11

Warth v. Seldin, 422 U.S. 490 (1976) ...................................................................... 18

Williams v. Snyder, Civ. No. 01-632-JJF, 2002 WL 32332192 (D. Del. Sept. 30, 2002) ......... 28

Wyoming v. U.S., 279 F.3d 1214 (10th Cir. 2002) ..................................................... 12

Zellous v. Broadhead Associates, 906 F.2d 94 (3d Cir. 1990) ..................................... 20

## STATUTES

Fed. R. Civ. P. 8(a) ............................................................................... 11, 27, 28

Fed. R. Civ. P. 12(b)(1) ............................................................................. passim

Fed. R. Civ. P. 12(b)(6) ............................................................................. passim

Federal Courts Administration Act of 1992, Pub.L. No. 102-572,
    § 902(a), 106 Stat. 4506 (1992) ....................................................... 13

5 U.S.C. § 552 ............................................................................................ 35, 36

5 U.S.C. § 702 ............................................................................................ 12

5 U.S.C. § 704 ............................................................................................ 13

10 U.S.C. § 938 .......................................................................................... 26

10 U.S.C. § 1034 ........................................................................................ 37, 38

28 U.S.C. § 1331 ........................................................................................ 11, 12, 15

28 U.S.C. § 1361 ........................................................................................ 11, 12, 15, 36

28 U.S.C. § 1491(a)(1) ............................................................................... 13, 15

28 U.S.C. § 2201 ........................................................................................ 11, 15

37 U.S.C. § 204 .......................................................................................... 14

U.S. Const., Art. III § 2 ............................................................................. 17

## INTRODUCTION

Plaintiff Staff Sergeant Jason A. Adkins, a former flight engineer at Dover Air Force Base, jeopardized a high-priority alert mission by waiting twelve hours to inform anyone within his chain of command that he was incapacitated by an illness that finally led him to visit a flight surgeon, who grounded him. Because this dilatory conduct violated plaintiff's orders, he was issued an administrative letter of reprimand ("LOR") by Senior Master Sergeant Ronald J. Mahoney, his supervisor at Dover Air Force Base ("Dover AFB") and the individual responsible for the crew schedule that plaintiff's conduct rendered unworkable.

Plaintiff, however, claims that the LOR was issued in retaliation for asking a flight surgeon whether his illness could be related to past anthrax inoculations that plaintiff received. As the record now shows, plaintiff's question to the flight surgeon was not disclosed to SMSgt Mahoney by plaintiff or the flight surgeon, nor was it otherwise known to him prior to the time his disciplinary action was taken. And, although plaintiff knew that the LOR had <u>not</u> been placed in his official personnel file, he nonetheless filed suit against the Secretary of Defense and high-ranking military officials at Dover, in Illinois, and Washington D.C. to order the LOR removed from his file. Plaintiff maintains in Count I that his reprimand was retaliation for asking the doctor about the anthrax vaccine. Plaintiff subsequently amended his complaint to add Count II, which alleges harassment at work in retaliation for filing his initial complaint.

Plaintiff's attempt to turn an instance of routine discipline at the initial level of the military chain of command at Dover AFB into a suit alleging constitutional claims against the Secretary of Defense, the former Secretary of the Air Force, a four-star general in Illinois and the Commander of Dover AFB has no basis in fact or law and should be rejected. This Court should dismiss plaintiff's action on a number of arguments under Fed. R. Civ. P. 12(b)(1) and (6).

Defendants have not waived sovereign immunity to plaintiff's action, except under the exclusive jurisdiction of the United States Court of Federal Claims. Both Counts I and II are based on a theory of supervisory liability that fails in Count I because SMSgt Mahoney lacked knowledge of plaintiff's "speech" at the relevant time, and in Count II for lack of any direct supervisory control by the named defendants. For similar reasons, Count I should also be dismissed because plaintiff lacks standing and the only requested remedy appropriate under Count I is moot: no letter of reprimand was placed in plaintiff's file.

Count II fails because plaintiff's initial lawsuit seeking removal of the letter of reprimand from plaintiff's official personnel file was filed eight days _after_ plaintiff was given written notice that the letter was not part of his file. Because plaintiff nevertheless filed a lawsuit that therefore raised a knowingly frivolous claim, plaintiff has no basis in law to seek relief against the minor administrative matter that plaintiff incorrectly characterizes as retaliatory harassment.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed his Complaint on November 18, 2004. See Docket No. 1. The Complaint stated a single cause of action alleging retaliation for speech protected under the First Amendment of the United States Constitution. Id. On February 8, 2005, defendants moved to dismiss the action. See Docket No. 9. Following full briefing by the parties in support and in opposition to defendants' motion, the Court issued a Memorandum Opinion and Order on September 16, 2005, in which the Court denied defendants' motion. See Docket Nos. 20 & 21. Prior to the date on which defendants' Answer to plaintiff's Complaint would have been due, plaintiff filed a First Amended Complaint on November 15, 2005. See Docket No. 25. The Amended Complaint presents two causes of action. Count I of the Amended Complaint alleges

retaliation for speech protected under the First Amendment of the United States Constitution. Id. Count II of the Amended Complaint alleges retaliatory harassment in violation of the Petition Clause of the First Amendment. Id. Defendants have not filed an Answer to this Amended Complaint.

Plaintiff's Amended Complaint makes new factual allegations and presents a new cause of action that were not presented in plaintiff's original Complaint. In addition, the Third Circuit Court of Appeals issued an opinion in which it clarified circuit law pertaining to certain pleading requirements relevant to the issues in this case on September 12, 2005, four days prior to this Court's ruling on defendants' motion. Because this Court did not have the advantage of full briefing on this new opinion, defendants now respectfully renew their motion to dismiss plaintiff's action for the reasons stated below.[1]

---

[1]Defendants have sought permission of this Court to file Defendants' Exhibits 5-A, 5-B, 5-C, and 6-B to this memorandum under seal. See Docket No. 27. In conformity with the guidance provided by the Court for CM/ECF filings involving sealed exhibits, see Electronic Filing Tips for Attorneys (located at http://www.ded.uscourts.gov/CMECF/CMECFMain.htm), defendants have filed a single page noting just the words "Sealed Document" in lieu of these exhibits. As indicated on the attached certificate of service, defendants have served these exhibits on plaintiff's counsel via Federal Express. Should the Court grant permission to file under seal, defendants' will comply with the instructions for doing so provided in this Court's Order, In re: Electronic Case Filing Policies and Procedures, Feb. 8, 2005. Should the Court deny permission to file under seal, defendants will file these exhibits electronically under the appropriate docket notation and reference.

## SUMMARY OF ARGUMENT

**Arguments Raised Under Fed. R. Civ. P. 12(b)(1)**

(1)    Plaintiff's action should be dismissed for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity to suit.

(2)    Plaintiff's action should be dismissed because his claims are essentially for money damages in excess of this Court's concurrent jurisdiction under the Little Tucker Act.

(3)    Count I should be dismissed because plaintiff lacks standing to raise this claim and events occurring prior to his suit render this claim moot.

**Arguments Raised Under Fed. R. Civ. P. 12(b)(6)**

(4)    Plaintiff's action should be dismissed for failure to state a claim upon which relief can be granted because plaintiff's respondeat superior theory of liability is deficient as a matter of law.

(5)    Count I should be dismissed because plaintiff has failed to adequately plead causation, an essential element of his cause of action.

(6)    Count I should be dismissed because plaintiff did not engage in a constitutionally-protected activity.

(7)    Count II should be dismissed because plaintiff's knowingly frivolous lawsuit was not a constitutionally-protected activity.

(8)    Count II should be dismissed because plaintiff has failed to allege conduct that as a matter of law could rise to the level of retaliatory harassment.

(9)    Plaintiff has failed to state a claim that would entitle him to relief in the form of a release of "all information" concerning the health-related effects of the anthrax vaccine or relief in the form of a writ of mandamus directing defendants to write letters of apology to plaintiff.

(10)    The Court should exercise its discretion to dismiss plaintiff's action for failure to exhaust administrative remedies available to him under the Military Whistleblower Protection Act.

## STATEMENT OF FACTS[2]

Plaintiff is a former Staff Sergeant in the United States Air Force who served as a flight engineer at Dover Air Force Base ("DAFB"). See Am. Compl. at ¶¶ 9, 102. Between 1998 and 2004, plaintiff received a series of inoculations against anthrax. See Am. Compl. at ¶ 20.

