IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SSGT JASON A. ADKINS, USAF, | ) | C.A. NO.: 04-1453-JJF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS'** |
| | ) | **MEMORANDUM OF** |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | **LAW IN SUPPORT OF** |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | **DEFENDANTS' MOTION** |
| GEN. JOHN W. HANDY, Commander Air Mobility | ) | **TO DISMISS** |
| Command; COL. JOHN I. PRAY, JR., 436th Airlift | ) | |
| Wing Commander, in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT 7:**

**RESPONSE TO ADMINISTRATIVE LETTER OF REPRIMAND
FROM SSGT JASON A. ADKINS, DATED OCTOBER 26, 2004**

26 October 2004

MEMORANDUM FOR 3 AS/DOIF

FROM: SSgt JASON A. ADKINS

SUBJECT: Response to Letter of Reprimand

1. This is in response to the Letter or Reprimand I received with regard to the events of 21 October 2004 and my subsequent DNIF status. It is submitted to place these events in their proper context.

2. During the night of 20 October 2004 and early morning of 21 October 2004, I received very little rest as a result of a severe headache. At approximately 1200 on 21 October 2004, I departed my home in Smyrna, DE, in route to the Base to visit the Flight Surgeon, as my headache had not subsided. Unbeknownst to me at the time, TSgt Miller called my home at 1245 to inform me I was required to participate in a practice launch to take place on Friday, 22 October 2004, at 1045, some 22 hours later. He left this information on my answering machine. My wife relayed this information to me on my cell phone at approximately 1247, reaching me as I reached the base. I returned a call to TSgt Miller at 1250, informing him of my intention to see the Flight Surgeon with regard to my headache. I told him that I was unsure of what my availability for the launch the next day would be, with the possibility of being placed in DNIF status by the doctor, but that I would notify him as soon I knew something.

3. I signed in at the Flight Surgeon's office at 1255. After his examination, he prescribed a medication for me that did indeed DNIF me. I notified TSgt Miller immediately. I left the Flight Surgeon's office, with my medication, and reported to the 3 AS and gave the NVG alert beeper to TSgt Miller. To reiterate, the moment I realized that I had an illness that was not likely to go away on its own, I took steps to seek medical treatment, some 45 minutes before I was aware the practice launch scheduled for the next day existed. I also promptly notified TSgt Miller of my condition when I learned of the launch, and did likewise when I learned I was DNIF.

4. Having recounted my every move during the time frame in question, I fail to see how I was derelict in any way. I did not have the ability to predict the onset of my illness, or the practice launch. As such, it was not possible for me to provide any more lead time to TSgt Miller than I provided. Moreover, I stayed in ready contact with him the minute I was alerted of the need to be, as evidenced by the chronology I have laid out, with the aid of telephonic records for added accuracy. Finally, and possibly most disconcerting is your allegation that my "actions" decreased readiness, and that I "decided" to go DNIF for non-emergency conditions. If by my actions you are referring to the fact that I became ill and decided to seek qualified medical attention, then I am guilty as charged. I found that to be far more preferable than taking the risk of being tasked to fly on a mission when not physically equipped to do so. Subjecting Flyers to administrative actions for being DNIF due to illness has the potential of having a chilling and potentially hazardous affect, causing squadrons members to hesitate in seeking medical attention when they are truly not fit for flying duty, as I was that day as confirmed by the Flight Surgeon. Additionally, I made no such decision to be DNIF. It was the doctor's actions, specifically the

medicine be prescribed, that caused me to be DNIF. As far as being non-emergency, I admit to not being sure what you believe would have constituted an emergency, but it is clear that what my situation did constitute was a legitimate medical condition, and it is my sincere hope that there is no suspicion that I somehow faked an illness to avoid participation in a simple mission which I had no idea existed at the time I decided to seek medical attention.

5. It is my understanding that those with the authority to do so are encouraged to use a graduated, stair-step approach to issuing administration actions. Both Letters of Counseling and Letters of Admonishment are considered lesser forms of correction than LORs. As such, I do not understand why I, with no history of administrative actions, was issued a LOR for a first offense, assuming for argument sake alone that there was an offense to begin with. Also, as I understand it, imposition of extra duties as punishment is not permitted outside of nonjudicial or judicial punishment proceedings, which raises a question in my mind about the motivation and appropriateness of my newly reworked duty schedule, the type of which I have never been subjected to in all my years of flying.

6. For the multitude of reasons raised in this response, I would respectfully request that the LOR I was issued on 22 October 2004 be rescinded.

JASON A. ADKINS, SSgt, USAF