# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SSGT. JASON A. ADKINS, USAF,      )     C.A. NO.: 04-1453-JJF

        )

        Plaintiff,         )

        )

        v.          )     **DEFENDANTS'**

        )     **MEMORANDUM OF**

DONALD H. RUMSFELD, Secretary of Defense;  )     **LAW IN SUPPORT OF**

JAMES G. ROCHE, Secretary of the Air Force;  )     **DEFENDANTS' MOTION**

GEN. JOHN W. HANDY, Commander Air Mobility )     **TO DISMISS**

Command; COL. JOHN I. PRAY, JR., 436th Airlift )

Wing Commander, in their official capacities,     )

        )

        Defendants.      )

 

**EXHIBIT 10:**

**COPIES OF UNPUBLISHED OPINIONS**
**REQUIRED UNDER LOCAL RULE 7.1.3(a)(G)**

**(Part 1 of 4)**



Not Reported in F.Supp.                                                          Page 1

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Robert L. ALASEVICH, II
v.
UNITED STATES AIR FORCE RESERVE, et al.
**No. 95-CV-2572.**

March 26, 1997.

RENDELL, J.

*MEMORANDUM*

*1 Plaintiff brings this action to seek redress for conduct of the United States Air Force Reserve (" USAFR") and several of its officers and personnel allegedly in retaliation for plaintiff's exercise of his First Amendment rights. Plaintiff apparently reported others for engaging in fraudulent activity. There ensued several incidents which plaintiff contends are in violation of various federal and state laws. FN1

> FN1. I previously dismissed the complaint as to the USAFR and individually named defendants in their official capacities only for lack of subject matter jurisdiction. Plaintiff filed a second amended complaint on April 30, 1996.

Plaintiff's claims are as follows:

Count 1: Violation of 1st Amendment and state and federal whistleblower statutes.

Count 2: Removal from flight status in violation of procedural and substantive due process and equal protection of the laws as guaranteed under the 5th and 14th Amendments. Removal and down gradings in violation of double jeopardy.

Count 3: Intentional and malicious acts and practices designed to deprive the plaintiff of rights and privileges under 1st and 14th Amendments, as well as 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986, all in violation of 42 U.S.C. § 1983.

Count 4: Conspiracy to discriminate on basis of plaintiff's exercise of his right to free speech in violation of 42 U.S.C. § 1985(3).

Count 5: Conspiracy to tarnish, blemish, and otherwise deprive plaintiff of his good name in violation of his liberty interest in his good name as protected by the 5th and 14th Amendments.

Count 6: Defamation under Pennsylvania law.

Count 7: Intentional infliction of emotional distress under Pennsylvania law.

These claims are alleged as against the United States Air Force Reserve, as well as against certain military personnel. Defendants have moved for dismissal or, in the alternative, for summary judgment. As the pleadings form the basis for my decision, I will address plaintiff's motion as a motion to dismiss.

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Dismissal is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 2

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

relief. *Robb v. City of Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984).

## I. *CLAIMS AGAINST THE UNITED STATES AIR FORCE RESERVE*

The United States, as sovereign, is immune from suit except as it consents to be sued. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The principles of sovereign immunity extend to the sovereign's agencies, including departments of the United States military. *Whittel v. United States,* 7 F.3d 1259, 1262 (6th Cir.1993). Plaintiff's claims against the USAFR are therefore claims against the United States. As such, there must be a waiver of sovereign immunity in order for these claims to be maintained. As noted by defendants, the jurisdictional statutes themselves are insufficient to constitute a waiver of sovereign immunity. *Jaffee v. United States,* 592 F.2d 712, 717-18 (3d Cir.1979)(Constitution does not provide a waiver of sovereign immunity), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2201, neither confers jurisdiction nor waives sovereign immunity); *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983)(28 U.S.C. § 1331 not a waiver of sovereign immunity), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *TransBay Engineers & Builders, Inc. v. Hills,* 551 F.2d 370, 376 (D.C.Cir.1976)(28 U.S.C. § 1332 not a waiver of sovereign immunity); *Bobula v. United States Dep't of Justice,* 970 F.2d 854, 860 (Fed.Cir.1992)(mandamus statute, 28 U.S.C. § 1361 , not a waiver of sovereign immunity); *Salazar v. Heckler,* 787 F.2d 527, 528 (10th Cir.1986)(28 U.S.C. § 1343(a)(4), giving federal district court civil rights jurisdiction, does not by itself include any waiver of sovereign immunity). In order for plaintiff to maintain his claims against the USAFR, there must be a waiver of sovereign immunity, whether due to the nature of the underlying cause of action or some other basis. There is notably no sovereign immunity waiver for claims of constitutional violations or claims brought under § 1983. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 114

S.Ct. 996, 1004-06, 127 L.Ed.2d 308 (1994) (holding that *Bivens* suit may not be maintained against the United States or its agencies).

**\*2** The only arguable claims brought by plaintiff that survive a challenge based on sovereign immunity are claims under the Tucker Act and under the Administrative Procedures Act ("APA"), each of which contains express waivers of sovereign immunity. [FN2] As they do contain such waivers, the scope of these statutes is specific and limited.

> FN2. The Tucker Act provides, in pertinent part,
> The district courts shall have original jurisdiction ... of [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....
> 28 U.S.C. § 1346(a) The Administrative Procedures Act provides, in pertinent part,
> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
> 5 U.S.C. § 702

The Tucker Act is limited to non-tort money suits against the United States founded either upon the Constitution, a statute, a regulation, or an express or implied contract with the United States, not to exceed $10,000. 28 U.S.C. § 1346(a). The Act provides the United States' consent to suit for claims founded upon statutes or regulations that create substantive rights to money damages. *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Hannon v. United States,* 29 Fed. Cl. 142, 146 (1993)(substantive

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

right alleged must be one that mandates compensation by the United States for the damage allegedly sustained). "If a claim falls within this category, the existence of a waiver of sovereign immunity is clear". *Mitchell,* 463 U.S. at 218. As plaintiff does not allege the existence of any contract, in order to state a claim under the Tucker Act, plaintiff must rely on a substantive right or provision contained in the Constitution, an act of Congress, or an executive department regulation, which requires the Federal Government to compensate plaintiff for the type of damage sustained. *Mitchell,* 463 U.S. at 216-17. Plaintiff has not pled the necessary money mandating predicate. *See United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740.

As the defendants point out, plaintiff requests damages based on theories of recovery not within the scope of the Tucker Act. Plaintiff's allegations of procedural and substantive due process violations cannot support a Tucker Act claim since the due process clause of the Constitution is not a money-mandating provision. *See Golden Pacific Bancorp v. United States,* 15 F.3d 1066, 1076 (Fed.Cir.1994), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994). In addition, although plaintiff seeks back pay for an annual tour he did not serve and flight pay for aviation duty he did not serve, he does not point to any statute or regulation that mandates payment for military service not actually performed by a member of the reserves. *See Dehne v. United States,* 970 F.2d 890, 893-94 (Fed.Cir.1992)(finding that 10 U.S.C. 1552(c) does not mandate pay but rather provides for appropriate discretionary payment by the Secretary in certain circumstances). The plaintiff also seeks payment for prejudgment interest for back pay that has already been paid to him. Prejudgment interest, however, is recoverable only if expressly provided for in a contract or an act of Congress, and plaintiff does not cite any statutory authority or reference any contract that would support an award of prejudgment interest in this case. 28 U.S.C. § 2516(a).

*3 Similarly, plaintiff requests damages under theories of recovery not within the scope of the

Administrative Procedures Act ("APA"). 5 U.S.C. § § 701-706. The APA's waiver of sovereign immunity is limited to suits "seeking relief other than monetary damages". 5 U.S.C. § 702. While plaintiff may well have a claim arising out of the procedures, or lack thereof, relating to the elimination of his flying privileges, the only relief available would be a review of the agency action to determine if procedures were properly followed. [FN3] It does not appear from plaintiff's complaint that he is requesting this relief. [FN4]

> FN3. Defendants argue that the APA is not available because the Civil Service Reform Act ("CSRA") provides an adequate remedy thereby precluding suit. Defendants' motion at 3. The CSRA is designed so that employees who are subjected to more severe or "adverse" actions are entitled to formal proceedings before the agency, an appeal to the Merit Systems Protection Board, and judicial review in the Court of Appeals for the Federal Circuit. *Pinar v. Dole,* 747 F.2d 899, 905 (4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985).

> FN4. While plaintiff requests declaratory relief, he seeks only a declaration as to the violations of constitutional rights, not administrative procedures. Also, no reference is made in his complaint to the APA or its provisions.

Accordingly, plaintiff's claims against the USAFR are DISMISSED.

## II. *CLAIMS AGAINST INDIVIDUAL DEFENDANTS*

Plaintiff's claims against the individual defendants fall into four basic categories:
(1) *Claims for constitutional violations:*
Counts 1, 2, 3, and 5.
(2) *Claims for violations of civil rights statutes:*
Count 3: 42 U.S.C. § 1985(3), 1986.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                Page 4

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Count 4: 42 U.S.C. § 1985(3), 1986, all in violation
of 42 U.S.C. § 1983.
(3) *Claims for violations of state tort laws:*
Counts 6 and 7.
(4) *Claims under Whistleblower Statutes:*
Count 1: 43 Pa.C.S.A. § 1423

5 U.S.C. § 2301

All of the above claims are individual capacity
claims, since claims against agents of the United
States in their official capacities are barred by
sovereign immunity in the same manner as direct
claims. *See State of Hawaii v. Gordon,* 373 U.S. 57,
58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963).

