IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SSGT. JASON A. ADKINS, USAF, | ) | C.A. NO.: 04-1453-JJF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS'** |
| | ) | **MEMORANDUM OF** |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | **LAW IN SUPPORT OF** |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | **DEFENDANTS' MOTION** |
| GEN. JOHN W. HANDY, Commander Air Mobility | ) | **TO DISMISS** |
| Command; COL. JOHN I. PRAY, JR., 436th Airlift | ) | |
| Wing Commander, in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

EXHIBIT 10:

COPIES OF UNPUBLISHED OPINIONS
REQUIRED UNDER LOCAL RULE 7.1.3(a)(G)

(Part 2 of 4)



Not Reported in F.Supp.2d                                                                                              Page 1

Not Reported in F.Supp.2d, 2001 WL 826556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Randolph BOWERS, III, Plaintiff,
v.
C.O. MOUNET, et al., Defendants.
**No. Civ.A. 99-533-JJF.**

July 18, 2001.

Randolph Bowers, III, New Castle, Delaware, Plaintiff, pro se.
Seth J. Reidenberg, of White & Williams LLP, Wilmington, Delaware, for Defendant P.H.S. Medical Department Supervisor R.N. Marvel.
Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for State Defendants.

MEMORANDUM OPINION

FARNAN, J.

*1 Presently before the Court is Defendant P.H.S. Medical Department Supervisor R.N. Marvel's Motion to Dismiss (D.I.30), and State Defendants' Motion to Renew Motion to Dismiss (D.I.31). For the reasons stated below, the Court will grant Defendant P.H.S. Medical Department Supervisor R.N. Marvel's Motion to Dismiss (D.I.30), and will grant in part and deny in part State Defendants' Motion to Renew Motion to Dismiss (D.I.31).

BACKGROUND

According to his Amended Complaint (D.I.8), on June 13, 1999, while incarcerated in the Multi-Purpose Criminal Justice Facility ("MPCJF"), Randolph Bowers III ("Plaintiff") injured his back while picking up a bucket of water. Plaintiff immediately told Correctional Officer Mounet ("Defendant Mounet") about his injury, but Defendant Mounet did not allow Plaintiff to seek medical treatment.

On June 14, Plaintiff told Correctional Officer Stokes ("Defendant Stokes") about his back injury, and that it was causing him extreme pain. Defendant Stokes told Plaintiff that, if he remembered and when he got time, he would notify the housing unit supervisor about Plaintiff's injury. When Plaintiff advised Defendant Stokes that he believed emergency medical attention was necessary, Defendant Stokes ordered him to complete his work duties and told Plaintiff: "[u]nless you are dying or pass out, I will not be calling or notifying anyone in the medical department." That same day, Corporal Morrison ("Defendant Morrison") visited Plaintiff in Plaintiff's living quarters. After having been advised by Plaintiff regarding the extent of his injury and after having observed Plaintiff's inability to get into the top bunk, Defendant Morrison told Plaintiff: "no doctor or nurse will be contacted about your problem."

On June 18, Plaintiff was seen by a representative of Prison Health Services' medical department ("P.H.S."), who referred Plaintiff to a doctor. On June 21, Dr. Ivens examined Plaintiff at MPCJF. Dr. Ivens advised Plaintiff that he may have slipped a disc in his back, and that he would be referred to an outside physician in two weeks if the back pain persisted.

Plaintiff filed this action on August 13, 1999, against Defendants Mounet, Stokes, and Morrison, Deputy Warden Hawthorne, Warden Williams, (collectively "State Defendants"), and P.H.S. Medical Department Supervisor R.N. Marvel ("Defendant Marvel"), for negligence and for violating 42 U.S.C. § 1983 by denying him medical care in contravention of his Eighth Amendment rights.

The State Defendants filed a motion to dismiss (D.I.25) on August 10, 2000, and Defendant Marvel filed a motion to dismiss (D.I.27) on August 21,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2001 WL 826556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2000, both of which were denied by the Court with leave to renew, because Plaintiff had not been properly served with either motion. (D.I.29). Defendant Marvel re-filed her motion and properly served Plaintiff on April 9, 2001, (D.I.30), and the State Defendants properly renewed their motion on April 10, 2001 (D.I.31). Since Plaintiff has failed to file answer briefs within the time frame provided by the Court, the Court will resolve the motions on the papers submitted.

STANDARD OF REVIEW

*2 When a court analyzes a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be accepted as true. *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* In sum, the only way a court can grant a Rule 12(b)(6) motion to dismiss is "if it appears that the [nonmoving party] could prove no set of facts" consistent with the allegations that would entitle it to relief. *Id.*

DISCUSSION

I. Defendant Marvel's Motion to Dismiss (D.I.30)

A. Exhaustion of Administrative Remedies

Defendant Marvel contends that Plaintiff failed to exhaust his administrative remedies, and that therefore, his Amended Complaint should be dismissed. Under the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In his Amended Complaint, Plaintiff alleges that he filed a grievance in accordance with the MPCJF's grievance procedure, but that he had received "nothing to date" in response. (D.I. 8 at 2). The United States Supreme Court requires a plaintiff to exhaust administrative remedies even where the grievance process would not provide him the remedy that he is seeking in his federal court action. *Booth v. Churner,* 121 S.Ct. 1819 (2001). *See also Nyhuis v. Reno,* 204 F.3d 65, 71 (3d Cir.2000) (holding that there is no "futility" exception to the prisoner exhaustion requirement). However, this Court recently held that a Section 1983 prisoner complaint should not be dismissed for failure to exhaust administrative remedies when the record indicates the plaintiff filed a grievance that has been completely ignored by prison authorities beyond the time allowed for responding to grievances under the grievance procedure. *Chapman v. Brewington-Carr,* C.A. No. 97-271-JJF, slip op. at 3-6 (D.Del. May 1, 2001)(declining to extend *Nyhuis* [FN1]). *See also Powe v. Ennis,* 177 F.3d 393, 394 (5th Cir.1999)(" A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding [to the grievance] has expired"); *Freeman v. Snyder,* 2001 WL 515258, at *5 (D. Del. April 10, 2001)(holding that failure to exhaust administrative remedies is an affirmative defense that must be established by the *defendant* ).

