IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SSGT. JASON A. ADKINS, USAF, | ) | C.A. NO.: 04-1453-JJF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS'** |
| | ) | **MEMORANDUM OF** |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | **LAW IN SUPPORT OF** |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | **DEFENDANTS' MOTION** |
| GEN. JOHN W. HANDY,Commander Air Mobility | ) | **TO DISMISS** |
| Command; COL. JOHN I. PRAY, JR., 436th Airlift | ) | |
| Wing Commander, in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT 10:**

**COPIES OF UNPUBLISHED OPINIONS
REQUIRED UNDER LOCAL RULE 7.1.3(a)(G)**

**(Part 4 of 4)**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Robin MCINTYRE, Plaintiff,
v.
CITY OF WILMINGTON, Defendant.
**No. C.A. NO. 01-396 GMS.**

July 9, 2002.

Black employee sued city, claiming racial discrimination in connection with his dismissal as code enforcement officer and reassignment to lower position of meter reader. City moved to dismiss. The District Court, Sleet, J., held that: (1) there was subject matter jurisdiction, and (2) employee failed to state claim.

Complaint dismissed.

West Headnotes

**[1] Civil Rights 78 ☞1532**

78 Civil Rights
78IV Remedies Under Federal Employment Discrimination Statutes
78k1532 k. Pleading. Most Cited Cases
 (Formerly 78k375)
Claim of city employee, that he was dismissed from position as code enforcement officer and reassigned to lower position as meter reader, when caucasian was not similarly disciplined for comparable offense, would not be dismissed for lack of subject matter jurisdiction; essentials of racial discrimination in employment claim under Title VII were alleged. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; Fed. Rules Civ. Proc.Rule 12(b)(1), 28 U.S.C.A.

**[2] Civil Rights 78 ☞1128**

78 Civil Rights
78II Employment Practices
78k1124 Public Employment
78k1128 k. Discharge or Layoff. Most Cited Cases
 (Formerly 78k146)

Black city employee failed to state claim of racial discrimination, in violation of Title VII, in connection with his dismissal as code inspector and demotion to water meter reader; there was no direct evidence that removal was racially motivated, and there were unrefuted race neutral reasons for action, involving inappropriate conduct while in contact with public. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; Fed. Rules Civ. Proc.Rule 12(b)(6), 28 U.S.C.A.

Robin McIntyre, Wilmington, DE, for Plaintiff, pro se.

MEMORANDUM AND ORDER

SLEET, J.

I. INTRODUCTION

*1 On June 12, 2001, Robin McIntyre ("McIntyre"), a *pro se* plaintiff, filed a complaint alleging that his employer, the City of Wilmington, wrongfully dismissed him from his job as a Code Enforcement Officer with the Department of Licenses and Inspections ("DLI") and unfairly reassigned him to a lower level position as a water meter reader for the Department of Finance, Water Division ("DFWD"). Prior to filing his complaint with the court, McIntyre properly exhausted his state and federal administrative remedies by filing claims with both the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). After his claims were dismissed by both agencies, McIntyre timely filed his complaint within ninety days of receipt of the EEOC's right to sue letter. *See* 29 C.F.R. § 1601.19(a).

Presently before the court is the City of Wilmington's motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). McIntyre's complaint and its attachments are sufficient to constitute a basis for subject matter jurisdiction. Therefore, the City of Wilmington's motion to dismiss pursuant to Rule 12(b)(1) will be denied. McIntyre cannot, however, prove any set of facts consistent with the allegations in the complaint which would entitle him to relief. As a result, the City of Wilmington's motion to dismiss pursuant to Rule 12(b)(6) will be granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

## II. FACTS

Prior to September 14, 1998, McIntyre was employed by the DFWD. On September 14, 1998, McIntyre was promoted to a job with the DLI. Within the first three months of McIntyre's employment with the DLI, the department received several complaints regarding McIntyre's lack of professionalism. Shortly thereafter, the DLI Commissioner was replaced by a new Commissioner, James Mosely. While the outgoing commissioner had looked past the complaints regarding McIntyre, Commissioner Mosely took them more seriously. As a result, McIntyre was placed on extended probation.

During this extended probation, while inspecting an apartment building, McIntyre "had words" with a resident of the building in the presence of a DLI Senior Inspector. The resident with whom McIntyre argued turned out to be the future son-in-law of City of Wilmington Councilman Demetrio Ortega. Coincidentally, Councilman Ortega is chairman of the DLI. On March 1, 1999, McIntyre was dismissed from the DLI for inappropriate behavior and reassigned to his old job with the DFWD.

On October 29, 1999, McIntyre, an African American, filed a claim with the DDOL alleging racial discrimination in connection with his dismissal from the DLI. The completed DDOL claim form is attached to McIntyre's complaint. In the claim, McIntyre complains of the DLI's failure to terminate a Caucasian employee whose conduct was allegedly more egregious than his own. The claim states, "I was discharged from that dept. [sic] because of words with councilman's future son in law, after being on extended probation since then. A caucasion [sic] was not discharged after, allegedly kicking a door in (in uniform) put back on probation, while during he was allegedly (1) impersonating a police officer, (2) drunk and disorderly, (3) racial slurs, etc." On June 30, 2000, the DDOL dismissed McIntyre's charge, finding no reasonable basis to conclude that the DLI had discriminated against McIntyre. Soon thereafter, McIntyre filed a claim with the EEOC. Subsequent to the filing of the EEOC claim, the Caucasian employee McIntyre mentioned in his DDOL claim was also terminated. After adopting the factual findings of the DDOL, the EEOC also dismissed the claim. A right-to-sue letter was issued on June 4, 2001.

*2 McIntyre filed a timely complaint with the court on June 12, 2001. Upon filing his complaint, McIntyre completed and signed a JS-44 civil cover sheet which lists the City of Wilmington as the only captioned defendant. The form further designates the basis of jurisdiction as a federal question, the nature of the suit as Civil Rights-Employment, and the cause of action as "employment discrimination."

