# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SSGT JASON A. ADKINS, USAF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 04-1453-JJF |
| | ) | |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | |
| GEN. JOHN W. HANDY, Commander Air | ) | |
| Mobility Command, COL. JOHN I. PRAY, JR., | ) | |
| 436th Air Wing Commander, in their official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: March 15, 2006

THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

THE RUTHERFORD INSTITUTE
JOHN W. WHITEHEAD, ESQ.
DOUGLAS MCKUSICK, ESQ.
P.O. Box 7482
Charlottesville, VA 22906
(434) 978-3888
JohnW@Rutherford.org
DouglasM@Rutherford.org

*Of Counsel*

ARNOLD & PORTER L.L.P.
Susan Cassidy, Esq.
Randall Shaheen, Esq.
M. Katherine Stroker, Esq
Alexander Major, Esq
555 12th Street, NW
Washington, DC 20004
202-942-5000 (phone)
202-942-5999 (fax)

*Attorneys for Plaintiff Jason A. Adkins*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 1

I.    NATURE AND STAGE OF THE PROCEEDINGS ...................................... 1

II.   SUMMARY OF ARGUMENT ....................................................................... 1

III.  STATEMENT OF FACTS ............................................................................... 2

IV.   STANDARD OF REVIEW ............................................................................ 12

      A.    Plaintiff's Complaint Successfully Demonstrates a Claim Entitling Him to Injunctive and Declaratory Relief .................................................... 12

      B.    Plaintiff's Claims Raise Genuine Issues of Material Fact .................... 13

V.    PLAINTIFF'S CLAIM IS NOT BARRED BY SOVEREIGN IMMUNITY BECAUSE PLAINTIFF IS SEEKING ONLY EQUITABLE RELIEF ........... 14

      A.    This Court Has Jurisdiction Pursuant to the Administrative Procedure Act ......................................................................................................... 14

      B.    Plaintiff Did Not Request Back Pay. ................................................... 15

      C.    The Tucker Act Does Not Apply to Plaintiff's Case. ........................... 16

VI.   THE PLAINTIFF HAS STANDING UNDER COUNT I ............................... 16

      A.    Determination Of Causation Is Properly Reserved For Finders Of Fact. ............ 16

      B.    The Standing Doctrine Does Not Turn Causation Into A Matter To Be Resolved At The Pleading Stage ......................................................... 17

      C.    Causation Evidence is Not Jurisdictional ............................................ 18

      D.    If Jurisdictional Matters Are Intertwined With The Merits, They Must Be Reserved For Fact Finders. ............................................................ 19

VII.  COUNT I IS NOT MOOT .............................................................................. 21

VIII. PLAINTIFF HAS ADEQUATELY ALLEGED SUPERVISORY LIABILITY ............ 22

IX.   PLAINTIFF HAS ADEQUATELY PLED CAUSATION AS TO COUNT I ................. 24

X.    PLAINTIFF'S EXERCISE OF FREE SPEECH WAS A
CONSTITUTIONALLY PROTECTED ACTIVITY ....................................................... 24

XI.    PLAINTIFF HAS SUFFICIENTLY ALLEGED RETALIATION STEMMING
FROM THE FILING OF THIS LAWSUIT ..................................................................... 25

    A.    Plaintiff's Lawsuit Is a Protected First Amendment Petition of the
Government for Redress of Grievances ...................................................... 26

        1.    The Petition Clause Extends to Protect Our Protectors ........................... 27

        2.    Plaintiff's Complaint is Neither Frivolous Nor Sham-Litigation ......... 28

    B.    Plaintiff's Lawsuit Was a Substantial or Motivating Cause in the
Defendants' Retaliation ............................................................................ 30

        1.    Knowledge of Protected Conduct. ......................................................... 30

        2.    Temporal Proximity. ............................................................................. 31

        3.    Demonstrated Anger, Hostility and Antagonism. ................................. 31

        4.    Violations of Law, Policies and Procedures. ........................................ 32

        5.    Disparate Treatment. ............................................................................. 32

    C.    Defendants' Retaliation Against Plaintiff Would Chill A Person of
"Ordinary Firmness" From Exercising His First Amendment Right .......... 33

XII.    PLAINTIFF IS ENTITLED TO THE RELEASE OF ALL INFORMATION
CONCERNING THE HEALTH-RELATED EFFECTS OF THE ANTHRAX
VACCINE ...................................................................................................................... 34

XIII.    PLAINTIFF WAS NOT REQUIRED TO FIRST RESORT TO AND EXHAUST
ADMINISTRATIVE REMEDIES TO BRING THIS CONSTITUTIONAL
CLAIM ........................................................................................................................... 37

XIV.    PLAINTIFF IS ENTITLED TO AN ORDER REQUIRING DEFENDANTS TO
PLACE A SIGNED LETTER OF APOLOGY IN PLAINTIFF'S PERSONNEL
FILE ............................................................................................................................... 39

## TABLE OF AUTHORITIES

### CASES

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.,*
    263 F.3d 239 (3d Cir. 2001)........................................................................ 24

*Adair v. England,*
    183 F. Supp. 2d 31 (D.D.C. 2002) ............................................................ 38

*Adkins v. Rumsfeld,*
    389 F. Supp. 2d 579 (D. Del. 2005) ................................................... passim

*Anderson v. Davila,*
    125 F.3d 148 (3d Cir. 1997)........................................................ 14, 26, 28

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................. 13

*Andrews v. City of Philadelphia,*
    895 F.2d 1469 (3d Cir. 1990).................................................................. 23

*Anjelino v. New York Times,*
    200 F.3d 73 (3d Cir. 1999)................................................................ 17, 18

*Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation,*
    792 F.2d 782 (9th Cir. 1986) .................................................................. 15

*Azzaro v. County of Allegheny,*
    110 F.3d 968 (3d Cir. 1997).................................................................... 24

*Baker v. Monroe Township.,*
    50 F.3d 1186 (3d Cir. 1995).................................................................... 23

*Baldassare v. New Jersey,*
    250 F.3d 188 (3d Cir. 2001)................................................ 17, 21, 25, 30

*Bell v. Hood,*
    327 U.S. 678 (1947)................................................................................. 40

*Big Apple BMW, Inc. v. BMW of North America, Inc.,*
    974 F.2d 1358 (3d Cir. 1992).................................................................. 13

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988)........................................................................... 15, 16

*Boyle v. County of Allegheny Pa.,*
    139 F.3d 386 (3d Cir. 1998).................................................................... 13

*Bray v. Marriott Hotels,*
    110 F.3d 986 (3d Cir. 1997).................................................................... 32

*Brennan v. Norton,*
    350 F.3d 399 (3d Cir. 2003) ........................................................................... 14, 28, 32, 33

*Brown v. Glines,*
    444 U.S. 348 (1980) ............................................................................................. 28, 38

*Cal-Almond, Inc. v. United States Dep't of Agriculture,*
    960 F.2d 105 (9th Cir. 1991) .................................................................................. 34

*Cal. Motor Transport Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972) ............................................................................................... 27

*Califano v. Sanders,*
    430 U.S. 99 (1977) ................................................................................................ 38

*California Public Employees' Retirement Sys. v. The Chubb Corp.,*
    394 F.3d 126 (3d Cir. 2004) .................................................................................. 12

*Carpet Group Int'l v. Oriental Rug Importers Ass'n,*
    227 F.3d 62 (3d Cir. 2000) .................................................................................... 18

*Carver v. Foerster,*
    102 F.3d 96 (3d Cir. 1996) .................................................................................... 17

*Conley v. Gibson,*
    355 U.S. 41 (1957) .......................................................................................... 12, 25

*Davis v. Shulz,*
    453 F.2d 497 (3d Cir. 1971) .................................................................................. 39

*Detroit Free Press v. Ashcroft,*
    303 F.3d 681 (6th Cir. 2002) ................................................................................ 35

*Deutsch v. United States,*
    67 F.3d 1080 (3d Cir. 1995) .................................................................................. 28

*Downen v. Warner,*
    481 F.2d 642 (9th Cir. 1973) ................................................................................ 38

*Evancho v. Fisher,*
    423 F.3d 347 (3d Cir. 2005) .............................................................................. 23, 24

*Fasold v. Justice,*
    409 F.3d 178 (3d Cir. 2005) .................................................................................. 31

*Frontiero v. Richardson,*
    411 U.S. 677 (1973) .............................................................................................. 28

*Gannett Co. v. DePasquale,*
    443 U.S. 368 (1979) .............................................................................................. 36

*Glines v. Ward,*
    586 F.2d 675 (9th Cir. 1978), *rev'd on other grounds, sub nom. Brown v. Glines,*
    444 U.S. 348 (1980) ................................................................................... 37

*Globe Newspaper v. Superior Court,*
    457 U.S. 596 (1982) ............................................................................. 35, 36

*Goldman v. Weinberger,*
    475 U.S. 503 (1986) .................................................................................. 27

*Growth Horizons, Inc. v. Delaware County,*
    983 F.2d 1277 (3d Cir. 1993) .................................................................... 18

*Gurmankin v. Costanzo,*
    556 F.2d 184 (3d Cir. 1977) ...................................................................... 40

*H.J. Inc. v. Northwestern Bell Telephone Co.,*
    492 U.S. 229 (1989) .................................................................................. 12

*Hill v. City of Scranton,*
    411 F.3d 118 (3d Cir. 2005) ................................................................. 28, 30

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) .................................................................................... 12

*Hochman v. Board of Education,*
    534 F.2d 1094 (3d Cir. 1976) .................................................................... 38

*Holder v. City of Allentown,*
    987 F.2d 188 (3d Cir. 1993) ...................................................................... 26

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,*
    90 F.3d 737 (3d Cir. 1996) ........................................................................ 13

*In re Search Warrant for Secretarial Office Outside Office of Gunn,*
    855 F.2d 569 (8th Cir. 1988) .................................................................... 35

*Jaffee v. United States,*
    592 F.2d 712 (3d Cir. 1979) *cert. denied,* 441 U.S. 961 (1979) ...................... 15

*Jalil v. Avdel Corp.,*
    873 F.2d 701 (3d Cir. 1989) ...................................................................... 31

*Jensen v. Potter,*
    435 F.3d 444 (3d Cir. 2006) ...................................................................... 31

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
    513 U.S. 527 (1995) .................................................................................. 17

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
    20 F.3d 1250 (3d Cir. 1994).............................................................................. 12

*Jorden v. National Guard Bureau,*
    799 F. 2d 99 (3d Cir. 1986)................................................................................ 38

*Kachmar v. Sungard Data Sys., Inc.,*
    109 F.3d 173 (3d Cir. 1997)......................................................................... 16, 21