During the night of October 20, 2004, plaintiff suffered "a severe and incapaciting headache." See Am. Compl. at ¶ 50. At that time, plaintiff was on alert status for a high-priority alert mission. See Pl.'s Ex. A at ¶ 1 (Letter of Reprimand to SSgt Adkins); see also Defs.' Ex. 8 at ¶ 1 (DAFB Instruction 11-206). Alert status is a high-priority, Joint Chiefs of Staff posture that places specific limitations and responsibilities on plaintiff. Id. at ¶¶ 1, 3.6.5 & 4.3. Plaintiff was required to carry an alert "beeper" at all times. See Am. Compl. at ¶ 64; see also Defs.' Ex. 8 at ¶ 3.6.4; Defs.' Ex. 7 (Response to Letter of Reprimand from SSgt Adkins). Standing orders issued by the commander of plaintiff's airlift wing required plaintiff to notify appropriate DAFB personnel immediately if he was unable to perform his alert duties. See Defs.' Ex. 8 at ¶¶ 3.6.6 & 4.4. These orders specifically warned plaintiff that "[s]trict adherence to these procedures is critical to ensure a successful alert launch. Any problems associated with the D-Alert posture must be reported immediately 436 OSS/OSO [436th Air Wing Operational Support Squadron (Current Operations)] for resolution." Id. at ¶ 4.4.

Plaintiff's nighttime headache persisted throughout the morning of October 21, 2004. See Am. Compl. at ¶ 50. At approximately noon, plaintiff left his home in Smyrna, Delaware, to see the flight surgeon at DAFB. Id. Plaintiff did not contact DAFB before he left home or otherwise

---

[2]The following statement of facts is based upon allegations of the Amended Complaint and documents attached to or referenced therein. They are assumed to be true solely for the purposes of this motion.

notify any DAFB personnel that he had been "incapacitated" for the previous twelve hours. Id.;

see also Def.'s Ex. 7 at ¶ 2. While plaintiff was en route to DAFB, Technical Sergeant Terrence

Miller telephoned plaintiff's home to provide plaintiff, already on alert status, with an advanced

warning that his crew would launch an aircraft on a high-priority alert mission the next morning.

See Am. Compl. at ¶ 56; see also Pl.'s Ex. A at ¶ 1; see also Defs.' Ex. 2 at ¶ 3 (Affidavit of

Terrence Miller). Plaintiff's wife contacted plaintiff by cell phone with this message and plaintiff

telephoned TSgt Miller shortly thereafter. See Am. Compl. at ¶ 57. Plaintiff told TSgt Miller

that he was unsure whether he would be available for the required flight because the flight

surgeon might change his status to "Duties Not to Include Flying." Id. Plaintiff stated that he

would notify TSgt Miller once his status was determined by the flight surgeon. Id.

Shortly before one o'clock, plaintiff arrived at the flight surgeon's office and was

examined. See Am. Compl. at ¶ 58. During the examination, plaintiff "described his debilitating

symptoms" and "explained to the physician that he had been having severe headaches for a long

time and that they might be migraines." Id. at ¶ 59. Finally, plaintiff "asked the Flight Surgeon

whether his headaches and current medical condition could be connected to the tainted [sic]

anthrax vaccine." Id. at ¶ 61. At the conclusion of the examination, the flight surgeon changed

plaintiff's status to "Duties Not to Include Flying" and prescribed medication for his symptoms.

Id. at ¶ 63.

Following his examination, plaintiff notified TSgt Miller of this change in flying status.

See Am. Compl. at ¶ 64. A few hours later, plaintiff was ordered to appear at DAFB the

following morning, when he met with his squadron commander, Lieutenant Colonel Cristos

Vasilas, and the Chief Flight Engineer, Senior Master Sergeant Ronald J. Mahoney. Id. at ¶¶ 65-

66. Following that meeting, plaintiff met with SMSgt Mahoney and TSgt Miller, at which time SMSgt. Mahoney gave plaintiff an administrative letter of reprimand ("LOR"). Id. at ¶¶ 67-68; see also Pl.'s Ex. A at ¶ 4.

The LOR stated that plaintiff was being reprimanded for actions that decreased the readiness of a high-priority alert mission, caused last minute schedule disruptions, and could have resulted in a loss of training or the inability of Department of Defense assets to execute their mission. See Pl.'s Ex. A at ¶ 1. The LOR also advised plaintiff what improvement in his conduct was expected and warned plaintiff that future such incidents would result in more severe action. Id. at ¶¶ 2 & 3. Finally, the LOR advised plaintiff that he may submit matters pertaining to this LOR within three duty days, and that any such submissions would become part of the record. Id. at ¶ 4. In addition to the LOR, plaintiff was given duties commensurate with a non-flying position within plaintiff's squadron, which plaintiff considered "additional punishment" in the form of "additional duty." See Am. Compl. at ¶ 73.

Plaintiff signed the administrative LOR and indicated that he would submit matters pertaining to it within three duty days. See Pl.'s Ex. A. In a memorandum dated October 26, 2004, plaintiff submitted his written response to the LOR. See Def.'s Ex. 7. Plaintiff's response does not refer to his conversation with the flight surgeon. Id. Plaintiff's response also does not refer to any conversations with anyone, including the flight surgeon, concerning the anthrax vaccine or the concerns plaintiff shared with the flight surgeon regarding his headaches. Id.

Plaintiff also filed a complaint with the Inspector General at DAFB that alleged that SMSgt Mahoney improperly issued plaintiff with a letter of reprimand. See Defs.' Ex. 6-B (DAFB Inspector General's Complaint Analysis). Plaintiff's complaint to the Inspector General

does not refer to any conversations with anyone, including the flight surgeon, concerning the anthrax vaccine or the concerns plaintiff shared with the flight surgeon regarding his headaches. Id. Nor did plaintiff's complaint allege retaliation for speaking to the flight surgeon. Id. The Inspector General determined that plaintiff's discipline was proper, informed plaintiff that the LOR that he had received "was not part of your official personnel file," and advised plaintiff to contact his office should he wish to make a complaint of reprisal. See Defs.' Ex. 6-A (Letter to plaintiff dated November 10, 2004).

Plaintiff did not make a complaint of reprisal to the Inspector General and did not pursue other available administrative remedies, including an appeal to the Air Force Board for the Correction of Military Records. Instead, on November 18, 2004, eight days after the letter from the Inspector General, plaintiff filed suit in this Court seeking declaratory and injunctive relief. See Am. Compl. at ¶ 87.

On November 15, 2005, plaintiff amended his complaint to add a new cause of action. Plaintiff alleged that following his return to work on November 23, 2004, his co-workers treated him differently than before he filed suit. See Am. Compl. at ¶ 93. Plaintiff found multiple copies of newspapers in which his lawsuit was featured throughout the base. Id. at ¶ 92. Plaintiff felt his work was subjected to increased scrutiny, oversight, and criticism, and his work assignments changed. Id. at ¶¶ 94-97. Following plaintiff's permanent medical disqualification from flying, plaintiff was told to wear a uniform other than a flightsuit. Id. at ¶ 98. Plaintiff was also "threatened" with loss of his aircrew badge, although this did not occur. Id. at ¶ 99. Plaintiff also alleged in his Amended Complaint that he received lower scores on his performance evaluations after the suit was filed. Id. at ¶ 101. Plaintiff left the Air Force on May

15, 2005. Id. at ¶ 102. The Amended Complaint therefore also seeks monetary relief in the form

of reinstatement with full benefits and declaratory and injunctive relief. See Am. Compl., Prayer

for Relief at A-H.

## ARGUMENT

## STANDARD OF REVIEW

### Standard for Dismissal under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the

court. Fed. R. Civ. P. 12(b)(1). The motion should be granted where the asserted claim is

"insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely

devoid of merit as not to involve a federal controversy." Student Finance Corp. v. Pepper

Hamilton, et al., --- B.R. ----, 2005 WL 3525741, at *1 (D.Del. Dec. 22, 2005) (citation omitted)

(Farnan, J.). Under Rule 12(b)(1), a court may also dismiss an action for lack of subject matter

jurisdiction if the plaintiff lacks standing to bring his claim. Id. A motion to dismiss under

12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. In

considering a facial challenge, a court must accept all allegations in the complaint as true. Id. In

contrast, when considering a factual challenge, "the trial court is free to weigh the evidence and

satisfy itself as to the existence of its power to hear the case. In short, no presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover,

the plaintiff will have the burden of proof that jurisdiction does in fact exist." Id. (citing

Mortensen v. First Fed. Sav. and Loan, 549 F.2d 884, 891 (3d Cir.1977)); McIntyre v. City of

Wilmington, Civ. A. No. 01-396-GMS, 2002 WL 1586280 at *2 (D. Del. July 9, 2002).

**Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)**

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Pfizer Inc. v. Ranbaxy Laboratories Ltd., 321 F.Supp.2d 612, 615 (D. Del. 2004) (Farnan, J.). The Court accepts as true the factual allegations of the complaint and draws all reasonable factual inferences in the light most favorable to the non-moving party. Pfizer, 321 F.Supp.2d at 614-15. However, this requirement does not extend to, and the Court need not credit, "a complaint's bald assertions or legal conclusions." Breitigan v. New Castle County, Civ. No. 02-1333-GMS, 2004 WL 2370701, at *2 (D. Del. Oct. 13, 2004) (internal quotations omitted); see also Pfizer, 321 F.Supp.2d at 615.