### (1) *Claims Against Military Personnel for Constitutional Violations*

Defendants contend that they are immune from suit
for constitutional violations allegedly committed by
them in the course of their military service. Plaintiff
argues that while defendants may be entitled to
immunity, principles of qualified immunity require
that the good faith of defendants be examined,
precluding dismissal or summary judgment at this
time. While plaintiff is correct that qualified
immunity can be an issue for trial if there are
disputed facts, defendant has pointed to case law,
largely unrefuted by plaintiff, indicating that a
different, unique brand of immunity, more akin to
absolute immunity, has been afforded to military
personnel in cases where the violation occurred
during military service.

Under the reasoning contained in a line of cases
beginning with *Chappell v. Wallace,* 462 U.S. 296,
103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the
Supreme Court has held that, absent affirmative
action by Congress, suits for constitutional
violations against military personnel acting in their
individual capacities are barred. The *Chappell*
Court held that enlisted military personnel may not
maintain a suit to recover damages from a superior
officer for alleged constitutional violations.
*Chappell,* 462 U.S. at 305. While plaintiff
acknowledges the bar to suit against superiors, he
argues that *Chappell* is not applicable to his

situation since the named defendants include
non-superior officers and civilian employees.
Plaintiff in making this argument, however,
overlooks the Supreme Court decisions following
*Chappell* that enlarged the scope of the protection
afforded. In *United States v. Stanley,* 483 U.S. 669,
107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the Court
extended the holding of *Chappell* beyond the
situation in which an officer-subordinate
relationship exists and held that no *Bivens* remedy
is available for injuries that "arise out of or are in
the course of activity incident to service." *Stanley,*
483 U.S. at 684. [FN5]

> FN5. Plaintiff's own description of the
> facts reveals that the alleged injury arose
> out of activity incident to his military
> service. Plaintiff describes in detail how
> heavy equipment was loaded and rigged
> onto military aircraft and the particular
> procedures which he was required to
> follow in the process. Moreover, plaintiff's
> response to the motion at issue contains the
> statement that "Much of what subsequently
> happened to the Plaintiff arose out of an
> alleged misrigging of an airplane
> scheduled for an air drop mission on April
> 4, 1994." Plaintiff's response at 8. *See
> United States v. Shearer,* 473 U.S. 52,
> 57-58, 105 S.Ct. 3039, 87 L.Ed.2d 38
> (1985)(focus should be on whether the suit
> requires the civilian court to second-guess
> military decisions); *See also Woodside v.
> United States,* 606 F.2d 134, 141 (6th
> Cir.1979)(defining "incident to service" to
> extend beyond situations where the soldier
> is acting pursuant to orders and as "not a
> narrow term restricted to military training,
> field maneuvers, or combat situations"),
> *cert. denied,* 445 U.S. 904, 100 S.Ct.
> 1080, 63 L.Ed.2d 320 (1980).

*4 Moreover, the *Chappell* Court emphasized that "
the unique disciplinary structure of the military
establishment and Congress' activity in the field
constitute 'special factors' which dictate that it
would be inappropriate to provide enlisted military
personnel a *Bivens*-type [FN6] remedy against their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 5

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

superior officers." Such "special factors" have been found to include the existence of statutory mechanisms suggesting that Congress has provided what it considers adequate remedial mechanisms for constitutional violations. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *See Bush v. Lucas,* 462 U.S. 367, 388-90, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (precluding claims for money damages against federal employees in their individual capacities where the claims arose out of an employment relationship governed by comprehensive procedural and substantive provisions).

> FN6. While the Court's holding in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), authorized a suit for damages against federal officials whose actions violated an individual's constitutional rights, the Court expressly cautioned that such a remedy will not be available when "special factors counselling hesitation" are present. *Bivens,* 403 U.S. at 396.

Plaintiff's brief itself demonstrates the unique nature of the military establishment that has led to the adoption of special rules: it is replete with references to disputes and grievances as to military practice, procedures and standards. Congress has determined that the administrative procedures provided are adequate to address complaints, even complaints of constitutional violations, such that the involvement of the judiciary in overseeing or second guessing the conduct of the military is meddlesome, not productive. *See Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993) (recognizing the large number of routine personnel decisions made by the services which are held non-justiciable or beyond the competence or jurisdiction of the courts to wrestle with), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). Congress, in establishing specific laws to provide for a ready measure of review where appropriate-such as the APA, Tucker Act, Whistleblower Statute-has indicated the limited role the courts are to play in resolving disputes

arising in a military context. *See Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters."). Reviewable military personnel decisions FN7 may be judicially reversed only if arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law, regulation, or published procedure. *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 811 (Ct.Cl.1979). As such, and because military officers are presumed to have discharged their duties correctly, lawfully, and in good faith, it follows that the responsibility for determining who is fit or unfit to serve in the armed forces, when reasonable minds could reach differing conclusions on the same evidence, is not the province of the judiciary. *Id.* at 813; *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). FN8

> FN7. *See Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988)(discussing non-reviewable routine personnel decisions as opposed to judicially reviewable claims).

> FN8. While plaintiff's claim that the USAFR violated air force regulations by not providing him a Flight Evaluation Board prior to removing him from aviation service is an issue this court could review, the remedy that plaintiff seeks, reinstatement to aviation service, renders the matter non-justiciable because the court is not in a position to determine if the plaintiff was suitable for such service.

**\*5** As plaintiff's own argument reveals that his claims are for conduct incident to military service, the alleged constitutional violations he raises are not actionable under *Chappell* and its progeny. Accordingly, plaintiff's claims against military personnel based on constitutional violations are Dismissed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6 of 8

Not Reported in F.Supp.                                                    Page 6

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

*(2) Claims for Violations of Civil Rights Statutes*

Plaintiff has alleged that violations of his civil rights are actionable under the civil rights statutes, specifically relying upon 42 U.S.C. § 1983, 1985(3), and 1986. However, § 1983 does not apply to suits charging violation of federal, as opposed to state, law. *See Davis v. Passman,* 442 U.S. 228, 238 n. 16, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

Furthermore, even if there were state law violations alleged, military civil rights suits are barred just like constitutional claims. *Jorden v. National Guard Bureau,* 799 F.2d 99, 108, n. 12 (3d Cir.1986) (intra-military damages suits under Sections 1983, 1985(3), and 1986 barred), *cert. denied,* 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987); *Wright v. Park,* 5 F.3d 586, 590 (1st Cir.1993)(civil rights claims in the military context are non-justiciable); *Martelon v. Temple,* 747 F.2d 1348, 1351 (10th Cir.1984)(Congress never intended Section 1983 to impose liability of military superiors for transgressions against the rights of other military personnel), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985).

Accordingly, plaintiff's claims against military personnel based on violations of civil rights statutes are Dismissed.

*(3) Tort Claims Against Military Personnel*

In Counts 6 and 7, plaintiff states claims for defamation and intentional infliction of emotional distress. While plaintiff states his claims as violations of Pennsylvania law, claims against federal employees based on negligent or wrongful acts or omissions while acting within the scope of their office or employment are governed exclusively by the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2679(d); 28 U.S.C. § 2679(b)(1); 28 U.S.C. § 1346(b)(1). Defendants have submitted a certification that the defendant employees were acting within the scope of their employment at the time of the incident out of which these claims arose. *See* Government Exhibit O. As such, and in

accordance with the FTCA, plaintiff's state law tort claims against the defendants in their individual capacities are dismissed and plaintiff's claims under Counts 6 and 7 are deemed to be based on the FTCA. 28 U.S.C. § 2679(d).

However, as defendant notes, the United States Supreme Court has held that members of the service may not maintain suits under the FTCA for alleged injuries "where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). As discussed earlier, plaintiff's claims arise from activities incident to his service as a member of the Air Force Reserves. *See Woodside v. United States,* 606 F.2d 134, 141 (6th Cir.1979) (incident to service applicable to any loss or injury occurring under circumstances rationally connected to a service member's status in the armed services), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Plaintiff's argument that his claims relating to his previous civilian ART position should be dealt with differently from those arising strictly from his military position fails in that the two aspects of plaintiff's military service are inseparable. *See Wright,* F.3d at 589 (ruling that while a technician's job is a composite containing both civilian and military aspects, the job's dual aspects are inseparable and thus implicate military as well as civilian status); *See United States v. Johnson,* 481 U.S. 681, 687-88, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)(affirming *Feres* and holding that suits on behalf of service members against the government based upon service-related injuries, even where the alleged tortfeasor was a civilian government employee, are barred). Thus, plaintiff's claims are be barred under the *Feres* doctrine and plaintiff's tort claims against military personnel are dismissed. [FN9]

> FN9. Defendants argue that there are other grounds to dismiss the plaintiff's claims under the FTCA, including Section 2680(a)(the FTCA does not apply to tort suits for actions arising out of the exercise or failure to exercise a discretionary function or duty on the part of a federal agency or employee, whether or not the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 7

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

discretion involved was abused); Section 2680(h)(prohibiting tort suits for libel and slander, encompassing plaintiff's defamation allegation). Defendants also argue that plaintiff's actions are barred by the statute of limitations. 28 U.S.C. § 2401(b); 28 U.S.C. § 2675(a). I need not reach these arguments, however, since, as discussed, plaintiff's claims are barred by *Feres.*

### (4) *Claims under Whistleblower Statutes*

**\*6** Plaintiff's complaint states claims under the Pennsylvania Whistleblower Statute, 43 Pa.C.S.A. § 1423 and under 5 U.S.C. § 2301. Defendants contend that 10 U.S.C. § 1034(f) is the appropriate Whistleblower Statute and that initiation of a proceeding with the Air Force Board for Correction of Military Records ("AFBCMR") is the only private right of action under this law.