   FN1. Although the Supreme Court's decision in *Booth* was issued after this Court's decision in *Chapman, Booth* does not refute the principles announced in *Chapman.*

In the instant case, Plaintiff's grievance was not attached to his Amended Complaint, nor was it attached to either Defendants' motion. However, it is clear from Plaintiff's original Complaint that Plaintiff filed his grievance on or prior to June 21, 1999. (D.I.2). This means that the grievance was filed almost two years before Defendant Marvel re-filed the instant motion, and that prison authorities still have not responded. Although the relevant grievance procedures have not been included as part of the record in this case, it is safe to assume that such a lengthy delay in handling Plaintiff's grievance exceeded the amount of time allowed for prison authorities to respond under said

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

grievance procedure. Accordingly, the Court concludes that the instant case is analogous to *Chapman,* and that Plaintiff's Amended Complaint cannot be dismissed for failure to exhaust administrative remedies.

B. Failure to State a Section 1983 Claim

*3 Defendant Marvel also contends that Plaintiff's Section 1983 claim must be dismissed pursuant to Rule 12(b)(6). Defendant Marvel notes that, in order to sustain a Section 1983 claim for inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." (D.I. 30 at 6)(citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). This standard is met only if the prison authorities deliberately deprive a prisoner of adequate medical care or when the prison authorities fail to act despite their knowledge of "a substantial risk of serious harm." *Daniels v. Delaware,* 120 F.Supp.2d 411, 426 (D.Del.2000). In order to be liable under this standard, the prison authorities must have acted wilfully or with "subjective recklessness." *Id.* at 427.

In his Amended Complaint, Plaintiff alleges that Defendant Marvel acted with deliberate indifference to Plaintiff's medical needs by: (1) failing to promptly schedule Plaintiff for a medical examination within a reasonable time, and (2) failing to promptly schedule Plaintiff to be examined by a doctor specializing in lower back pain. (D.I. 8 at ¶¶ 32-33). However, Plaintiff fails to allege any facts indicating that Defendant Marvel knew about Plaintiff's injury, or that she acted with a willful or reckless disregard to Plaintiff's medical needs. In fact, such an allegation is refuted by Plaintiff's Amended Complaint, which alleges that Plaintiff was seen by a P.H.S. medical department employee less than a week after he sustained his injury. Absent any allegations that Defendant Marvel knew about Plaintiff's injured back, Plaintiff's Section 1983 claim against Defendant Marvel must be dismissed.

C. Negligence Claim

Having concluded that Plaintiff's Section 1983 claim asserted against Defendant Marvel must be dismissed, the only remaining claim against Defendant Marvel is a state law claim for negligence. (D.I. 8 at ¶ 33). Defendant Marvel urges this Court to decline to exercise jurisdiction over the negligence claim pursuant to 28 U.S.C. § 1367. (D.I. 30 at 9). Under 28 U.S.C. § 1367(c)(2), district courts may refuse to exercise their supplemental jurisdiction over state claims if the state claims "substantially predominate [ ] over the [federal] claim or claims." The Court concludes that, in the instant case, because the only remaining claim asserted against Defendant Marvel is a state law claim, the Court should refrain from exercising jurisdiction over it. *See, e.g., True North Composites LLC v. Harris Specialty Chemicals Inc.,* 00-157-JJF, slip op. at 2-3 (D.Del. March 30, 2001). Accordingly, Plaintiff's claim for negligence against Defendant Marvel should be dismissed for lack of subject matter jurisdiction.

II. State Defendants' Motion (D.I.31)

A. Exhaustion of Administrative Remedies

The State Defendants contend that Plaintiff's Amended Complaint must be dismissed for failure to exhaust administrative remedies. For the reasons discussed above regarding Defendant Marvel's motion, the Court concludes that the State Defendants' contention lacks merit. FN2

> FN2. In their motion, the State Defendants do briefly discuss some of the grievance procedures analyzed in prior decisions of this Court. (D.I. 26 at ¶ 4). However, the State Defendants fail to attach to their motion the grievance procedures relevant to the instant litigation, and the Court refuses to assume that the version of the grievance procedures analyzed in prior decisions is identical to the procedures applicable here. In the future, the State Defendants should attach the relevant portions of the grievance procedure as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2001 WL 826556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

exhibits to their motion when they seek dismissal for failure to exhaust administrative remedies.

B. Failure to State a Section 1983 Claim

*4 The State Defendants also contend that Plaintiff's Section 1983 claim should be dismissed for failing to adequately allege deliberate indifference to Plaintiff's medical needs. (D.I. 26 at ¶ 5). Specifically, the State Defendants contend that it is only their responsibility to provide access to medical care, and that, as evidenced by the fact that Plaintiff was seen by medical personnel on June 18, 1999, and by a doctor on June 21, 1999, Plaintiff was not deprived of access to medical care. [FN3] (D.I. 26 at ¶ 5). The Court concludes, however, that the fact that Plaintiff was eventually seen by a doctor does not necessarily mean that the State Defendants did not act with deliberate indifference, especially when Plaintiff was forced to work for several days, with severe back pain, despite his pleas for medical assistance.

> FN3. In support of their motion, the State Defendants also offer evidence of Plaintiff's medical care after June 21, 1999. The Court, however, will refuse to consider such evidence because it discusses events outside of the pleadings and is not properly considered when deciding a Rule 12(b)(6) motion to dismiss.

The State Defendants also contend that Plaintiff fails to allege specific facts establishing each State Defendant's personal involvement in the complained of conduct, and therefore, that the Amended Complaint should be dismissed. (D.I. 26 at ¶ 5). The Court concludes that Plaintiff does adequately allege deliberate indifference by several of the State Defendants. For instance, Plaintiff alleges that Defendant Mounet ignored Plaintiff's plea for medical assistance after Plaintiff initially injured his back, and, apparently, required Plaintiff to continue working. (D.I. 8 at ¶ 9). Plaintiff alleges that the following day, Defendant Stokes ordered Plaintiff to work despite Plaintiff's claim of extreme back pain, and that Defendant Stokes taunted Plaintiff by stating: "Unless you are dying or pass out, I will not be calling or notifying anyone in the medical department." (D.I. 8 at ¶ 15). Also on that same day, Plaintiff alleges that Defendant Morrison visited Plaintiff's living quarters and, after witnessing Plaintiff's inability to get himself into his bunk due to his back pain, told Plaintiff: "That's too bad. No doctor or nurse will be contacted about your problem." (D.I. 8 at ¶¶ 19-20). Based on these pleadings, the Court concludes that Plaintiff does adequately allege deliberate indifference by Defendants Mounet, Stokes, and Morrison. [FN4]

> FN4. The State Defendants also contend that they are entitled to qualified immunity because they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. (D.I. 26 at ¶ 9). However, the allegations discussed above are sufficient to rebut the contention of good faith, and therefore, the Court cannot conclude at this juncture that the State Defendants are entitled to qualified immunity.
>
> The State Defendants also contend that they are entitled to Eleventh Amendment immunity. (D.I. 26 at ¶ 11). However, Plaintiff is suing the State Defendants in their individual capacities only. (D.I. 8 at ¶¶ 4, 5, 7). Therefore, Eleventh Amendment immunity is irrelevant to the instant litigation.