The complaint itself outlines the above-mentioned chain of events leading to his dismissal. It further states that Councilman Ortega's daughter was hired by the DLI shortly after he was fired. McIntyre also alleges in his complaint that he has been "harassed since returning to work [at the DFWD]." To support this assertion, McIntyre provides a list of two instances in which he believes he was harassed. The first reads, "I was suspended for 2 days for misreading 1 water meter." The second reads, "I was suspended for 2 weeks for misreading about 7 meters, allegedly." He ends his complaint by stating, "Somewhere in here, there has to be some wrong doings on the part of the city, and I need someone to help me find it, because I want to sue the city for a couple of reasons, harrassment [sic], favoritism, etc."

### III. STANDARDS OF REVIEW [FN1]

> FN1. Since the plaintiff is a *pro se* litigant, the court has a special obligation to construe his complaint liberally. *Zilch v. Lucht,* 981 F.2d 694, 694 (3d Cir.1992) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

#### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can take two forms: it can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Federal Savings and Loan,* 549 F.2d 884, 891 (3d Cir.1977). When reviewing a facial attack the court must consider the allegations of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

complaint as true, making all reasonable inferences in the plaintiff's favor. *Id. See also Barrister v. Wendy's Int'l. Inc.,* 1993 WL 293896, *3 (E.D.Pa. July 30, 1993).

When reviewing a factual attack, however, the court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case. *Mortensen, 549 F.2d at 891.* Therefore, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims for itself. *Id.* The plaintiff bears the burden to prove that jurisdiction does in fact exist. *Id.* However, the plaintiff's burden is relatively light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.' " *Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir.1987)* (quoting *Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).*

### B. Rule 12(b)(6) Standard

*3 In ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true. *See Graves v. Lowery, 117 F.3d 723, 726 (3d Cir.1997); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996).* Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. *See Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir.1991).* A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves, 117 F.3d at 726; Nami, 82 F.3d at 65* (both citing *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).*

### IV. DISCUSSION

#### A. Rule 12(b)(1) Motion to Dismiss

[1] "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litigation, 837 F.Supp. 104, 105 (E.D.Pa.1993), aff'd 39 F.3d 61 (3d Cir.1994).* Therefore, the court will first turn its attention to the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

In its motion, the City of Wilmington attacks McIntyre's complaint on both facial and factual grounds. First, the City attacks McIntyre's complaint on its face, noting that it fails to aver any basis for jurisdiction. While this is true, since McIntyre is a *pro se* plaintiff, the court must construe his complaint liberally. *Zilch, 981 F.2d at 694.* Although McIntyre's handwritten complaint does not itself state any specific basis for the court's jurisdiction, it does convey that McIntyre believes he was unfairly discharged and harassed by his employer. Additionally, the JS-44 civil cover sheet which McIntyre completed, signed and filed with the Clerk of Court upon filing his complaint designates the basis of jurisdiction as a federal question, the nature of the suit as Civil Rights-Employment, and the cause of action as "employment discrimination." Furthermore, the claim form that McIntyre filed with the DDOL alleges racial discrimination. [FN2] The pleading standard under the Federal Rules is generally liberal, and even more so for *pro se* plaintiffs. The court thus finds that it is not unreasonable to conclude that McIntyre is attempting to assert a racial discrimination claim against his employer pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Since Title VII is a federal statute, the court has federal question jurisdiction over the dispute. Therefore, the defendant's facial attack fails.

> FN2. Since the DDOL claim form was attached to the complaint, it may be considered by the court in the determination of this motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993)* (stating that when deciding a motion to dismiss, courts can generally consider the complaint, exhibits attached to the complaint, and matters of public record).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

The defendant also argues that the facts of the case do not give rise to federal jurisdiction. The court cannot accept this assertion. Although McIntyre has the burden of proving that jurisdiction exists, this burden is light. *Id.* Basically, McIntyre need only demonstrate that his claim is not wholly insubstantial, frivolous, devoid of merit, or made for the purpose of obtaining jurisdiction." *Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Kulick, 816 F.2d at 899.* McIntyre's DDOL claim alleges racial discrimination by his employer. It states that a Caucasian employee whose conduct on the job provided grounds for dismissal was not fired while he, an African-American, was fired for less egregious infractions. A racial discrimination claim is unquestionably within the purview of Title VII. McIntyre's claim, although perhaps weak, is substantially asserted so as to establish a basis for subject matter jurisdiction. Any other conclusion would overstep the bounds of a jurisdictional inquiry and lead into an evaluation of the merits of McIntyre's case. This would be an improper inquiry for a district court to make when reviewing a *Rule 12(b)(1)* motion. *See Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1281 (3d Cir.1993).* Therefore, the defendant's factual attack on subject matter jurisdiction also fails.

*\*4* For these reasons, the court concludes that the defendant's factual and facial attacks on the court's subject matter jurisdiction are without merit. The court will, therefore, decline to dismiss the complaint pursuant to *Rule 12(b)(1)* for lack of subject matter jurisdiction.

#### B. Rule 12(b)(6) Motion to Dismiss

[2] The standard governing a *Rule 12(b)(6)* motion to dismiss for failure to state a claim is not as constrained as the standard for a *Rule 12(b)(1)* motion. *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991).* A federal claim being reviewed under *Rule 12(b)(6)* does not have to be "wholly insubstantial" to be dismissed. *Id.* Rather, a court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves, 117 F.3d at 726.* Although McIntyre's complaint cannot be dismissed for lack of subject matter jurisdiction, it fails the 12(b)(6) test.

A racial discrimination case under Title VII can be made in one of two ways. First, under the *Price Waterhouse* analysis, *see Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989),* a plaintiff must produce direct evidence that race was a motivating factor in the employment decision. *See Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir.1994).* "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Nixon v. Runyan, 856 F.Supp. 977, 983 (E.D.Pa.1994).*

McIntyre's claim fails under the *Price Waterhouse* analysis. McIntyre's complaint contains broad allegations of harassment and favoritism, but absolutely no references to any specific facts that constitute direct proof of racial animus. In fact, McIntyre's complaint makes no mention of race at all. There are no references to racial jokes, epithets, gestures or any other racially tinged activity that could constitute direct evidence of a racial motivation of the part of the DLI. Thus, there is no direct evidence that race was a motivating factor in the DLI's decision to fire McIntyre.