*Keenan v. City of Phila.,*
    983 F.2d 459 (3d Cir. 1992)............................................................................... 30

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir. 1993).................................................................................. 26

*Krouse v. American Sterilizer Co.,*
    126 F.3d 494 (3d Cir. 1997)............................................................................... 31

*Kulick v. Pocono Downs,*
    816 F.2d 895 (3d Cir. 1987)......................................................................... 18, 19

*Kunda v. Muhlenberg College,*
    621 F.2d 532 (3d Cir. 1980)............................................................................... 32

*Lechliter v. Rumsfeld,*
    No. Civ.A. 03-098, 2004 WL 1918797 (D. Del. Aug 25, 2004) ...................... 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).......................................................................................... 17

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990).......................................................................................... 17

*McNutt v. General Motors Acceptance Corp.,*
    298 U.S. 178 (1936).......................................................................................... 18

*Miller v. Cigna Corp.,*
    47 F.3d 586 (3d Cir. 1995)................................................................................ 30

*Mount Healthy City Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977).......................................................................................... 30

*Naporano Metal & Iron Co. v. Sec. of Labor,*
    529 F.2d 537 (3d Cir. 1976)............................................................................... 39

*Neitzke v. Williams,*
    490 U.S. 319 (1989).......................................................................................... 28

*O'Connor v. City of Newark,*
    No. 05-2237, 2006 WL 590357 (3d Cir. March 13, 2006) ............................... 30

*Parker v. Lea,*
    417 U.S. 733 (1974)..................................................................................... 28

*Powell-Ross v. All Star Radio, Inc.,*
    No. 95-CIV-1078, 1995 WL 491291, (E.D.Pa. Aug 16, 1995)...................... 19

*Powell v. Alexander,*
    391 F.3d 1 (1st Cir. 2004)........................................................................... 27

*Press-Enterprise v. Superior Ct., ("Press-Enterprise I")*
    464 U.S. 501 (1984)..................................................................................... 35

*Press-Enterprise Co. v. Superior Court, ("Press-Enterprise II")*
    478 U.S. 1 (1986).................................................................................. 35, 36

*Resident Advisory Bd. v. Rizzo,*
    564 F.2d 126 (3d Cir. 1977)........................................................................ 32

*Richardson v. Morris,*
    409 U.S. 464 (1973)..................................................................................... 16

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980).............................................................................. 35, 36

*Robinson v. City of Pittsburgh,*
    120 F.3d 1286 (3d Cir. 1997).................................................................. 22, 23

*Robinson v. SEPTA,*
    982 F.2d 892 (3d Cir. 1993)........................................................................ 31

*Rocks v. City of Philadelphia,*
    868 F.2d 644 (3d Cir. 1989)........................................................................ 12

*Rode v. Dellarciprete,*
    845 F.2d 1195 (3d Cir. 1988)................................................................. 22, 23

*Rosanti v. Haran,*
    459 F. Supp. 1148 (3d Cir. 1977) ............................................................... 39

*Rostker v. Goldberg,*
    453 U.S. 57 (1981) ...................................................................................... 28

*Ruocchio v. United Transp. Union, Local 60,*
    181 F.3d 376 (3d Cir. 1999)........................................................................ 22

*San Filippo v. Bongiovanni,*
    30 F.3d 424 (3d Cir. 1994)............................................................... 26, 28, 33

*Schlesinger v. Ballard,*
    419 U.S. 498 (1975)..................................................................................... 28

*Serbin v. Bora Corp.*,
    96 F.3d 66 (3d Cir. 1996)..................................................................... 13

*Stewart v. Rutgers, the State Univ.*,
    120 F.3d 426 (3d Cir. 1997)................................................................. 32

*Suarez Corp. Industries v. McGraw*,
    202 F.3d 676 (4th Cir. 2000). .............................................................. 14

*Suppan v. Dadonna*,
    203 F.3d. 228 (3d Cir. 2000).................................................... 30, 33, 34

*United Mine Workers v. Illinois State Bar Ass'n*,
    389 U.S. 217 (1967)............................................................................. 27

*United States v. Criden*,
    648 F.2d 814 (3d Cir. 1981)................................................................. 37

*United States v. Criden*,
    675 F.2d 550 (3d Cir. 1982)................................................................. 36

*United States v. Myers*,
    635 F.2d 945 (2d Cir. 1980)................................................................. 37

*United States v. Simone*,
    14 F.3d 833 (3d Cir. 1994)............................................................ 35, 36

*Village of Arlington Heights v. Metropolitan Hous. Develop. Corp.*,
    429 U.S. 252 (1977)............................................................................. 32

*Waters v. Churchill*,
    511 U.S. 661 (1994)...................................................................... 20, 21

*Watters v. City of Philadelphia*,
    55 F.3d 886 (3d Cir. 1995)................................................................. 20

*Woodson v. Scott Paper Co.*,
    109 F.3d 913 (3d Cir. 1997)................................................................. 31

*Zellous v. Broadhead Assoc.*,
    906 F.2d 94 (3d Cir. 1990)............................................................ 15, 16

## STATUTES

5 U.S.C. § 702.......................................................................................... 15

10 U.S.C. § 1107........................................................................................ 7

10 U.S.C. § 1552...................................................................................... 37

28 U.S.C. § 1361 ........................................................................................ 39, 40

28 U.S.C. § 1491 .............................................................................................. 16

## MISCELLANEOUS

4 K. Davis *Administrative Law Treatise* § 23:19 at 195 (2d ed. 1983) ............................ 15

Fed. R. Civ. P. 8(a)(2) ...................................................................................... 26

Fed. R. Civ. P. 12(b) ........................................................................................ 13

Fed. R. Civ. P. 12(b)(6) ............................................................................... 12, 23

Fed. R. Civ. P. 56(c) ........................................................................................ 13

Fed. R. Civ. P. 56(f) ................................................................................... 14, 18

U.S. Const. Amend. I ................................................................................ passim

## ARGUMENT

### I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed his Complaint on November 18, 2004 stating a single cause of action alleging improper retaliation against speech protected by the First Amendment to the United States Constitution.  On February 8, 2005, defendants moved to dismiss the action.  Following briefing by the parties, this Court issued a Memorandum Opinion and Order on September 16, 2005, in which the Court denied defendants' motion.  Plaintiff filed an Amended Complaint on November 15, 2005, adding a second cause of action alleging retaliatory harassment in violation of the Petition Clause of the First Amendment.  On January 18, 2006, the defendants filed a Motion to Dismiss both counts of the Complaint.  This is plaintiff's Answering Brief in opposition to defendants' motion.

### II.    SUMMARY OF ARGUMENT

Defendants seek another bite at the same apple, essentially rearguing that plaintiff's exercise of free speech concerning the debilitating side effects from squalene tainted anthrax vaccine is not entitled to First Amendment protection.  Moreover, although it is styled as a motion to dismiss, defendants' motion is more properly characterized as one for summary judgment.  Thus, as an initial point, plaintiff asks that all of the external evidence upon which defendants rely be stricken from the record and defendants' motion be evaluated apart from that evidence.  *See* Plaintiff's Motion to Strike.

As is discussed in more detail below, this Court has already rejected defendants' argument that Count I should be dismissed in its initial decision dated September 16, 2005.  There is no basis for the Court to revisit that decision.  Similarly, defendants cannot prevail on a motion

to dismiss as to Count II, because, on its face, plaintiff's Amended Complaint clearly establishes a claim for retaliation in response to his exercise of the Petition Clause when he filed this lawsuit.

Even if this Court were to evaluate defendants' motion under the standards for a summary judgment motion, it too should be denied.  As is explained in greater detail below, the parties have not yet had the opportunity to conduct discovery in this case.  There are numerous genuine issues of material fact that remain in dispute.  The conduct of this discovery is essential for the Court to rule on the issues presented by this case.

Finally, to the extent that plaintiff argues that this Court is without jurisdiction to hear this case, those assertions are based on a mischaracterization of the plaintiff's requested relief and the law governing these issues.  Plaintiff is seeking only equitable and declaratory relief and this Court has subject matter jurisdiction over the claims and remedies at issue here.

## III.    STATEMENT OF FACTS

Since 1999, the Department of Defense has used military personnel at the Dover Air Force Base ("DAFB") as guinea pigs for an experimental anthrax vaccine, which has life threatening and debilitating side effects.  When the adverse health effects of this vaccine were exposed by the Wing Commander, a cover-up began consisting of denials and threats of adverse action against uniformed military personnel.  In October 2004, the media exposed this vital matter of public concern, which threatened not only the health of uniformed airmen but also the safety of the missions they fly on C-5 aircraft. (Amended Compl. at ¶ 1) (hereinafter "¶ 1").

**Plaintiff.**  Plaintiff, Jason A. Adkins, is a citizen of the United States and a resident of the State of Delaware.  He enlisted in the Air Force in October 1990, eventually achieving the rank of staff sergeant.  He served with distinction as a flight engineer until the military's retaliation

2

against his free speech resulted in his resignation in May 2005.[1]  (¶ 9).

On the night of October 20th 2004, plaintiff experienced a debilitating attack of side effects, including headaches, from the experimental anthrax vaccine.[2]  Rather than cover-up his symptoms, plaintiff immediately reported his condition to his scheduler and told him that he was seeking treatment from the flight surgeon.  Following a medical exam, the flight surgeon grounded plaintiff because his condition endangered his crew mates and the safety of their mission.  (¶ 2).

Mere hours after he was declared medically unfit for duty, plaintiff was issued a written reprimand, which essentially ended his military career.  He then was forced to undergo humiliating public punishment intended to make an example of him and silence all other aviators who spoke within the chain of command or otherwise about their life threatening and mission endangering symptoms caused by the experimental anthrax vaccine.  (¶ 3).

On November 18, 2004, plaintiff filed suit in this Court seeking, among other things, to enjoin the Air Force from retaliating against him for speaking out and questioning whether the multiple injections of anthrax vaccine that plaintiff received from the Air Force had caused his health problems.  (¶ 4).  The filing of this suit received significant coverage in the local and national news media.  Instead of ceasing its retaliatory actions, however, the Air Force subjected

---

[1] Plaintiff has an unblemished service record spanning 14 years.  Prior to the events at issue in this case, he had never been disciplined.  As one of DAFB's best fliers, he has been selected for numerous classified special operations missions and has been recommended for the Distinguished Flying Cross for bravery exhibited in a mission in Iraq.  (¶¶ 10-11).