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment" under Rule 56. See Fed. R. Civ. P. 12(b). However, as to what constitutes "matters outside the pleading," this Circuit has held that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Mele v. Fed. Reserve Bank of New York, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (internal quotations and emphasis omitted). Likewise, the Court may examine "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." In re Rockefeller Center Properties Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999). Judicial notice of public records outside the pleadings is permitted on a motion to dismiss. Southmark Prime Plus v. Falzone, 776 F.Supp. 888, 892 (D. Del. 1991).

-10-

I.    **THE ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

    A.    **Plaintiff's Action Should be Dismissed Because the United States has not Waived its Sovereign Immunity from this Suit**

        **1. Waiver is a Jurisdictional Prerequisite**

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." U.S. v. Sherwood, 312 U.S. 584, 586 (1941) (internal citations omitted); U.S. v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver.") (internal citations omitted). "[A] waiver of sovereign immunity must be strictly construed in favor of the sovereign." Orff v. U.S., — U.S. — , 125 S.Ct. 2606, 2610 (2005); Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs, 426 F.3d 241, 246 (3d Cir. 2005). Because a waiver of sovereign immunity is a prerequisite to a court's subject matter jurisdiction, it must be pleaded in the complaint. See Fed. R. Civ. P. 8(a) (providing that a pleading must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends . . .").

Plaintiff has not established that the United States has waived its sovereign immunity from plaintiff's suit. Plaintiff asserts jurisdiction under 28 U.S.C. §§ 1331, 1361, 2201 & 2202, and the First Amendment to the United States Constitution. See Am. Compl. at ¶ 7. But plaintiff does not allege any waiver of sovereign immunity and none is provided by any of plaintiff's claimed sources of jurisdiction. See, generally, Alasevich v. United States Air Force Reserve, Civ. No. 95-CV-2572, 1997 WL 152816, at *1 (E.D. Pa. Mar. 26, 1997). The Declaratory

Judgment Act, 28 U.S.C. § 2201 et seq., does not waive sovereign immunity. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Wyoming v. U.S., 279 F.3d 1214, 1225 (10th Cir. 2002). Nor does 28 U.S.C. § 1331 constitute a waiver of sovereign immunity. See Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983), cert. denied, 466 U.S. 958 (1984) ("Section 1331 does not waive the government's sovereign immunity from suit."); Wyoming v. U.S., 279 F.3d 1214, 1225 (10th Cir. 2002). Nor does the Mandamus Act, 28 U.S.C. § 1361, waive sovereign immunity. See Bobula v. U.S. Dept. of Justice, 970 F.2d 854, 860 (Fed. Cir. 1992) ("[A] suit under § 1361 is a suit against an officer personally, not the sovereign, and, therefore, it cannot be read as a waiver of sovereign immunity."). Finally, the Constitution itself does not waive sovereign immunity. Jaffee v. U.S., 592 F.2d 712, 717-18 (3d Cir. 1979), cert. denied 441 U.S. 961 (1979).

### 2. No Valid Waiver Accommodates Plaintiff's Suit

The deficiencies in plaintiff's case run deeper than pleading omissions. The United States has not waived sovereign immunity from plaintiff's action for the relief he seeks. The law in this circuit holds that § 702 of the Administrative Procedure Act ("APA"), "when it applies, waives sovereign immunity in 'nonstatutory' review of agency action under section 1331." Jaffee v. U.S., 592 F.2d at 718.

But § 702 does not apply in this case. First, and most significantly, plaintiff has not brought suit under that statute. Second, § 702 acts as a waiver only for suits "seeking other than money damages." 5 U.S.C. § 702. As stated more fully, infra, plaintiff seeks money damages in the form of "full benefits" and pay, which necessarily includes back pay, through an order of reinstatement in the Air Force. See Am. Compl., Prayer for Relief at C. Third, § 702 is further

constrained by § 704, which limits the waiver of sovereign immunity to suits that contest "final

agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiff

has an adequate remedy for the present suit, as noted <u>infra</u>, in the United States Court of Federal

Claims because he seeks monetary damages as well as incidental nonmonetary relief. "[A]

litigant's ability to sue the government for money damages in the Court of Federal Claims is an

adequate remedy that precludes an APA waiver of sovereign immunity in other courts."

<u>Christopher Village v. U.S.</u>, 360 F.3d 1319, 1327 (Fed. Cir. 2004).

This Court should dismiss plaintiff's action because plaintiff has failed to assert, and

cannot assert, a valid waiver of sovereign immunity.

**B.    Plaintiff's Action Should be Dismissed Because Plaintiff's Claims are Essentially for Money Damages in Excess of this Court's Jurisdiction**

In addition to plaintiff's failure to assert a valid waiver of defendants' sovereign

immunity, this Court does not have subject matter jurisdiction over plaintiff's action because the

Tucker Act, 28 U.S.C. §§ 1491(a)(1) & 1346(a)(2), confers that jurisdiction exclusively on the

United States Court of Federal Claims. "By the Tucker Act, the United States waives its

immunity from non-tort money claims against the sovereign, but by the terms of that waiver,

vests exclusive jurisdiction for claims exceeding $10,000 in the United States Claims Court."

<u>Fairview Township v. U.S. Envtl. Prot. Agency</u>, 773 F.2d 517, 528 (3d Cir. 1985) (internal

citations omitted).[3] To determine its jurisdiction, the Court "must look to the nature of the relief

requested." <u>Hahn v. United States</u>, 757 F.2d 581, 586 (3d Cir. 1985). Thus, a suit is within the

---

[3]The United States Claims Court was renamed the United States Court of Federal Claims on October 29, 1992. <u>See</u> Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 902(a), 106 Stat. 4506 (1992).

exclusive jurisdiction of the Court of Federal Claims if it is: "(1) against the United States; (2) founded upon the Constitution, an act of Congress, regulation, or expressed or implied contract with the United States; and (3) for an amount in excess of $10,000." Carlyle Gardens Co. v. Delaware State Housing Auth., 659 F.Supp. 1300, 1307 (D. Del. 1987).

The first two elements of Tucker Act exclusive jurisdiction are obviously met. Plaintiff's action is against the United States because the Amended Complaint names four present and former civilian and military officials as defendants in their official capacity only. See Am. Compl. at ¶¶ 13-16. "For purposes of the Tucker Act, we treat [plaintiff's] claims against individual federal defendants in their official capacities as alleging claims against the United States." Chabal v. Reagan, et al., 822 F.2d 349, 355-56 (3d Cir. 1987). Likewise, plaintiff's action is unmistakably founded upon the First Amendment to the Constitution. See Am. Compl. at ¶¶ 6, 7, 121, 126.

The third element is also met because plaintiff seeks "a permanent mandatory injunction ordering defendants to reinstate plaintiff to a position equal in pay and stature" to his former enlisted service in the Air Force "with full benefits." See Am. Compl., Prayer for Relief at C. Reinstatement, if granted, would result in monetary damages assessed against the United States in the form of backpay in excess of $10,000. See Defs.' Ex. 4 at ¶ 3 (Edwards Affidavit); see also Military Pay Act, 37 U.S.C. § 204. The Third Circuit has "routinely inquired into the amount of back pay sought as a means of determining the propriety of district court jurisdiction." Chabal, 822 F.2d at 355.

It is of no moment that plaintiff artfully omits from pleading the specific amount of monetary damages that he seeks in his Amended Complaint. See Chabal, 822 F.2d at 356-57.

-14-

Nor can plaintiff disguise his claim for monetary damages as a claim for declaratory or injunctive relief. See, e.g., Hahn, 757 F.2d at 589 ("Claims Court jurisdiction may not be evaded by merely disguising a monetary claim as a claim for an injunction requiring the payment of money."); Fairview Township, 773 F.2d at 528 ("[I]f victory for the plaintiff in the suit would be tantamount to a release of the funds in excess of $10,000, then the Claims Court has exclusive jurisdiction over the suit, even if the action is styled as one for injunctive or declaratory relief."); Jaffee v. U.S., 592 F.2d at 715 ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."). Because this amount exceeds the $10,000 jurisdictional limit set by the Tucker Act, plaintiff's claims for an injunction ordering his reinstatement and the predicate declaratory judgment that defendants' acts were unlawful should be heard, if at all, in the Court of Federal Claims.[4] Nor is the constitutional grounding of plaintiff's action an issue. As the Tucker Act itself makes clear, the Court of Federal Claims may hear cases based on the Constitution. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution, ..."). Similarly, that Court has the power to provide plaintiff with a complete remedy that is essentially identical to the relief he seeks from this Court, to the extent that such relief is appropriate. See 28 U.S.C. § 1491(a)(2)

---

[4] Plaintiff cannot avoid the jurisdiction of the Court of Federal Claims by alleging alternative grants of jurisdiction. "It is uniformly held that, for claims exceeding $10,000, the Tucker Act vests exclusive jurisdiction in the Claims Court, even if such claims could be brought within the terms of some other jurisdictional grant, such as 28 U.S.C. § 1331. This is because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to such claims, and this consent to suit is a jurisdictional prerequisite." Hahn, 757 F.2d at 586 (emphasis in original) (internal citations omitted). Thus, plaintiff's assertion of jurisdiction under 28 U.S.C. § 1331 (federal question), § 1361 (mandamus), and §§ 2201 & 2202 (declaratory judgment) is unavailing.