As the relationship of military personnel to the government has been governed exclusively by federal law, the issue is one of determining which federal statute is applicable. *Feres,* 340 U.S. at 146; *See* 43 Pa C.S.A. § 1422.

In coming before the court as a civilian employee of the United States Government, plaintiff states claims under 5 U.S.C. § 2301, which sets forth a series of "merit system principles" in § 2301(b) to govern federal personnel management practice. Section 2301 is part of the Civil Service Reform Act ("CSRA"), a detailed, comprehensive effort to regulate employee-management relations in the federal government. Section 2301, however, does not provide plaintiff with a private cause of action. *Colon v. Seigenthaler,* 1986 WL 11700, at \*8 (E.D.Pa., Oct. 17, 1986). Rather, the CSRA provides a comprehensive claims procedure for government employees. The CSRA created the Merit Systems Protection Board ("Board") and the Office of Special Counsel ("OSC") to ensure the protection of whistleblowers against retaliation. Under the CSRA, however, an employee may only seek judicial relief after a final order or decision of the Board. 5 U.S.C. § 7703; *Welton v. Philadelphia Naval Shipyard,* 1990 WL 124970, at \*2 (E.D.Pa.,

Aug.22, 1990); *Desmond v. Merit Systems Protection Board,* 1992 WL 132437, at \*1 (Fed.Cir. June 17, 1992), *cert. denied,* 506 U.S. 859, 113 S.Ct. 173, 121 L.Ed.2d 119 (1992). As plaintiff did not apply to the OSC nor seek an order of decision from the Board, plaintiff has failed to exhaust the available administrative remedies provided for in the CSRA. Accordingly, this court lacks jurisdiction over plaintiff's whistleblower claims under 5 U.S.C. § 2301.

Defendant is correct that 10 U.S.C. § 1034(f), dealing particularly with general military law, provides only an administrative remedy and not a private cause of action. *See Acquisto v. United States,* 70 F.3d 1010, 1011 (8th Cir.1995). [FN10] As noted earlier, Congress has seen fit to provide specific remedies and redress in the military context for certain situations, including plaintiff's. Plaintiff's brief focuses on the retaliatory aspects of defendants' alleged conduct, and, again, there is a specific procedure that must be followed by one in plaintiff's position, as authorized by Congress. Plaintiff's allegations can be addressed only through the administrative remedies available through the initiation of a proceeding with the AFBCMR [FN11] -an action that plaintiff has not initiated. Accordingly, this court also lacks jurisdiction over plaintiff's whistleblower claims under 10 U.S.C. § 1034(f).

FN10. As both of the federal statues cited by plaintiff and defendant require that plaintiff exhaust administrative remedies-something plaintiff has not done under either instance-it is not necessary for me to determine whether 10 U.S.C. § 1034 is the only applicable statute under the facts of this case.

FN11. The AFBCMR has authority to consider all applications properly before it for the purpose of determining the existence of an error or injustice, and it may correct an error or remove an injustice. 10 U.S.C. 1552(a).

**\*7** An appropriate order follows [FN12].

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 8

Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

> FN12. Although plaintiff requests costs and reasonable attorney fees pursuant to the Equal Access to Justice Act, under that Act such relief may be awarded only to the prevailing party. As to the defendants' request "that the Court award the defendants the costs of defending this frivolous litigation," the defendants have cited no statute or case law warranting such an award.

### ORDER

AND NOW, this 26th day of March, 1997, upon consideration of defendants' motion to dismiss, or in the alternative, motion for summary judgment and plaintiff's response thereto, it is hereby ORDERED that defendants' motion to dismiss is GRANTED.

E.D.Pa.,1997.
Alasevich v. U.S. Air Force Reserve
Not Reported in F.Supp., 1997 WL 152816 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:95cv02572 (Docket) (May. 02, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- B.R. ----                                                                    Page 1

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
In re: STUDENT FINANCE CORPORATION,
Debtor.
Charles A. Stanziale, Jr., Chapter 7 Trustee of
Student Finance Corporation, Plaintiff,
v.
Pepper Hamilton LLP, et al., Defendants.
**Bankruptcy No. 02-11620-JBR.**
**Adversary Nos. 04-56423-PBL, 04-1551-JJF.**

Dec. 22, 2005.

**Background:** Chapter 7 trustee brought adversary
proceeding against law firm and attorney that
represented debtor prepetition, attorney's wife and
uncle, and attorney as trustee of seven trusts of
which he or his relatives were beneficiaries,
asserting claims for breach of fiduciary duty and
aiding and abetting breach of fiduciary duty,
deepening insolvency, negligent misrepresentation,
professional malpractice, civil conspiracy,
fraudulent conveyance, turnover, equitable
subordination, and preferential transfers. Following
withdrawal of the reference, defendants moved to
dismiss.

**Holdings:** The District Court, Farnan, J., held that:

6(1) trustee had standing to bring cause of action
against law firm and attorney for alleged breach of
fiduciary duty;

15(2) trustee failed to state claim for deepening
insolvency under Pennsylvania law;

17(3) trustee lacked standing to assert negligent
misrepresentation claim;

19(4) tort of aiding and abetting breach of fiduciary
duty is not valid cause of action under Pennsylvania
law;

22(5) complaint failed to state claim for civil
conspiracy under Pennsylvania law;

27(6) allegations stated fraudulent conveyance
claim under Pennsylvania Uniform Fraudulent
Transfers Act (PUFTA); and

35(7) bankruptcy court would not apply doctrine of
unclean hands to bar trustee's equitable
subordination claim against law firm.

Motions granted in part and denied in part.

**[1] Federal Civil Procedure 170A** ⬡0

170A Federal Civil Procedure
Motion to dismiss for lack of subject matter
jurisdiction should be granted when asserted claim
is insubstantial, implausible, foreclosed by prior
decisions of court, or otherwise completely devoid
of merit so as not to involve a federal controversy.
Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ⬡0

170A Federal Civil Procedure
Court may dismiss action for lack of subject matter
jurisdiction if plaintiff lacks standing to bring his
claim. Fed.Rules Civ.Proc.Rule 12(b)(1), 28
U.S.C.A.

**[3] Federal Civil Procedure 170A** ⬡0

170A Federal Civil Procedure
Motion to dismiss for lack of subject matter
jurisdiction may present either facial or factual
challenge to subject matter jurisdiction, and, in
considering facial challenge, court must accept as
true all allegations in complaint, whereas court
considering factual challenge is free to weigh the
evidence, and no presumption of truthfulness
attaches to plaintiff's allegations. Fed.Rules

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                    Page 2

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[4] Bankruptcy 51** ☜0

51 Bankruptcy
Legal causes of action fall within Bankruptcy Code's definition of bankruptcy estate. 11 U.S.C.A. § 541(a)(1).

**[5] Bankruptcy 51** ☜0

51 Bankruptcy
Under Bankruptcy Code, trustee may bring any cause of action that debtor could have brought under state law as of the commencement of bankruptcy case. 11 U.S.C.A. § 541.

**[6] Bankruptcy 51** ☜0

51 Bankruptcy
Chapter 7 trustee had standing to bring cause of action against law firm and attorney that represented corporate debtor prepetition for alleged breach of fiduciary duty, given that alleged breach arose from attorney-client relationship between debtor, attorney, and law firm, such that claim could have been brought by debtor on its own behalf, and that purported conflicts of interest constituting breach began well before commencement of debtor's bankruptcy case. 11 U.S.C.A. § 541(a)(1).

**[7] Bankruptcy 51** ☜0

51 Bankruptcy
Affirmative defense of in pari delicto was not established on the face of Chapter 7 trustee's complaint and thus did not compel dismissal, at motion-to-dismiss stage of proceedings, of trustee's claim against law firm and attorney that represented corporate debtor prepetition for alleged breach of fiduciary duty, given trustee's contention that defendants were debtor's insiders and factual assertions in complaint which supported that contention. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[8] Equity 150** ☜0

150 Equity

"In pari delicto" is an equitable doctrine providing that plaintiff may not assert a claim against defendant if plaintiff bears fault for the claim.

**[9] Equity 150** ☜0

150 Equity
Doctrine of in pari delicto is an affirmative defense.

**[10] Equity 150** ☜0

150 Equity
Complaint may be subject to dismissal for failure to state claim upon which relief may be granted when an affirmative defense appears on the face of complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[11] Bankruptcy 51** ☜0

51 Bankruptcy
Although doctrine of in pari delicto may be applied to bar bankruptcy trustee who has stepped into shoes of wrongdoing debtor from bringing action against third-party defendant who participated in same wrongdoing, in pari delicto will not operate to bar claims against insiders of debtor corporation. 11 U.S.C.A. § 541.

**[12] Bankruptcy 51** ☜0

51 Bankruptcy
Any person or entity whose relationship with debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an "insider," and therefore inquiry into insider status is fact-intensive and can be made only on a case-by-case basis.

**[13] Bankruptcy 51** ☜0

51 Bankruptcy
Chapter 7 trustee had standing, under Bankruptcy Code, to bring deepening insolvency claim under Pennsylvania law against law firm and attorney that represented corporate debtor prepetition and related defendants, given trustee's allegation that debtor, as well as creditors, were harmed by defendants' purported conduct. 11 U.S.C.A. § 541.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                    Page 3

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

**[14] Federal Courts 170B ⟶0**

170B Federal Courts
Prior interpretation of state law by federal Court of Appeals was binding on district court within same circuit in the absence of subsequent state statute or binding state court decision to the contrary.