However, the Court agrees with the State Defendants that Plaintiff fails to adequately allege deliberate indifference by Defendants Williams and Hawthorne. Plaintiff merely alleges that he sent a letter to Defendant Williams informing Defendant Williams of his inability to obtain medical care, but that this effort "bore no fruit." (D.I. 8 at ¶ 23). However, Plaintiff does not allege when he sent the letter to Defendant Williams. Recognizing that Plaintiff was seen by PHS medical personnel on June 18, 1999, the allegations do not sufficiently establish that Defendant Williams knew of Plaintiff's injury or of Plaintiff's inability to obtain medical care before June 18. Accordingly, the allegations do not sufficiently plead deliberate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2001 WL 826556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

indifference by Defendant Williams. As to Defendant Hawthorne, Plaintiff fails to allege any facts establishing Defendant Hawthorne's knowledge of Plaintiff's problem or involvement in the complained of conduct.

*5 Plaintiff does make conclusory allegations that Defendants Williams and Hawthorne failed to timely arrange adequate medical care for Plaintiff. (D.I. 8 at 33). However, since Plaintiff's Amended Complaint fails to allege these Defendants' knowledge of Plaintiff's problem, the only possible theory on which Plaintiff could be relying on to hold these Defendants liable is respondeat superior. However, since supervisory officials cannot be held liable for a Section 1983 violation under respondeat superior, the Court concludes that Plaintiff's Section 1983 claim against Defendants Williams and Hawthorne must be dismissed. *See Daniels,* 120 F.Supp.2d at 428 (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).

C. Negligence Claim

The State Defendants also contend that the Court should dismiss Plaintiff's negligence claim. First, they contend that they are entitled to Sovereign Immunity insofar as they are sued in their official capacities. (D.I. 26 at ¶ 8). However, as noted above, Plaintiff is suing the State Defendants only in their individual capacities, so this contention is irrelevant. Second, the State Defendants contend they are immune from liability for negligence in their individual capacities under the State Tort Claims Act, because they acted in good faith without gross or wanton negligence while performing their discretionary duties. (D.I. 26 at ¶ 10)(citing 10 *Del. C.* § 4001). As discussed above regarding qualified immunity, the Court concludes that Plaintiff sufficiently alleges facts establishing the State Defendants' bad faith. Accordingly, the State Defendants' motion to dismiss Plaintiff's negligence claim must be denied.

CONCLUSION

For the reasons discussed, the Court concludes that Defendant Marvel's motion to dismiss should be granted. The Court also concludes that the State Defendants' motion to dismiss should be granted as to Plaintiff's claims against Defendants Williams and Hawthorne under 42 U.S.C. § 1983, but should be denied in all other respects.

An appropriate Order will be entered.

ORDER

At Wilmington this 18 day of July, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant P.H.S. Medical Department Supervisor R.N. Marvel's Motion to Dismiss (D.I.30) is *GRANTED.*

2. State Defendants' Motion to Renew Motion to Dismiss (D.I.31) is *GRANTED* as to Plaintiff's claims against Defendants Williams and Hawthorne under 42 U.S.C. § 1983, but is *DENIED* in all other respects.

D.Del.,2001.
Bowers v. Mounet
Not Reported in F.Supp.2d, 2001 WL 826556 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

350 F.Supp.2d 571                                                                                    Page 1
350 F.Supp.2d 571
(Cite as: 350 F.Supp.2d 571)

H
Briefs and Other Related Documents

United States District Court,D. Delaware.
Ronald W. BREITIGAN, Plaintiff,
v.
NEW CASTLE COUNTY, Defendant.
**No. C.A.02-1333-GMS.**

Oct. 13, 2004.

**Background:** Police officer who was forced to retire at age 55 filed action against, inter alia, county. The District Court, 2003 WL 21663676, granted county's motion to dismiss first amended complaint. Police officer filed second amended complaint alleging age discrimination in violation of Age Discrimination in Employment Act (ADEA), claiming violations of equal protection and due process, and seeking declaration of his rights under pension plans of which he was member. County moved to dismiss.

**Holdings:** The District Court, Sleet, J., held that:

7(1) county's retirement plan was not definitively "bona fide" within meaning of ADEA exemption for employers of firefighters and law enforcement officers;

10(2) fact that municipal ordinance requiring police officers to retire at age 55 predated enactment of ADEA did not mean it per se could not be challenged as "subterfuge" to evade purposes of ADEA, which would place it outside that exemption;

11(3) county's mandatory retirement policy did not violate equal protection; and

12(4) county ordinance which allegedly contained vague and conflicting retirement provisions for county police officers did not violate due process as applied to plaintiff, who had only thirteen years of credited service.

Motion granted in part and denied in part.