A Title VII plaintiff can also prevail under the *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)* framework. In the *McDonnell Douglas* analysis, the plaintiff can attempt to demonstrate, through indirect evidence, that the defendant's actions were racially motivated. Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case by demonstrating that he is a member of a protected class. The plaintiff must then establish that he or she was qualified for an employment position, but was not hired or was fired from the position "under circumstances that give rise to an inference of unlawful discrimination." *See Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir.1995).* When the plaintiff establishes this prima facie showing, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision. *Id.* If the defendant produces one or more legitimate reasons, the presumption of discrimination is rebutted. The plaintiff must then prove that the employer's reasons were pretextual-that is, that they are false and that the real reason for the employment decision was discriminatory. *Id.*

*\*5* McIntyre's claim also fails under the burden-shifting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

regimen of *McDonnell Douglas*. First, McIntyre cannot establish a prima facie case of race discrimination. Although McIntyre is a member of a protected class, the circumstances surrounding his dismissal do not give rise to an inference of unlawful discrimination. The only allegation McIntyre has made which could possibly give rise to an inference of racial discrimination is his assertion that he was fired for less egregious infractions than those committed by a Caucasian employee. Subsequent to McIntyre's filing of the DDOL claim, however, this employee was also fired. The fact that both African American and Caucasian employees were discharged extinguishes any inference of unlawful discrimination.

Even if McIntyre could make a prima facie case, the court can easily determine, based solely on the complaint and its attached exhibits, that the City of Wilmington had several legitimate, non-discriminatory reasons for dismissing McIntyre from his position with the DLI. First, McIntyre states in his complaint that the commissioner of the DLI received complaints regarding McIntyre, and therefore, placed him on "extended probation." Secondly, McIntyre states that, while on probation, he "had words" with the Councilman Ortega's future son-in-law in the presence of a DLI Senior Inspector. The court ventures no opinion, but it might not be unreasonable to infer that McIntyre was dismissed from his job at the DLI because of the incident with the councilman's future son-in-law. In other words, the events surrounding McIntyre's dismissal might support the conclusion that he was fired for "stepping on the wrong toes," not because he is African-American. While this is unfortunate for McIntyre, there is absolutely no evidence which could support the assertion that McIntyre's dismissal was racially motivated.

Since the City of Wilmington has several legitimate, non-discriminatory reasons for dismissing McIntyre from the DLI, the burden shifts to McIntyre to prove that these reasons are pretextual. *See Waldron, 56 F.3d at 494*. McIntyre has not met this burden. The only evidence which could support the assertion that the City of Wilmington's reasons for dismissing McIntyre were pretextual is the allegation that a Caucasian employee who had engaged in more egregious conduct than McIntrye was not fired.

However, as previously noted, the fact that this co-worker was fired soon after McIntyre's DDOL claim was filed vitiates any argument that the reasons for McIntyre's termination were pretextual.

McIntyre has not demonstrated that his termination was either the direct or indirect result of racial animus. Consequently, he cannot prevail on his Title VII claim under either the *McDonnell Douglas or Price Waterhouse* standard. Thus, the court concludes that McIntyre's complaint fails to state a claim.

The conclusion that McIntyre's complaint does not state a claim upon which relief may be granted does not end the court's inquiry, however. The court must decide whether to grant leave to amend the complaint. The Supreme court has granted discretion to the District Courts in determining whether to grant or deny leave to amend. *Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)*. However, refusal to grant leave to amend without any justifying reason is an abuse of that discretion and is inconsistent with the spirit of the Federal Rules of Civil Procedure. *Id.* Furthermore, *pro se* plaintiffs should be given the opportunity to amend their complaints unless it clearly appears that the deficiency cannot be overcome by amendment. *Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir.1981)*. "Among the grounds that could justify the denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility." *In Re Burlington Coat Factory Sec. Litig.,* 144 F.3d 1410, 1434 (3d Cir.1997).

*6 In McIntyre's case, any amendment would be futile. Futility, in this context, means that the complaint, as amended, would fail to state a claim upon which relief may be granted. *Id.* In assessing futility, the district court should use the same standard of legal sufficiency that applies under Rule 12(b)(6). *Id.* The court is convinced that were McIntyre granted leave to amend, he would nevertheless be unable to state a claim upon which relief might be granted. In his DDOL claim, McIntyre failed to produce any facts or allegations which could convince the DDOL that he had a legitimate racial discrimination claim. Similarly, upon filing a claim with the EEOC, McIntyre failed to produce any evidence of racial discrimination. Finally, in the present lawsuit, McIntyre has failed to adduce facts which support a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                      Page 6
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

claim upon which relief could be granted. Thus, although McIntyre has had three opportunities to present facts supporting his claim, he has failed to do so on each occasion. Consequently, the court concludes that permitting McIntyre to amend his complaint will not result in the production of any new facts to support his claim. Therefore, leave to amend will not be granted.

## V. CONCLUSION

McIntyre's complaint, when considered together with its attachments and the JS-44 civil cover sheet, is sufficient to establish subject matter jurisdiction. Therefore, the court will not dismiss the complaint pursuant to Rule 12(b)(1). Nevertheless, McIntyre has not and cannot prove any set of facts that might demonstrate that his dismissal from the DLI was racially motivated. Therefore, the court will grant the defendant's motion to dismiss pursuant to Rule 12(b)(6).

NOW, THEREFORE, IT IS HEREBY ORDERED that:
1. The City of Wilmington's motion to dismiss (D.I.# 9) is GRANTED.
2. The Clerk shall close the case.

D.Del.,2002.
McIntyre v. City of Wilmington
Not Reported in F.Supp.2d, 2002 WL 1586280 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00396 (Docket) (Jun. 12, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                          Page 1

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Robin SCALISI and John Scalisi
v.
LIMERICK TOWNSHIP, W. Douglas Weaver,
Officer Adam Moore, Walter Zaremba,
Township Manager and John Doe
**No. Civ.A. 05CV3413.**

Nov. 10, 2005.
David M. Cedar, John I. McMahon, Jr., McMahon
& McMahon, Norristown, PA, Samuel Merovitz,
Merovitz & Cedar, LLP, Philadelphia, PA, for
Plaintiff.