[2] In September 1998, plaintiff was transferred to DAFB.  (¶ 19).  In September, October and November of 1998, he received three anthrax inoculations.  He received two more in 1999, another in 2000, one in 2003 and another in 2004, for a total of eight.  Six of his inoculations were tainted with squalene.  (¶ 20).  Plaintiff has never refused to take the anthrax vaccines and has suffered significant medical impairments as a result.

plaintiff to continuous and humiliating retaliation that ultimately led him to conclude that his only option was to end his military career. In May 2005, plaintiff separated from the Air Force after more than fourteen years of service.

**Defendants.** Defendant Pray is the Commander of the 436th Air Wing and commands the 4,000 airmen at DAFB. (¶ 16). Defendant Handy is the Commander of the Air Mobility Command located at Scott Air Force Base in Illinois. (¶ 15). DAFB is in his chain of command. *Id.* Defendant Roche is currently Secretary of the Air Force. (¶ 14). Defendant Rumsfeld is the Secretary of Defense. (¶ 13). All are sued solely in their official capacities.

**The Key Overarching Context in Which Plaintiff's Speech Occurred.** All U.S. armed forces personnel are forced to take a series of six or more anthrax vaccinations. These vaccinations are forced on these servicemen and women without their consent. (¶ 17).

Squalene is a substance that can be used to increase the potency of anthrax vaccines. Scientists around the world have demonstrated squalene's ability to stimulate the immune system – which then has the hazardous side effects of causing health problems such as arthritis, neurological problems, multiple sclerosis and lupus, which are associated with symptoms such as rashes, seizures, memory losses and incapacitating migraine headaches. (¶ 21).

The military has secretly experimented with squalene tainted vaccines on unsuspecting human subjects to test its ability to boost the effectiveness of the vaccines. For example, the Department of Defense has admitted to secretly conducting tests on humans using squalene in vaccines in Thailand. In a March 1999 report, the General Accounting Office ("GAO") accused the Defense Department of a "pattern of deception" in its efforts to hide its testing of contaminated vaccines on unsuspecting human guinea pigs. (¶ 23).

Since 1999, airmen at DAFB have received numerous batches of anthrax vaccine that

contained squalene. DAFB received more tainted batches of anthrax vaccine than any other military installation. Subsequent testing by the Food and Drug Administration ("FDA") in 2000 detected squalene in increasing concentrations in the batches of vaccine sent to DAFB. Scientists believe that the military may have been measuring airmen's responses to the steadily increasing doses. (¶¶ 21-22).

In 1999, when the pilots at DAFB were ordered to take the anthrax vaccine, 55 out of 120 pilots in the Air Force Reserve wing stationed there resigned rather than take the vaccine, leaving the base far below strength. (¶ 24). Thereafter, in May 1999, many of the remaining airmen in their 20's and 30's who had been forced to take the tainted vaccine began suffering from severe headaches, severe dizziness and "gray-outs." Many also began developing illnesses normally associated with old age. (¶ 25).

The wing commander of DAFB at that time was Colonel Felix Grieder, who halted the tainted vaccination program. Colonel Grieder was immediately ordered to the Pentagon, where he was pressured by high ranking generals to restart the program and cover up any perceived problems. (¶¶ 26-27). The Pentagon sent high ranking officers and health officials to DAFB, who told the airmen that there were no dangerous side effects to these vaccinations and that their inoculations did not include squalene. (¶ 28). Information about the occurrence of actual side effects was purposefully withheld from personnel at the base and *airmen were actively discouraged from speaking about this topic.* (¶¶ 28-32).

Shortly after the Air Force provided these reassurances, FDA testing discovered squalene in steadily increasing doses in multiple vaccine lots that had been forced upon the airmen at DAFB. The FDA testing revealed that the Pentagon and its military representatives had lied to the airmen at DAFB. (¶ 33).

**Extensive Media Reports Begin Appearing.** Beginning on October 10, 2004, the News Journal paper -- the newspaper of general circulation in Delaware -- and its investigative reporters Lee Williams and Hiran Ratnayake, ran a hard hitting, well researched and exhaustive series of major news articles exposing the military experimentation on the airmen stationed at DAFB. (¶ 34). Those news articles and the attendant negative publicity were brought immediately to the attention of each of the defendants. The allegations rose quickly to the top of the chain of command, which then took control of the situation from Washington, D.C. and directed the military in response to the media expose including *how to limit and control the facts that were being disclosed to the general public.* (¶ 35). Each of the defendants was angered and displeased by this unwelcome media scrutiny and sought to do whatever he could to squelch or kill the news story and to control the flow of information from the military personnel at DAFB. (¶ 36). Numerous attempts were made by the defendants in writing and through the media to discredit the story. (¶ 37). For example, after the first news story of October 10th, spokespersons for defendants Rumsfeld and Roche as well as other members of their staffs issued numerous public statements in an attempt to discredit this major news story. (¶¶ 39-41). Immense pressure was brought to bear on senior officers at DAFB by the Pentagon, the defendants, and the chain of command *to stifle all speech contrary to the approved military version and speech about health issues raised by the contaminated anthrax vaccine.* (¶ 38).

**Congress Becomes Involved.** On October 13, 2004, United States Senators Joseph R. Biden, Jr. and Thomas R. Carper, together with Representative Michael N. Castle, delivered a two page letter to defendant Rumsfeld about the recent press reports about the anthrax vaccination program at DAFB. They demanded a "thorough investigation" because "[a]t a maximum, intentional actions or unintentional incompetence may have created a health hazard

for our personnel." For them, the issue of servicemen being used as guinea pigs for a tainted vaccine was "critical." (¶ 42).

**The Form and Content of Plaintiff's Initial Protected Speech.** Since being injected with the tainted vaccine, plaintiff has experienced medical symptoms that included memory loss, severe headaches, weight loss, constant body aches, and an irregular heart beat. However, plaintiff was afraid to discuss his symptoms with anyone. (¶¶ 48-49). Discussion of the side effects of the anthrax vaccine had been discouraged at DAFB after Col. Grieder's career ended when he tried to protect his airmen from the side effects of the tainted vaccination program. (¶ 49).

Since his first day in the Air Force, plaintiff has been trained in one basic sacred safety principle established for all military fliers – flight officers with unsafe medical conditions are not to fly. This is because the aircraft, the crew and the mission are endangered if aircrews cannot perform their duties to the fullest of their abilities. Even during a flight, if crew members become ill or overly tired, they are encouraged to declare "safety of flight," at which point they are relieved of their duties – no questions asked – and always without any fear of discipline or repercussions.

While plaintiff was on route from his home to DAFB on October 21, 2004, TSgt Terry Miller called plaintiff's home at 12:45 p.m. to inform him that he was required to participate in a flight to take place on Friday October 22nd, some 22 hours later. (¶ 56). Plaintiff's wife called him on his cell phone and relayed the message. Plaintiff returned the call to Miller at 12:50 p.m. and told him of his bad headache and his need to see the flight surgeon. Plaintiff told Miller that he was unsure if he would be available for the launch the next day and that there was a possibility of his being placed on DNIF ("Duties Not to Include Flying") status. (¶ 57).

Plaintiff signed in at the flight surgeon's office at 12:55 p.m. He spoke at length with the Air Force doctor and was examined for 30-45 minutes. (¶ 58). During his medical examination, plaintiff described his debilitating symptoms truthfully and in great detail. Among other things, he explained to the physician that he had been having severe headaches for a long time and that they might be migraines.[3] Headaches are a known side effect of the squalene tainted anthrax vaccine. Consequently plaintiff next discussed with and told the flight surgeon that he associated his headaches and current medical condition with the tainted anthrax vaccine he had been injected with by the military. (¶ 61). The flight surgeon grounded plaintiff, prescribed a narcotic medication and DNIF'd him. (¶ 62). Plaintiff immediately notified Miller that he had been DNIF'd because of his medical condition. (¶ 64).

**Initial Retaliatory Adverse Action.** Within 3½ hours of being declared DNIF, plaintiff was ordered to report to the Base the very next morning in full uniform. (¶ 65). He arrived at 7:45 a.m. on October 22nd and saw his squadron commander Lt. Col. Cristos Vasilas and Chief Flight Engineer SMSgt. Ronald J. Mahoney in a closed door session. (¶ 66). Plaintiff then met with Mahoney and Miller. They accused plaintiff of dereliction of duty, of faking his medical condition and other false accusations. (¶ 67). Then, in violation of military regulations, plaintiff was given a written letter of reprimand (LOR). (¶ 68). The LOR falsely accused plaintiff of having faked his migraine headaches and other medical conditions. It accused him of consciously deciding to be declared sick for a non-emergency reason. He then was threatened with further "more serious actions." (¶ 69).

---

[3] In the Air Force, the word "migraine" is a red flag for every aviator. If a flier is diagnosed as having a migraine, he is immediately grounded from ever flying again – it is a permanently disqualifying medical condition. (¶ 60).

Both letters of counseling and letters of admonishment are lesser forms of correction than LORs. The Air Force's progressive discipline system required that for someone with plaintiff's unblemished record a lesser form of discipline should have been invoked. However, it was not invoked. (¶ 72).

Plaintiff also was given additional punishment. Again, contrary to the progressive discipline policy, plaintiff received 76 hours of additional duty. (¶ 73). He then was placed on public display in the Base's control room as a warning to other airmen who otherwise would have reported their deteriorating medical conditions to the flight surgeon. (¶ 74). Plaintiff was publicly humiliated so that other uniformed personnel would not (1) speak out about safety issues arising from the symptoms they were experiencing from the tainted anthrax vaccine, or (2) question whether their medical condition was caused by the tainted vaccine. (¶ 75).

Following plaintiff's report of debilitating headaches and his resulting DNIF status, defendants Pray, Handy and Roche prohibited all uniformed personnel at DAFB from speaking about the anthrax vaccination program. The media by e-mail and telephone calls brought the retaliation against plaintiff to these defendants' attention. However, they all refused to void the adverse actions taken against plaintiff and ratified, sanctioned and approved the retaliation against plaintiff. (¶¶ 81-85).

On information and belief, immediately after plaintiff was initially retaliated against, the retaliation was brought to the attention of defendant Rumsfeld. He refused to void the adverse actions taken against plaintiff. He ratified, sanctioned and approved the retaliation against plaintiff. (¶ 86).

**Plaintiff's Lawsuit.** On November 18, 2004, plaintiff filed the original Complaint in this lawsuit, seeking declaratory and injunctive relief against named defendants. In filing suit,

plaintiff sought, among other things, to prevent the defendants from pursuing their continued retaliation against him for exercising his first amendment right to free speech. (¶ 87). Plaintiff's lawsuit is of sound merit, as most recently illustrated by this Court's ruling of September 16, 2005. (¶ 90).