("[t]he Court may ... issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, ...").  Indeed, that Court has long experience with cases brought by military personnel who allege employment-related injuries based on violation of the First Amendment.  See, e.g., Swaaley v. U.S., 376 F.2d 857 (Ct. Cl., 1967) (resolving First Amendment petition claim in military context).

In addition to reinstatement, plaintiff also seeks certain nonmonetary relief: injunctions requiring the removal of adverse materials from plaintiff's personnel file, the insertion of letters of apologies in their place, and the provision of certain vaccine-related information.  See Am. Compl., Prayer for Relief, at A, D, E, & F.  Courts in this Circuit will only retain jurisdiction over nonmonetary claims "if the declaratory or injunctive relief a claimant seeks has significant prospective effect or considerable value apart from merely determining monetary liability of the government."  Hahn, 757 F.2d at 590; see also Chabal, 822 F.2d at 354.

This additional injunctive relief – to the extent that it is available to plaintiff at all[5] – has no value apart from the determination of monetary liability that plaintiff claims against the government.  If plaintiff is not reinstated to his previous position with full pay and benefits (including the entitlement to backpay in excess of $20,000), the injunctive action plaintiff seeks with regard to his file would have no prospective effect and no actual value.  First, as noted above, there is nothing in plaintiff's file to remove or replace with the extraordinary letters that he demands.  Even were plaintiff to reenlist, there would be no record of the matter that serves as

---

[5]For the reasons stated at I.C. & I.D., infra, plaintiff lacks standing to seek injunctions to remove adverse material his personnel file, which injunctive relief is moot anyway.  As noted at II.D., infra, plaintiff is not entitled to either mandamus relief or the extraordinary disgorgement of information that he seeks concerning the anthrax vaccination program, a remedy utterly unconnected to the injury he alleges.

-16-

the focal point of this lawsuit.  Plaintiff was voluntarily and honorably discharged without any

taint or reference in his record to the matters alleged in plaintiff's Amended Complaint.  Second,

since plaintiff's voluntary discharge makes no mention of, and is completely unrelated to, the

nature of plaintiff's enlisted service, there is no taint on his record to remove.  Thus, plaintiff's

claims should be dismissed because the nonmonetary relief plaintiff seeks is either "moot, futile,

or negligible in comparison with the money damages sought."  Hahn, 757 F.2d at 589.[6]

### C.    Count I Should be Dismissed for Lack of Standing Because Plaintiff's Alleged Injury is not Fairly Traceable to the Challenged Actions of the Defendants

Article III of the United States Constitution limits the jurisdiction of the federal courts to

"cases and controversies."  U.S. Const., Art. III § 2.  To satisfy Article III's standing

requirements, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  Friends of the Earth, Inc.

v. Laidlaw Environmental Services, 528 U.S. 167, 180-81 (2000); Khodara Envtl., Inc. v.

Blakely, 376 F.3d 187, 193 (3d Cir. 2004).  It is within the trial court's power "to require the

plaintiff to supply, by amendment to the complaint or by affidavits, further particularized

---

[6]This Court follows the practice of several Circuits in occasionally granting a plaintiff
leave to amend the complaint in order to add a specific waiver of any monetary damages over
$10,000.  This practice has its roots in the origins of the Little Tucker Act, which was passed to
provide litigants the convenience of a more local forum than Washington D.C. for claims under
the limit for concurrent jurisdiction.  Plaintiff deserves no such largesse.  To the contrary,
plaintiff amended his complaint in order specifically to add a claim for monetary damages.
Therefore, no purpose would be served by further leave to amend the complaint and this Court
should therefore dismiss the action.

allegations of fact deemed supportive of plaintiff's standing.  If, after this opportunity, the

plaintiff's standing does not adequately appear from all materials of record, the complaint must

be dismissed." Warth v. Seldin, 422 U.S. 490, 501-02 (1976); see also Borelli v. City of Reading,

532 F.2d 950, 951 (3d Cir. 1976) ("If the averments are not sufficient, the trial court may require

the plaintiff to supply further particularized allegations of fact by amendment to the complaint or

by affidavits.").

Plaintiff alleges in Count I that there "is a temporal and causal relationship between

plaintiff's aforementioned protected speech, and adverse employment action, including the

eventual constructive discharge." See Am. Compl. at ¶ 121.  Plaintiff's generic reference to "the

adverse employment action" is to the letter of reprimand he received on October 22, 2004.  See

Am. Compl. at ¶¶ 3, 65-80.[7]  Plaintiff's reference to "aforementioned protected speech" is to his

conversation with the flight surgeon on October 21, 2004.  Id. at ¶¶ 47-64.  Plaintiff challenges

the named defendants under a respondeat superior theory of liability, alleging that the Secretary

of Defense and other high-ranking officials knew that SMSgt had retaliated against plaintiff for

---

[7]Although Count I confusingly refers to both "the adverse employment action," and
"adverse employment action, including the eventual constructive discharge," the structure of
plaintiff's Amended Complaint makes clear that Count I is focused on seeking relief for the
allegedly retaliatory letter of reprimand issued to plaintiff on October 22, 2004 and plaintiff's
reassignment to non-flying duties.  See Am. Compl. ¶¶ 3 (describing letter of reprimand as result
of plaintiff's speech), 65-80 (same), 103-105 (referring to letter of reprimand and subsequent
reassignment under the subheading "retaliation against Plaintiff's First Amendment Protected
Speech").  Count II, on the other hand, refers to retaliation alleged to have been the result of
plaintiff's decision to file a lawsuit following the receipt of the letter of reprimand.  See Am.
Compl. at ¶¶ 5 (alleging retaliation following filing of lawsuit), 91-102 (referring to various
alleged retaliation following filing of lawsuit), 106-108 (alleging causal link between retaliation
and plaintiff's lawsuit).

speaking to his doctor about the anthrax vaccination program and, at a minimum, acquiesced to it. <u>See</u> Am. Compl. at ¶¶ 82, 84-86.

Plaintiff's alleged injury – retaliatory discipline – is only fairly traceable to defendants' challenged inaction if plaintiff's administrative LOR was in fact retaliatory. In other words, plaintiff could not have been disciplined for his speech if SMSgt Mahoney had no knowledge of it. Plaintiff artfully avoids <u>any</u> allegation in the Amended Complaint of such timely knowledge by anyone, let alone SMSgt Mahoney. Plaintiff does not allege that he told anyone what he said to the flight surgeon before he was reprimanded. Plaintiff also does not allege that the flight surgeon told anyone what he heard in time for it to be the basis of retaliatory discipline. Nor does plaintiff allege that he raised the issue of retaliation with any of the defendants or their agents. Plaintiff's written response to the letter of reprimand makes no mention of retaliation. <u>See</u> Defs.' Ex. 7. Plaintiff also did not make any reference to retaliation in his concurrent complaint to the Inspector General. <u>See</u> Defs.' Ex. 6-B. Indeed, none of these materials make any reference either to plaintiff's alleged protected speech, anyone's knowledge of it, or allege that the LOR was retaliatory.

In fact, SMSgt Mahoney did not know the content of plaintiff's allegedly protected speech when he reprimanded plaintiff. <u>See</u> Defs.' Ex. 1 at ¶¶ 5-6 (Affidavit of SMSgt Mahoney). Nor was TSgt Miller, the only person alleged to have spoken with plaintiff on October 21, 2004, other than the flight surgeon, aware of the content of plaintiff's conversation with the flight surgeon. <u>See</u> Defs.' Ex. 2 at ¶ 5 (Affidavit of TSgt Miller). Likewise, prior to the issuance of the LOR to SSgt Adkins by SMSgt Mahoney, the flight surgeon neither informed anyone nor was

asked by anyone about the content or subject matter of his conversation with plaintiff.  See Defs.' Ex. 3 at ¶ 3 (Affidavit of Capt Bernardin).

Because plaintiff's LOR was wholly unrelated to speech no one in plaintiff's direct chain of command knew about at the time, plaintiff's injury is not fairly traceable to the challenged actions of the defendants.  Defendants could not have "ratified, sanctioned, authorized, approved or participated" (see Am. Compl. at ¶¶ 13-16) in retaliation if SMSgt Mahoney reprimanded plaintiff without any knowledge of his speech.  Plaintiff lacks standing to seek relief from this Court for an injury that is not fairly traceable to the challenged actions of defendants.  Therefore, this Court should dismiss Count I of plaintiff's Amended Complaint for lack of subject matter jurisdiction.