**[15] Bankruptcy 51 ⟶0**

51 Bankruptcy
Under Pennsylvania law, Chapter 7 trustee failed to state claim for deepening insolvency against law firm and attorney that represented corporate debtor prepetition and related defendants when trustee did not allege that defendants defrauded debtor, but rather alleged only that defendants and debtor's chief executive officer (CEO) and sole shareholder worked together to defraud debtor's creditors. 11 U.S.C.A. §§ 541, 544; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[16] Bankruptcy 51 ⟶0**

51 Bankruptcy
To state claim for deepening insolvency under Pennsylvania law, trustee for bankruptcy estate of corporate debtor must allege that defendant defrauded debtor; if trustee alleged that defendant's conduct in expanding debtor's corporate debt and prolonging corporate life worked to defraud only debtor's creditors, then trustee would lack standing to bring claim. 11 U.S.C.A. §§ 541, 544.

**[17] Bankruptcy 51 ⟶0**

51 Bankruptcy
Bankruptcy statute dealing with trustee's powers with respect to avoidance actions did not grant trustee standing to pursue tort claims on behalf of debtor's creditors, and therefore Chapter 7 trustee lacked standing to assert negligent misrepresentation claim against law firm and attorney that represented debtor prepetition. 11 U.S.C.A. § 544.

**[18] Bankruptcy 51 ⟶0**

51 Bankruptcy

Claim that law firm and attorney committed professional malpractice while representing Chapter 7 debtor, which arose from debtor's attorney-client relationship with firm and attorney and involved conduct that preceded commencement of debtor's bankruptcy case, was one that debtor could have brought on its own behalf as of commencement of bankruptcy case, and therefore Chapter 7 trustee had standing under Bankruptcy Code to assert such claim. 11 U.S.C.A. § 541(a)(1).

**[19] Torts 379 ⟶0**

379 Torts
Under Pennsylvania law, as predicted by federal district court, tort of aiding and abetting breach of fiduciary duty is not valid cause of action. Restatement (Second) of Torts § 876.

**[20] Federal Courts 170B ⟶0**

170B Federal Courts
When called to apply substantive state law with respect to an issue that the state's highest court has not addressed, a federal court must predict how the state's highest court would resolve the issue; however, it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.

**[21] Federal Courts 170B ⟶0**

170B Federal Courts
In determining what Pennsylvania Supreme Court would decide if presented with an issue of state law it has not considered, federal district court examines (1) what Pennsylvania Supreme Court has said in related areas, (2) decisional law of Pennsylvania intermediate courts, (3) opinions of federal Courts of Appeals and district courts applying state law, and (4) decisions from other jurisdictions that have discussed the issue.

**[22] Conspiracy 91 ⟶0**

91 Conspiracy
Complaint failed to state claim for civil conspiracy under Pennsylvania law when it provided no factual allegations to support assertion that attorney, his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

family members, and related trusts acted with intent to injure corporation when they allegedly combined with one or more members of corporation's board of directors to perform unlawful acts resulting in harm to corporation. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[23] Conspiracy 91 ☞0**

91 Conspiracy
To state a claim for civil conspiracy under Pennsylvania law, plaintiff must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage; in addition, proof of malice, or an intent to injure, is essential.

**[24] Conspiracy 91 ☞0**

91 Conspiracy
Under Pennsylvania law, civil conspiracy is not independently actionable, but rather is a means for establishing vicarious liability for an underlying tort; thus, a claim for civil conspiracy cannot stand alone, but must be predicated on some underlying tort.

**[25] Bankruptcy 51 ☞0**

51 Bankruptcy
Bankruptcy statute giving trustee standing to bring actions to avoid transfers of property by debtor did not apply to claim in which Chapter 7 trustee sought to avoid transfers of property made by debtor's chief executive officer (CEO) and sole shareholder. 11 U.S.C.A. § 544.

**[26] Bankruptcy 51 ☞0**

51 Bankruptcy
Complaint sufficiently alleged that, as of commencement of Chapter 7 case, debtor had cause of action against its chief executive officer (CEO) and sole shareholder for wrongful distributions of corporate assets to himself, such that debtor could have sought itself to avoid CEO-shareholder's

allegedly fraudulent transfers of property to others pursuant to Pennsylvania Uniform Fraudulent Transfers Act (PUFTA), and therefore Chapter 7 trustee, stepping into debtor's shoes, had standing to bring fraudulent conveyance claim against transferees under bankruptcy statute that included debtor's causes of action within bankruptcy estate. 11 U.S.C.A. § 541(a)(1); 12 Pa.C.S.A. § 5101 et seq.

**[27] Fraudulent Conveyances 186 ☞0**

186 Fraudulent Conveyances
Complaint stated fraudulent conveyance claim against transferees, pursuant to Pennsylvania Uniform Fraudulent Transfers Act (PUFTA), when it alleged that corporation had claim against its chief executive officer (CEO) and sole shareholder for wrongful distributions of corporate assets to himself and that CEO-shareholder made challenged transfers of his property with actual intent to defraud his creditors. 12 Pa.C.S.A. § 5104(a)(1).

**[28] Fraudulent Conveyances 186 ☞0**

186 Fraudulent Conveyances
Complaint did not state claim under Pennsylvania Uniform Fraudulent Transfers Act (PUFTA) for constructive fraudulent transfer against transferees of property of corporation's chief executive officer (CEO) and sole shareholder, given absence of allegation that CEO-shareholder did not receive reasonably equivalent value in exchange for challenged transfers. 12 Pa.C.S.A. § 5104(a)(2).

**[29] Fraudulent Conveyances 186 ☞0**

186 Fraudulent Conveyances
Complaint asserting that transfers made by corporation's chief executive officer (CEO) and sole shareholder were fraudulent conveyances under Pennsylvania Uniform Fraudulent Transfers Act (PUFTA) alleged fraud aspect of claim with sufficient specificity, in that complaint gave transferees sufficient notice of interests alleged to have been fraudulently transferred, approximate date of transfer, and nature of corporation's claims against CEO-shareholder, and also alleged, consistent with rule's requirement of general

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                      Page 5

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

averments respecting state of mind, that
CEO-shareholder pledged assets with actual intent
to defraud his creditors. Fed.Rules Civ.Proc.Rule
9(b), 28 U.S.C.A.; 12 Pa.C.S.A. § 5104(a)(1).

**[30] Federal Civil Procedure 170A** &#x21d0;0

170A Federal Civil Procedure
Purpose of rule requiring that averments of fraud be
pleaded with particularity is to provide defendants
with notice of the precise nature of the claim against
them, not to test the factual allegations of the claim.
Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[31] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
Under Bankruptcy Code's turnover provision,
Chapter 7 trustee could not seek turnover of
property interests that were the subject of his
fraudulent conveyance claim against transferees
until underlying transfers were avoided. 11
U.S.C.A. § 542.

**[32] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
Trustee may use Bankruptcy Code's turnover
provision to compel the turnover of bankruptcy
estate property once the prior transfer of such
property from estate has been avoided, such that
ownership of property is not in dispute. 11 U.S.C.A.
§ 542.

**[33] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
Turnover actions under Bankruptcy Code cannot be
used to demand assets whose title is in dispute. 11
U.S.C.A. § 542.

**[34] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
To state claim for turnover of property under
Bankruptcy Code, plaintiff must allege that transfer
of property sought has already been avoided or that
property is otherwise the undisputed property of
bankruptcy estate. 11 U.S.C.A. § 542.

**[35] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
It would be inequitable to impute any wrongful
conduct on corporate debtor's part to Chapter 7
trustee, who was not accused of any wrongdoing,
and therefore bankruptcy court would not apply
doctrine of unclean hands to bar trustee's claim,
under Bankruptcy Code, for equitable subordination
of claims held against Chapter 7 estate by law firm
which represented debtor prepetition, based on law
firm's allegedly inequitable conduct that harmed
debtor's general unsecured creditors. 11 U.S.C.A. §
510(c).

**[36] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
Trustee suing pursuant to bankruptcy statute
including all of debtor's interests in property as of
commencement of case within bankruptcy estate is
subject to same defenses as could have been
asserted by defendant had action been instituted by
debtor, and therefore debtor's participation in
conduct giving rise to action is imputed to trustee
and doctrine of in pari delicto may apply to bar
trustee's claim. 11 U.S.C.A. § 541(a)(1).

**[37] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
When trustee brings action based on provision of
Bankruptcy Code that does not contain limiting
language, such as that in statute including all of
debtor's interests in property as of commencement
of case within bankruptcy estate, court may
consider postpetition events to determine whether
trustee is subject to defenses that could have been
asserted against debtor had it instituted action. 11
U.S.C.A. § 541(a)(1).

**[38] Bankruptcy 51** &#x21d0;0

51 Bankruptcy
Chapter 7 trustee sufficiently alleged that law firm
and attorney that represented debtor prepetition,
attorney's family members, and related trusts were
all debtor's insiders, and thus could seek to avoid
payments made by debtor to firm, attorney, family

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6 of 15

--- B.R. ----

Page 6

--- B.R. ----, 2005 WL 3525741 (D.Del.)
(Cite as: --- B.R. ----)

members, and trusts between 90 days and one year preceding filing of debtor's petition. 11 U.S.C.A. § 547(b)(4)(B).