West Headnotes

[1] Federal Civil Procedure 170A €═1722

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)1 In General
170Ak1722 k. Nature and Purpose. Most Cited Cases
Purpose of motion to dismiss for failure to state claim is to test sufficiency of complaint, not to resolve disputed facts or decide merits of case. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[2] Federal Civil Procedure 170A €═1771

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)3 Pleading, Defects In, in General
170Ak1771 k. In General. Most Cited Cases

Federal Civil Procedure 170A €═1829

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1827 Determination
170Ak1829 k. Construction of Pleadings. Most Cited Cases

Federal Civil Procedure 170A €═1835

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1827 Determination
170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
In deciding motion to dismiss for failure to state claim, court must accept as true facts alleged in complaint and all reasonable inferences that can be drawn from them; in particular, court looks to whether sufficient facts are pleaded to determine that complaint is not frivolous, and to provide defendants with adequate notice to frame answer. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[3] Federal Civil Procedure 170A €═1835

170A Federal Civil Procedure

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

350 F.Supp.2d 571                                                                                                    Page 2
350 F.Supp.2d 571
**(Cite as: 350 F.Supp.2d 571)**

170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1827 Determination
170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
Court need not credit complaint's bald assertions or legal conclusions when deciding motion to dismiss for failure to state claim. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[4] **Federal Civil Procedure** 170A ⟶1773

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)3 Pleading, Defects In, in General
170Ak1773 k. Clear or Certain Nature of Insufficiency. Most Cited Cases
Court will only dismiss complaint for failure to state claim if it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations; thus, in order to prevail, moving party must show beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[5] **Civil Rights** 78 ⟶1201

78 Civil Rights
78II Employment Practices
78k1199 Age Discrimination
78k1201 k. Practices Prohibited or Required in General; Elements. Most Cited Cases
Prima facie case of age discrimination under ADEA generally requires employee to allege four elements: (1) he is at least 40 years of age, (2) he is qualified for position, (3) he suffered adverse employment decision, and (4) nonmembers of protected class were treated more favorably, i.e., circumstances give rise to inference of discrimination. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

[6] **Civil Rights** 78 ⟶1207

78 Civil Rights
78II Employment Practices
78k1199 Age Discrimination
78k1207 k. Public Employment. Most Cited Cases
To qualify for ADEA firefighter or law enforcement officer exemption, retirement plan must meet four criteria: (1) it must be sort of plan covered by section, (2) it must be bona fide, (3) county's action must be pursuant to plan, and (4) plan must not be subterfuge to evade purposes of ADEA. Age Discrimination in Employment Act of 1967, § 4(j), 29 U.S.C.A. § 623(j).

[7] **Civil Rights** 78 ⟶1206

78 Civil Rights
78II Employment Practices
78k1199 Age Discrimination
78k1206 k. Pensions, Retirement Plans, and Employee Benefits. Most Cited Cases
Retirement plan is "bona fide" within meaning of ADEA if it exists and pays benefits. Age Discrimination in Employment Act of 1967, § 4(f)(2), (j)(2), 29 U.S.C.A. § 623(f)(2), (j)(2).

[8] **Civil Rights** 78 ⟶1206

78 Civil Rights
78II Employment Practices
78k1199 Age Discrimination
78k1206 k. Pensions, Retirement Plans, and Employee Benefits. Most Cited Cases
Not all retirement plans that are not "subterfuges" are necessarily "bona fide," for purposes of ADEA exemption; retirement plan may be neither. Age Discrimination in Employment Act of 1967, § 4(j)(2), 29 U.S.C.A. § 623(j)(2).

[9] **Civil Rights** 78 ⟶1206

78 Civil Rights
78II Employment Practices
78k1199 Age Discrimination
78k1206 k. Pensions, Retirement Plans, and Employee Benefits. Most Cited Cases
For purposes of ADEA exemption, "subterfuge" is scheme, plan, stratagem, or artifice of evasion. Age Discrimination in Employment Act of 1967, § 4, (j)(2), 29 U.S.C.A. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

623(j)(2).

**[10] Civil Rights 78 ⇌1207**

78 Civil Rights
78II Employment Practices
78k1199 Age Discrimination
78k1207 k. Public Employment. Most Cited Cases
Fact that municipal ordinance requiring police officers to retire at age 55 predated enactment of ADEA did not mean it per se could not be challenged as "subterfuge" to evade purposes of ADEA, for purposes of determining whether discharge of firefighters or law enforcement officers pursuant to bona fide retirement plan was exempt from ADEA. Age Discrimination in Employment Act of 1967, § 4(j)(2), 29 U.S.C.A. § 623(j)(2).

**[11] Constitutional Law 92 ⇌238.5**

92 Constitutional Law
92XI Equal Protection of Laws
92k238.5 k. Public Office or Employment. Most Cited Cases

**Counties 104 ⇌67**

104 Counties
104III Officers and Agents
104k67 k. Removal. Most Cited Cases
Equal protection was not violated by county ordinance which mandated retirement for all police officers at age 55; county's justification for that policy, the protection of the public by assuring the preparedness of its police officers, passed rational basis review. U.S.C.A. Const.Amend. 14.

**[12] Constitutional Law 92 ⇌278.4(3)**

92 Constitutional Law
92XII Due Process of Law
92k278.4 Regulations Affecting Public Officers and Employees
92k278.4(3) k. Discipline, Suspension, Lay-Off, or Discharge. Most Cited Cases

**Counties 104 ⇌67**

104 Counties
104III Officers and Agents
104k67 k. Removal. Most Cited Cases
County ordinance which allegedly contained vague and conflicting retirement provisions for county police officers did not violate due process, as applied to police officer with only thirteen years of credited service. U.S.C.A. Const.Amend. 14.

*573 Frank E. Noyes, II, of White & Williams, LLP, Wilmington, Delaware, for Plaintiff.
Michael F. Foster, Department of Justice, State of Delaware, Wilmington, DE, for State of Delaware. Eric L. Episcopo, New Castle County Law Department, New Castle, Delaware, Megan Kochell D'Iorio, New Castle County Law Department, for defendant.

OPINION

SLEET, District Judge.

**I. INTRODUCTION**

On July 29, 2002, Ronald W. Breitigan ("Breitigan") filed the above-captioned action.[FN1] In his second amended complaint, he alleges age discrimination by New Castle County ("the County") in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. (D.I. 50 ¶¶ 32-38 (Count I)), and unlawful differential treatment in violation of the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 (D.I. 50 ¶¶ 39-47 (Count II)). He further alleges the County ordinances mandating his retirement are impermissibly vague under the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 (D.I. 50 ¶¶ 48-54 (Count III)). In Count IV, Breitigan seeks "a declaration of his rights under the pension plans of which he is a member," including the State Employees' Pension Plan and the New Castle County Retirement System. (D.I. 50 ¶¶ 55-57.) Presently before the court is the County's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the court will deny the motion as to Count I, and grant it as to Counts II and III. Count IV, to which the County did not respond in its brief, is dismissed *sua sponte* by the court for lack of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

350 F.Supp.2d 571
350 F.Supp.2d 571
(Cite as: 350 F.Supp.2d 571)

Page 4

subject matter jurisdiction.