Christopher P. Gerber, Siana Bellwoar &
McAndrew LLP, Chester Springs, PA, for
Defendant.

*MEMORANDUM AND ORDER*

JOYNER, J.

*1 Presently pending before the Court is the motion
of the defendants for dismissal of the plaintiffs'
complaint. Borrowing heavily from the
Memorandum and Order which we issued on April
26, 2005 in the companion case of *Schlichter v.
Limerick Township, et. al.,* Civ. A. No. 04-4229, we
shall grant the defendants' motion.

*History of the Case*
Plaintiffs in this case are Robin Scalisi, a former
administrative assistant employed by Limerick
Township and her husband, John Scalisi. Plaintiffs
allege in their complaint that throughout the course
of her employment with the township from March,

2000 until November, 2003, Mrs. Scalisi was
subjected to a sexually hostile work environment
created by the actions of Limerick Township Police
Officer Adam Moore and Police Chief W. Douglas
Weaver and tolerated by Township Manager Walter
Zaremba. Specifically, the Scalisis complain that
the sexually hostile environment was created by the
following incidents:
1. On February 14, 2003, Moore caused to be
published in the Pottstown Mercury Newspaper, a
Valentine's Day message which stated: "Dear
Sgt., Spring is right around the corner, just like
me. Look outside, see a Robin by the tree. Love
Azalea." (The plaintiff resides on Azalea Court in
Limerick Township.)
2. On May 17, 2003, Weaver and Moore caused a
hotel room key and package of condoms to be
placed on Sergeant Schlichter's personal Ford 150
truck which was found by Sergeant Schlichter and
his daughter.
3. On May 19, 2003, ... a bumper sticker was
placed by Moore and/or Weaver, on the right
bumper of Schlichter's truck entitled "Ass, Gas,
or Grass, Nobody Rides for Free."
4. On or about July 30, 2003, Moore mailed an
envelope to Mrs. Barbara Schlichter, which
contained a photograph he had taken of Sergeant
Schlichter's police vehicle parked outside
Plaintiff's home on Azalea Court. The photograph
stated in writing at the bottom "Bill lying to Barb
about why he's parked in front of his girlfriend's
house while on duty ... PRICELESS.
5. This photograph was also posted at the
Limerick Township Police Department Building
and viewed by numerous employees of Limerick
Township.
(Complaint, ¶ s18-20, 26, 31, 36-38).

Plaintiffs allege that both they and Sgt. Schlichter
reported these incidents to Defendant Zaremba, who
promised to look into them and take appropriate
action but nevertheless did nothing. (Complaint, ¶
s40-42). Mrs. Scalisi alleges that she was so

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

severely embarrassed and humiliated by these incidents of sexual harassment that her work performance was affected and the conditions of her employment were altered. (Complaint, ¶ s21, 28, 33 39). When it became apparent to wife-plaintiff that the township tolerated and promoted sexual harassment in the workplace, she resigned her position. (Complaint, ¶ 46). In response to Plaintiff's formal filing of a sexual harassment complaint with the township, the township accused Plaintiff of going to the newspapers. (Complaint, ¶ s 47, 52).

**\*2** Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") on June 2, 2005 and this suit was thereafter commenced on July 1, 2005 for the defendants'. alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* and the Pennsylvania Human Relations Act, ("PHRA") 43 P.S. § 951, *et. seq .,* violations of her First Amendment rights under 42 U.S.C. § 1983 and under Pennsylvania common law for invasion of privacy, placing her in a false light and for John Scalisi's loss of consortium. It is these claims which Defendants now seek to dismiss pursuant to Fed .R.Civ.P. 12(b)(6).

*Standards Applicable to Rule 12(b)(6) Motions*
As a general rule, in considering motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). *See Also: Ford v. Schering-Plough Corp.,* 145 F.3d 601, 604 (3d Cir.1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *In re Rockefeller Center Properties, Inc.,* 311 F.3d 198, 215 (3d Cir.2002). Dismissal is warranted only "if it is certain that no relief can be granted under any set of facts which

could be proved." *Klein v. General Nutrition Companies, Inc.,* 186 F.3d 338, 342 (3d Cir.1999) (internal quotations omitted). It should be noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *In re Rockefeller,* 311 F.3d at 216. A court may, however, look beyond the complaint to extrinsic documents when the plaintiff's claims are based on those documents. *GSC Partners, CDO Fund v. Washington,* 368 F.3d 228, 236 (3d Cir.2004); *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426. *See Also, Angstadt v. Midd-West School District,* 377 F.3d 338, 342 (3d Cir.2004).

*Discussion*
A. Plaintiff's Claims for Retaliation and Hostile Work Environment under Title VII and the Pennsylvania Human Relations Act.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 provides as follows, in relevant part:
(a) Employer practices
It shall be an unlawful employment practice for an employer-
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
**\*3** (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
...
(m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices
Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.
Under 42 U.S.C. § 2000e-3(a),
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Similarly, the Pennsylvania Human Relations Act, 43 P.S. § 955 provides in pertinent part,
It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:
(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness, or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. The provision of this paragraph shall not apply, to (1) operation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement, (2) operation of the terms or conditions of any bona fide group or employe (sic) insurance plan, (3) age limitations placed upon entry into bona fide apprenticeship programs of two years or more approved by the State Apprenticeship and Training Council of the

Department of Labor and Industry, established by the Act of July 14, 1961 ... Notwithstanding any provision of this clause, it shall not be an unfair employment practice for a religious corporation or association to hire or employ on the basis of sex in those certain instances where sex is a bona fide occupational qualification because of the religious beliefs, practices, or observances of the corporation, or association.
*4 ...
(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.
(e) For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

As employer liability under the Pennsylvania Human Relations Act follows the standards set out for employer liability under Title VII, our analysis of plaintiffs' Title VII claims applies with equal force to their PHRA claims. *See, Knabe v. Boury Corp.,* 114 F.3d 407, 410 (3d Cir.1997); *McCutcheon v. Sunoco,* Civ. A. No. 01-2788, 2002 U.S. Dist. LEXIS 15426 (E.D.Pa. Aug. 16, 2002). A plaintiff may succeed on a Title VII discrimination claim by producing direct evidence or circumstantial evidence of discrimination. *Allen v. AMTRAK,* 2005 U.S. Dist. LEXIS 19624, *13-*14 (E.D.Pa. Sept. 6, 2005). In the absence of direct evidence of discrimination, a plaintiff may establish discrimination through circumstantial evidence using the now well-known, three-part formula first articulated in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 4

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

(Cite as: 2005 WL 3032507 (E.D.Pa.))

*Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Id.* Under this formula, the plaintiff first has the burden of proving a *prima facie* case [FN1] of discrimination by the preponderance of the evidence. Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The presumption then places the burden upon the defendant to produce an explanation to rebut the *prima facie* case, *i.e.,* the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993), citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted and drops from the case" and the plaintiff then has "the full and fair opportunity to demonstrate," through presentation of his own case and through cross-examination of the defendant's witnesses, that the proffered reason was not the true reason for the employment decision." *Id.,* quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094-1095.

> FN1. To establish a *prima facie* case, a plaintiff must show (1) that he belongs to a protected class, (2) that he was qualified for the job at issue (3) that despite his qualifications, he suffered an adverse employment decision (*i.e.,* was not hired, was terminated, not promoted, etc.) and (4) that non-members of the protected class were treated more favorably. *See, McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. at 252-253; *Delli Santi v. CNA Insurance Co.,* 88 F.3d 192, 198 (3d Cir.1996); *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994).

*5 To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity, (2) the defendant took an adverse employment action against her, and (3) that a causal link exists between the protected activity and the adverse action.

*Kachmar v. Sungard Data Systems, Inc.,* 109 F.3d 173, 177 (3d Cir.1997); *Allen v. AMTRAK,* 2005 U.S. Dist. LEXIS 19624 at *30. To make out a *prima facie* case of hostile work environment, a plaintiff must show: (1) that she suffered intentional discrimination because of her membership in a protected class, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position, and (5) the existence of *respondeat superior* liability. *Verdin v. Weeks Marine, Inc.,* No. 03-4571, 2005 U.S.App. LEXIS 2649 at *7-*8 (3d Cir. Feb. 16, 2005); *Shesko v. City of Coatesville,* 292 F.Supp.2d 719, 725 (E.D.Pa.2003). In determining whether an environment is sufficiently hostile or abusive, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 116-117, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002); *Shesko, supra,* quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). To qualify for relief under Title VII, however, the plaintiff must show that the harassing behavior was "sufficiently severe or pervasive to alter the conditions of employment," and thus a "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Morgan,* 536 U.S. at 117, 122 S.Ct. at 2073 and *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), both quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 92 L.Ed.2d 49 (1986).

Applying these principles to the case at hand, we note that Plaintiff's hostile work environment and retaliation claims, like Sergeant Schlichter's, are premised upon the publication of a Valentine's Day message in the Pottstown Mercury newspaper, the placement of a bumper sticker, hotel key and condom on Sergeant Schlichter's personal vehicle

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

(Cite as: 2005 WL 3032507 (E.D.Pa.))

and on the mailing and posting of the photograph of the Sergeant's truck in front of Plaintiff's home. Again, as we opined in our earlier Memorandum in the *Schlichter* case, while we find these incidents to be rude and inappropriate, they occurred sporadically over a more than six month period of time and we cannot find them to be so severe as to alter the terms of wife-Plaintiff's employment or to make her working conditions so intolerable that the average reasonable person in her position would have felt forced to resign. [FN2] In addition, although Plaintiff's complaint contains allegations that Sgt. Schlichter was threatened with and retaliated against by the Township defendants for speaking out about the incidents which he believed had the effect of sexually harassing Plaintiff, there are no averments that the plaintiff herself was ever retaliated against for bringing the incidents at issue to the attention of Defendant Zaremba. We therefore find that the complaint here fails to plead valid hostile work environment and/or retaliation causes of action under Title VII and the PHRA and thus we shall dismiss Counts I, II and VII of the Plaintiffs' complaint.

> FN2. We again note that under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). The inquiry is an objective one-whether working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Id.*

B. Plaintiffs' Claims Under 42 U.S.C. § 1983

*6 Defendants also move for the dismissal of Plaintiffs' claims under 42 U.S.C. § 1983 for the defendants' alleged deprivation of her First Amendment rights to hold employment without infringement of her rights to freedom of speech, assembly and association.

Specifically, Section 1983 provides, in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable ...

It has been noted that the purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992) . Section 1983 is thus not itself a source of substantive rights but rather provides a cause of action for the vindication of federal rights. *Rinker v. Sipler,* 264 F.Supp.2d 181, 186 (M.D.Pa.2003), citing *Graham v. Connor,* 490 U.S. 386, 393-394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

To make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution or laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir.1998); *Moore v. Tartler,* 986 F.2d 682, 686 (3d Cir.1993).

It is true that local governing bodies may be sued directly under § 1983 for monetary, declaratory or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, decision, or custom whether officially adopted or informally approved through the government body's offices

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

Page 6

and/or official decision-making channels. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611 (1978). However, a municipality can not be held liable solely on the basis of its employees' or agent's actions under the doctrine of *respondeat superior. Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Must v. West Hills Police Department,* No. 03- 4491, 2005 U.S.App. LEXIS 4504 at *15 (3d Cir. March 16, 2005). Instead, the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. *Bryan County,* 520 U.S. at 404, 117 S.Ct. At 1388. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights. *Id.* In other words, to recover against a municipality, a plaintiff must demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom [FN3] which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the moving force behind the constitutional tort. *Padilla v. Township of Cherry Hill,* No. 03-3133, 110 Fed. Appx. 272, 278 (3d Cir. Oct.5, 2004).