**Additional Retaliatory Actions.** In the months following plaintiff's filing of this lawsuit, defendants created a hostile work environment for plaintiff and caused and permitted plaintiff's employment conditions to become intolerable. (¶ 91). For example, plaintiff returned to work on November 23, 2004, subsequent to filing suit. Upon his return, he was confronted with multiple copies of the News Journal article featuring his lawsuit on the front page. Copies of the article were placed on his desk and posted on billboards in public locations throughout the base, including the mission control desk, a focal point of DAFB activity. (¶ 92).

After filing suit, plaintiff also noted that his co-workers were treating him differently. Co-workers who previously greeted plaintiff and shook his hand now refused to do so. (¶ 93). Plaintiff also was subjected to more intense scrutiny of his work and, despite more than 14 years of experience, was not permitted to complete his work independent of constant and intrusive oversight and criticism. This level of scrutiny, oversight and criticism was a marked change from how plaintiff was supervised prior to filing this lawsuit and was inconsistent with the treatment these same supervisors provided to his co-workers. (¶ 94).

From approximately November 23rd through December 4th, the time period directly following the filing of this lawsuit, plaintiff's supervisors punished him and treated him in a manner consistent with how personnel who were under investigation for criminal violations were treated. Starting on November 23rd, his first day back at work after filing the lawsuit, plaintiff was assigned to work the night shift for mission control. (¶ 95). Within plaintiff's working

10

group, the night shift for mission control was utilized by his supervisors as a form of punishment

for those service personnel who had violated Air Force rules or regulations or who were under

investigation for incidents such as drunk driving or statutory rape. Not only was plaintiff

inconvenienced and isolated by this change in work assignment, but it also served as a means for

his supervisors to humiliate him in front of his co-workers. (¶ 96).

After December 4th, plaintiff was reassigned to work in a back office by himself. In this

new assignment, plaintiff was isolated from his co-workers and ostracized. Whereas plaintiff had

previously worked autonomously at his job, he was now subjected to continuous monitoring and

oversight by his supervisors for even the most mundane of tasks. (¶ 97).

When plaintiff was officially notified that he was disqualified from flying because of

medical reasons, his supervisors again decided to publicly humiliate him and to send a message to

his co-workers. Plaintiff, a decorated airman who had devoted more than 14 years to the military,

was ordered to cease wearing his flight suit and instead to dress in the camouflage clothes

("BDUs") worn by the newly enlisted. Such an order was extremely rare. Plaintiff had not worn

BDUs in many years and was required to purchase and assemble them in an expedited manner.

In the culture of an air force base, a flight suit represents experience, pride, and the inordinate

risks that fliers take on behalf of our country's safety. Ordering a flier to permanently remove his

flight suit can only be viewed as punitive action. (¶ 98).

Plaintiff's supervisors also threatened that plaintiff's new grounded status could result in

the loss of his aircrew badge, or "wings." This threat was aimed directly at plaintiff's pride and,

if executed, would have violated Air Force regulations. Aircrew do not lose the wings they have

earned if they are later grounded. (¶ 99). Moreover, plaintiff's treatment by his supervisors was

inconsistent with the treatment given to other personnel in similar situations. Other airmen who

had been disqualified from flying for medical reasons within plaintiff's own squadron were permitted by the same supervisors to keep wearing their flight suits. (¶ 100).

As a direct result of the intolerable working conditions, Plaintiff separated from the Air Force on May 15, 2005, just five years short of full retirement benefits. (¶ 102).

## IV.    STANDARD OF REVIEW

### A.    Plaintiff's Complaint Successfully Demonstrates a Claim Entitling Him to Injunctive and Declaratory Relief

A motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), is intended to test the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). A complaint will be dismissed under 12(b)(6) only when the plaintiff has failed to state a claim upon which relief can be granted. When considering a motion to dismiss, the court must accept as true and view in a light most favorable to the plaintiff all allegations made in the complaint. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249 (1989); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989). A motion to dismiss will only be granted if it is clear that relief cannot be granted to the plaintiff under any set of facts that could be proven consistent with the complaint's allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

This review is limited to the complaint and attachments and cannot stray to other parts of the record. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994). Thus, dismissal will be warranted only if it appears, on the face of the pleadings, "beyond doubt that the plaintiff can prove no set of facts in support of the claim that would warrant relief." *California Public Employees' Retirement Sys. v. The Chubb Corp.,* 394 F.3d 126, 143 (3d Cir. 2004).

Plaintiff, on the face of his Complaint, has established a claim that would entitle him to

declaratory and injunctive relief. Defendants' motion to dismiss should be denied.

**B.      Plaintiff's Claims Raise Genuine Issues of Material Fact**

If the Court exercises discretion and allows the government to present matters outside the

pleadings, the Court must convert defendants' motion into one for summary judgment.

Fed.R.Civ.P. 12(b). If converted to a motion for summary judgment, defendants still cannot

prevail. Pursuant to Fed.R.Civ.P 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Boyle v. County of Allegheny Pa.,*

139 F.3d 386, 392 (3d Cir. 1998). The moving party bears the burden of proving that there is no

genuine issue of material fact. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 743 (3d

Cir. 1996). Only when that burden is met does the burden shift to the nonmoving party to "come

forward with specific facts showing that there is a genuine issue for trial." *Id.*

A fact is material if, by granting all reasonable inferences from the evidence to the non-

moving party, the court determines the fact could affect the outcome of the suit. *Boyle*, 139 F.3d

at 392. *See also Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir. 1996). An issue is genuine if a

reasonable jury could possibly find in favor of the non-moving party with regard to that issue.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Thus, as this circuit recognizes,

"[w]hen deciding a motion for summary judgment . . . a court's role remains circumscribed in

that it is inappropriate for a court to resolve factual disputes and to make credibility

determinations." *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1362 (3d

Cir. 1992) (emphasis added).

Given the fact specific nature of plaintiff's claims, summary judgment at this juncture would be wholly inappropriate. Plaintiff argues that his First Amendment rights were violated by the Air Force when it, first, retaliated against his speaking out about receiving the tainted anthrax vaccinations and, second, when it retaliated against him for bringing this suit. Resolution of plaintiff's retaliation claim requires an examination of the intent and motivations behind the actions taken by senior military leadership against plaintiff. Plaintiff's allegations of retaliation for speaking out against highly sensitive (and suspect) medical programs went to the highest level of the Department of Defense. "Motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual." *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). As the Third Circuit has stated, "[d]etermining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Thus, even if this Court were to convert defendants' motion to one for summary judgment, numerous issues of material fact remain in dispute and discovery is required before those issues can be resolved. *See* Ex. A (Rule 56(f) Affidavit).

## V.    PLAINTIFF'S CLAIM IS NOT BARRED BY SOVEREIGN IMMUNITY BECAUSE PLAINTIFF IS SEEKING ONLY EQUITABLE RELIEF

### A.    This Court Has Jurisdiction Pursuant to the Administrative Procedure Act.

Defendants contend that the Administrative Procedure Act ("APA") does not waive sovereign immunity for plaintiff's action. Defendants' argument is not supported either by the law or the relief sought in this case. The 1976 amendments to Section 702 of the APA eliminated

14

the sovereign immunity defense for actions seeking relief other than money damages. "An action
. . . seeking relief other than money damages . . . shall not be dismissed nor relief therein be
denied on the grounds that it is against the United States . . ." 5 U.S.C. § 702. "Other than
money damages" means equitable relief. *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988);
*Zellous v. Broadhead Assoc.*, 906 F.2d 94, 97 (3d Cir. 1990). Plaintiff's requests for relief are
limited to claims for equitable and declaratory relief against the U.S. Government and the APA
thus waives a sovereign immunity defense to plaintiff's action.

 Moreover, despite defendants' claims to the contrary, this waiver is not dependent on
plaintiff explicitly pleading Section 702. The "[a]bolition of sovereign immunity in § 702 is not
limited to suits 'under the Administrative Procedure Act'; the abolition applies to every 'action in
a court of the United States seeking relief other than money damages . . . No words of § 702 and
no words of the legislative history provide any restriction to suits 'under' the APA." 4 K. Davis
*Administrative Law Treatise* § 23:19 at 195 (2d ed. 1983); *Jaffee v. United States*, 592 F.2d 712,
718 (3d Cir. 1979) *cert. denied*, 441 U.S. 961 (1979) (finding that Section 702 of the APA waived
sovereign immunity for a suit brought under § 1331). *See also Assiniboine and Sioux Tribes v.
Board of Oil and Gas Conservation*, 792 F.2d 782, 792-93 (9th Cir. 1986) (relying on *Jaffee* to
explicitly hold that a complaint can not be dismissed because it did not explicitly plead the APA's
waiver of sovereign immunity).

**B. Plaintiff Did Not Request Back Pay**

 Contrary to defendants' repeated assertions, plaintiff has not requested back pay.
Plaintiff had requested reinstatement "to the position he held when the defendants forced him to
leave the service with full benefits and free of any further discrimination or retaliation." "With
full benefits" does not mean "with back pay;" nor does it mean "with monetary damages," as
defendants suggest. "With full benefits" simply means with the benefits an employee in the
position would normally receive, such as health insurance or health care. This is not a request for

damages and provides no basis for loss of jurisdiction by this Court. Moreover, the issue is now moot. Plaintiff is withdrawing his request for reinstatement. All the remaining requests for relief are clearly equitable in nature.

### C.    The Tucker Act Does Not Apply to Plaintiff's Case

Defendants' claim that jurisdiction over this case lies only in the Court of Federal Claims. Defendants' argument is based on a mischaracterization of the relief plaintiff seeks in this case. As noted above, plaintiff is not seeking back pay or any monetary damages. Rather, plaintiff is seeking only equitable and declaratory relief. Consequently, the Tucker Act, which gives the Court of Federal Claims exclusive jurisdiction over damages actions in excess of $10,000, is not applicable here. 28 U.S.C. § 1491. *See Bowen*, 487 U.S. at 901-02; *Zellous*, 906 F.2d at 99; *Lechliter v. Rumsfeld*, No. Civ.A. 03-098, 2004 WL 1918797 (D. Del. Aug 25, 2004) (Ex. B) (finding that because plaintiff sought equitable relief, the Tucker Act did not apply and the court had jurisdiction pursuant to the APA); *see also Richardson v. Morris*, 409 U.S. 464, 465 (1973) (*per curiam*) ("[T]he Court of [Federal] Claims has no power to grant equitable relief.").

## VI.    THE PLAINTIFF HAS STANDING UNDER COUNT I

This Court has already decided the causation issue as to Count I, and defendants have provided no basis for why the Court should reconsider that decision. Furthermore, via their standing arguments, defendants contort the law and attempt (1) to have the Court address causation at the pleading stage, and (2) to have causation evidence introduced and evaluated by labeling it "jurisdictional." Both attempts should both fail.