**D.     Count I Should be Dismissed as Moot**

An action becomes moot when "(1) there is no reasonable expectation that the alleged events will recur ... and (2) interim relief or events have completely eradicated the effects of the violation."  Zellous v. Broadhead Associates, 906 F.2d 94, 100 (3d Cir. 1990).  Count I of plaintiff's Amended Complaint should be dismissed as moot because the appropriate relief that plaintiff seeks for the injury alleged, a "reparative injunction directing defendants to remove any and all adverse materials from plaintiff's personnel file, including the LOR." see Prayer for Relief at E, is unnecessary.

There is no letter of reprimand in plaintiff's official personnel files.  See Defs.' Ex. 1 at ¶ 9 (Mahoney Affidavit); Defs.' Ex. 6-A (Letter from the Inspector General to plaintiff dated November 10, 2004, informing plaintiff that the letter of reprimand "was not part of your official personnel file.").  Nor could the letter of reprimand at issue in this case, or one like it, ever be

-20-

placed in plaintiff's official personnel files because the "desk drawer" letter of reprimand issued

in this matter has been determined "not to exist" as a tool of discipline. See Defs.' Ex. 6-B

(Inspector General's Complaint Analysis). Furthermore, neither the LOR nor the underlying

conduct giving rise to the LOR is mentioned in the plaintiff's subsequent Enlisted Performance

Report. See Defs.' Ex. 5-A (Enlisted Peformance Report for period February 20, 2004 through

February 19, 2005).

Similarly, because plaintiff is permanently medically disqualified from flying, see Defs.'

Ex. 5-C (Terminate Aviation Service Order), there can be no reasonable expectation that plaintiff

will be subject to discipline for jeopardizing the readiness of a flight because, even were he to

reenlist or otherwise be reinstated in the Air Force, he is not permitted to fly.

## II.    THE ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RETALIATION

### A.    The Action Should be Dismissed Because Plaintiff Fails to Allege that Defendants Maintained Direct Supervisory Authority Over Plaintiff

Plaintiff's cause of action is based on a respondeat superior theory. "A defendant in a

civil rights action must have personal involvement in the alleged wrongs; liability cannot be

predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195,

1207 (3d Cir. 1988). To establish the necessary personal involvement, plaintiff must make

allegations of "personal direction or of actual knowledge and acquiescence." Id. Such

allegations, however, "must be made with appropriate particularity." Id. The Third Circuit set

the standard for this particularity in Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir.

1997):

> Where a supervisor with authority over a subordinate knows that the subordinate
> is violating someone's rights but fails to act to stop the subordinate from doing so,
> the factfinder may usually infer that the supervisor "acquiesced" in (i.e., tacitly
> assented to or accepted) the subordinate's conduct. But where actual supervisory
> authority is lacking, mere inaction, in most circumstances, does not reasonably
> give rise to a similar inference. As a general matter, a person who fails to act to
> correct the conduct of someone over whom he or she has no supervisory authority
> cannot fairly be said to have "acquiesced" in the latter's conduct.

Id. The Third Circuit held that, except in unusual circumstances, "a government official or

employee who lacks supervisory authority over the person who commits a constitutional tort

cannot be held, based on mere inaction, to have 'acquiesced' in the unconstitutional conduct."

Id. In Robinson, therefore, a defendant senior to plaintiff in the office chain of command, but

who "had no direct supervisory authority" over plaintiff, id. at 1291, could not be held liable for

retaliation alleged against plaintiff's immediate supervisor. Id. at 1295.

As to Count I, plaintiff alleges that because the defendants, high-ranking civilian and

military officials, did not intervene to stop the discipline imposed on plaintiff, they "ratified,

sanctioned, authorized, approved or participated" in the actions challenged in this case. See Am.

Compl. at ¶¶ 13-16. Likewise, for Count II, plaintiff alleges only that defendants "are aware of

plaintiff's lawsuit." See Am. Compl. at ¶ 88. Aside from these conclusory allegations, plaintiff

makes no specific allegation against any of the defendants relating to their direct involvement in

plaintiff's LOR or subsequent alleged retaliatory harassment. Nor does plaintiff make any

specific allegation that SMSgt Mahoney, or the unnamed supervisors whom plaintiff alleges to

have subjected him to a hostile work environment, were individuals over whom the defendants

exercised direct supervisory authority.

-22-

Quite to the contrary, although the Secretary of Defense, Secretary of the Air Force, Commander of the Air Mobility Command, and the Commander of the 436th Airlift Wing all clearly outrank plaintiff, none of these defendants exercises direct supervisory authority over plaintiff. Within plaintiff's squadron, there are several levels of supervisory authority between plaintiff and the squadron commander, Lt Col Vasilas, including: the Chief Flight Engineer (Senior Master Sergeant Mahoney), and plaintiff's immediate supervisors, such as mission schedulers like TSgt Miller, and performance evaluators. See Am. Compl. at ¶ 56; see also Defs.' Ex. 5-B (Plaintiff's Enlisted Performance Report showing two levels of supervisory authority between plaintiff and the Squadron Commander). Between plaintiff and the Commander of the 436th Airlift Wing (the closest named defendant to plaintiff for purposes of plaintiff's respondeat superior theory), there are yet more intermediary levels of command authority: the Operations Group Commander and the Commander of the Third Airlift Squadron (Lt Col Vasilas). See Am. Compl. at ¶66; http://public.dover.amc.af.mil/org/index.html (outlining command authority structure of the 436th Air Wing). The 436th Airlift Wing has over 4,000 active-duty military and civilian employees. Id. That wing is only one of twelve active duty wings that comprise the 18th Air Force, which is under the command authority of the next closest named defendant to plaintiff, General John Handy, the Commander of the Air Mobility Command at Scott Air Force Base, who is located in Illinois. See Defs.' Ex. 9 (United States Air Force Almanac, as reprinted in AIR FORCE MAGAZINE 94-95 (May 2004)); see also http://public.amc.af.mil/ (describing composition of the Air Mobility Command). That command is comprised of over 53,000 active duty personnel, over 86,000 reserve personnel, and over 8,000 civilians. Id. In addition to command authority over the twelve active duty wings of

-23-

the 18th Air Force, General Handy is responsible for the operation of Scott AFB, Illinois; two expeditionary mobility task forces located at Travis AFB in California, and at McGuire AFB in New Jersey. Id. Needless to say, the Secretary of the Air Force and the Secretary of Defense, both in Washington D.C., are still further removed from plaintiff both physically and in terms of direct supervisory authority.

As a matter of law, defendants cannot be liable to plaintiff for retaliation under a respondeat superior theory. Therefore, plaintiff's action should be dismissed.

### B.    Count I Should be Dismissed for Failure to Plead an Essential Element of Plaintiff's Cause of Action

To state a claim alleging retaliation for engaging in speech protected by the First Amendment plaintiff must allege: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004). In his Amended Complaint, plaintiff persists in failing to plead the second element of causation. Although plaintiff alleges that defendants were made aware of plaintiff's LOR after it had been meted out to him, plaintiff nowhere pleads that any of the defendants or their relevant agents had any knowledge of plaintiff's closed-door examination-room conversation with the flight surgeon. This glaring omission is fatal to plaintiff's claim. See, e.g., Ambrose v. Township of Robinson, Pa., 303 F.3d 488, 493 (3d Cir. 2002) (holding that where defendants were unaware of plaintiff's asserted protected conduct, First Amendment retaliation claim "would necessarily fail.").

-24-

Plaintiff does not allege that SMSgt Mahoney knew what plaintiff asked the flight surgeon when he reprimanded plaintiff.[8]  And SMSgt Mahoney had no such knowledge.  See Defs.' Ex. 1 at ¶¶ 5-6 (Affidavit of SMSgt Mahoney).  Plaintiff also does not allege that TSgt Miller knew what plaintiff asked the flight surgeon – let alone conveyed the same to SMSgt Mahoney or to anyone else – before plaintiff was disciplined.  And TSgt Miller had no such knowledge either.  See Defs.' Ex. 2 at ¶ 5 (Affidavit of TSgt Miller).  Nor could they have known, since neither plaintiff nor the flight surgeon told anyone about their conversation prior to plaintiff's discipline.  See Defs.' Ex. 3 at ¶ 3 (Affidavit of Capt Bernardin).  None of the inferences on which plaintiff depends can defeat the sworn statements of all relevant individuals that they had no knowledge of plaintiff's private conversation at the time of plaintiff's discipline or, in the case of the flight surgeon, told no one about it before plaintiff was disciplined.