Peter C. Hughes, Esquire of Dilworth Paxson LLP, Wilmington, Of Counsel: James J. Rodgers, Esquire and Derrick A. Dyer, Esquire of Dilworth Paxson LLP, Philadelphia, Pennsylvania; Schwartz, Tobia, Stanziale, Becker, Rosensweig & Sedita, P.A., Montclair, NJ, for Plaintiff Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation.
William H. Sudell, Jr., Esquire and Donna L. Culver , Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Of Counsel: Elizabeth K. Ainslie, Esquire, Nicholas J. LePore, III, Esquire, Bruce P. Merenstein, Esquire and Stephen J. Shapiro, Esquire, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, for Defendants Pepper Hamilton LLP and W. Roderick Gagné in his capacity as an attorney practicing at Pepper Hamilton LLP.
Karen Lee Turner, Esquire of Eckert Seamans Cherin & Mellot, LLC, Wilmington Of Counsel: Neil G. Epstein, Esquire and Carol L. Press, Esquire of Eckert Seamans Cherin & Mellot, LLC, Philadelphia, PA, for Defendants W. Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné, and W. Roderick Gagné in his capacity as trustee of various trusts.

## MEMORANDUM OPINION

FARNAN, District Judge.
*1 Pending before the Court are two Motions to Dismiss: the Motion Of Pepper Hamilton LLP And W. Roderick Gagné, In His Capacity As An Attorney Practicing At Pepper Hamilton LLP, For The Dismissal Of Counts I, II, III, IV, And IX Of The Trustee's Complaint In Their Entirety And For The Partial Dismissal Of Count X Of The Trustee's Complaint (D.I.19); and the Motion To Dismiss Of W. Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné And The Trusts (D.I.21). Together, the two Motions request dismissal or partial dismissal of all eleven Counts in the Complaint. For the reasons set forth below, the Court will grant the Motions in part and deny the Motions in part.

## BACKGROUND

This action was filed by Charles A. Stanziale, Jr. (the "Trustee"), the Chapter 7 Trustee of Student Finance Corporation ("SFC"). The action was originally filed in the Bankruptcy Court of the District of Delaware as Adversary Proceeding No. 04-56423-PBL in Bankruptcy Case No. 02-11620-JBR. On January 7, 2005, this Court granted Defendants' uncontested Motion to withdraw the reference to the Bankruptcy Court. (D.I.5.)

SFC is a Pennsylvania corporation with its principal place of business in New Castle, Delaware. SFC is currently in Chapter 7 bankruptcy proceedings. Andrew Yao ("Yao") was SFC's Chief Executive Officer, Treasurer, and sole shareholder. Defendant Pepper Hamilton LLP ("Pepper") is a law firm organized as a Pennsylvania Limited Liability General Partnership, with its principal place of business in Philadelphia, Pennsylvania. Throughout the relevant time period, Pepper represented SFC. Defendant W. Roderick Gagné ("Gagné") is an attorney and partner at Pepper and was primarily responsible for Pepper's representation of SFC. Defendant Pamela Bashore Gagné is Gagné's wife. Defendant Robert L. Bast is Gagné's uncle. Gagné is also named as a defendant in his capacity as trustee of seven different trusts whose beneficiaries are Gagné or relatives of Gagné. The Court will follow the Trustee's practice of using the term "the Family" to refer collectively to Defendants Pamela Bashore Gagné, Robert L. Bast, and Gagné in his capacity as trustee of the various trusts.

## DISCUSSION

By their Motions, Defendants contend that all eleven Counts of the Complaint should be dismissed or partially dismissed, for a variety of reasons, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After a brief discussion of the applicable legal standards, the Court will address each Count of the Complaint in turn.

I. Legal Standards

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                    Page 7

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

### A. *Federal Rule of Civil Procedure 12(b)(1)*

[1] [2] [3] A motion to dismiss under Rule 12(b)(1)
challenges the jurisdiction of the court to address
the merits of the plaintiff's complaint. Fed.R.Civ.P.
12(b)(1). The motion should be granted where the
asserted claim is "insubstantial, implausible,
foreclosed by prior decisions of this Court, or
otherwise completely devoid of merit as not to
involve a federal controversy." *Coxson v. Comm.
of Pennsylvania,* 935 F.Supp. 624, 626
(W.D.Pa.1996) (citations omitted). Under Rule
12(b)(1), a court may also dismiss an action for lack
of subject matter jurisdiction if the plaintiff lacks
standing to bring his claim. *Kwan v. United States,*
84 F.Supp.2d 613, 617 n. 2 (E.D.Pa.2000). A
motion to dismiss under 12(b)(1) may present either
a facial or factual challenge to subject matter
jurisdiction. *See Mortensen v. First Fed. Sav. and
Loan,* 549 F.2d 884, 891 (3d Cir.1977). In
considering a facial challenge, a court must accept
as true, all allegations in the complaint. *Id.* In
contrast, when considering a factual challenge, a
court is free to weigh the evidence and no
presumption of truthfulness attaches to the
plaintiff's allegations. *Id.*

### B. *Federal Rule of Civil Procedure 12(b)(6)*

*2 Pursuant to Federal Rule of Civil Procedure
12(b)(6), the Court may dismiss a complaint for
failure to state a claim upon which relief may be
granted. Fed.R.Civ.P. 12(b)(6). The purpose of a
motion to dismiss is to test the sufficiency of a
complaint, not to resolve disputed facts or decide
the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d
176, 183 (3d Cir.1993). When considering a motion
to dismiss, a court must accept as true all
allegations in the complaint and must draw all
reasonable factual inferences in the light most
favorable to the plaintiff. *Neitzke v. Williams,* 490
U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338
(1989); *Piecknick v. Pennsylvania,* 36 F.3d 1250,
1255 (3d Cir.1994). The Court is "not required to
accept legal conclusions either alleged or inferred
from the pleaded facts." *Kost,* 1 F.3d at 183.
Dismissal is only appropriate when "it appears

beyond doubt that the plaintiff can prove no set of
facts in support of his claims which would entitle
him to relief." *Conley v. Gibson,* 355 U.S. 41, 45,
78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The burden of
demonstrating that the plaintiff has failed to state a
claim upon which relief may be granted rests on the
movant. *Young v. West Coast Industrial Relations
Assoc., Inc.,* 763 F.Supp. 64, 67 (D.Del.1991)
(citations omitted).

### II. Analysis

### A. *Count I: Breach Of Fiduciary Duty*

In Count I, the Trustee alleges that Pepper and Gagn
é, as counsel to SFC, breached their fiduciary duty
by engaging in improperly waived, and unwaivable
conflicts of interest. (Adv. Pro. No. 04-56423, D.I.
1 at 36.) Among many purported conflicts with
Pepper and Gagné's representation of SFC, the
Trustee alleges that Pepper and Gagné
simultaneously represented SFC and various other
individuals and entities whose interests were
adverse to those of SFC, permitted Gagné and the
Family to loan millions of dollars to SFC and to
become equity holders in SFC, elevated the
interests of Gagné and the Family above those of
SFC and its creditors, and represented or considered
the Family's interests in transactions with SFC and
Yao. (*Id.*)

Defendants Pepper and Gagné contend that Count I
should be dismissed under Rule 12(b)(1) because
the Trustee lacks standing to bring this claim.
Defendants contend that the Trustee does not have
standing under 11 U.S.C. § 541 because this claim
belongs to SFC's creditors and not to SFC. (D.I. 20
at 16.) Defendants also contend that the Trustee
does not have standing under 11 U.S.C. § 544
because that section does not give a trustee standing
to bring tort claims. (*Id.*) Defendants further
contend that Count I should be dismissed under
Rule 12(b)(6) because the Trustee's claim is barred
by the doctrine of *in pari delicto.* (*Id.* at 17.) In
response, the Trustee contends that he has standing
to bring this claim under both § 544(a) and § 541.
(D.I. 15 at 13.) He further contends that Defendants'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----

--- B.R. ----, 2005 WL 3525741 (D.Del.)
(Cite as: --- B.R. ----)

assertion of *in pari delicto* is premature at the stage of a Motion to Dismiss under Rule 12 (*Id.* at 17), that the doctrine is inapplicable because Defendants are insiders of SFC (*Id.* at 20), and that the doctrine does not apply to the allegation of breach of fiduciary duty (*Id.* at 25).

**\*3** **[4] [5] [6]** The estate of a bankrupt debtor includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition includes legal causes of action. *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164 (3d Cir.2002). Therefore, under § 541, the trustee of a bankrupt debtor may bring any cause of action that the debtor could have brought under state law as of the commencement of the case. FN1 *Id.* n. 5. Count I alleges a breach of the fiduciary duty that arose from Pepper and Gagné's attorney-client relationship with SFC. Thus, this is a cause of action that SFC could have brought on its own behalf. Moreover, the Trustee alleges that the conflicts of interest constituting the breach began well before the commencement of the bankruptcy case. Therefore, the Court concludes that the Trustee has standing to bring Count I under 11 U.S.C. § 541(a)(1).

**[7] [8]** Defendants next contend that, even if the Trustee has standing, Count I must be dismissed under Rule 12(b)(6) because it is barred by the doctrine of *in pari delicto*. *In pari delicto* is an equitable doctrine providing "that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim ." *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co. ., Inc.,* 267 F.3d 340, 354 (3d Cir.2001). The Court of Appeals for the Third Circuit has held that the doctrine may be applied to bar a bankruptcy trustee who has stepped into the shoes of a wrongdoing debtor from bringing an action under § 541 against a third party defendant who participated in the same wrongdoing. *Id.* at 360.