> FN1. Although this case was originally assigned to the Honorable Joseph Farnan, Jr., it was reassigned to this court on April 9, 2003. (D.I.39.)

## II. JURISDICTION

The court's jurisdiction for all counts is premised on 28 U.S.C. § 1331 (1993).

## III. BACKGROUND

In June 1988, at age 42, Ronald W. Breitigan was hired as a police officer by the New Castle County Police Department. (D.I. 50 ¶ 9.) Thirteen years later, in May 2001, at the age of 55, Breitigan was forced to retire (id.¶ 10) pursuant to a County ordinance mandating retirement for all police officers at that age, New Castle County, Del., Code § 26.03.908(B) (May 12, 1998). Dating back to 1973 (D.I.51, Ex. B), this ordinance (according to the County) is intended to provide greater "protection of the public by assuring preparedness of its police officers" (id. at 7). The County also has a retirement pension plan, the full benefits of which do not accrue until an officer has twenty years of service credit. Code § 26.04.106(A). Since Breitigan was hired at age 42 and forced to retire at age 55, he *574 has only thirteen years of credit and does not qualify for full pension benefits.[FN2]

> FN2. Breitigan's second amended complaint also alleges the County represented to him that he would be permitted to work beyond age 55, in spite of the ordinance, so that he would qualify for full pension benefits. (D.I. 50 ¶ 10.) While that fact may be somehow relevant at a later stage of this lawsuit, it has no bearing on this motion to dismiss.

Alleging age discrimination, Breitigan filed a complaint with the Equal Employment Opportunity Commission ("EEOC") around October 31, 2001. (D.I. 50 ¶ 30.) By a letter dated April 30, 2002, the EEOC issued to Breitigan a "right to sue" letter. (Id.¶ 31.) Breitigan originally filed suit in this court on July 29, 2002. (D.I.1.) After two amendments to his complaint, Breitigan argues that the County's action was in violation of the ADEA and the Equal Protection Clause, and that the ordinance mandating his retirement violates the Due Process Clause. (D.I. 50 ¶¶ 32-54.) He also requests the court to declare his rights under the retirement plans in which he is a participant. (Id.¶¶ 55-58.) In response, the County moved to dismiss Counts I-III pursuant to Fed.R.Civ.P. 12(b)(6). (D.I.51.)

## IV. STANDARD OF REVIEW

[1] [2] [3] [4] The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). Thus, in deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." Colburn v. Upper Darby Tp., 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3rd Cir.1997). The court will only dismiss a complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## V. DISCUSSION

### A. ADEA (Count I)

Breitigan's main contention is that the County engaged in unlawful age discrimination in violation of the Age Discrimination in Employment Act of 1967. Section 4(a) of the ADEA reads as follows:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



350 F.Supp.2d 571  
350 F.Supp.2d 571  
(Cite as: 350 F.Supp.2d 571)

Page 5

**(a) Employer practices**
It shall be unlawful for an employer-
**(1)** to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]

29 U.S.C. § 623 (1999). However, in § 4(j) Congress created an exemption for employers of firefighters and law enforcement officers:*575 **(j) Employment as firefighter or law enforcement officer**
It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken-
**(1)** with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained-
**(A)** the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; [and]

. . . . .

**(2)** pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

*Id.* Therefore, a *prima facie* case of age discrimination by a police officer requires Breitigan first to allege all the elements of a *prima facie* case of age discrimination under the ADEA generally, and second to allege that the County's retirement plan does not fit into the § 4(j) exemption. FN3

> FN3. The issue of which party bears the burden as to the § 4(j) exemption requires a review of the legislative history of the ADEA. In 1989, Supreme Court held that the burden was on the plaintiff to disprove a similar exemption in § 4(f)(2). *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 181, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). When *Betts* was decided, section 4(f)(2) read:

**(f)** It shall not be unlawful for an employer, employment agency, or labor organization-

. . . . .

**(2)** to observe the terms of a bona fide seniority system or any bonafide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this Act[.]
Age Discrimination in Employment Act of 1967, Pub.L. No. 90-202, § 4, 81 Stat. 602, 603 (1967) (current version at 29 U.S.C. § 623 (1999)).
As a result of the holding in *Betts,* Congress acted swiftly to overturn the Court. The congressional record states, "the employer bears the burden to plead and prove the defenses and exceptions established in [section 4(f)(2) ].... Accordingly, the language of section 4(f)(1) that is commonly understood to signify an affirmative defense ('It shall not be unlawful ... to take any action otherwise prohibited by the ADEA' [ ] ) has been incorporated as part of section 4(f)(2)." S.Rep. No. 101-263, at 30 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1535. Thus, it is the phrase "to take any action otherwise prohibited" that signifies a defendant's burden.
The section at issue in this case, section 4(j), was re-enacted in 1996-six years after the 1990 amendment to § 4(f)(2). Conspicuously missing from § 4(j) is the phrase "to take any action otherwise prohibited." Since Congress knew of the correct operative language and declined to include it, the court believes the burden must remain with the plaintiff to disprove the § 4(j) exemption.

**[5]** A *prima facie* case of age discrimination under the ADEA generally requires the plaintiff to allege four elements: (1) he is at least 40 years of age; (2) he is qualified for the position; (3) he suffered an adverse employment decision; and (4) non-members of the protected class were treated more favorably (i.e., circumstances give rise to an inference of discrimination). *Windfelder v. May Dept. Stores Co.,* 93 Fed.Appx. 351, 354 (3d Cir.2004). The County's motion does not claim that Breitigan failed to allege these elements (see D.I. 51 at 3), so the court will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

assume that a *prima facie* case was so alleged.