> FN3. "Policy" is said to be made when a decisionmaker possessing final authority to establish municipal policy with respect to an action issues an official proclamation, policy or edict. "Customs" are practices of state officials so permanent and well-settled as to virtually constitute law. *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir.2000), quoting *Pembaur v. City of Cincinnati,* 475 U.S. 468, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *Monell,* 436 U.S. at 691, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir.1996).

*7 In Counts III and IV of their Complaint, plaintiffs assert that the defendants violated Mrs. Scalisi's right to hold employment without infringement of her First Amendment rights to freedom of speech, assembly and association, that Defendants intentionally, wilfully and recklessly engaged in a pattern of harassment creating a hostile work environment designed to deny Plaintiff her First Amendment rights to freedom of speech, assembly and association, and that the defendants' actions "were designed to penalize and retaliate against Plaintiff for her exercise of fundamental First Amendment rights and to prevent Plaintiff from opposing and reporting practices of sexual discrimination and retaliation policies and practices of the Township, which are a matter of public concern to the citizens of the Township and to the citizens of the Commonwealth of Pennsylvania." (Complaint, ¶s81-83).

It has long been held that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), citing, *inter alia, Branti v. Finkel,* 445 U.S. 507, 515-16, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980), *Perry v. Sinderman,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To be protected by the First Amendment, speech by a government employee must be on a matter of public concern and the employee's interest in expressing himself on a given matter must not be outweighed by any injury the speech could cause to the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994), quoting *Connick,* 461 U.S. at 142 and *Pickering,* 391 U.S. at 568.

A balance must therefore be struck between the interests of the employee as a citizen in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Connick, supra.,* quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. At 1734. In performing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 7

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

this balancing, the manner, time, place and entire context of the expression are relevant. *Swartzwelder v. McNeilly,* 297 F.3d 228, 235 (3d Cir.2002), citing *Connick* and *Waters,* both *supra.* Other pertinent considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.,* quoting *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). In order to show a First Amendment violation, the burden is on the public employee to show that his conduct was constitutionally protected and that this conduct was a substantial or motivating factor in the employer's adverse employment decision. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977). If the employee carries that burden, the employer must show by a preponderance of the evidence that it would have reached the same decision as to the employee even in the absence of the protected conduct. *Crawford-El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 1594, 140 L.Ed.2d 759 (1998); *Mt. Healthy, supra.* Where, however, a public employee speaks not as a citizen upon matters of public concern but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a government employer's personnel decision. *Swartzwelder,* 297 F.3d at 235.

*8 Likewise, a public employee has a constitutional right to speak on matters of public concern without fear of retaliation. *Baldassare v. State of New Jersey,* 250 F.3d 188, 194 (3d Cir.2001). A public employee's retaliation claim for engaging in protected activity must also be evaluated under a three-step process. *Green v. Philadelphia Housing Authority,* 105 F.3d 882, 885 (3d Cir.1997). First, the employee must demonstrate that the speech involves a matter of public concern and the employee's interest in the speech outweighs the government employer's countervailing interest in

providing efficient and effective services to the public. *Curinga v. City of Clairton,* 357 F.3d 305, 310 (3d Cir.2004) citing *Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996). *See Also, Ambrose v. Township of Robinson,* 303 F.3d 488, 493 (3d Cir.2002). Next, the speech must have been a substantial or motivating factor in the alleged retaliatory action. *Id.,* citing *Baldassare,* 250 F.3d at 194-195. Finally, the employer can show that it would have taken the adverse action even if the employee had not engaged in the protected conduct. *Id. See Also, Ober v. Evanko,* No. 02-3725, 80 Fed. Appx. 196, 199-200, 2003 U.S.App. LEXIS 23040 (3d Cir. Oct. 31, 2003); *Bounds v. Taylor,* No. 02-2644, 77 Fed. Appx. 99, 102, 2003 U.S.App. LEXIS 20631 (3d Cir. Sept. 18, 2003). The second and third factors are questions of fact, while the first factor is a question of law. *Curinga,* 357 F.3d at 310, citing *Pro,* 81 F.3d at 1288.

Although not entirely clear, it appears from the complaint in this case that the plaintiffs are basing their First Amendment claims upon the report which they made to Defendant Zaremba, in their "prompt personal meeting" with him at which time they "spoke out against" the sexual harassment. "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community," such as if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Baldassare,* 250 F.3d at 195. Speech by public employees is not considered to be on a matter of public concern when it is "upon matters only of personal interest." *Costenbader-Jacobson v. Pennsylvania Department of Revenue,* 227 F.Supp.2d 304, 311 (M.D.Pa.2002), quoting *Czurlanis v. Albanese,* 721 F.2d 98, 103 (3d Cir.1983). Generally, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Id.,* quoting *Swineford v. Snyder County,* 15 F.3d 1258, 1271 (3d Cir.1994). As the Third Circuit has found that complaints of racial and/or sexual discrimination and harassment may constitute speech on a matter of public concern as a matter of law, where the content of the complaints, if made

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 8

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

public, "would be relevant to the electorate's evaluation of the performance of the office of an elected official," we find that the plaintiffs here have pled sufficient facts to satisfy the "public interest" requirement for pleading a claim under the First Amendment. *See, Azzaro v. County of Allegheny,* 110 F.3d 968, 978 (3d Cir.1997); *Bianchi v. City of Philadelphia,* 183 F.Supp.2d 726, 745 (E.D.Pa.2002).

**\*9** As in Sergeant Schlichter's case, Defendants' submit that Plaintiff's First Amendment claim fails because the second step [FN4] of the test cannot be satisfied by the facts as alleged here. Again, while Defendants recognize that an adverse employment action short of actual termination is potentially actionable by a public employee, they urge the court to find that the actions which they allegedly undertook against the plaintiffs here were so trivial as to not be adverse or actionable.

> FN4. This step actually contains two separable inquiries: "Did the defendants take an action adverse to the public employee and, if so, was the motivation for the action to retaliate against the employee for the protected activity." *Muti v. Schmidt,* No. 03-1206, 96 Fed. Appx. 69, 74, 2004 U.S.App. LEXIS 7933, \*12 (3d Cir. April 21, 2004), quoting *Merkle v. Upper Dublin School District,* 211 F.3d 782, 800, n. 3 (3d Cir.2000).

Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator and the nature of the retaliatory acts. *Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir.2003), quoting *Suarez Corp. v. Industries v. McGraw,* 202 F.3d 676, 686 (4th Cir.2000). Consequently, to properly balance these interests, courts have required that the nature of the retaliatory acts committed by a public employer be more than *de minimus* or trivial. *Id.* The critical question is whether the retaliatory act would be likely to "deter a person of ordinary firmness" from exercising his or her First

Amendment rights. *Schneck v. Saucon Valley School District,* 340 F.Supp.2d 558, 569 (E.D.Pa.2004), quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000). Thus, a public employer may be said to have adversely affected an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights. *Brennan, supra.,* quoting *Suarez,* also *supra.* On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands. *Id. See Also, McKee v. Hart,* Civ. A. No. 3:CV-02-1910, 2004 U.S. Dist. LEXIS 11685 at \*24 (M.D.Pa. Feb.12, 2004); *Young v. Bensalem Township,* Civ. A. No. 04-1292, 2004 U.S. Dist. LEXIS 15412 (E.D.Pa. July 23, 2004).

In reviewing the Scalisis' complaint in conjunction with the foregoing principles, we must agree with the defendants that the publication of the message in the newspaper, the placement of the condoms, note and bumper sticker upon Plaintiffs' truck and the posting of the photograph in the township building, are little more than trivial annoyances not severe enough to cause "reasonably hardy individuals to refrain from protected activity." *Muti,* 96 Fed. Appx. at 74. Moreover, in as much as it appears that the one and only time that either of the plaintiffs in this case "spoke out" against these alleged incidents of sexual harassment was *after* they occurred and since the defendants here are alleged to have retaliated against Sergeant Schlichter only, we can reach no other conclusion but that the plaintiffs in this case have failed to state a claim upon which relief may be granted against Defendants for unlawful retaliation against Plaintiffs for exercise of their First Amendment rights. Accordingly, the motion to dismiss is also granted as to Counts III and IV.

C. Plaintiffs' Remaining State Law Claims for Invasion of Privacy, Placing Plaintiffs in False Light and Loss of Consortium

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 9

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**(Cite as: 2005 WL 3032507 (E.D.Pa.))**

**\*10** In Counts V, VI and VIII Plaintiffs assert claims under Pennsylvania state law for invasion of privacy, false light and loss of consortium. In light of our dismissal of all of the plaintiffs' federal law claims, we decline to exercise supplemental jurisdiction over these remaining state law claims. We shall therefore dismiss these claims as well, albeit without prejudice to the plaintiffs' right to re-file them in the Court of Common Pleas of the appropriate county should they so choose. *See Generally,* 28 U.S.C. § 1367(c).

An order follows.

*ORDER*

AND NOW, this day of November, 2005, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion is GRANTED and the Plaintiffs' Complaint is DISMISSED in accordance with the rationale set forth in the preceding Memorandum Opinion.

Slip Copy, 2005 WL 3032507 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:05cv03413 (Docket) (Jul. 01, 2005)

• 2005 WL 2687235 (Trial Motion, Memorandum and Affidavit) Motion of all Defendants to Dismiss Plaintiffs' Complaint Pursuant to Fed. R.C.P. 12(b)(6) (Jan. 01, 2005)

• 2005 WL 2848653 (Trial Pleading) Brief in Opposition to Defendants' Motion to Dismiss (Jan. 01, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 1

Not Reported in F.Supp.2d, 2002 WL 32332192 (D.Del.)

**(Cite as: 2002 WL 32332192 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Dana WILLIAMS, Plaintiff,
v.
Robert SNYDER, Betty Burris, Larry Mc Guigan,
and Nurse Rosemary Defendants.
**No. Civ.A. 01-632-JJF.**

Sept. 30, 2002.
Dana Williams, Smyrna, Delaware, pro se.

Stuart B. Drowos, Department of Justice, State of
Delaware, Wilmington, Delaware, for Defendants
Robert Snyder, Betty Burris and Larry McGuigan.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is a Motion To
Dismiss (D.I.13) filed by State Defendants Robert
Snyder, Betty Burris and Larry McGuigan
(collectively "State Defendants"). Plaintiff, Dana
Williams, an inmate at the Delaware Correctional
Center ("DCC"), filed the instant action pursuant to
42 U.S.C. § 1983 (D.I.2). In his Complaint, Plaintiff
alleges Eighth Amendment and Fourteenth
Amendment violations. (D.I.2). For the reasons
discussed below, State Defendants' Motion To
Dismiss will be granted.

BACKGROUND
Plaintiff Dana Williams is an inmate at the D.C.C.
in Smyrna, Delaware. (D.I. 14 at 1). Defendants
Snyder, Burris and McGuigan are wardens for the
D.C.C. (D.I. 18 at 5). Nurse Rosemary Leager is an
employee of Correctional Medical Services

("CMS"), the current health care provider
responsible for staffing personnel who diagnose and
treat the medical needs of inmates at DCC. (D.I. at
3). Plaintiff alleges that "Nurse Rosemary" gave out
the wrong medications and discriminated against
non-white inmates. (D.I. 2 at 4). Further, Plaintiff
claims that State Defendants knew of Ms. Leager's
habit of giving out wrong medications to inmates
and discrimination against non-white inmates and
did nothing to prevent this behavior resulting in a
violation of 42 U.S.C. § 1983. (D.I. 2 at 4). State
Defendants filed a Motion to Dismiss (D.I.13) for
failure to state a claim upon which relief may be
granted.