### A.    Determination Of Causation Is Properly Reserved For Finders Of Fact

Questions of causation must be reserved for fact finders, especially in employment actions. "The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context specific." *Kachmar v. Sungard Data Sys., Inc*., 109 F.3d 173, 178

(3d Cir. 1997). Thus, retaliation and causation "present questions for the fact finder and are not subject to review" at the pleading stage. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).

## B.     The Standing Doctrine Does Not Turn Causation Into A Matter To Be Resolved At The Pleading Stage

At the pleading stage, an evaluation of standing does not require an evidentiary exploration into causation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)); *Anjelino v. New York Times*, 200 F.3d 73, 88 (3d Cir. 1999). But defendants interpret the requirement that a plaintiff plead injuries that are "fairly traceable" to defendants' actions as a requirement that plaintiff *prove* causation in the pleadings. Such an interpretation has no basis in law and would indeed controvert the logic behind Rules 8 and 9 of the Federal Rules of Civil Procedure.

Defendants should not be permitted to muddy the distinction between an inquiry into jurisdiction and an inquiry into the merits. Challenges as to causation are attacks on the merits of the case. *Carver v. Foerster*, 102 F.3d 96, 101 (3d Cir. 1996) ("Causation relates to the merits of plaintiffs' claims . . . The issue of causation is a fact-driven inquiry . . . At this stage in the litigation, we lack jurisdiction to consider a factor, such as causation, which goes to the merits of plaintiffs' claims."). At the pleadings stage, the proper inquiry is limited to:

> whether the alleged injury falls within the 'zone of interests that the statute or constitutional provision at issue was designed to protect; whether the complaint raises concrete questions, rather than abstract ones that are better suited to resolution by the legislative and executive branches; and whether the plaintiff is asserting his own legal rights and interests, as opposed to those of third parties.

*Anjelino*, 200 F.3d at 88. Thus, at the pleading stage, there is no evidentiary examination of causation. *See also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537 n3 (1995) (agreeing in response to a challenge to standing that "a court need not decide the merits of causation issues to resolve a jurisdictional challenge."). Rather, the inquiry here is

whether the pleadings sufficiently indicate that plaintiff's claims fall within the constitutional protections afforded by the First Amendment.

### C.    Causation Evidence is Not Jurisdictional

Defendants also argue that causation evidence is "jurisdictional" and is properly reviewed by the Court at this stage of the pleading. In particular, defendants attempt to have the court review the affidavits of SMSgt. Mahoney's and TSgt. Miller's in its evaluation of standing.

A factual challenge to subject matter jurisdiction places jurisdictional facts in question. *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). Jurisdictional facts include, for example, diversity of citizenship and jurisdictional amount. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 183 (1936). Jurisdictional facts do not include affidavits that address causation. Defendants cannot "turn an attack on the merits, against which the party has the procedural protections of a full trial including the right to a jury, into an attack on jurisdiction." *Kulick v. Pocono Downs*, 816 F.2d 895, 898 (3d Cir. 1987). *See also Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1280-81 (3d Cir. 1993) (finding that the district court improperly reviewed the merits when evaluating jurisdiction).

There are important reasons why evidentiary examinations of causation do not take place at the pleading stage. In particular, to effectively prove causation, plaintiff needs further discovery, including the opportunity for cross-examination, to fully establish causation. *See* Ex. A (Rule 56F Affidavit). Plaintiff's situation in this respect is a typical by-product of his position as the employee in a First Amendment employment discrimination case: much of the information he needs to establish his claims lies solely in the hands of his employer – the U.S. Government. Plaintiff must be granted reasonable discovery before the issue of causation can be finally resolved by this Court.

**D.    If Jurisdictional Matters Are Intertwined With The Merits, They Must Be Reserved For Fact Finders**

Even if defendants were correct in construing causation as jurisdictional, the affidavits upon which they rely in support of their argument are fully intertwined with the merits. For example, the statements in SMSgt. Mahoney's affidavit as to his knowledge of the content of plaintiff's speech to the flight surgeon are intertwined with SMSgt. Mahoney's motives for disciplining plaintiff.

When jurisdictional facts are intertwined with the merits, they are properly left for the fact-finder to resolve. *See Kulick*, 816 F.2d at 898. It is especially important in an employment action where only the employer has access to all the information necessary to prove plaintiff's case. *Powell-Ross v. All Star Radio, Inc.*, No. 95-CIV-1078, 1995 WL 491291, at *3 (E.D.Pa. Aug. 16, 1995) (finding that when the jurisdictional question is intertwined with the merits of the case, "it would seem that the burden is better placed on the defendant-employer who has complete access to the necessary proof.") (Ex. B).

**E.    Issues of Material Fact Still Remain As To Causation**

If this Court chooses to evaluate defendants' motion as a motion for summary judgment, genuine issues of material fact still remain as to causation. Defendants argue that the affidavit of the flight surgeon conclusively demonstrates that there was no retaliation. Def. Mot. to Dismiss, at 25; *see also* Defs.' Ex. 3 (Affidavit of Ronald M. Bernardin III). But plaintiff should be able to address this issue with the flight surgeon in a deposition to ascertain all the relevant facts; including the methods by which this information could have been conveyed to plaintiff's superiors. More importantly, whether the flight surgeon spoke with anyone prior to the issuance of the LOR is not dispositive of the issues in this case. Plaintiff's complaints of headaches constitute speech that must be examined within the context of the significant and ongoing publicity surrounding airmen at Dover AFB relating to the effects of the squalene-tainted Anthrax vaccine. *See, e.g.,* Hiran Ratnayake and Lee Williams, *Fearful Pilots Reluctant To Speak Out,*

The News Journal (Wilmington, DE), October 17, 2004 at 8A (Ex. C). SMSgt. Mahoney and TSgt. Miller knew plaintiff experienced bad headaches because plaintiff reported this to Miller on his way to see the flight surgeon and both Miller and Mahoney knew that the flight surgeon declared him unfit for flight duty, Defs.' Ex. 6-B (436 AW/IG Complaint Analysis # 2004-07858, Interview of TSgt. Miller). Further discovery is necessary to resolve who within the Air Force was aware of plaintiff's and other airmen's complaints regarding headaches and other health conditions that could be connected to the squalene-tainted anthrax vaccine.

Because of the intense focus on squalene-tainted anthrax by military officials and the media in this time frame, DAFB employees, including Miller and Mahoney, knew that bad headaches were a side-effect of squalene-tainted anthrax. *See, e.g.*, Ex. C (Associated Press Article of October 12, 2004; The News Journal (Wilmington, DE) Article of October 17, 2004; The News Journal (Wilmington, DE) Article of October 19, 2004). Therefore, even if the flight-surgeon did not tell anyone of his conversation with the plaintiff prior to the issuance of the LOR, there is sufficient evidence to raise a factual dispute as to whether SMSgt. and TSgt. Miller had contemporaneous knowledge of plaintiff's speech at the time the LOR was issued.

Moreover, it is not even necessary that any of the plaintiff's superiors had actual knowledge of the content of his speech to violate plaintiff's First Amendment rights. Rather, the inquiry is what the employer reasonably believed to have been said. *Waters v. Churchill*, 511 U.S. 661, 677 (1994); *Watters v. City of Philadelphia*, 55 F.3d 886, 896 (3d Cir. 1995). In the public employment context, when the employer does not know what a public employee said and nevertheless takes an employment action, the employer "must tread with a certain amount of care." *Waters v. Churchill*, 511 U.S. 661, 667 (1994). "The possibility of inadvertently punishing someone for exercising her First Amendment rights makes such care necessary." *Waters* 511 U.S. at 678. Clearly, issues of fact exist as to what plaintiff's superiors understood about his statements concerning his health concerns and any connections to the anthrax vaccine.

20

The inevitable existence of factual disputes regarding causation is one of the primary reasons why courts have repeatedly held that questions of causation should be reserved for the fact-finder. *See, e.g., Baldassare,* 250 F.3d at 195 (holding that questions of causation are heavily fact-dependent, present questions for the fact finder and thus "are not subject to review" at the pleading stage); *Kachmar,* 109 F.3d at 178.

## VII.    COUNT I IS NOT MOOT

Defendants claim that Count I is moot because the letter of reprimand ("LOR") is not in Plaintiff's "official" file. Whether the LOR is in plaintiff's "official file" is not dispositive as to the relief that plaintiff seeks in this case. The LOR was improperly issued in retaliation for plaintiff's exercise of free speech. The letter should be retracted entirely and removed from all aspects of plaintiff's personnel file.[4]

Letters of reprimand will affect an airman's career, even if they do not form part of the unique file known as the "PIF" (Personnel Information File). (¶ 70, 71). Indeed, SMSgt. Mahoney selected a letter of reprimand, as opposed to spoken words of reproach, precisely because the letter provided a permanent, written record and would be more serious than a spoken reprimand. *See* Defs.' Ex. 6-B (436 AW/IG Complaint Analysis # 2004-07858, Interview of SMSgt. Mahoney) ("When asked why he chose a LOR instead of verbal or written counseling, he stated he wanted to drive the message home to SSgt Adkins . . . "). The LOR issued to plaintiff characterizes him as "deciding" to experience a migraine and thus insinuates that plaintiff purposely sought to avoid performing his duty. Due to the increased severity of written reprimands as well as the permanence of the written word, plaintiff seeks retraction of the improperly issued reprimand.

---

[4] As to defendants' argument that the LOR was not placed in plaintiff's "official" file, the Complaint requested that the Court "issue a reparative injunction directing defendants to remove any and all adverse materials from plaintiff's personnel file, including the LOR." This language makes no reference to plaintiff's official file. In requesting the reparative injunction, plaintiff simply seeks a correction of the record, whether it be in a "desk drawer" or elsewhere.

Finally, defendants are incorrect in their underlying assumption that if one form of requested relief is moot, the entire Count is moot. "[A] case may be moot as to one remedy, but not as to others." *Ruocchio v. United Transp. Union, Local 60*, 181 F.3d 376, 383 (3d Cir. 1999). Even if defendants are correct, and the retraction of the LOR were moot, the remaining requests for relief have not been withdrawn.

## VIII.    PLAINTIFF HAS ADEQUATELY ALLEGED SUPERVISORY LIABILITY

Defendants contend that the plaintiff has failed to properly allege supervisory liability. Defs. Mot. to Dismiss, at 21. They are mistaken. In its Memorandum and Order of September 16, 2005, this Court resolved this issue, noting that "plaintiff has adequately alleged supervisory liability on the part of the defendants." *Adkins v. Rumsfeld*, 389 F. Supp. 2d 579, 585-86 (D. Del. 2005). Nothing in the defendants' present motion to dismiss is sufficient to dislodge this holding of the Court.