---

[8]Even under plaintiff's respondeat superior theory, SMSgt Mahoney's knowledge is crucial to this claim.  Even accepting plaintiff's allegations that the defendants were "aware of plaintiff's protected speech," see Am. Compl. at ¶¶13-16, there could still be no retaliation if the disciplining official, SMSgt Mahoney, lacked such knowledge.  Plaintiff's allegations that defendants knew about "the retaliation," see Pl.'s Am. Compl. at ¶¶ 82, 84-86, necessarily fails to state a claim if the disciplining official was ignorant of plaintiff's speech at the time the letter of reprimand was issued.  In such a case, by definition, there could be no retaliation for protected speech.  In any event, plaintiff nowhere alleges that defendants possessed such knowledge prior to plaintiff's discipline.  This Court has already acknowledged that an allegation of knowledge without any indication whether the defendants had such knowledge at the relevant time is insufficient to state a claim.  In Bowers v. Mounet, Civ. No. 99-533-JJF, 2001 WL 826556, at *4-5 (D. Del. July 18, 2001) (Farnan, J.), this Court dismissed a pro se prisoner's civil rights claim of inadequate medical care against the warden and deputy warden of a Delaware correctional facility because of plaintiff's failure to make more than conclusory allegations against these defendants.  Plaintiff alleged that the warden ignored a letter informing him of inadequate care.  This Court noted that this and other allegations "do not sufficiently establish that Defendant Williams knew of Plaintiff's injury or of Plaintiff's inability to obtain medical care before" the crucial date in that case.  Id. at *4.  Plaintiff's allegations were therefore insufficient to maintain an action on the theory of respondeat superior.

Thus, even if the facts as alleged in the Amended Complaint are accepted as true for the purpose of this motion under Fed. R. Civ. P. 12(b)(6), plaintiff has only alleged that long after the LOR was served, defendants received unspecified second-hand information from "the media by e-mail and telephone calls." See Am. Compl. at ¶¶ 82, 84-85.[9] But plaintiff's own official communications made no such claim. See Defs.' Ex. 6-B (Complaint Analysis of Inspector General); Defs.' Ex. 7 (Pl.'s Response to Letter of Reprimand). And plaintiff avoided more appropriate avenues available to him for administrative relief, such as the Air Force Inspector General's Office, a Complaint of Wrong under 10 U.S.C. § 938 (Uniform Code of Military Justice, Article 138), the Air Force Board for the Correction of Military Records, or the Military Whistleblowers Protection Act.

These allegations are insufficient to support plaintiff's respondeat superior theory of liability, as amply demonstrated by Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988). The plaintiff in that case, a civilian employee of the Pennsylvania State Police, named the Governor of Pennsylvania, among others, as defendants in an action that alleged workplace retaliation in violation of her First Amendment Rights. On a respondeat superior theory similar to that asserted in the present action, Rode alleged that the Governor had personal knowledge of the retaliatory harassment at issue in the case because of numerous statewide newspaper articles, through the introduction of a legislative resolution concerning retaliation against employees in Rode's workplace, the filing of grievances with the Governor's office of administration, telephone calls and correspondence with the office of the Lieutenant Governor and plaintiff's

_____

[9]As to defendant Rumsfeld, plaintiff cannot even make that allegation, relying solely on "information and belief" that "the retaliation was brought to the attention of defendant Rumsfeld" by unstated means and/or person(s). See Am. Compl. at ¶ 86.

own personally filed grievances. Id. at 1208.  The Court had little trouble rejecting the

sufficiency of such claims to support Rode's theory:

> These allegations are simply insufficient to show that Governor Thornburgh had
> actual knowledge of Rode's alleged harassment.  In a large state employing many
> thousands of employees, a contrary holding would subject the Governor to
> potential liability in any case in which an aggrieved employee merely transmitted
> a complaint to the Governor's office of administration or to the Lieutenant
> Governor's office.

Id.

Only four days prior to this Court's September 16th memorandum opinion in this action,

the Third Circuit Court of Appeals held in Evancho v. Fisher, 423 F.3d 347, 348 (3d Cir. 2005),

that the plaintiff, who alleged retaliation for protected whistleblowing activities, had "failed to

adequately plead under the liberal notice requirements of Rule 8(a) of [sic] Federal Rules of Civil

Procedure" that the defendant Attorney General of the Commonwealth of Pennsylvania was

personally involved in the allegedly retaliatory transfer decision.  Because that case so clearly

establishes the failure of plaintiff in the present action to state a claim, and was not brought to the

Court's attention prior to the issuance of this Court's prior opinion, it is worth close examination.

Evancho was an experienced supervisor in the Commonwealth's Bureau of Narcotics

Investigation and Drug Control who alleged that in retaliation for speaking out on a matter of

public concern she was transferred to a lesser position and given lower performance evaluations.

In her amended complaint, Evancho alleged that her transfer "was carried out by underlings

reporting directly to the attorney general and/or by the attorney general himself for the explicit

purpose of either setting [plaintiff] up for dismissal or, if that were not successful, making her

work life so miserable as to force her resignation." Evancho, 423 F.3d at 350.  The Court held

that this allegation "utterly fails to meet the liberal notice pleading standard of Rule 8(a)." Id. at

353. Of particular relevance to the present case, the Court held that:

> Evancho's amended complaint merely hypothesizes that Attorney General Fisher
> may have been somehow involved simply because of his position as the head of
> the Office of the Attorney General. This conclusion, however, is not a reasonable
> inference to be drawn from the facts alleged in Evancho's complaint. The record
> shows that Evancho had at least three levels of supervision within the Bureau. . . .
> Given this hierarchy, the decision to transfer Evancho presumably was made by
> mid-level management officials within the Bureau itself. It is unlikely that her
> transfer even involved persons at the level of the Criminal Investigations Unit,
> one step above the Bureau, let alone an "underling" of the Attorney General or the
> Attorney General Fisher personally. . . . Evancho's allegation that Attorney
> General Fisher himself and/or his "underlings" carried out her transfer is simply a
> "bald assertion," which a court is not required to credit in deciding a motion to
> dismiss.

Id. at 354.

Similarly, courts in this circuit have dismissed other civil actions involving far more

direct contact than that between plaintiff, an enlisted flight engineer at DAFB, and the Secretary

of Defense, the Secretary of the Air Force (both in Washington D.C.), a four-star general in

Illinois and the Commander of the 4000-person strong Dover Air Force Base. See, e.g., Brookins

v. Williams, Civ. No. 04-1250-SLR, 2005 WL 3263101, at *2 (D. Del. Nov. 30, 2005) (citing

Rode to deny former inmate's Eighth Amendment claim against warden of prison on respondeat

superior theory of liability because "plaintiff has failed to allege anything but the mere

supervisory function of defendant, which is not enough to make a claim under respondeat

superior."); Brown v. George, Civ. No. 02-1686-KAJ, 2005 WL 2271922, at *4-5 (D. Del. Sept.

19, 2005) (same, even where defendant warden had previously suspended a co-defendant

corrections officer for excessive force similar to that alleged by plaintiff); Williams v. Snyder,

Civ. No. 01-632-JJF, 2002 WL 32332192, at *2 (D. Del. Sept. 30, 2002) (Farnan, J.) (citing

-28-

Rode, to dismiss defendant wardens from prisoner-plaintiff's action because complaint failed to claim that defendants "were affirmatively involved in the alleged wrongs" but only claimed acquiescence).

The plaintiff in the present action has done far less than the Rode plaintiff to allege actual knowledge or acquiescence on the part of defendants, who were or are responsible for far more military personnel than even the thousands of employees of the Commonwealth of Pennsylvania. Rather, like the Evancho plaintiff, plaintiff in the present action has persisted in his Amended Complaint to rely on bare legal conclusions and bald inferences based on facts he deliberately chooses not to allege. "[A] court is not required to assume that a plaintiff can prove facts not alleged." Evancho, 423 F.3d at 354. This Court should dismiss Count I of plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted because it is based on allegations that amount "to nothing more than conclusory, boilerplate language."[10] Id.

### C.    Count II Should be Dismissed for Failure to Allege Adverse Actions Sufficient to Rise to the Level of Retaliatory Harassment

Plaintiff's claim of retaliation for exercising his First Amendment right to petition the government for a redress of grievances must satisfy the same elements, stated above, as for his

---

[10]Although cognizant of this Court's analysis of the content, form, and context of plaintiff's speech, defendants maintain that as a matter of law plaintiff's speech did not involve a matter of public concern and therefore plaintiff also has failed to state a claim upon which relief may be granted because he has failed to show that he engaged in a constitutionally-protected activity. See Eichenlaub, 385 F.3d at 282; Baldassare v. State of New Jersey, 250 F.3d 188, 195 (3d Cir. 2001). Plaintiff's allegations can only be understood to show that plaintiff asked his doctor a personal medical question based on concern for his own symptoms and did so in the private confines of a closed-door medical examination. Plaintiff does not allege to have made any substantive comment, criticism, opinion or even allusion to the Air Force's anthrax inoculation program, but rather asked his doctor whether his headaches and prior inoculations were causally connected.

claim of retaliation for protected speech: (1) that he engaged in protected activity; (2) that defendants responded with retaliation; and (3) that his protected activity was the cause of the defendants' retaliation. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

### 1. Count II Should be Dismissed Because Plaintiff's Frivolous Lawsuit was not a Protected Activity under the First Amendment

The interests protected by the First Amendment right to petition for a redress of grievances are not advanced "when the litigation is based on intentional falsehoods or on knowingly frivolous claims," and therefore such lawsuits do not come under First Amendment protection. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743 (1983); see also Brennan v. Norton, 350 F.3d 399, 417 (3d Cir. 2003); San Filippo v. Bongiovanni, 30 F.3d 424, 437 (3d Cir. 1994).