**[9] [10] [11] [12]** Although *in pari delicto* is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." *Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir.2001) (quoting *ALA, Inc.*

*v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994)). Here, however, the affirmative defense is not established on the face of the complaint. *In pari delicto* will not operate to bar claims against insiders of the debtor corporation. *Official Committee of Unsecured Creditors v. William Shapiro,* No. 99-526, slip op. at \*1, 2001 WL 1468250 (E.D.Pa.2001) (citing *In re Granite Partners, L.P.,* 194 B.R. 318, 332 (S.D.N.Y.1996)). The Trustee contends that all Defendants are insiders of SFC and his Complaint includes numerous factual allegations in support of that contention. (*See* Adv. Pro. No. 04-56423, D.I. 1 at 6, 7, 8, 15-17, 18-20, 22, 31-32, 42, & 61.) "Any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an 'insider.' " *In re Karen Louise Demko,* 264 B.R. 404, 408 (Bankr.W.D.Pa.2001) (citing *Butler v. David Shaw, Inc.,* 72 F.3d 437, 443 (4th Cir.1996)). Thus, the inquiry into insider status "is fact-intensive and can be made only on a case-by-case basis." *Demko,* 264 B.R. at 408 (citing *In re ABC Electric Services, Inc.,* 190 B.R. 672, 675 (Bankr.M.D.Fla.1995)). Therefore, whether Defendants in this case are insiders of SFC can be determined only after full discovery. The Court concludes that the affirmative defense of *in pari delicto,* not having been established on the face of the Complaint, does not compel dismissal of Count I at this stage of the proceedings. FN2 Therefore, the Court will deny Defendants' Motions To Dismiss with respect to Count I.

### B. *Count II: Deepening Insolvency*

**\*4** In Count II, the Trustee alleges that all Defendants engaged in tortious conduct that caused injury to SFC through the wrongful expansion of corporate debt and prolongation of corporate life beyond insolvency. (Adv. Pro. No. 04-56423, D.I. 1 at 42.) Defendants contend that Count II should be dismissed under Rule 12(b)(1) because the Trustee lacks standing to bring the claim. (D.I. 20 at 1; D.I. 22 at 10.) Defendants further contend that Count II should be dismissed under Rule 12(b)(6) because Pennsylvania does not recognize an independent cause of action for deepening insolvency. (D.I. 20

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

at 28; D.I. 22 at 14.) Alternatively, Defendants contend that the Trustee has not alleged the necessary elements of a claim for deepening insolvency, and that he has not alleged fraud with the particularity required by Rule 9(b). (D.I. 20 at 28; D.I. 22 at 14.) In response, the Trustee contends that the Court is bound by the Third Circuit's decision in *Lafferty,* 267 F.3d at 344, which concluded that Pennsylvania would recognize deepening insolvency as a valid cause of action. (D.I. 15 at 26-28.) The Trustee further contends that the Complaint alleges all of the elements necessary to state a claim for deepening insolvency, and that fraud is not a necessary element of the claim. (*Id.* at 28; D.I. 17 at 8.)

[13] The Trustee has standing to bring this claim under § 541 if the claim is one that SFC could have brought on its own behalf as of the commencement of the case. In *Lafferty,* the Third Circuit concluded that a deepening insolvency claim brought by a Committee of Creditors was a claim belonging to the debtor rather than the creditors because the claim sought recovery for damage to the debtor's property. 267 F.3d at 349. Similarly, the Trustee alleges in this Count that the damage resulting from Defendants' conduct was to SFC itself and not just to the creditors. Therefore, the Court concludes that the Trustee has standing to bring Count II under § 541.

[14] [15] In *Lafferty,* the Third Circuit concluded " that 'deepening insolvency' constitutes a valid cause of action under Pennsylvania state law ...." *Id.* at 344. This interpretation of Pennsylvania law is binding on this Court in the absence of a subsequent state statute or binding state court decision to the contrary. *Lennig v. New York Life Ins. Co.,* 130 F.2d 580, 581 (3d Cir.1942). Therefore, in deciding whether to dismiss Count II, the Court need determine only whether the Complaint sufficiently alleges the elements necessary to state a claim for deepening insolvency.

In *Lafferty,* the Third Circuit did not specify the elements of a deepening insolvency claim. However, it did state that "the Committee alleges an injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and

prolongation of corporate life. This type of injury has been referred to as 'deepening insolvency.' ' 267 F.3d at 347. The District Court for the Eastern District of Pennsylvania has concluded that this language means that the tort requires a showing of fraud. *Corporate Aviation Concepts, Inc., v. Multi-Service Aviation Corp.,* No. 03-3020, slip op. at *4, WL 1900001 (E. D.Pa.2001); *accord In re CITX Corp. Inc.,* No. 03-727, slip op. at *10, 2005 WL 1388963 (E.D.Pa.2005). The Court agrees.

**\*5** [16] In order to state a claim for deepening insolvency, then, the trustee of a bankrupt debtor must allege that the defendant defrauded the debtor. If the allegation were that the defendant's conduct in expanding the debtor's corporate debt and prolonging corporate life worked to defraud only the debtor's creditors, then the trustee would lack standing to bring the claim. He could not bring it under § 541 because it would not be a claim that the debtor could have brought on its own behalf as of the commencement of the case, nor could he bring it under § 544 because that section deals only with a trustee's powers regarding avoidance actions and does not empower him to pursue tort claims. [FN3] Here, the Trustee does not allege that Defendants defrauded SFC, but only that Defendants and Yao, the CEO and sole shareholder of SFC, worked together to defraud SFC's creditors. Therefore, the Court concludes that Count II fails to state a claim upon which relief can be granted, and will dismiss Count II pursuant to Rule 12(b)(6).

### C. Count III: Negligent Misrepresentation

[17] In Count III, the Trustee alleges that Pepper and Gagné, in the preparation of Private Placement Memoranda to investors in SFC, negligently or recklessly misrepresented or omitted material facts related to SFC's financial condition and operations, that SFC's creditors relied on those misrepresentations or omissions, and that they were damaged as a result. (Adv. Pro. No. 04-56423, D.I. 1 at 44 .) Defendants Pepper and Gagné contend that the Trustee lacks standing to bring the claim under § 541 because he is bringing it on behalf of SFC's creditors and not on behalf of SFC. Alternatively, Defendants contend that the Trustee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                                                     Page 10

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

fails to allege the elements necessary to state a claim of negligent misrepresentation against them. (D.I. 20 at 13-14.) In response, the Trustee contends that he has standing, under § 544(a), to bring a general claim on behalf of all of SFC's creditors and that the Complaint alleges all of the elements necessary to state such a claim. (D.I. 15 at 12, 15-16.)

The Trustee does not contend that the claim for negligent misrepresentation was a cause of action that SFC could have brought on its own behalf as of the commencement of the bankruptcy case. Therefore, he does not have standing to bring the claim under § 541. The question presented here then, is whether § 544 of the Bankruptcy Code gives the Trustee standing to bring tort claims. The Trustee contends that § 544 gives him broad authority to pursue general claims on behalf of SFC's creditors, including tort claims. (*Id.* at 12-13.) Defendants contend that § 544 applies only to avoidance actions and gives the Trustee no standing to bring tort claims. (D.I. 20 at 16.)

There is ample authority for the contention that § 544 is limited to avoidance actions. *See Baehr v. Touche Ross & Co.,* 62 B.R. 793, 798 (E.D.Pa.1986) (concluding that § 544(a) did not give a bankruptcy trustee standing to bring a tort claim on behalf of creditors); *In re Teligent, Inc.,* 307 B.R. 744, 749 (Bankr.S.D.N.Y.2004) (concluding that § 544 does not extend beyond avoidance actions); *In re Granite Partners,* 194 B.R. 318, 324 (Bankr.S.D.N.Y.1996) (concluding that § 544 does not extend beyond avoidance actions). In addition, the Third Circuit has described § 544 as simply defining "the trustee's power over rival creditors." *In re Bridge,* 18 F.3d 195, 198 (3d Cir.1994). Finally, Collier on Bankruptcy states:
*6 "[s]ection 544 is the first of the five sections of the Bankruptcy Code that set out the trustee's power to avoid liens and transfers.... The powers granted under [§ 544] enable a trustee to avoid transfers and liens on the debtor's property that could have been avoided by a creditor under the applicable local law ...."

5 *Collier on Bankruptcy* ¶ 544.01 (15th rev. ed.2004).

On the other hand, the Court can find no support for the Trustee's contention that § 544 provides him with standing to bring tort claims on behalf of SFC's creditors. None of the numerous cases cited by the Trustee actually supports that contention. (*See* D.I. 15 at 10-14.) In each of those cases, the "general claim" being asserted was either a claim belonging to the bankruptcy estate at the commencement of the case, or an avoidance claim. In none of the cited cases did a court conclude that § 544 gives a bankruptcy trustee standing to bring a tort claim that was not the property of the bankruptcy estate as of the commencement of the case. Therefore, the Court concludes that the Trustee lacks standing to bring the claim of negligent misrepresentation as alleged in Count III, and will dismiss Count III pursuant to Rule 12(b)(1).

### D. *Count IV: Professional Malpractice*

[18] In Count IV, the Trustee alleges that Pepper and Gagné failed to exercise the necessary, proper, and ordinary skill and knowledge required of members of the legal profession in connection with their representation of SFC. (Adv. Pro. No. 04-56423, D.I. 1 at 46.) Defendants Pepper and Gagné contend that Count IV should be dismissed under Rule 12(b)(1) because the Trustee lacks standing to bring the claim. (D.I. 20 at 1.) In response, the Trustee contends that he has standing to bring the claim under both §§ 541 and 544.