*576 [6] As a law enforcement officer, Breitigan must also allege that the § 4(j) exemption does not apply to the County's retirement plan. There appears to be no dispute between the parties as to the requirements of § 4(j)(1). However, the parties do disagree over whether the County's action was taken "pursuant to a bona fide ... retirement plan that is not a subterfuge to evade the purposes of this chapter." § 4(j)(2). In *EEOC v. County of Orange,* the Ninth Circuit elucidated the meaning of this phrase in the context of § 4(f)(2). [FN4] 837 F.2d 420 (9th Cir.1988). According to that court, to qualify for the exemption a retirement plan must meet four criteria:

> FN4. *County of Orange* pre-dates the 1990 amendment to § 4(f)(2), which eliminated the "subterfuge" requirement. S.Rep. No. 101-263, at 18, *reprinted in* 1990 U.S.C.C.A.N. at 1523. However, the pre-amendment language of § 4(f)(2) is substantially similar to the current language of § 4(j)(2). *See supra* note 3. Furthermore, other courts have used analysis of pre-amendment § 4(f)(2) to inform their interpretations of current § 4(j)(2). *See, e.g., Minch v. City of Chicago,* 363 F.3d 615, 623 (7th Cir.2004); *Knight v. State of Georgia,* 992 F.2d 1541, 1545-46 (11th Cir.1993). Therefore, the court will be guided by these pre-amendment interpretations of § 4(f)(2) in its analysis of § 4(j)(2).

(1) it must be the sort of "plan" covered by the section;
(2) it must be "bona fide;"
(3) the County's action must be [pursuant to] the plan; and
(4) the plan must not be a subterfuge to evade the purposes of the Act.

*County of Orange,* 837 F.2d at 422. Since the burden is on the Breitigan to disprove the § 4(j) exemption, he must disprove at least one of these criteria. In the context of a Rule 12(b)(6) motion, this means Breitigan must merely allege that one or more of these criteria are not met by the County's retirement plan. On the other hand, the County's motion will be denied unless it can definitively rebut every allegation by Breitigan that a particular criterion is not met by its retirement plan. For every such allegation, the County must show that "no set of facts" can disprove the criterion in question. *See Conley,* 355 U.S. at 45-46, 78 S.Ct. 99. In this case, only the second and fourth criteria are at issue. [FN5] Thus, it is incumbent upon the County to demonstrate that Breitigan is incapable of proving any set of facts that would allow him to demonstrate either that the plan is not bona fide, or that the plan is a subterfuge.

> FN5. Breitigan clearly alleges in his second amended complaint that the County's retirement plan is not bona fide. (D.I. 50 ¶¶ 36-37.) However, the court is unable to find the word "subterfuge" anywhere in that complaint. Nevertheless, because the County raises the issue in its brief (D.I. 51 at 4-5) and elicited a responsive argument (D.I. 55 at 9-10), the court will assume that Breitigan's pleading was sufficient to put the County on notice of his intention to challenge the "subterfuge" criterion as well.

1. The "Bona Fide" Criterion

[7] The definition of "bona fide" is straightforward. A retirement plan is "bona fide" within the meaning of the ADEA if it "exists and pays benefits." *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 166, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). Breitigan clearly alleges that the County's retirement plan is not bona fide (D.I. 50 ¶¶ 36-37), but he does not do so in terms of the *Betts* definition. At this stage, it is sufficient for him to simply allege that the plan is not bona fide with minimal explanation. It is the County's obligation as movant to show that Breitigan cannot prove any set of facts to support this allegation.

*577 [8] The County argues that its retirement plan is bona fide because it is not a subterfuge to evade the purposes of the ADEA. (D.I. 51 at 4.) This argument is nothing more than an attempt to prove the "bona fide" criterion by defining it in terms of the "not a subterfuge" criterion. In effect, the county argues that all retirement plans that are not subterfuges are necessarily bona fide. This logic fails because a retirement plan may be neither a subterfuge nor bona fide. In *Betts,* the Supreme Court limited subterfuges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to those plans "intended to serve the purpose of discriminating." 492 U.S. at 181, 109 S.Ct. 2854. Conversely, those plans that are *not* "intended to serve the purpose of discriminating" are *not* subterfuges. Applying this rationale to the County's argument, it must follow that a plan not "intended to serve the purpose of discriminating" is necessarily bona fide (i.e., "exists and pays benefits"). It does not take much imagination to envision a plan that neither "exists and pays benefits," nor is "intended to serve the purpose of discriminating." Clearly then, "bona fide" and "not a subterfuge" are independent criteria of the § 4(j) exemption, and must be proven independently.

Furthermore, to the extent that the County argues the existence of facts (perhaps even overwhelming facts) which tend to show that the plan "exists and pays benefits," it is a misplaced argument. The appropriate place for such an argument is in a motion for summary judgment. Therefore, the County's motion to dismiss as to Count I must be denied.

### 2. The "Not a Subterfuge" Criterion

[9] Even if the County were able to definitively demonstrate that the plan is bona fide, it would still need to show that the plan is not a subterfuge. Again, the definition is straightforward. A subterfuge is "a scheme, plan, stratagem, or artifice of evasion." *Betts,* 492 U.S. at 167, 109 S.Ct. 2854. Given this definition, the Supreme Court held in *Betts* that one aspect of a state-run retirement plan unchanged since 1959 could not possibly be a scheme, plan, stratagem, or artifice of evasion to evade the ADEA, which was not made applicable to the states until 1974. See *id.* at 168-69, 109 S.Ct. 2854. Subsequently, the Eleventh Circuit Court of Appeals in *Knight v. State of Georgia* construed this as a *per se* rule that "bona fide seniority systems or retirement plans that pre-date[ ] the enactment of the ADEA [cannot] be challenged as subterfuges." 992 F.2d 1541, 1545 (11th Cir.1993). The County argues that this *per se* rule applies here because the municipal ordinance requiring police officers to retire at age 55 dates back to 1973 (D.I. 51 at 3-4)-prior to the amendment explicitly extending the ADEA's coverage to state and local governments. Fair Labor Standards Amendments of 1974, Pub.L. No. 93-259, § 28(a)(2), 85 Stat. 55, 78 (1974).

The court respectfully disagrees with the Eleventh Circuit's analysis of *Betts*. In *Betts,* after defining the term "subterfuge," the Supreme Court stated in reference to an earlier case,

Viewed in this light, the retirement plan at issue could not possibly be characterized as a subterfuge to evade the purposes of the Act, since it had been established in 1941, long before the Act was enacted. As we observed, "[t]o spell out an intent in 1941 to evade a statutory requirement not enacted until 1967 attributes, at the very least, a remarkable prescience to the employer. We reject any such *per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act."