STANDARD OF REVIEW
Pursuant to Federal Rule of Civil Procedure
12(b)(6), the Court may dismiss a complaint for
failure to state a claim upon which relief may be
granted. Fed.R.Civ.P. 12(b)(6). The purpose of a
motion to dismiss is to test the sufficiency of a
complaint, not to resolve disputed facts or decide
the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d
176, 183 (3d Cir.1993). When considering a motion
to dismiss, a court must accept as true all
allegations in the complaint and must draw all
reasonable factual inferences in the light most
favorable to the plaintiff. *Neitzke v. Williams,* 490
U.S. 319, 326 (1989); *Piecknick v. Pennsylvania,*
36 F.3d 1250, 1255 (3d Cir.1994). The Court is
"not required to accept legal conclusions either
alleged or inferred from the pleaded facts." *Kost,* 1
F.3d at 183. Dismissal is only appropriate when "it
appears beyond doubt that the plaintiff can prove no
set of facts in support of his claims which would
entitle him to relief." *Conley v. Gibson,* 355 U.S.
41, 45 (1957).

I. Failure To Provide Adequate Medical Care

By his Complaint, Plaintiff alleges that Nurse
Rosemary Leager repeatedly gave out the wrong
medication. (D.I. 2 at 3-4). Plaintiff further alleges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32332192 (D.Del.)

**(Cite as: 2002 WL 32332192 (D.Del.))**

that Ms. Leager gave snacks to non-diabetics that were specifically intended for diabetics. (D.I. 2 at 4). Also, Plaintiff claims that State Defendants became aware of Ms. Leager's behavior but did nothing to prevent her discriminatory actions. (D.I. 2 at 4).

To establish a claim for failure to provide adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs ." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). In order to satisfy the deliberate indifference standard set forth in *Estelle,* a plaintiff must allege that the Defendants either acted with "reckless disregard" or "actual intent" to disregard medical conditions. *Id.* In order to prove "deliberate indifference" a plaintiff must show that the individual attending him consciously disregarded his serious medical condition. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Further, the medical condition must be "serious". *Boring v. Kozakiewicz,* 833 F.2d 468, 472 (3d Cir.1987), *cert. denied,* 485 U.S. 991 (1988).

*\*2* In this case, even accepting the Plaintiff's allegations as true, the Court concludes that the act of giving the wrong medication does not rise to the level of deliberate indifference. Therefore, knowledge that Ms. Leager was administering the wrong medication does not constitute deliberate indifference to Plaintiff's serious medical condition sufficient to sustain a constitutional violation. A mistake in administering medication is more appropriately recoverable in negligence rather than a § 1983 action. *See e.g . Frost v. Agnos,* 152 F.3d 1124 (9th Cir.1998) (finding no merit in medical administrative delay claims that were merely negligence). Accordingly, the Court concludes that State Defendants' Motion to Dismiss (D.I.13) should be granted.

Defendants also contend that Plaintiff has not stated a cause of action supporting a 42 U.S.C § 1983 violation because Plaintiff has not shown Defendants' affirmative involvement in the alleged wrong. (D.I. 13 at 5-6). In order to assert a § 1983 violation based on the State Defendants' supervisory

status Plaintiff would have to prove Defendants' personal involvement in the alleged wrong. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d. Cir.1988). According to the instant Complaint (D.I.2), Plaintiff does not claim that State Defendants were affirmatively involved in the alleged wrongs. Rather Plaintiff asserts that Defendants acquiesced in the actions.

The Court concludes that State Defendants were not personally involved in the alleged wrongs and therefore, the Plaintiff has failed to state a claim for a 42 U.S.C. § 1983 violation. Thus, State Defendants' Motion to Dismiss will be granted.

Plaintiff claims that he is also suing all Defendants in their individual capacities. (D.I. 15 at 5). Defendants contend that Plaintiff's Complaint, as it pertains to them individually, should be dismissed pursuant to the doctrine of qualified immunity. (D.I. 14 at 6). Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from liability for damages provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In this case the Court concludes that the State Defendants were performing a discretionary function, i.e. investigating and processing prison grievances, and their actions, even if Plaintiffs allegations are accepted as true, did not violate a clearly established constitutional right. Therefore the Defendants' Motion to Dismiss the Plaintiff's Complaint against the State Defendants in their individual capacities will be granted.

II. Equal Protection Claim

Plaintiff by his Complaint, claims that white inmates receive better treatment than non-white inmates. (D.I. 2 at 4). Defendants respond by claiming that Plaintiff has not shown any discriminatory intent or purpose as required by the Equal Protection Clause. (D.I. 14 at 4). Additionally, Defendants contend that, even if State Defendants were aware of Ms. Leager's alleged views, there is no evidence that Plaintiff or any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 3

Not Reported in F.Supp.2d, 2002 WL 32332192 (D.Del.)

**(Cite as: 2002 WL 32332192 (D.Del.))**

non-white inmates were denied medical care due to their race. (D.I. 14 at 4).

\*3 Pursuant to the Equal Protection Clause of the Fourteenth Amendment persons who are similarly situated should be treated in the same manner. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). A Plaintiff asserting an equal protection claim is required to offer proof of racially discriminatory intent or purpose as a motivating factor in the action. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 266 (1977). The Court concludes that Plaintiff has pled no facts in support of a racially discriminatory intent or purpose on the part of the State Defendants. Therefore, the allegations in the instant Complaint do not rise to the level of an equal protection violation against the Defendants in their official capacities. Additionally, Plaintiff's claims against Defendants in their individual capacities are barred by the doctrine of qualified immunity. Thus, the State Defendants' Motion to Dismiss (D.I.13) will be granted in all respects.

CONCLUSION

For the reasons discussed, State Defendants' Motion to Dismiss (D .I. 13) will be granted. Further, Plaintiff's Motion for Appointment of Counsel (D.I.16) and Defendant's Motion for a Protective Order (D.I.17) will be denied as moot.

An appropriate Order will be entered.

*ORDER*

NOW THEREFORE, for the reasons discussed in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED this 30th day of September 2002 that:

(1) Defendants' Motion to Dismiss (D.I.13) is *GRANTED;*

(2) Plaintiff's Motion for Appointment of Counsel (D.I.16) is *DENIED* as moot;

(3) Defendant's Motion for a Protective Order (D.I.17) is *DENIED* as moot.

Not Reported in F.Supp.2d, 2002 WL 32332192 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00632 (Docket) (Sep. 20, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.