As this Court has previously noted, "supervisory liability may be established by showing that the defendant had actual knowledge of and acquiesced in the alleged unconstitutional conduct of a subordinate." *Id.* at 585 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff has met this burden. The Amended Complaint contains both express allegations of actual knowledge on the part of the defendants and allegations demonstrating the "temporal proximity between Plaintiff's speech and the alleged retaliation, as well as antagonism toward plaintiff during the intervening period between Plaintiff's protected behavior and the issuance of the LOR." *Id.* at 586. Moreover, the acquiescence prong of the supervisory liability test may be inferred by the fact-finder where a supervisor with authority knows that the subordinate is violating the rights of another but fails to act to stop the subordinate from doing so. *See Id*; *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997).

Defendants argue that the plaintiff must show personal direction to adequately allege supervisory liability. *See* Def. Mot. to Dismiss, at 22 ("[P]laintiff makes no specific allegations against any of the defendants relating to their direct involvement in plaintiff's LOR"). This argument ignores clear Third Circuit precedent stating that the plaintiff must show personal direction *or* actual knowledge and acquiescence.[5]  And, as this Court has previously noted, both these conditions have been satisfied. *See Adkins*, 389 F. Supp. 2d at 586.

Moreover, none of the cases cited by the defendant supports a dismissal on the facts of the present case. In *Rode*, the plaintiff's claims were dismissed because he failed to adequately allege knowledge on the part of the defendant. *Rode*, 845 F.2d at 1208. This Court has already held that such is not the case in the present action. Mem. & Order of Sept. 15, 2006, at 10. In *Robinson*, the court denied plaintiff's claims at the motion for judgment as a matter of law stage of the trial because the plaintiff had failed to put on any evidence that the defendant had actual knowledge of the alleged retaliation. *Robinson*, 120 F.3d at 1291. As such, citation to this case is inapt because it attempts to import the standard of evidence required at the motion for judgment as a matter of law stage of the trial into a Rule 12(b)(6) motion to dismiss. In *Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005), the plaintiff's claim was dismissed because she did not plead the time, place, *or* persons responsible for the alleged violation of her constitutional rights *Id.* at 353. Such a failure to plead is not present in this case. Accordingly, because the defendants have provided no new evidence or demonstrated any error in the previous resolution of this issue, they have failed to provide a sufficient reason for this Court to disturb its prior holding.

---

[5] *See, e.g, Rode*, 845 F.2d at 1207; *Robinson*, 120 F.3d at 1294; *Baker v. Monroe Township.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

## IX.    PLAINTIFF HAS ADEQUATELY PLED CAUSATION AS TO COUNT I

As noted in its previous Order, plaintiff has adequately pled causation with respect to Count I. Defendants' entire argument on the causation issue rests upon affidavits (see Defs. Mot. to Dismiss, at 25) that are inappropriate at the motion to dismiss stage. *See e.g.*, *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F.3d 239, 266 (3d Cir. 2001). Aside from these affidavits, defendants make no new arguments and bring forward no new evidence regarding the causation issue. Consequently, this Court should deny this attempt by the defendants to relitigate an issue previously decided by this Court.

## X.    PLAINTIFF'S EXERCISE OF FREE SPEECH WAS A CONSTITUTIONALLY PROTECTED ACTIVITY

The protective nature of plaintiff's speech was already resolved by this Court in its Memorandum and Order dated September 16, 2005. To determine whether speech by a public employee is constitutionally protected courts apply a two-part test. First, the court must determine whether the speech is a matter of public concern. Second, the court must balance the relevant interests to determine if the government's interests as an employer in promoting the effective and efficient fulfillment of its public responsibilities outweigh the public employee's interest as a citizen in speaking out on matters of public concern and the value to the community at large of being free to hear such speech. *Azzaro v. County of Allegheny*, 110 F.3d 968, 976 (3d Cir. 1997) (en banc).

In their motion, defendants only contest the "public concern" portion of the test. This Court has already found that plaintiff's speech was a matter of public concern and defendants have offered no basis for a change to that decision. "Plaintiff's allegations demonstrate that his speech pertained to the health of military personnel and the potential wrong-doing of military

officials in allegedly administering tainted anthrax vaccines as part of an experimental program. Both of these issues are matters of public concern." *Adkins*, 389 F. Supp. 2d at 586.

Defendants' sole argument regarding the public concern requirement is that plaintiff's statement cannot be a matter of public concern because it was made in private. *See* Defs. Mot. to Dismiss, at 29 n.10. This Court properly rejected this argument in ruling on the defendants' previous motion to dismiss: "There is case law suggesting that the private nature of a conversation does not impact its content as relating to a matter of public concern." *Adkins*, 389 F. Supp. 2d at 586 (citing *Baldassare*, 250 F.3d at 197).

Because this issue has been previously resolved by this Court and the defendants present no new evidence and make no new arguments, this Court should reject the defendants' claim that the plaintiff's speech was not constitutionally protected.

## XI.    PLAINTIFF HAS SUFFICIENTLY ALLEGED RETALIATION STEMMING FROM THE FILING OF THIS LAWSUIT

As a result of the plaintiff's lawsuit, defendants and their subordinates began a series of retaliatory actions intended to harass him, ostracize him, and eventually force him to leave active duty. Plaintiff's Amended Complaint sets forth defendants' reprisals in detail. (¶¶ 91-101). But defendants argue that the retribution exacted on plaintiff was not "sufficient to rise to the level of retaliatory harassment." Defs. Mot. to Dismiss at 29. To support their argument, defendants raise questions of fact - material and subjective - that would be improper for this Court to rule on under the standards of either a motion to dismiss or a motion for summary judgment.

To survive a motion to dismiss, the complaint must only set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47

(1957). It is the court's duty, for purposes of a motion to dismiss, to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff's cause of action. *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir. 1993). To that end, to successfully plead a cause of action under the petition clause plaintiff must sufficiently allege that (1) he engaged in a protected activity; (2) the defendants responded with retaliation, and (3) his protected activity was the cause of the defendants' retaliation. *Anderson v. Davila,* 12 F.3d 148, 161 (3d Cir. 1997).

Plaintiff's Complaint clearly identified those very elements. Pls.' Am. Compl. at 87-108. And, as set forth below in greater detail, plaintiff exceeds this minimum burden. Defendants' motion to dismiss should be denied; and, if converted, the motion for summary judgment also should fail.

### A.    Plaintiff's Lawsuit Is a Protected First Amendment Petition of the Government for Redress of Grievances

Defendants assert that plaintiff's lawsuit was not protected First Amendment activity. They claim instead that the lawsuit was frivolous and therefore not protected under the First Amendment 's Petition Clause. Defs.' Mot. to Dismiss, at 30. But, this Court has already recognized that plaintiff's speech was far from frivolous and indeed poses a rather significant grievance - "[p]laintiff's allegations demonstrate that his speech pertained to the health of military personnel and the potential wrongdoing of the military." *Adkins v. Rumsfeld,* 389 F. Supp. 2d 579, 586 (D. Del. 2005) "[W]hen one files a 'petition' one is addressing the government and asking government to fix what government has broken or has failed in its duty to repair," *San Filippo v. Bongiovanni,* 30 F.3d 424, 442 (3d Cir. 1994).

1.    **The Petition Clause Extends to Protect Our Protectors**

Military service members often joke "we protect democracy, we don't practice it." The adage, although comical, is incorrect. The First Amendment protects the "right to petition the Government for a redress of grievances." U.S. Const., Amend. I. And "[f]or decades, the Supreme Court has consistently recognized the right to petition *all branches of the government.* for redress of grievances as among the most precious of the liberties safeguarded by the Bill of Rights." *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004) (emphasis added) (internal punctuation and citation omitted) (citing *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) and *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Accordingly, "the right to petition extends to *all departments of Government.*" *Cal. Motor Transport*, 404 U.S. at 510 (emphasis added). This right extends to all citizens, military and civilian.

But this right is not solely for civilians. To the contrary, courts have not hesitated to engage in a substantive review of the constitutionality of military policy. For example, in *Goldman v. Weinberger,* 475 U.S. 503, 507-11 (1986), the Supreme Court evaluated head-on the merits of plaintiff's First Amendment claim contesting an Air Force regulation that prohibited him from wearing a yarmulke. The same substantive review is found in all of the leading Supreme Court cases involving constitutional challenges involving the military.[6]

---

[6] *See Rostker v. Goldberg,* 453 U.S. 57 (1981) (substantive merits review of a Fifth Amendment challenge to all-male draft registration); *Brown v. Glines,* 444 U.S. 348 (1980) (substantive First Amendment review of regulations concerning the circulation of petitions on Air Force bases); *Schlesinger v. Ballard,* 419 U.S. 498 (1975) (substantive equal protection review of statutory scheme that favored the promotion of female naval officers over male officers); *Frontiero v. Richardson,* 411 U.S. 677 (1973) (applying substantive equal protection principles without any suggestion that it was improper for the Court to second-guess military personnel policies); *Parker v. Lea,* 417 U.S. 733 (1974) (addressing constitutionality of Army regulations permitting the court martial of military personnel for making disrespectful and disloyal statements).

Plaintiff's lawsuit continues his effort to right a wrong cast unjustly upon him by the government. It "is undisputed that filing lawsuits and grievances . . . implicate[s] the Petition Clause of the First Amendment." *Brennan v. Norton*, 350 F.3d 399, 417 (citing *San Filippo*, 30 F.3d at 434-35). As the Third Circuit has recently noted, "any lawsuit brought by an employee against a public employer qualifies as a protected 'petition' under the First Amendment so long as it is not 'sham litigation.'" *Hill v. City of Scranton*, 411 F.3d 118, 126 (3d Cir. 2005), *see also Brennan*, 350 F.3d at 417. Simply put, the making of a "petition is not a constitutionally permissible ground for" adverse action against anyone. *San Filippo*, 30 F.3d at 443. The government simply cannot retaliate against those who petition it as such a result "is hardly consistent with the fundamental principles of orderly protest, which our Constitution sought to preserve by protecting our right to petition the government for redress." *Anderson*, 125 F.3d at 163.

### 2.     Plaintiff's Complaint is Neither Frivolous Nor Sham-Litigation

Plaintiff's claim is that he was effectively punished for filing a suit claiming the U.S. Air Force harmed him and others when the Air Force wanted to keep that fact quiet. It is unfortunate that the government attempts to paint plaintiff's concerns over the health and well being of service members, and his willingness to bring these concerns to light, as "frivolous." Socially and politically it is disheartening; legally, it is wrong.