Plaintiff insists that, having prevailed over defendants' previous motion to dismiss, his lawsuit "cannot be construed as frivolous." See Am. Compl. at ¶ 125. Plaintiff is wrong. The proper standard is the "genuine issue" test used for adjudging motions for summary judgment. Bill Johnson's, 461 U.S. at 745, n.11. Thus, if plaintiff's position is "plainly foreclosed as a matter of law or is otherwise frivolous" the filing of the suit is not a protected activity. Id. at 747.

As noted above, plaintiff omitted from his initial Complaint, and persists in omitting from his Amended Complaint, the single fact upon which his claim of retaliation for protected speech relies: whether the disciplining official – SMSgt Mahoney – knew the content of his protected speech at the time he issued plaintiff a letter of reprimand. If Mahoney lacked knowledge, as a matter of law, he could not have retaliated against plaintiff.

-30-

In addition, plaintiff's original suit sought only declaratory and injunctive relief designed to remove any trace of the letter of reprimand from his official personnel files. At the time plaintiff filed suit, however, plaintiff knew that there was no letter of reprimand in his official personnel files to remove. See Defs.' Ex. 6-A (Inspector General's letter to plaintiff dated November 10, 2004, informing plaintiff that the letter of reprimand "was not part of your official personnel file."). Thus, plaintiff knowingly filed suit on a frivolous claim for unnecessary relief from an injury that did not exist.

Because plaintiff knowingly filed a frivolous complaint, he is not entitled to First Amendment protection for it. Count II should be dismissed.

### 2. Count II Should be Dismissed for Failure to Allege Actions Sufficient to Rise to the Level of Retaliation

In the Third Circuit, "[d]etermining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Brennan, 350 F.3d at 419 (citing Suarez Corp. Industries v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." McKee v. Hart, — F.3d — , 2006 WL 27474, at *4 (3d Cir. 2006) (citing Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir.2000)). However, such conduct "must be more than de minimis or trivial." Id. "[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged

-31-

retaliatory acts were criticism, false accusations, or verbal reprimands." McKee, 2006 WL

27474, at *4 (quoting Brennan, 350 F.3d at 419).

Plaintiff alleges in Count II that he suffered various adverse employment actions in

retaliation for exercising his right to file a civil suit for redress of his grievances, in violation of

the First Amendment. Specifically, plaintiff alleges that upon returning to work multiple copies

of the News Journal article featuring his lawsuit on the front page "were placed on his desk and

posted on billboards in public locations throughout the base, including the mission control desk,"

see Am. Compl. at ¶ 92; that "plaintiff noted that his co-workers were treating him differently

than before he filed suit, see Am. Compl. at ¶ 93; that he "was subjected to more intense scrutiny

of his work" and not permitted to work independently, see Am. Compl. at ¶ 94; that his

supervisors "punished him and treated him in a manner consistent with how personnel who are

under investigation for criminal violations were treated," in particular by assigning plaintiff to the

night shift at mission control, see Am. Compl. at ¶¶ 95-96; that he was subsequently reassigned

"to work in a back office by himself," see Am. Compl. at ¶ 97; that his supervisors ordered

plaintiff to cease wearing his flight suit, see Am. Compl. at ¶¶ 98, 100; that his supervisors

threatened plaintiff with loss of his aircrew badge, see Am. Compl. at ¶ 99; and that he received

lower scores on performance evaluations, see Am. Compl. at ¶ 101. Finally, plaintiff alleges that

the cumulation of these actions resulted in his constructive discharge. See Am. Compl. at ¶ 102.

These allegations are insufficient as a matter of law to support plaintiff's claim of

retaliatory harassment. First, plaintiff's complaints that newspaper articles about his lawsuit

appeared in various locations at DAFB and that he was treated differently by his co-workers after

he filed his lawsuit, see Am. Compl. at ¶¶ 92-93, describe precisely the sort of de minimis

-32-

conduct that this Court has refused to rise to the level of a constitutional violation. See, e.g., Scalisi v. Limerick Township, Civ. No. 05-CV-3413, 2005 WL 3032507, (E.D. Pa. Nov. 10, 2005) (holding that alleged retaliation in the form of publication of a suggestive message in a newspaper, placement of condoms, note and bumper sticker on plaintiff's truck and posting of photograph at public place of employment "are little more than trivial annoyances not severe enough to cause reasonably hardy individuals to refrain from" engaging in First Amendment rights). Criticism, false accusations, and verbal reprimands from employers, let alone from non-supervisory co-workers, are insufficient to deter a person of ordinary firmness from exercising his First Amendment rights. See, e.g., Brennan, 350 F.3d at 419. Plaintiff cannot assert a constitutional violation on the grounds that his co-workers did not like him.

Plaintiff's complaints about his work assignments on the night shift at mission control (see Am. Compl. at ¶¶ 95-96) and in a back office by himself (see Am. Compl. at ¶ 97) also are not sufficient to assert a claim for retaliatory harassment. Plaintiff's allegations are trivial as well as inconsistent: plaintiff characterizes assignments at mission control as retaliatory because they place him "on public display," see Am. Compl. at ¶ 74, but also characterizes assignments in a separate office as retaliatory because plaintiff is then "isolated" from his co-workers, see Am. Compl. at ¶ 97. Similarly, plaintiff's complaint that his work was subject to "more scrutiny" also does not come close to the level of harassment necessary to deter a person of ordinary firmness.

Likewise, plaintiff's allegations concerning his continued authorization to wear a flightsuit and a suggestion, which plaintiff characterizes as a "threat," that he might have to remove his aircrew badge, see Am. Compl. at ¶¶ 98-100, can hardly be said to rise to the standard set by this Circuit. Rather, they are simply the service dress equivalent of the sort of

-33-

"criticism, false accusations, or verbal reprimands" that this circuit has held does not constitute retaliatory harassment. McKee, 2006 WL 27474, at *4.

And plaintiff's allegation concerning lower scores on his performance evaluations is also insufficient to constitute actionable retaliatory harassment because plaintiff's claims are simply false: plaintiff received higher overall performance ratings after he filed his lawsuit than in the previous reporting cycle. See Defs.' Ex. 5-B. In any event, neither defendants nor any other individual named plaintiff's Amended Complaint were responsible for rating plaintiff.

Finally, it cannot be held under the law of this Circuit that these de minimis irritants to plaintiff are somehow sufficient when taken collectively to deter a person of ordinary firmness from exercising his First Amendment rights. "[N]ot everything that makes an employee unhappy qualifies as retaliation, for otherwise minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Robinson, 1286 at 1300. Count II should be dismissed.

### D.    Plaintiff Fails to State a Claim for Relief in the Form of Blanket Release of Information or Letters of Apology

Plaintiff seeks relief in the form of a permanent mandatory injunction that would require defendants to provide plaintiff with "all information defendants hold regarding the health-related effects of the squalene-tainted anthrax vaccine." See Am. Compl., Prayer for Relief at D. Such an extraordinary remedy is simply not appropriate relief for either of plaintiff's two claims of First Amendment retaliation. First, neither claim alleges facts that could possibly require the disgorgement of "all information" to remedy either the alleged injuries of retaliatory discipline, retaliatory harassment leading to constructive discharge, or a "chilling effect" on plaintiff's

exercise of his First Amendment rights. Indeed, at most, the subject of the anthrax vaccine is only tangentially related to the claims raised in this suit.

Second, plaintiff makes no showing that such information as he is entitled to receive has been withheld from him as part of the alleged retaliation he asks this Court to remedy. After an exhaustive review of historical debates and Supreme Court precedent, the Third Circuit has conclusively held that there is no cause of action under the First Amendment to demand information from the government. See Capital Cities Media, Inc. v. Chester, 797 F.2d 1164, (3d Cir. 1986) ("[I]t requires some straining of the text to construe the Amendment's explicit preclusion of government interference as conferring upon each citizen a presumptive right of access to any government-held information which may interest him or her. While one disposed to stretch the language to reach this case may do so, it nevertheless requires a level of abstraction that we are unwilling to ascribe to the framers of the First Amendment. It simply does not seem reasonable to suppose that the free speech clause would speak, as it does, solely to government interference if the drafters had thereby intended to create a right to know and a concomitant governmental duty to disclose."); see also Houchins v. KQED, Inc., 438 U.S. 1, 9 (1978) ("This Court has never intimated a First Amendment guarantee of a right of access to all sources of information within government control. Nor does the rationale of the decisions upon which respondents rely lead to the implication of such a right.") (plurality opinion by Burger, C.J.).

Plaintiff's right to seek information from an executive branch agency is statutory, not constitutional, and is found in the Freedom of Information Act. See 5 U.S.C. § 552. Plaintiff may not circumvent the requirements and limitations placed on the exercise of that statutory right via litigation. An agency's duty to make records available "is not absolute" but "condition[ed] . .