Like Count I's claim of breach of fiduciary duty, Count IV's claim of professional malpractice arises from Pepper and Gagné's attorney-client relationship with SFC. Here too, the Trustee alleges that the conduct giving rise to the claim began well before the commencement of the bankruptcy case. Thus, the claim is one that could have been brought by SFC on its own behalf as of the commencement of the case. The Court concludes therefore, that the Trustee has standing to bring Count IV under § 541(a)(1). Accordingly, the Court will deny Defendants' Motion To Dismiss with respect to Count IV.

### E. *Count V: Aiding And Abetting Breach Of*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                          Page 11

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

*Fiduciary Duty*

[19] In Count V, the Trustee alleges that Pepper and Gagné aided and abetted SFC's Directors and Officers in breaching their fiduciary duty to SFC. (Adv. Pro. No. 04-56423, D.I. 1 at 48.) Defendants contend that Count V fails to state a claim upon which relief can be granted because the Pennsylvania Supreme Court has not recognized the tort of aiding and abetting a breach of fiduciary duty. (D.I. 20 at 34.) In response, the Trustee contends that this Court should predict that the Pennsylvania Supreme Court would recognize the tort. (D.I. 15 at 35-36.)

*7 [20] [21] Neither the Pennsylvania Supreme Court nor the Court of Appeals for the Third Circuit has considered whether aiding and abetting a breach of fiduciary duty is a valid cause of action under Pennsylvania law. When called to apply substantive state law with respect to an issue that the state's highest court has not addressed, a federal court must predict how the state's highest court would resolve the issue. *Jaasma v. Shell Oil Co.,* 412 F.3d 501, 507 n. 5 (3d Cir.2005). However, "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *City of Philadelphia v. Berretta U.S.A. Corp.,* 277 F.3d 415, 421 (3d Cir.2002). In determining what the Pennsylvania Supreme Court would decide if presented with an issue it has not considered, this Court examines: "(1) what the Pennsylvania Supreme Court has said in related areas; (2) the ' decisional law' of the Pennsylvania intermediate courts; (3) opinions of federal courts of appeals and district courts applying state law; and (4) decisions from other jurisdictions that have discussed the issue ...." *Dilworth v. Metropolitan Ins. Co.,* 418 F.3d 345, 349 (3d Cir.2005) (citing *Gruber v. Owens-Illinois Inc.,* 899 F.2d 1366, 1369-70 (3d Cir.1990)).

One of Pennsylvania's two intermediate courts, the Commonwealth Court, has concluded that aiding and abetting a breach of fiduciary duty is a valid cause of action under Pennsylvania common law, basing its conclusion on the Restatement (Second) of Torts § 876. *Koken v. Steinberg,* 825 A.2d 723, 731 (Pa.Commw.Ct.2003). Pennsylvania's other

intermediate court, the Superior Court, has been more equivocal. In *Burnside v. Abbot Labs,* the Superior Court favorably discussed the related cause of action of "concerted action" under § 876 of the Restatement, but concluded that the Appellant had not established a prima facie case. 505 A.2d 973, 982-83 (Pa.Super.Ct.1986). The Superior Court also noted that "this cause of action has not heretofore been recognized in this Commonwealth as a valid basis for imposing liability." *Id.* at 983. More recently, the Superior Court has made it clear that § 876 has not yet been adopted as law in Pennsylvania. *See Welc v. Porter,* 450 Pa.Super. 112, 675 A.2d 334, 338 (Pa.Super.Ct.1996) (stating that "[a]lthough [§§ 876(a) and (b) ] have been addressed by this Court, . .. these pronouncements are not controlling as the discussions either did not command a majority or constituted *dicta.* Moreover, these sections heretofore have not been expressly adopted."); *see also Clayton v. McCullough,* 448 Pa.Super. 126, 670 A.2d 710, 713 (Pa.Super.Ct.1996) (stating that "we are not bound by § 876(b) of the Restatement 2d, as it has not been adopted by the Pennsylvania Supreme Court").

The United States District Court for the Eastern District of Pennsylvania has predicted that the Pennsylvania Supreme Court would recognize a claim for aiding and abetting breach of fiduciary duty. *See Adena, Inc., v. Cohn,* 162 F.Supp.2d 351-357 (E.D.Pa.2001). However, Pennsylvania's other two Federal District Courts have refused to expand Pennsylvania law to include that cause of action. *See Flood v. Makowski,* No. 03-1803, slip op. at *36, 2004 WL 1908221 (M.D.Pa.2004) (stating that the court was "hesitant to create an entirely new cause of action on the basis of two cases from the lower courts in Pennsylvania and dictum from a third court");*see also Daniel Boone Area School Dist. v. Lehman Bros., Inc.,* 187 F.Supp.2d 400, 413 (W.D.Pa.2002) (refusing to expand Pennsylvania tort liability by adopting § 876(b)).

*8 Taking into account all of the foregoing, the Court concludes that there is an insufficient basis to conclude that the Pennsylvania Supreme Court would decide that aiding and abetting breach of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

fiduciary duty is a valid cause of action under Pennsylvania law. Therefore the Court will dismiss Count V of the Complaint pursuant to Rule 12(b)(6).

### F. *Count VI: Civil Conspiracy*

[22] In Count VI, the Trustee alleges that Gagné and the Family combined with one or more members of SFC's Board to perform a number of unlawful acts resulting in damage to SFC. (Adv. Pro. No. 04-56423, D.I. 1 at 51.) Defendants contend that Count VI should be dismissed because the Trustee fails to allege the elements necessary to state a claim for civil conspiracy. (D.I. 22 at 19.) Specifically, Defendants contend that the Trustee fails to properly allege malice and that he does not sufficiently identify the participants and purpose of the conspiracy, or the unlawful acts or unlawful purposes involved. (*Id.* at 19-21.) In response, the Trustee contends that, read broadly, the Complaint alleges all of the elements necessary to state a claim for civil conspiracy. (D.I. 17 at 11-14.)

[23] [24] In order to state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Kline v. Security Guards, Inc.,* 386 F.3d 246, 262 (3d Cir.2004) (quoting *McGuire v. Shubert,* 722 A.2d 1087, 1092 (Pa.Super.Ct.1998). In addition "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Skipworth v. Lead Indus. Assoc., Inc.,* 547 Pa. 224, 690 A.2d 169 (Pa.1997). Civil conspiracy "is not independently actionable; rather it is a means for establishing vicarious liability for [an] underlying tort." *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 407 (3d Cir.2000). Thus, a claim for civil conspiracy cannot stand alone, but must be predicated on some underlying tort. *Id.* at 405.

The parties disagree with respect to the level of malice required. Defendants contend that the requisite malice is present only if the sole purpose

of the conspiracy was to injure the plaintiff. (D.I. 22 at 21.) The Trustee responds that the Complaint adequately alleges that Defendants intended to injure SFC, and that intent to injure need not be the sole purpose of the conspiracy. (D.I. 17 at 13-14.) The Court concludes that, under either interpretation, the Complaint fails to allege the malice necessary to state a claim for civil conspiracy. When deciding a motion to dismiss under rule 12(b)(6), "a court must take well-pleaded facts as true, but need not credit a complaint's 'bald assertions." ' *In re Burlington Coat Factory Securities Litig.,* 114 F.3d 1410, 1429 (3d Cir.1997) (quoting *Glassman v. Computervision Corp.,* 90 F.3d 617, 628 (1st Cir.1996)). Here, the Trustee offers no factual allegation to support his assertion that Defendants acted with the intent to injure SFC. Therefore, the Court will dismiss Count VI of the Complaint pursuant to Rule 12(b)(6).

### G. *Count VII: Fraudulent Conveyance Claim*

*9 In Count VII, the Trustee alleges that Yao fraudulently transferred his interests in three business entities to the Family. (Adv. Pro. No. 04-56423, D.I. 1 at 53.) The Trustee seeks to avoid the transfers and recover the transferred interests or their value from the Family for the bankruptcy estate pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. Cons.Stat. §§ 5101-5119. (*Id.* at 54.) Defendants contend that the Trustee lacks standing to bring this claim for two reasons. (D.I. 22 at 25-26.) First, the Trustee fails to identify the actual unsecured creditor whose claim he is seeking to enforce under § 544(b). Second, § 544 allows a trustee to avoid transfers made by the debtor, but the Trustee here is seeking to avoid a transfer made by Yao and not by SFC, the debtor. Defendants further contend that Count VII fails to state a claim under the applicable Pennsylvania law because it does not identify SFC as a creditor of Yao, it does not identify the claims that SFC had against Yao, and it fails to plead fraud with the specificity required by Rule 9(b). (*Id.* at 27-30.) In response, the Trustee contends that he has standing under both §§ 541 and 544(a), that the Complaint sufficiently identifies SFC's claim against Yao, that pleading with particularity is not required, and that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----

--- B.R. ----, 2005 WL 3525741 (D.Del.)
(Cite as: --- B.R. ----)

Page 13

the Complaint's allegations of fraud are sufficiently particular to satisfy Rule 9(b) anyway. (D.I. 17 at 17-19).