*578 *Betts,* 492 U.S. at 167, 109 S.Ct. 2854 (quoting *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977)). The Court went on to apply that reasoning to the facts in front of it:While *McMann* remains of considerable relevance to our decision here, we reject the argument that it is dispositive. It is true that the age-60 rule was adopted before 1974, and is thus insulated under *McMann* from challenge as a subterfuge. The plan provision attacked by appellee, however, is the rule that disability retirees automatically receive a minimum of 30 percent of their final average salary upon retirement, while disabled employees who retire after age 60 do not. The 30 percent floor was not added to the plan until 1976, and to the extent that this new rule increased the age-based disparity caused by the pre-Act age limitation, *McMann* does not insulate it from challenge. No "remarkable prescience" would have been required of [appellant] in 1976 for it to formulate the necessary intent to evade the ADEA, and thus the automatic rule of *McMann* is inapplicable.

*Id.* at 169, 109 S.Ct. 2854 (internal citations omitted).

Starting with the Court's language, it did not explicitly state that any plan in place prior to the enactment of the relevant portion of the ADEA is afforded *per se* treatment. Instead, the Court rejected a *per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act. Granted, the Court did use some fairly strong language regarding pre-ADEA plans (e.g., "insulated under *McMann* from challenge as a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subterfuge" and "automatic rule of *McMann*" ). However, this language is softened by the fact that the retirement plan in *McMann* was established twenty-six (26) years before the ADEA was enacted, and the so-called "age-60" rule in *Betts* was established fifteen (15) years before the ADEA was applied to state and local governments. It would indeed take "remarkable prescience" for the plan in *McMann* and the rule in *Betts* to be considered subterfuges. On the other hand, as Breitigan argues, a retirement plan established on the eve of the enactment of the 1974 amendment to the ADEA would not take "remarkable prescience" and could easily be a subterfuge.

In light of the quoted passages above, it seems clear that the Court did not intend its decisions in *McMann* and *Betts* to be read as creating a *per se* rule. Were there any lingering doubts on this point, however, the Congress removed them in 1990 when it amended the ADEA to directly address the very contention advanced by the County here. In particular, Congress added a new section: "A seniority system or employee benefit plan shall comply with this chapter regardless of the date of adoption of such system or plan." § 4(k). The following passages from the legislative history are even more revealing:
[T]he bill rejects any distinction between discriminatory provisions that pre-date the ADEA and those that were enacted after the passage of the Act. This clarifies that all forms of age discrimination in employee benefits are forbidden by the Act, regardless of their date of origin.

S.Rep. No. 101-263, at 6, *reprinted in* 1990 U.S.C.C.A.N. at 1510-11.[T]he Court [in *Betts* ] reaffirmed its holding in *United Air Lines, Inc. v. McMann,* that an employee benefit plan that predated the ADEA could not constitute a subterfuge to evade the purposes of the Act. In doing so, the Court expressly rejected the statement in the *579 1978 Conference Report and the floor statements of the managers, which had stressed the ADEA's coverage of all employee benefit plans regardless of their date of origin. The Court relied on its prior analysis in *McMann* because, in the Court's view, Congress had repudiated only the specific result of *McMann* but *not* the underlying reasoning of that decision.

S.Rep. No. 101-263, at 15, *reprinted in* 1990 U.S.C.C.A.N. at 1520 (emphasis in original).Once again, the Committee intends to overturn the erroneous interpretation of the Supreme Court in this regard. We do so by removing the term "subterfuge" from [section 4(f)(2) ], and by adding a new section 4(k) making explicit the applicability of the ADEA to *all* employee benefit plans. Twenty-three years after the enactment of the ADEA, the law simply should not permit employers who have been discriminating the longest-those with employee benefit plans that pre-date the Act-to continue to discriminate.

S.Rep. No. 101-263, at 29, *reprinted in* 1990 U.S.C.C.A.N. at 1534 (emphasis in original).

These excerpts are clear and to the point-the Court's holding in *Betts* regarding pre-ADEA retirement plans challenged as subterfuges under § 4(f)(2) is overturned. The only remaining question is whether this applies equally to plans challenged as subterfuges under § 4(j)(2). After all, the legislative history states that *Betts* was overturned in two steps: (1) "subterfuge" was eliminated from § 4(f)(2); and (2) Congress added § 4(k). In spite of the first step, section 4(j)(2) was re-enacted six years later in 1996 *with* the term "subterfuge." Therefore, it could be argued that this supposed *per se* rule still applies to § 4(j)(2) because Congress re-introduced "subterfuge" knowing that was the key term leading to the problematic holdings in *McMann* and *Betts*.

[10] Nevertheless, the court believes this is not the case. Elimination of the term "subterfuge" fixed § 4(f)(2) alone; its elimination was sufficient to overturn the Court's reliance on the definition of that term to exempt pre-ADEA plans. On the other hand, section 4(k) seems to have been a means of preventing providers of retirement plans exempted by other sections of the ADEA-such as the future § 4(j)(2)-from raising the *McMann-Betts* shield ever again. Therefore, aspects of the retirement plan enacted before 1974 are not insulated from attack as a subterfuge. Moreover, any changes to the plan since the 1974 amendment have always been, and continue to be, subject to such attack. Thus, the County's motion to dismiss as to Count I must be denied on these grounds as well.

**B. Equal Protection (Count II)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

350 F.Supp.2d 571
350 F.Supp.2d 571
(Cite as: 350 F.Supp.2d 571)

Page 9

[11] Breitigan alleges that the County treated him in a manner that violated the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. (D.I. 50 ¶¶ 39-47.) [FN6] He seems to make two contentions. His main allegation of differential treatment stems from the fact that applicants to the police force under the age of 36 qualify for a full pension at age 55, but older applicants (such as Breitigan) do not qualify for a full pension. (D.I. 50 ¶ 42.) Breitigan also seems to implicitly suggest that he was *580 treated differently by being forced into retirement at age 55, when he was still qualified to perform his job. The difference between these two allegations is slight at best because the differential treatment at the hiring stage is a natural consequence of having a mandatory retirement age coupled with a minimum required term to qualify for full pension benefits. Regardless, there is no need to split hairs because Breitigan's equal protection claim fails, in either case, under *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (holding that mandatory police retirement at age 50 does not violate equal protection).

> FN6. The court notes that Breitigan failed to identify the statutory vehicle pursuant to which he brings this equal protection claim, but it can only be 42 U.S.C. § 1983 (2003). This is the second amended complaint, so the Breitigan has had ample opportunity to include it. Nevertheless, it is a moot point because Count II is dismissed.