A claim will be found frivolous only where "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In *Deutsch v. United States*, 67 F.3d 1080 (3d Cir. 1995), the Third Circuit defined "frivolous" to mean "of little or no weight, value, or importance; paltry; trumpty; not worthy of serious attention; having no reasonable ground or purpose." *Id.* at 1085-86.

28

Defendants claim that plaintiff's suit was frivolous, and therefore not afforded First Amendment protections, because plaintiff failed to state in his claim that SMSgt Mahoney knew the content of plaintiff's protected speech. SMSgt Mahoney's knowledge, motivations, and intent are questions of fact that must still be discovered. Similarly, who within the Air Force knew of plaintiff's complaints remains unknown until discovery can be conducted. What is known, and what plaintiff cites in his Complaint, is that at the time surrounding the events that led to plaintiff's suit: (1) Dover AFB personnel were aware of the tainted Anthrax vaccination program; (2) Dover AFB personnel knew that the tainted vaccinations caused a variety of health problems, including headaches; (3) TSgt Miller knew that plaintiff was going to see the flight surgeon because of bad headaches and that he might not be fit for flight duty as a result; (4) plaintiff was placed on DNIF status; (5) SMSgt Mahoney knew that plaintiff was placed on DNIF status; and, (6) SMSgt Mahoney reacted extremely to plaintiff's DNIF status by disciplining him with an LOR. Plaintiff's claim is anything but frivolous and, as such, the protections afforded it under the Petition Clause stand.

Defendants also claim that plaintiff's suit is frivolous because "plaintiff's original suit sought . . . to remove any trace of the letter of reprimand from his official personnel file" when he knew that "there was no letter of reprimand in his official personnel files to remove." Defs.' Mot. To Dismiss at 31. Defendants mischaracterize plaintiff's claim. Plaintiff seeks to have the LOR removed from his "personnel file." (¶ 23). Plaintiff does not ask for the LOR to be removed from his "official personnel file." As can be clarified with further discovery, there are a number of "personnel files" in the Air Force, such as Unfavorable Information Files (UIFs) and Personnel Information Files (PIFs), that may have contained the LOR. Seeking the removal of a improperly issued reprimand from a personnel file does not make plaintiff's Complaint frivolous.

29

**B.    Plaintiff's Lawsuit Was a Substantial or Motivating Cause in the Defendants' Retaliation**

Following the determination that his conduct was constitutionally protected, plaintiff must demonstrate "causation" or that this protected conduct was a "substantial" or "motivating factor" in causing the subsequent retaliation. *Suppan v. Dadonna*, 203 F.3d. 228, 235 (3d Cir. 2000), *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). As the Third Circuit only recently pointed out, the "threshold is very low" for First Amendment Adverse action. *O'Connor v. City of Newark*, No. 05-2237, 2006 WL 590357, at *2 (3d Cir. March 13, 2006) (Ex. B). "But for" causation is not needed. *Suppan*, 203 F.3d at 236. "'Substantial factor' does not mean 'dominant' or 'primary' factor." *Hill*, 411 F.3d at 126 n.11. Instead, a plaintiff need only show that his protected First Amendment rights "played any substantial role in the relevant decision." *Suppan*, 203 F.3d at 236; *see O'Connor*, 2006 WL 590357, at *2 (holding actionable retaliation claims that are even "relatively minor."); *Miller v. Cigna, Corp.*, 47 F.3d 586, 597 n.9 (3d Cir. 1995) (en banc) ("played a role" in the adverse decision). This is a question of fact, not one of law and further discovery is necessary to ascertain all relevant facts. *Baldassare*, 250 F.3d at 195. The facts that have been revealed, however, establish that summary judgment is inappropriate at this point.

**1.    Knowledge of Protected Conduct.**

Sufficient evidence must be produced to demonstrate that the defendants knew of the protected activity. *Keenan v. City of Phila.*, 983 F.2d 459, 466 (3d Cir. 1992). Here, defendants were aware of the filing of plaintiff's lawsuit as each was served notice. Notice is further evidenced by defendants' seeking dismissal of plaintiff's original complaint and the media accounts of the suit following its filing. (¶¶ 87-92).

### 2.    Temporal Proximity.

"Timing alone raises the requisite inference [of causation] when it is unusually suggestive of retaliatory motive." *Jensen v. Potter,* 435 F.3d 444, 450 (3d Cir. 2006) (internal punctuation omitted); *see Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3rd Cir. 1997) ("temporal proximity between the protected activity and the [retaliation] is sufficient to establish a causal link"). The Third Circuit has found that the temporal link alone is "unusually suggestive" and can establish causation when the retaliation occurs within two days of the protected conduct. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). Plaintiff's lawsuit was filed on November 18, 2004, the News Journal featured the story on November 19, 2004, and when plaintiff returned to work on November 23, 2004, like heads posted on stakes as a warning, he was greeted by numerous postings of that article in and around the squadron. (¶¶ 87-92). Within days of the lawsuit, defendants and their subordinates began their campaign to ostracize plaintiff.

### 3.    Demonstrated Anger, Hostility and Antagonism.

As this Court has already affirmed, evidence of anger, hostility and other antagonism also demonstrates causation. *See Adkins*, 389 F. Supp. 2d at 586 ("antagonism toward Plaintiff is proof of causation"). It is well established that "a plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period." *Woodson*, 109 F.3d at 920-21; *see also Robinson v. SEPTA*, 982 F.2d 892, 895 (3d Cir. 1993). For example, evidence that a defendant is "irritated" or otherwise angered by a plaintiff can be compelling evidence of causation. *See Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) (defendant "irritated" by protected conduct).[7] As plaintiff describes in his Complaint the mood between he and his supervisors grew even darker after the filing of his suit.

The plaintiff's work was constantly over-scrutinized and criticized, he was relegated to a menial position in the squadron and forced to work repetitive graveyard shifts. ( ¶¶ 93-95).

### 4.    Violations of Law, Policies and Procedures.

Violations of laws, rules and procedures also are proof of causation and wrongdoing.[8]  As is discussed in plaintiff's Complaint an example of defendants violating policies, procedures, practices, standing orders, rules and regulations revolves around Plaintiff's wearing of his flight suit. (¶¶ 98-100).  Plaintiff was specifically ordered to cease wearing his flight suit after he was grounded but before he was medically disqualified from flying. (¶ 98).  Simply put, at the time plaintiff was ordered to stop wearing the duty uniform of air crew - he was still air crew.  The order was far from standard practice and clearly intended to punish plaintiff for filing his suit.  Equally demonstrative are the threats plaintiff received over the loss of his aircrew badge.  Upon reasonable suspicion and belief, a threat to take an airman's wings for being temporarily grounded, is not in line with Air Force Regulations.

### 5.    Disparate Treatment.

Similarly, evidence of disparate treatment also can demonstrate causation.  *San Filippo*, 30 F.3d at 444; *Brennan*, 350 F.3d at 421; *Adkins*, 389 F. Supp. 2d at 586.  Plaintiff's Complaint amply describes the disparate treatment to which plaintiff was subjected after he filed this suit.

---

Footnote continued from previous page

[7] Even "a significant delay between the expressive activity and the retaliation [will] not preclude finding the required nexus where there is evidence of continuing hostility to connect events that would not otherwise appear to be related to each other." *Brennan*, 350 F.3d at 420.

[8] *See, e.g., Village of Arlington Heights v. Metropolitan Hous. Develop. Corp.*, 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evidence that *improper purposes are playing a role*. Substantive departures, too, may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached."); *Stewart v. Rutgers, the State Univ.*, 120 F.3d 426, 434 (3d Cir. 1997) (departures from the normal procedural sequence afford evidence that *improper purposes are playing a role*); *see Bray v. Marriott Hotels*, 110 F.3d 986, 992, 994 (3d Cir. 1997); *Kunda v. Muhlenberg College*, 621 F.2d 532, 539 (3d Cir. 1980); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 143-44 (3d Cir. 1977); *Adkins*, 389 F. Supp. 2d at 586 (violations of Air Force policies are probative of causation in First Amendment retaliation context).

He was placed on shift work for extended periods, he was ordered to stop wearing his flight suit, and was, in general, treated differently from other squadron members similarly situated on DNIF status. (¶¶ 99-100).

**C.    Defendants' Retaliation Against Plaintiff Would Chill A Person of "Ordinary Firmness" From Exercising His First Amendment Right**

A key question in determining whether a cognizable First Amendment claim has been stated is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights" *Suppan*, 203 F.3d at 235. Defendants argue that the retaliatory acts against plaintiff described above are *de minimis* or trivial, do not meet constitutional muster and, therefore plaintiff's Petition Clause claim should be dismissed. Defs. Mot to Dismiss at 31. "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a *fact intensive* inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan*, 350 F.3d 399, 419 (3d Cir. 2003) (emphasis added).[9] And adverse action will be found if "retaliatory conduct [is] *sufficient to deter a person of ordinary firmness* from exercising his First Amendment rights." *Suppan*, 203 F.3d at 235 (internal punctuation omitted) (emphasis added). In the present matter, that fact intensive inquiry and the ordinary firmness standard are even less clear since the events described took place in a military unit.

Exactly how an action may be described as *de minimis* in a military environment is unclear. In the rigidly hierarchical nature of the military, service members are defined by the uniforms and functional badges worn. But stripping an airman of his wings or ordering him not

---

[9] Defendants have not shown the absence of a genuine issue of material facts or that they are entitled to judgment as a matter of law. Rather, defendants have shown the depth and breadth of the factual questions at issue. Consequently, summary judgment at this stage is simply not suitable and should be denied.

to wear his flight suit is a significant sanction. It amounts to a stripping away of honor and can, therefore, be defined as punitive.

Equally difficult to define in the military context is the point at which "retaliatory conduct [is] sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan*, 203 F.3d at 235. Military service members, especially the enlisted ranks, are conditioned not to question authority. Thus, if someone does question that authority, even if in they are in the right to do so, it may not take much for superiors to trigger that conditioning and improperly quiet that person. It very well could be something as easy as posting a newspaper article or placing someone in a new, less thought-of position in the center of a squadron. In the military environment, service members are more contained, and even the slightest change from the status quo can be used to demonstrate authority.

Plaintiff has clearly met his burden and adequately put the defendants on notice of the essential elements of his cause of action. Because defendants are unable, on the face of the pleadings, to prove that no set of facts in support of plaintiff's Petition Clause claim would warrant relief, their motion to dismiss should be denied.