-35-

. upon receipt of a request that is made in accordance with published rules stating the time, place, fees, and procedures to be followed and that reasonably describes the records sought." See McDonnell v. U.S., 4 F.3d 1227, 1236 (3d Cir. 1993); see also 5 U.S.C. § 552(a)(3)(A).  A person who does not comply with these statutory requirements, "regardless of his or her personal interest in disclosure of the requested documents, has no right to receive either the documents, or notice of an agency decision to withhold the documents." McDonnell, 4 F.3d at 1237.

Plaintiff also seeks relief in the form of a "reparative injunction" that would require defendants to place signed letters of apology in plaintiff's official personnel file.  See Am. Compl., Prayer for Relief at F.  Plaintiff states no legal basis for entitlement to such relief.  To the extent that plaintiff appears to rely on his citation to 28 U.S.C. § 1361, that statute provides no basis as well.  Such a request for mandamus relief should be denied because plaintiff cannot meet the high standard required for the grant of such extraordinary relief.  "Mandamus will issue to compel a government agency's performance of a ministerial act when the plaintiff has a clear legal right to the remedy, the defendant has a duty, and there is no other equitable or appropriate remedy." Eichenlaub, 385 F.3d at 287; Fairview Township, 773 F.2d at 528.  First, defendants do not have a ministerial duty to plaintiff to write letters of apology.  Second, plaintiff does not have a clear legal right to a letter or apology.  Third, as explained above, plaintiff failed to pursue an equitable and appropriate remedy either before the Air Force Board for the Correction of Military Records or by submitting a complete complaint to the Air Force Inspector General.  Plaintiff also has an appropriate remedy under the Tucker Act in the Court of Federal Claims.

Plaintiff should be denied this extraordinary relief.

### III. THE ACTION SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THE MILITARY WHISTLEBLOWER PROTECTION ACT

This Court should dismiss plaintiff's action because plaintiff has not bothered to pursue, let alone exhaust, an administrative remedy specifically designed to protect him from the retaliatory acts alleged in his complaint. The Military Whistleblower Protection Act, 10 U.S.C. § 1034 (hereafter "MWPA" or "the Act"), would prohibit reprisal against plaintiff for his communication to the flight surgeon if that communication was about what he reasonably believed to constitute evidence of a substantial and specific danger to public health or safety. See 10 U.S.C. § 1034(b)(1)(B)(iv) & (c)(2)(B).

The MWPA is a comprehensive statute that could afford plaintiff a complete appropriate remedy. If the Inspector General[11] determines that an allegation of such reprisal warrants investigation, he is required to expeditiously investigate the allegation and submit a report to the Secretary of Defense and to the complainant. See 10 U.S.C. § 1034(c)(3)(D) & (e)(1).[12] Under the Act, plaintiff may submit the Inspector General's report to the Air Force Board for the Correction of Military Records (hereafter "the Board"), which must review the report and may request further evidence from the Inspector General and conduct an evidentiary hearing. See 10 U.S.C. § 1034(f)(1) & (2). Upon a finding by the Board, the Secretary of the Air Force is required to order such action, including the correction of any military record, the order of

---

[11]The investigation of an allegation must be conducted by someone outside the immediate chain of command of both the individual submitting the allegation and the individual or individuals alleged to have taken the retaliatory action. See 10 U.S.C. § 1034(c)(5).

[12]The report must provide for the maximum disclosure of information possible. Summaries of interviews conducted and copies of documents acquired during the course of the investigation must be transmitted to the member upon his request. See 10 U.S.C. § 1034(e)(2).

-37-

payments or benefits, or change to a discharge order, that is necessary to correct the record of the prohibited retaliatory personnel actions.  See 10 U.S.C. §§ 1034(f)(5), 1552(a)(1) & (c), and 1553(b).

Not only is this avenue available to plaintiff, but the Inspector General at Dover Air Force Base gave plaintiff an explicit written invitation to avail himself of it.  See Defs.' Ex. 6-A. Plaintiff chose to ignore this invitation.  Instead, plaintiff filed suit seeking review of core personnel decisions of the Air Force, and alleging that his discipline, duty assignments, choice of uniform, and records in his official personnel file were the unlawful effect of retaliation and retaliatory harassment.  See Am. Compl. at 68, 95-98.  Plaintiff also alleges that the Air Force did not comply with its protocols, discipline systems, policies, or procedures and contests the Air Force's conclusion that he violated standing orders and put a high-priority mission in jeopardy by his dilatory actions.  Id. at ¶ 68, 72, 77, 103(c), and Pl.'s Ex. A.  Plaintiff seeks relief in the form of permanent injunctions directing the Air Force to reinstate plaintiff, alter its records, and monitor plaintiff's duty assignments and military dress against "any further discrimination or retaliation."  Id., Prayer for Relief at C.

The MWPA was enacted and the Board was established precisely to avoid such involvement of the courts in the minutiae of military discipline and order.  This Court should exercise its discretion to dismiss this action for plaintiff's failure to exhaust the remedy that Congress created for him.  The Third Circuit favors exhaustion of administrative remedies in matters concerning the discipline of military personnel.  See, e.g., Taylor v. U.S., 711 F.2d 1199, 1206 (3d Cir. 1983) ("Within the context of military regulation, the exhaustion requirement ensures that the military, a highly specialized society with goals separate from those of the

-38-

general community, will be able to perform those tasks--such as developing a factual record and applying its expertise--for which it is uniquely qualified."); Jorden v. Nat'l Guard Bureau, 799 F.2d 99, 102 n.5 (3d Cir. 1986) ("exhaustion depends on the potential adequacy of that remedy in the particular case."); Nelson v. Miller, 373 F.2d 474, 479-80 (3d Cir. 1967).

The issues of military discipline in this case are peculiarly ill-suited for judicial determination: "cases involving conduct to the prejudice of good order and military discipline, as opposed to conduct unbecoming an officer, are still further beyond the bounds of ordinary judicial judgment, for they are not measurable by our innate sense of right and wrong, of honor and dishonor, but must be gauged by an actual knowledge and experience of military life, its usages and duties." Parker v. Levy, 417 U.S. 733, 748-49 (1974) (internal quotations and citation omitted); see also Rostker v. Goldberg, 453 U.S. 57, 65-66 (1981) ("[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches."); Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953). "Congress has determined that the administrative procedures provided are adequate to address complaints, even complaints of constitutional violations, such that the involvement of the judiciary in overseeing or second guessing the conduct of the military is meddlesome, not productive. Congress, in establishing specific laws to provide for a ready measure of review where appropriate-such as the APA, Tucker Act, Whistleblower Statute-has indicated the limited role the courts are to play in resolving disputes arising in a military context." Alasevich v.

United States Air Force Reserve, Civ. No. 95-CV-2572, 1997 WL 152816, at *4 (E.D. Pa. Mar.

26, 1997) (internal citation omitted).

## CONCLUSION

For the reasons set forth above, the Court should dismiss the complaint for lack of subject

matter jurisdiction and for failure to state a claim upon which relief can be granted.


Dated:  January 18, 2006                    Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

Of Counsel:

LT COL DONNA MARIE VERCHIO                  COLM F. CONNOLLY
Staff Judge Advocate                        United States Attorney
Dover Air Force Base
MAJ CHARLES D. MUSSELMAN, JR.               RUDOLPH CONTRERAS
Military Personnel Branch                   Assistant United States Attorney
General Litigation Division                 Chief, Civil Division
Air Force Legal Services Agency

                                            VINCENT M. GARVEY
                                            Deputy Branch Director



                                            JEFFREY D. KAHN (MI Bar # P65270)
                                            Trial Attorney, Federal Programs Branch
                                            Civil Division, U.S. Department of Justice
                                            P.O. Box 883, 20 Massachusetts Ave., N.W.
                                            Washington, D.C. 20044
                                            Tel:  (202) 514-3716
                                            Fax: (202) 616-8470
                                            jeffrey.kahn@usdoj.gov

                                            *Attorneys for Defendants*


-40-

## CERTIFICATE OF SERVICE

I certify that on January 18, 2006, I electronically filed the foregoing Defendants' Notice of Motion to Dismiss with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger
Email: tsn@neubergerlaw.com

Stephen J. Neuberger
Email: SJN@NeubergerLaw.com

I further certify that on January 18, 2006, I have mailed via Federal Express true and accurate copies of the documents marked as Exhibits 5-A, 5-B, 5-C and 6-B, in lieu of each of which a single page noting just the words "Sealed Document" has been filed with the Clerk of Court using CM/ECF pending the determination of Defendants' Motion for a Privacy Act Protective Order and for Permission to File Four Exhibits In Support of Defendants' Motion to Dismiss Under Seal, to the following:

Thomas S. Neuberger
Stephen J. Neuberger
The Neuberger Firm, P.A.
2 East 7th Street
Suite 302
Wilmington, DE 19801
(302) 655-0582

JEFFREY D. KAHN (MI # P65270)