[25] [26] The Court concludes that the Trustee has standing to bring this claim for fraudulent conveyance under 11 U.S.C. § 541, but not under § 544. Section 544 gives a trustee standing to bring actions to avoid transfers of property by the debtor. 11 U.S.C. § 544. Here, the Trustee seeks to avoid a transfer of Yao's property, not the property of the debtor, SFC. Therefore, § 544 is not applicable. However, drawing all reasonable inferences in the light most favorable to the Trustee, the Court concludes that the Complaint sufficiently alleges that, as of the commencement of the bankruptcy case, SFC had a cause of action against Yao for wrongful distributions of corporate assets to himself. Because SFC had this claim against Yao, it could have sought to avoid Yao's transfers to the Family under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"). 12 Pa. Cons.Stat. §§ 5101-5110. Therefore, the Trustee, stepping into the shoes of the debtor, has standing to bring this claim under 11 U.S.C. § 541(a)(1).

[27] [28] Next, the Court must determine whether the Complaint sufficiently alleges the elements of a fraudulent conveyance claim under Pennsylvania law. PUFTA provides in pertinent part that:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor ....

*10 12 Pa. Cons.Stat. § 5104(a)(1) & (2). As noted above, the Trustee sufficiently alleges that SFC had a claim against Yao as of the commencement of the bankruptcy case. The Trustee also alleges that Yao made the transfers in question with actual intent to defraud his creditors. (Adv. Pro. No. 04-56423, D.I. 1 at 54.) The Court disagrees with the Trustee's contention that the Complaint also alleges constructive fraudulent transfer under § 5104(a)(2) (

See D.I. 17 at 19.), because the Complaint does not allege that Yao did not receive a reasonably equivalent value in exchange for the transfers in question.

[29] [30] The last remaining issue with respect to Count VII then, is whether the Complaint alleges fraudulent transfer with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). The Court concludes that it does. Rule 9(b) states in its entirety: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b) is to provide defendants notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984). Here, the Complaint gives Defendants sufficient notice of the interests alleged to have been fraudulently transferred (Adv. Pro. No. 04-56423, D.I. 1 at 53), the approximate date of the transfer (*Id.*), and the nature of the Trustee's claims against Yao (*Id.* at 35, 54). Because Rule 9(b) requires only general averments with regard to state of mind, the Trustee's allegation that "Yao pledged the assets with an actual intent to defraud his creditors" is adequate. ( *Id.* at 54.) Accordingly, the Court will deny Defendants' Motions To Dismiss with respect to Count VII.

H. *Count VIII: Turnover Of Estate Property Claim*

[31] In Count VIII, the Trustee alleges that Yao's interests in two business entities, One Summit Place GP, and DHP GP, Inc., were acquired using funds " inappropriately obtained" from SFC and therefore, those interests, currently in the possession of the Family, are the property of SFC and are subject to turnover to the bankruptcy estate under 11 U.S.C. § 542. (Adv. Pro. No. 04-56423, D.I. 1 at 54-55.) The Court notes that the interests in question are two of the three interests that are the subject of the Trustee's fraudulent conveyance claim in Count VII of the Complaint. Defendants contend that Count VIII fails to state a claim upon which relief can be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----

--- B.R. ----, 2005 WL 3525741 (D.Del.)
(Cite as: --- B.R. ----)

Page 14

granted because turnover actions under § 542 are limited to recovery of assets that are undisputedly the property of the bankruptcy estate. (D.I. 22 at 31-32.) In response, the Trustee contends that he may properly use § 542 to "obtain the recovery of avoided transfers." (D.I. 17 at 20.)

[32] [33] [34] The Trustee is correct in his contention that he may use § 542 to compel turnover of estate property whose transfer from the estate has been avoided, i.e. property whose ownership is not in dispute. *In re Hechinger Investment Co. of Delaware, Inc.,* 282 B.R. 149, 161-62 (Bankr.D.Del.2002). However, the transfer of the interests in question here has not yet been avoided and the interests are very much in dispute; they are subjects of the Trustee's claim of fraudulent conveyance in Count VII. Turnover actions cannot be used to demand assets whose title is in dispute. *In re Allegheny health, Education, & Research Foundation,* 233 B.R. 671, 677-78 (Bankr.W.D.Pa.1999). Therefore, in order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate. Here, the Trustee has not made, and cannot make that allegation. Accordingly, the Court will dismiss Count VIII of the Complaint pursuant to Rule 12(b)(6).

### I. *Count IX: Equitable Subordination*

*11 [35] In Count IX, the Trustee contends that Pepper's claims against the bankruptcy estate should be equitably subordinated to the claims of all general unsecured creditors pursuant to 11 U.S.C. § 510(c) because those creditors were harmed by Pepper's inequitable conduct. (Adv. Pro. No. 04-56423, D.I. 1 at 55-56.) Pepper contends that this claim is barred by the doctrine of unclean hands because SFC participated in the same conduct and the Trustee stands in the shoes of SFC. (D.I. 20 at 36.) The Trustee responds that the unclean hands doctrine is not applicable here because there is no language in § 510(c) preventing the Court from considering post-petition events such as the appointment of the trustee, and the Trustee does not

have unclean hands. (D.I. 15 at 37.)

[36] The Court concludes that the Trustee's equitable subordination claim is not barred by the doctrine of unclean hands. Under § 541, the bankruptcy estate contains "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). The Third Circuit has held that the quoted language prevents courts from taking into account events that occur after the commencement of the bankruptcy case, including the appointment of a trustee. *Lafferty,* 267 F.3d at 357. Thus, a trustee suing under § 541 is subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor. *Id.* at 356. Therefore, participation of the debtor in the conduct giving rise to the action is imputed to the trustee and the doctrine of *in pari delicto* may apply to bar his claim.

[37] However, when a trustee brings an action based on a section of the Bankruptcy Code that does not contain limiting language such as that in § 541, a court may consider post-petition events. *In re The Personal and Bus. Ins. Agency,* 334 F.3d 239, 241 (3d Cir.2003). Section 510 does not contain such limiting language. Therefore, the Court may take into account the appointment of the Trustee and his position as an innocent successor to any wrongful conduct that might be imputed to SFC. The Court concludes that imputing that wrongful conduct to the Trustee, who is not himself accused of any wrongdoing, would lead to an inequitable result. Accordingly, the Court will not apply the doctrine of unclean hands and will deny Defendants' Motion To Dismiss with respect to Count IX of the Complaint.

### J. *Counts X & XI: Preference Claims*

[38] In Counts X and XI, the Trustee seeks, under 11 U.S.C. § 547, to avoid payments made by SFC to Pepper and the Family within one year preceding the filing of the bankruptcy petition. (Adv. Pro. No. 04-56423, D.I. 1 at 57-62.) Defendants do not contest the Trustee's ability to seek avoidance of payments made within ninety days preceding the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----

Page 15

--- B.R. ----, 2005 WL 3525741 (D.Del.)
**(Cite as: --- B.R. ----)**

filing date. The Trustee contends that, under § 547(b)(4)(B), he may avoid payments made between ninety days and one year preceding the filing date because all Defendants are insiders of SFC. (D.I. 15 at 38; D.I. 17 at 21.) Defendants contend that the Trustee's allegation that they are insiders is insufficient, and therefore, the Court should dismiss those portions of the preference claims that seek avoidance of payments made between ninety days and one year preceding the filing date. (D.I. 20 at 37; D.I. 22 at 33-34 .)

**\*12** Section 547(b) reads in pertinent part: "[T]he trustee may avoid any transfer of an interest of the debtor in property ... made ... between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider ...." 11 U.S.C. § 547(b)(4)(B). Therefore, as the parties have noted, whether the Trustee may avoid payments made by SFC to Defendants more than ninety days preceding the filing date hinges on Defendants' status as insiders of SFC. As noted in section II. A., *supra,* the Complaint alleges that all Defendants are insiders of SFC, and that allegation is supported by numerous other factual allegations. Therefore, the Court concludes that the Trustee sufficiently alleges that Defendants are insiders of SFC. Accordingly, the Court will deny Defendants' Motion To Dismiss with respect to Counts X and XI of the Complaint.

### CONCLUSION

In sum, for the reasons discussed, the Court will deny Defendants' Motions To Dismiss with respect to Count I, breach of fiduciary duty; Count IV, professional malpractice; Count VII, fraudulent conveyance; Count IX, equitable subordination; Count X, preference with respect to Pepper; and Count XI, preference with respect to the Family. The Court will grant the Motions with respect to Count II, deepening insolvency; Count III, negligent misrepresentation; Count V, aiding and abetting a breach of fiduciary duty; Count VI, civil conspiracy; and Count VIII, turnover of estate property.

An appropriate order will be entered.

### ORDER

At Wilmington, this 22nd day of December 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1. Defendants' Motions To Dismiss (D.I. 19; D.I. 21) are *DENIED* with respect to Counts I, IV, VII, IX, X, and XI of the Complaint;

2. Defendants' Motions To Dismiss (D.I. 19; D.I. 21) are *GRANTED* with respect to Counts II, III, V, VI, and VIII of the Complaint;

3. Count II, deepening insolvency is *DISMISSED;*

4. Count III, negligent misrepresentation is *DISMISSED;*

5. Count V, aiding and abetting a breach of fiduciary duty is *DISMISSED;*

6. Count VI, civil conspiracy, is *DISMISSED;*

7. Count VIII, turnover of estate property, is *DISMISSED.*

> FN1. The parties agree that state law questions in this case are controlled by the law of Pennsylvania. (*See* D.I. 15 at 18; D.I. 20 at 9).
>
> FN2. Defendants' contentions that *in pari delicto* bars the Trustee from bringing other Counts fail for the same reason, so the Court will not address those contentions in its discussion of those Counts.
>
> FN3. The Court will discuss § 544 in more detail in section C *infra.*

D.Del.,2005.
In re Student Finance Corp.
--- B.R. ----, 2005 WL 3525741 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.