In fact, it is baffling that Breitigan even alleged an equal protection violation given the directly controlling precedent of *Murgia*. Breitigan does not attempt to distinguish *Murgia*, nor does he even mention it in his brief. Furthermore, in his second amended complaint he states, "[t]he plaintiff is in a protected class (age)." (D.I. 50 ¶ 46.) The court is confused by this statement because it is absolutely contradicted by *Murgia*. [FN7] 427 U.S. at 313-14.

> FN7. The court suggests that plaintiff's counsel reacquaint himself with Rule 3.3 of the Delaware Lawyers' Rules of Professional Conduct, which states:
> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> [or]
> (2) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]
> Alleging that age is a protected class is simply incorrect under the Supreme Court's equal protection jurisprudence. Any first-year constitutional-law text book would reveal that fact. Thus, counsel's statement is an arguable violation of Rule 3.3(a)(1). Moreover, although the County disclosed *Murgia*, plaintiff's counsel is skirting dangerously close to violating Rule 3.3(a)(2) by disclosing some cases in the complaint, but not the one case "directly adverse to the position of his client" (i.e., *Murgia* ).

Even though age is not a suspect or protected class, the County's mandatory retirement policy must pass rational basis review. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The County suggests that one justification for its policy is "the protection of the public by assuring the preparedness of its police officers." (D.I. 51 at 7.) This justification was accepted almost verbatim in *Murgia*, 427 U.S. at 314-15, 96 S.Ct. 2562. Since only one plausible justification is enough to pass rational basis review, the County's motion as to Count II is granted.

### C. Due Process (Count III)

Breitigan also claims that two sections of the New Castle County Code are unconstitutionally vague under the "Due Process Clause of the 5th and 14th Amendments to the United States Constitution." [FN8] (D.I. 55 at 13.) To the extent that he is bringing a claim under the Fifth Amendment, it is dismissed since this was action by the state.

> FN8. *See supra* note 6.

The code sections at issue are the following:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

350 F.Supp.2d 571

Page 10

350 F.Supp.2d 571
**(Cite as: 350 F.Supp.2d 571)**

A. A member of the employees' retirement system completing at least thirty (30) years of credited service may retire at his or her option at any age and receive a service retirement annuity. A County police officer, *completing at least twenty (20) years of credited service,* may retire at his or her option at any age up to fifty-five (55), which is ***581** mandatory, and receive a service retirement annuity.

B. *A member other than a County police officer* completing at least twenty-five (25) years of credited service may retire, at his or her option, at age fifty (50) or thereafter.

C. *A member* completing fifteen (15) years of credited service may, at his or her option, retire at age fifty-five (55) *or thereafter* and receive a service retirement annuity.

New Castle County, Del., Code § 26.04.106 (May 12, 1998) (emphasis added).Subsection A of this Section shall permit a full-time County employee to become seasonal or part-time upon reaching age seventy (70). This does not apply to retired employees receiving a pension who subsequently are appointed by the County Council to serve as judgment commissioners. *The compulsory retirement age for a police officer shall be his or her 55th birthday.*

*Id.* § 26.03.908(B) (emphasis added).

Although Breitigan's due process argument pertaining to the emphasized portions of the above ordinances is somewhat unclear (see D.I. 55 at 13), his assertion seems to be that § 26.04.106 is both internally and externally inconsistent. As the court understands it, the key is Breitigan's interpretation of "member" in § 26.04.106(C). He argues that this term must include police officers since adjacent subsection (B) was drafted to explicitly exclude police officers (i.e., "A member other than a County police officer"). In other words, if the drafters had intended to exclude police officers from the coverage of subsection (C), they would have used the same language contained in subsection (B). Therefore, under Breitigan's interpretation, both subsection (A) and subsection (C) apply to police officers. This creates an internal conflict because subsection (A) specifies a mandatory retirement age and full pension benefits upon the completion of twenty years of service, whereas subsection (C) specifies a permissive retirement age and full pension benefits upon the completion of only fifteen years of service. Similarly, the external conflict he points out between subsection (C) and § 26.03.908(B) arises because the former specifies a permissive retirement age, while the latter specifies a mandatory retirement age. Therefore, Breitigan asks the court to strike these ordinances "as unconstitutionally inconsistent, unclear, vague and contradictory, at least as applied to this plaintiff." (D.I. 55 at 13.)

[12] Even if ordinances with these alleged conflicts could be struck down as violative of due process, [FN9] the court will not do so here because subsection (C), the source of the problem, does not apply to Breitigan. Subsection (C) only applies to "members" with fifteen years of credited service; Breitigan has only thirteen years of credited service (D.I.50, ¶ 10). Therefore, as applied to this plaintiff, the only relevant ordinance, § 26.03.908(B), clearly states that Breitigan must retire on his 55th birthday. As such, the County's motion as to Count III is granted.

> FN9. Breitigan cites no case for this proposition, and the court is not going to do his research for him (especially in light of the amount of research the court was required to do, on behalf of both parties, regarding the ADEA claim).

### D. Declaratory Judgment (Count IV)

Lastly, Breitigan seeks a declaration of his rights under the pension plans of which he is a member, presumably pursuant to 28 U.S.C. § 2201 (1994). (D.I. 50 ¶¶ 55-57.) However, the Supreme Court has ***582** stated that the consideration of such relief is within the discretion of the court:

The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, styled "creation of remedy," provides that in a case of actual controversy a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Court continued by warning that courts "must be alert to avoid imposition upon their jurisdiction through obtaining futile or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

premature interventions." *Id.* at 243, 73 S.Ct. 236.

In this case, Breitigan has not made the slightest attempt to show that a controversy exists-for example, that the County is about to sue him under the terms of the pension plans. In reality, the court believes Breitigan to be seeking no more than an advisory opinion. Since Art. III courts have no power to issue advisory opinions, *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the court will not endeavor to do so here. Therefore, Count IV is dismissed for lack of subject matter jurisdiction.

## VI. CONCLUSION

For the aforementioned reasons, the County's motion to dismiss is denied as to Count I and granted as to Counts II and III. Furthermore, the court dismisses Count IV *sua sponte* for lack of subject matter jurisdiction.

D.Del.,2004.
Breitigan v. New Castle County
350 F.Supp.2d 571

Briefs and Other Related Documents (Back to top)

• 1:02CV01333 (Docket) (Jul. 29, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.