## XII.    PLAINTIFF IS ENTITLED TO THE RELEASE OF ALL INFORMATION CONCERNING THE HEALTH-RELATED EFFECTS OF THE ANTHRAX VACCINE

Defendants argue that the First Amendment does not guarantee a right of access to sources of information within government control. Defs. Mot. to Dismiss, at 35. This assertion misinterprets the applicable case law. While it is true that the First Amendment does not guarantee a *general* right of access to all government information, courts (including the Supreme Court) have repeatedly recognized that the First Amendment does guarantee a *qualified* right of access to government information.[10]

---

[10] *See, e.g., Cal-Almond, Inc. v. United States Dep't of Agriculture*, 960 F.2d 105, 109 n.2 (9th Cir. 1991) (noting that although there is no general right of access to government information,

Footnote continued on next page

To determine whether the qualified right to access attaches to a particular type of government document, the Supreme Court has developed a two-part "experience and logic" test. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (setting up the two-part test); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 694-95 (6th Cir. 2002) (noting that the "logic and experience" test developed by the Supreme Court in *Richmond Newspapers* and its progeny is a test of general applicability to determine whether the First Amendment right of access attaches to a particular proceeding or record).

Under the experience portion of the test, because "a tradition of accessibility implies a favorable judgment of experience," courts look at whether the proceedings or records are of the type that have been historically open to the public. *Globe Newspaper v. Superior Court*, 457 U.S. 596, 605 (1982) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589 (1980) (Brennan, J., concurring)); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). However, this inquiry is not a mere history exercise. *See Detroit Free Press*, 303 F.3d at 701 (stating that although historical context is important, the First Amendment right of access may attach where the beneficial effects of access to that process are overwhelming and uncontradicted"); *see also United States v. Simone*, 14 F.3d 833, 842 (3d Cir.1994) (finding First Amendment right of access despite no history of such). Here, the benefits of access to the records concerning the health-related effects of squalene-tainted anthrax vaccinations are overwhelming and uncontradicted. Release of this information would ensure that plaintiff and his health care

---

Footnote continued from previous page
there is a qualified right of access to some government information); *In re Search Warrant for Secretarial Office Outside Office of Gunn*, 855 F.2d 569, 572-73 (8th Cir. 1988) (holding that there is a First Amendment right of access to certain government documents); *Press-Enterprise v. Superior Ct.*, 464 U.S. 501 (1984) ("*Press-Enterprise I*") (holding that an order sealing transcript of voir dire proceedings in death case violated First Amendment right of access).

providers are adequately informed of the health-related effects of the squalene-tainted anthrax vaccine. Additionally, it would further the democratic process by encouraging accountability by civilian and military officials for their health care decisions. Where the benefits of access to the information are clear, courts have primarily relied on the logic portion of the two-part *Richmond Newspapers* test. *See Simone*, 14 F.3d at 838 ("[I]n making our determination we rely primarily on the 'logic' prong of the test."); *United States v. Criden*, 675 F.2d 550, 555 (3d Cir.1982) (focusing on the logic portion of the two-part *Richmond Newspapers* test).

Under the logic portion of the test, courts asks "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. *See also Globe Newspapers*, 457 U.S. at 606; *Richmond Newspapers*, 448 U.S. at 582-84 (Stevens, J. concurring); *Id.* at 584-98 (Brennan and Marshall, JJ. concurring); *Gannett Co. v. DePasquale*, 443 U.S. 368, 400 (1979) (Powell, J. concurring). Granting access to information regarding the health-related effects of the anthrax vaccine will undoubtedly enhance the functioning of the military's response to the squalene-tainted anthrax problem in several ways. First, providing access to this information will act as a check on the actions of military and civilian officials and ensure that the government's investigation and response to the squalene-tainted anthrax problem is conducted fairly and properly. Second, providing access to this information will allow the plaintiff to respond to the health-effects of the squalene-tainted anthrax. Third, as noted above, allowing access to such records would encourage accountability on the part of civilian and military officials for their health care decisions.

Where public access would enhance the functioning of a particular government process the Supreme Court has noted that "it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe*

*Newspapers*, 457 U.S. at 606-7. Defendants have not alleged such an compelling and narrowly tailored interest. Therefore, under the two-part "experience and logic" test, the First Amendment right of access entitles plaintiff to information concerning the heath-related effects of the anthrax vaccine.[11]

### XIII.  Plaintiff Was Not Required To First Resort To And Exhaust Administrative Remedies To Bring This Constitutional Claim

This Court has already concluded "that the exhaustion of administrative remedies is not required in this case,"[12] and defendants have provided no basis for why the Court should reconsider that decision. Defendants now artfully suggest the Military Whistleblower Protection Act ("MWPA") is a different administrative remedy than this Court previously ruled on. However, the MWPA is simply a different vehicle for obtaining a hearing in front of the Air Force Board for Correction of Military Records ("AFBCMR"). Even though defendants avoid the abbreviation "AFBCMR" and prefer to generically label it "the Board," it is the same entity.

The AFBCMR is a board established pursuant to 10 U.S.C. § 1552, and it is thus particularly unfit to hear Plaintiff's Free Speech Claims. Boards established under § 10 U.S.C. 1552 are not necessarily legally trained and were never intended by Congress to resolve what are essentially legal issues. *Glines v. Ward*, 586 F.2d 675, 678 (9th Cir. 1978) (holding that the district court properly refused to dismiss the case for failure to exhaust administrative remedies in free speech action), *rev'd on other grounds, sub nom Brown v. Glines*, 444 U.S. 348 (1980). This is not a case where the interpretation of some military regulation is required or at issue. Rather,

---

[11] Even if the First Amendment does not grant a right of access to the plaintiff in this case, the plaintiff has a common law right of access to the information. *See United States v. Criden*, 648 F.2d 814, 823 (3d Cir. 1981) (holding that a common law right of access exists as to certain government records); *United States v. Myers*, 635 F.2d 945, 951-52 (2d Cir. 1980) (recognizing a common law right of the public and the press to copy ABSCAM video and audio tapes which were admitted into evidence and played in open court proceedings).

[12] *Adkins*, 389 F. Supp. 2d at 589.

this is a case where the military singled out an airman and retaliated against him in an effort to quash any and all speech regarding the squalene-tainted anthrax vaccine. The AFBCMR does not have either the expertise or the independence to afford plaintiff an appropriate remedy.[13]

Plaintiff's free speech claim is particularly ill-suited for just resolution by a military administrative board. Plaintiff does not set forth a garden-variety military discipline case. Plaintiff was retaliated against as part of a high-level, military-wide attempt to stifle speech related to the squalene-tainted anthrax vaccine. (¶ 38). As a result of plaintiff's speech, the military, through Defendant Handy, ordered all uniformed DAFB personnel *not to speak* about the anthrax vaccination program. (¶ 83). That same military can not then be expected to provide plaintiff with a neutral forum for adjudicating his claims of free speech retaliation.

Not only is the hearing available under the MWPA insufficient since it is in front of the AFBCMR, other components of the MWPA administrative structure render it completely inadequate as a replacement for judicial review. First, under the MWPA, the Secretary of the Air Force, one of the very defendants in this case, would be required to order plaintiff's remedy. Given that the Pentagon wants to keep quiet any discussion of the squalene-tainted anthrax vaccination, Defendant Roche can not be expected to order plaintiff's requested remedies. "[E]xhaustion depends on the potential adequacy of that remedy in the particular case." *Jorden v. National Guard Bureau*, 799 F. 2d 99, 102 n. 5 (3d Cir. 1986). In addition, as part of the MWPA administrative process suggested by defendants, an evaluation of plaintiff's case would be submitted to the Secretary of Defense, another defendant in this very case. Administrative review pursuant to the MWPA would be far from impartial. Finally, the MWPA was intended to protect

---

[13] Administrative boards simply do not have this expertise. *See Califano v. Sanders*, 430 U.S. 99, 109 (1977) ("Constitutional questions are obviously unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."); *Hochman v. Board of Education*, 534 F.2d 1094, 1097 (3d Cir. 1976); *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973) ("Resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board"); *Adair v. England*, 183 F. Supp. 3d 31, 55 (D.D.C. 2002).

members of the military who expose the military's wrongdoings. Here, the military's

wrongdoings had already been exposed. *See* Ex. C (Newspaper Articles).

## XIV.  PLAINTIFF IS ENTITLED TO AN ORDER REQUIRING DEFENDANTS TO PLACE A SIGNED LETTER OF APOLOGY IN PLAINTIFF'S PERSONNEL FILE

This Court has authority to issue an order requiring defendants to place a signed letter of

apology in plaintiff's personnel file under 28 U.S.C. § 1361. When federal officials act outside

the zone of their permissible discretion, abuse their discretion, or act contrary to law, a court may

issue an order remedying the actions taken by the federal officials through a writ of mandamus.

*See Davis v. Shulz*, 453 F.2d 497, 502 (3d Cir. 1971) ("Jurisdiction can be based on § 1361 to

issue appropriate corrective orders where Federal officials are not acting within the zone of their

permissible discretion but are abusing their discretion or otherwise acting contrary to law.")

(internal citations omitted); *Naporano Metal & Iron Co. v. Sec. of Labor*, 529 F.2d 537, 542 (3d

Cir. 1976) ("[W]here there has been an action taken by a government official contrary to law and

so plainly prohibited as to be free from doubt, it may be remedied by the issuance of a writ of

mandamus."); *Rosanti v. Haran*, 459 F. Supp. 1148, 1151 (3d Cir. 1977) ("[M]andamus will lie

not only where a federal officer has failed to comply with a specific statutory or regulatory

directive, but also where a constitutionally mandated duty has not been performed.").

The issuance of the LOR was contrary to normal military procedures and was undertaken

to chill the speech rights guaranteed to the plaintiff by the First Amendment. It is so far beyond

the zone of permissible discretion to retaliate against a member of the military for bringing up the

subject of squalene-tainted anthrax as to rise to the level of abuse of discretion. Therefore, the

court is authorized to issue a mandamus requiring the insertion of a letter of apology into the

plaintiff's personnel file.

Moreover, even if this Court does not have jurisdiction to issue such an order under 28 U.S.C. § 1361, this Court has non-statutory authority to issue an injunction remedying the constitutional violations of the federal officers. "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1947); *Gurmankin v. Costanzo*, 556 F.2d 184, 188 (3d Cir. 1977). Therefore, the issuance of an order requiring defendants to place a signed letter of apology into the plaintiff's personnel file is entirely within the authority of this Court.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Attorneys for Plaintiff Jason A. Adkins

**ARNOLD & PORTER L.L.P.**
Susan Cassidy, Esq.
Randall Shaheen, Esq.
M. Katherine Stroker, Esq
Alexander Major, Esq
555 12th Street, NW
Washington, DC 20004
202-942-5000 (phone)
202-942-5999 (fax)

Attorneys for Plaintiff Jason A. Adkins

Dated:  March 15, 2006