IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SSGT JASON A. ADKINS, USAF, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD H. RUMSFELD, Secretary of Defense; )<br>JAMES G. ROCHE, Secretary of the Air Force; )<br>GEN. JOHN W. HANDY, Commander Air )<br>Mobility Command, COL. JOHN I. PRAY, JR., )<br>436th Air Wing Commander, in their official )<br>capacities, )<br>)<br>Defendants. ) | Civ. Act. No. 04-1453-JJF |

**PLAINTIFF'S MOTION TO STRIKE CERTAIN EXHIBITS FILED WITH DEFENDANTS'
MOTION TO DISMISS FOR FAILING TO COMPLY WITH FED. R. CIV .P. 12(b)(6)**

Plaintiff moves to strike seven exhibits improperly submitted with defendants' Motion to Dismiss ("Defs. Mot. To Dismiss") (D.I. 29). Specifically, plaintiff requests that this Court strike Exhibits 1, 2, 3, 4, 6, 8, and 9. These exhibits concern matters outside the pleadings. They were not attached to the Complaint, are not matters of public record, or integral to or explicitly relied upon in the Complaint. Thus, they fail to comply with Rule 12(b)(6) of the Federal Rules of Civil Procedure. Furthermore, defendants' motion is not titled in the alternative as a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. As a result, there is no need for the Court to entertain these exhibits at this stage of the litigation.

Motions to strike should be considered before the substantive motions because if stricken, the improper filings "would not weigh into the court's decision." *Fed. Insur. Co. v. Signatics*, Inc., No. 97-343-SLR, 97-647-SLR, 1998 WL 175882, at *1 (Mar. 26, 1998). The extraneous evidence submitted by the defendants was not relied upon by plaintiff in crafting his Complaint. This is of significant importance when examining a motion to dismiss because if the Court considers matters outside the pleadings and not relied on by plaintiff in crafting his Complaint, it must convert the motion to dismiss to

1

a motion for summary judgment and treat it as provided under Rule 56 of the Federal Rules of Civil Procedure. *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000).

## DISCUSSION

"It is black-letter law that [a] motion to dismiss for failure to state a claim . . . is to be evaluated only on the pleadings." *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F.3d 239, 266 (3d Cir. 2001) (quoting *Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 935 (5th Cir. 1988)) (internal quotations omitted). To that end, the general rule under Rule 12(b)(6) of the Federal Rules of Civil Procedure is that only allegations of the complaint, exhibits attached to the complaint, and matters of public record are considered on a motion to dismiss. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). If the court considers matters outside the pleadings, it must convert the motion to a motion for summary judgment and treat it as provided under Rule 56 of the Federal Rules of Civil Procedure. *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000) (stating when a "court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it is converted to a motion for summary judgment."). Although there is a limited exception to this rule that allows a district court to consider an undisputedly authentic document if the plaintiff's claims are based on that document, that exception simply does not apply here. *See Pension Benefit Guaranty Corp.*, 998 F.2d at 1196.

Defendants filed, in part, twelve pieces of evidence with their motion that they claim plaintiff relied upon in crafting his Complaint. Defs. Mot. to Dismiss at 10.[1] Specifically, the defendants suggest that plaintiff relied on six affidavits taken in support of defendants' motion (Defs. Mot. to Dismiss, Ex. 1-

---

[1] Moreover, to the extent that defendants also assert that these affidavits on causation should be considered by this Court because they involve a factual challenge to subject matter jurisdiction, defendants are wrong, *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). Jurisdictional facts include, for example, diversity of citizenship and jurisdictional amount. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 183 (1936). Jurisdictional facts do not include affidavits that address causation. Defendants cannot "turn an attack on the merits, against which the party has the procedural protections of a full trial including the right to a jury, into an attack on jurisdiction." *Kulick v. Pocono Downs*, 816 F.2d 895, 898 (3d Cir. 1987). *See also Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1280-81 (3d Cir. 1993) (finding that the district court improperly reviewed the merits when evaluating jurisdiction).

2

6); a letter from the Dover AFB Inspector General (IG) to Plaintiff (Defs. Mot. to Dismiss, Ex. 6a); an IG Complaint Analysis (Defs. Mot. to Dismiss, Ex. 6b); plaintiff's response to his letter of reprimand (Defs. Mot. to Dismiss, Ex.7); Dover Air Force Base (DAFB) Instruction 11-206 (Defs. Mot. to Dismiss, Ex.8); and an excerpt from the Air Force Almanac (Defs. Mot. to Dismiss, Ex.9). It is evident from the face of the Complaint that plaintiff relied on none of these documents in crafting his Complaint.[2]

Defendants further suggest that these documents are "integral or explicitly relied upon in the complaint" in line with *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) or *In re Rockefeller Center Properties Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999). They are not. Both *Mele* and *In re Rockefeller* dealt with the written terms of an actual document being contested. For example, in *Mele* a former employee brought an action against his federal employer claiming that he was terminated in violation of his employer's Management Guide to Personnel Policies. *Mele*, 359 F.3d at 253. The District Court granted the government's motion to dismiss and the employee appealed the ruling claiming that the District Court erroneously relied on the disclaimer on the front of the management guide in coming to its decision. *Id.* at 256 n.5. The Third Circuit disagreed. They saw the use of the guide's disclaimer as "just the kind of evidence that the 'integral' documents exception was intended to encompass." *Id.* In *Mele* examination of the guide without needing to convert the motion to dismiss was justified because the "[t]he *Guide* forms the heart of *Mele's* complaint." *Id.*

The heart of plaintiff's Complaint lies in actions and words—not ink and paper. None of the above listed documents submitted by defendants "forms the heart" of his Complaint and therefore should not be considered by this Court. In fact, they should be excluded entirely from the record at this stage of the proceedings. Failure to exclude these documents mandates that the Court convert defendants' motion to dismiss to a motion for summary judgment. *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir.

---

[2] This Court has already encountered two of these exhibits, the DAFB order and plaintiff's response to the LOR, and found that they were "neither mentioned in nor relied upon in the [Plaintiff's initial] complaint." *Adkins v. Rumsfeld*, 389 F. Supp.2d 579, 586 n.3 (D. Del. 2005). The same holds true of plaintiff's amended complaint.

2000); *DeTore v. Jersey City Public Employees Union*, 615 F.2d 980, 983 (3d Cir. 1980); *see also Spargue v. Fitzpatrick*, 546 F.2d 560, 563 (3d Cir. 1976), *cert den.* 431 U.S. 937 (finding that an action taken by the court after considering matters outside the pleadings will be viewed as a summary judgment regardless of how categorized by the court).

However, due to the fact-filled nature of plaintiff's claim, a conversion of the defendant's motion to dismiss into a motion for summary judgment would be inappropriate at this juncture. Plaintiff claims that his First Amendment rights were violated by defendants when they, first, retaliated against his speaking out about receiving the tainted anthrax vaccinations and, second, when they retaliated against him for bringing this suit. Both of these inquiries require significant examination of the motive, knowledge and intent of the government and its treatment of plaintiff once they understood his health complaints and their connection to the tainted vaccine. Furthermore, any resolution of plaintiff's retaliation claim also requires an in-depth examination of the intent and motivations behind the actions taken by senior military leadership against plaintiff. As such, the Court should avoid conversion to summary judgment and strike the extraneous evidence submitted by the defendants.

## CONCLUSION

For the forgoing reasons, the Court should strike Exhibits 1, 2, 3, 4, 6, 8 and 9 from Defendants' Motion to Dismiss.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Attorneys for Plaintiff Jason A. Adkins

4

                    **ARNOLD & PORTER LLP**

                    **SUSAN CASSIDY, ESQ.**
                    **RANDALL SHAHEEN, ESQ.**
                    **MELVIN SPAETH, ESQ.**
                    **M. KATHERINE STROKER, ESQ.**
                    **ALEXANDER MAJOR, ESQ.**
                    555 12th Street, NW
                    Washington, DC 20004
                    202-942-5000 (phone)
                    202-942-5999 (fax)

                    Attorneys for Plaintiff Jason A. Adkins

**OF COUNSEL:**

**JOHN W. WHITEHEAD, ESQ.**
**DOUGLAS MCKUSICK, ESQ.**
**THE RUTHERFORD INSTITUTE**
P.O. Box 7482
Charlottesville, Virginia 22906
(434) 978-3888 (phone)

Dated: March 15, 2006

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SSGT JASON A. ADKINS, USAF, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD H. RUMSFELD, Secretary of Defense; )<br>JAMES G. ROCHE, Secretary of the Air Force; )<br>GEN. JOHN W. HANDY, Commander Air )<br>Mobility Command, COL. JOHN I. PRAY, JR., )<br>436th Air Wing Commander, in their official )<br>capacities, )<br>)<br>Defendants. ) | Civ. Act. No. 04-1453-JJF |

**EXHIBIT A:**

**COPIES OF UNPUBLISHED OPINIONS
REQUIRED UNDER LOCAL RULE 7.1.3(A)(G)**

1

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
(Cite as: 1998 WL 175882 (D.Del.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
FEDERAL INSURANCE COMPANY, as subrogee of Wilmington Trust Corporation, and St. Paul Fire & Marine Insurance Company, as subrogee of Wilmington Trust Corporation, Plaintiffs,
v.
SIGNTACTICS, INC. and KEITH SIGN COMPANY, Defendants.
HARTFORD INSURANCE COMPANY, as subrogee of Limestone Valley Enterprises, L.P. Plaintiff,
v.
SIGNTACTICS, INC. and KEITH SIGN COMPANY, Defendants.
No. 97-343-SLR, 97-647-SLR.

March 26, 1998.
John D. Balaguer, Esquire of White and Williams, Wilmington, attorney for plaintiffs Federal Insurance Co. and St. Paul Fire & Marine Insurance Co.

Kathleen Jennings, Esquire, Oberly, Jennings & Drexler, Wilmington, attorney for plaintiff Hartford Insurance Co.

Mary Matterer, Esquire, Stradley, Ronon, Stevens & Young, Wilmington, attorney for defendant Signtactics, Inc.

MEMORANDUM OPINION

ROBINSON, District J.

I. INTRODUCTION

*1 Pending before the court are motions to dismiss filed by defendant Signtactics, Inc. ("Signtactics"). (*Federal Insurance Co., et al. v. Signtactics, Inc. et al.,* C.A. No. 97-343-SLR("*Federal* "), D.I. 6; *Hartford Insurance Co. v. Signtactics, Inc. et al.,* C.A. No. 97-647-SLR ("*Hartford* "), D.I. 6) Independent suits were initiated against Signtactics by Federal Insurance Company & St. Paul Fire & Marine Insurance Company ("Federal") and Hartford Insurance Company ("Hartford") (collectively referred to as "plaintiffs"), alleging contract and tort claims.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a).

II. FACTS AND PROCEDURAL BACKGROUND

The underlying facts do not appear to be in dispute. In March 1990, Wilmington Trust Company ("Wilmington Trust") leased space in the Lantana Plaza Shopping Center in Hockessin from Limestone Valley Enterprises L.P. ("Limestone L.P.") to operate a bank branch. (*Federal,* D.I. 10, Exhibit 1A)

On January 3, 1991, Wilmington Trust contracted with Signtactics to "meet, survey, design, manufacture, erect, and install" business signs at the Lantana Plaza branch. (*Hartford,* D.I. 7, Exhibit 1A at 1) The contract called for work to be completed by no later than the week of February 18, 1991. (*Id.* at 4) The sign at issue in this case was referred to in the contract as Sign # 6, and was to be installed on the south elevation of the bank building. (*Id.* at 3)

On September 23, 1996, Sign # 6 malfunctioned. Fire and smoke spread throughout the bank branch, causing extensive damage to both real and personal property. On June 23, 1997, Federal, as subrogee of Wilmington Trust, filed a law suit against Signtactics and Keith Sign Company, allegedly a subcontractor hired by Signtactics to perform the contract for the signs. (*Federal,* D.I. 1) The suit claimed breach of contract, negligence, and breach of warranties. On December 9, 1997, Hartford, as subrogee of Limestone L.P., filed an action against the same defendants, based on the same events, claiming negligence and breach of warranties. (*Hartford,* D.I. 1)

Signtactics has now filed motions to dismiss in both cases, pursuant to F.R.C.P. 12(b)(6), alleging that the six-year statute of repose provided by Delaware's "Builders' Statute," 10 Del. C. § 8127, bars both actions. (*Federal,* D.I. 6; *Hartford,* D.I. 6) Briefing is complete on the motions in both cases, and all parties have consented to have the motions decided jointly by the court. (*Hartford,* D.I. 5) [FN1] Also

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
**(Cite as: 1998 WL 175882 (D.Del.))**

pending is Signtactics' motion to strike a surreply brief filed by Federal. (*Federal*, D.I. 12, 13)

> FN1. Previously, Federal requested oral argument, pursuant to Local Rule 7.1.4. (*Federal*, D.I. 9) There was no request for oral argument in *Hartford*. The court considers Federal's request now moot.

III. DISCUSSION

A. Motion to Strike

Signtactics has moved to strike Federal's surreply brief and the supplemental affidavit contained therein. (*Federal*, D.I. 12, 13) This motion should be considered before addressing the motions to dismiss because if stricken, the supplemental affidavit of Edward Huppi would not weigh into the court's decision on the motions to dismiss.

*2 Local Rule 7.1.3 addresses the form and content of briefs in this district. No subsection provides for or prohibits surreply briefs. Subsection (c) discusses the contents of opening, answering, and reply briefs. Signtactics interprets this to imply that a surreply is not allowed, at least without leave from the court. Federal did not seek permission to file a surreply.

Federal addressed two issues in its surreply. First, it believed Signtactics inaccurately implied that Sign # 6 was the only sign for the bank branch and clarified the number of signs at the branch through Huppi's supplemental affidavit. However, whether or not the affidavit is stricken is irrelevant, as there is already evidence in the record through the contract between Wilmington Trust and Signtactics, of the number of signs at the bank branch. (*See Federal*, D.I. 7, Exhibit 1A)

Second, Federal argued that *McHughs Electric Co. v. Hessler Realty & Development Co.*, Del.Supr., 129 A.2d 654 (1957), cited and relied upon in Signtactics' reply brief, is distinguishable from the instance case. In its answering brief, Federal asserted that the lease between Wilmington Trust and Limestone L.P. was evidence of the intent of both the lessor and the lessee that the signs were neither permanent additions nor enhancements to the capital value of the property. (*Federal*, D.I. 10 at 14) Signtactics then properly addressed that argument in its reply brief, citing *McHughs*. This is not a situation where one party misled the other by holding back arguments until the reply brief, in violation of Local Rule 7.1.3(c)(2).

However, Signtactics has not alleged any particular prejudice suffered, nor is any such prejudice readily apparent. Given that the surreply brief is innoxious, the motion to strike is denied and the court will consider the surreply brief and supplemental affidavit in deciding the motions to dismiss.

B. Motions to Dismiss

Signtactics moves this court to dismiss the two complaints pursuant to F.R.C.P. 12(b)(6). [FN2] Specifically, Signtactics argues protection under the Delaware Builders' Statute and expiration of the six-year limitations period for damages resulting from deficiencies in the construction of improvements to real property prior to the filing of either complaint. The application of the Builders' Statute is an affirmative defense and as such, Signtactics bears the burden of proving its applicability in this case.

> FN2. Signtactics states in its opening brief that it seeks a motion to dismiss "pursuant to F.R.C.P. 12(b)(6) for lack of subject matter jurisdiction." (*Hartford*, D.I. 7 at 1) Such a motion would be based upon F.R.C.P. 12(b)(1). As this is the only reference to subject matter jurisdiction, it is likely a typographical error. Therefore, this memorandum opinion assumes Signtactics' motion is a motion to dismiss for failure to state a claim.

1. Standard of Review

A motion to dismiss for failure to state a claim, pursuant to F.R.C.P. 12(b)(6), cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," assuming all allegations set forth in the complaint are true and drawing all inferences favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, when matters outside the pleadings are presented, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." F.R.C.P. 12(b)(6). F.R.C.P. 56 provides that granting summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). "The appropriate inquiry is whether there is a need for a trial .... Are there any genuine factual issues that properly can be resolved in favor of either party." *Windley v. Potts Welding & Boiler Repair Co.*, 888 F.Supp. 610, 611 (D.Del.1995).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
(Cite as: 1998 WL 175882 (D.Del.))

Page 3

*3 In its opening briefs, Signtactics attached a copy of the contract with Wilmington Trust. "The Court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *DeWitt v. Penn-Del Directory Corp., 872 F.Supp. 126, 128 (D.Del.1994).* The contract is such a document and, thus, Signtactics' submission of the contract does not convert the motions to dismiss to summary judgment motions.

However, both plaintiffs submitted affidavits for the court's consideration. Hartford's answering brief contained an affidavit from Cindy Bartoshesky, a limited partner of Limestone L.P. (*Hartford*, D.I. 10, Exhibit A) Federal submitted two affidavits in its answering brief; one from a Wilmington Trust executive, Eduard Huppi, and the other from Clifford Patton, a retained expert in this case. (*Federal*, D.I. 10, Exhibit 1, 2) Additionally, Federal attached a supplemental affidavit from Eduard Huppi in its surreply brief. (*Federal*, D.I. 12, Exhibit 1) These affidavits are matters outside the pleadings and, therefore, the motions to dismiss are converted to motions for summary judgment.

The court is required to provide the parties with notice of its intent to treat motions to dismiss as motions for summary judgment and give the parties an opportunity to submit material in support of their positions. *Hilfirty v. Shipman, 91 F.3d 573, 578 (3d Cir.1996).* The parties appear to have had proper notice, as both plaintiffs and Signtactics propounded in their briefs that the motions were converted. (*Federal*, D.I. 10 at 6, D.I. 11 at 1; *Hartford*, D.I. 10 at 5)

2. Delaware Builders' Statute

The basis for Signtactics' motions is that the actions are barred by the statute of repose in the Delaware Builders' Statute, 10 Del. C. § 8127. A six-year limitation period applies thereunder to actions for damages, indemnification, or contribution for property damage, real or personal or mixed, arising out of any deficiency in the construction of an improvement to real property or the design, planning, supervision, or observation of any such construction. 10 Del. C. § 8127(b)(1)(2). "The limitation period begins to run at the earliest of several designated dates, irrespective of the date of the injury." *City of Dover, et al. v. International Telephone and Telegraph Corp. et al., Del.Supr., 514 A.2d 1086, 1089 (1986).* "The statute in question is a true statute of repose. It prevents a claim from arising, whereas a statute of limitations bars an accrued cause of action.... Thus, the passing of the six-year period deprives the injured party of a legal right to redress." *Id.* (citations omitted).

The parties agree that the relevant designated date in this case, if the Builders' Statute were to apply, is "the date of purported completion of all the work called for by the contract as provided by the contract if such date has been agreed to in the contract itself." 10 Del. C. § 8127(b)a. The contract between Wilmington Trust and Signtactics called for completion of all work by the week of February 18, 1991. Thus, under the Builders' Statute, the limitation period expired on February 18, 1997.

*4 Signtactics asserts it is entitled to protection under the Builders' Statute and, thus, any claim either plaintiff had against it expired approximately four months before Federal filed its complaint and approximately ten months before Hartford filed its complaint. Therefore, the complaints fail to state a claim and should be dismissed. Plaintiffs contend that Signtactics is not entitled to protection under the Builders' Statute and, since the statute of limitations for the particular actions have not expired, the complaints were timely filed.

In order for a builder to receive protection under the Builders' Statute, he or she must furnish construction of an improvement to real property. *City of Dover v. International Telephone and Telegraph Corp., 514 A.2d at 1089.*

a. Furnish Construction

The Builders' Statute provides protection to persons performing or furnishing, or causing the performance or furnishing of, any ... construction of ... an improvement or against any person performing or furnishing, or causing the performing or furnishing of, any ... designing, planning, supervision, and/or observation of any ... construction or manner of construction of ... an improvement.

10 Del. C. § 8127(b). "Furnish" is defined as "provides for, equips, supplies, or appoints." *Becker v. Hamada, Inc., Del.Supr., 455 A.2d 353, 355 (1982).* "Construction" is defined by the Builders' Statute to include "construction, erection, building, alteration, reconstruction, and destruction of improvements to real property." 10 Del. C. § 8127(a)(4). Like the definition of "improvement," "[the] Delaware courts apply a common sense understanding of the word construction: the act of

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
(Cite as: 1998 WL 175882 (D.Del.))

Page 4

building; erection; act of devising and forming; fabrication; or composition." *Windley*, 888 F.Supp. at 612 (citing *Becker*, 455 A.2d at 356). A party must supply more than just raw materials in order to be protected by the Builders' Statute. *Windley*, 888 F.Supp. at 612. If "the party is more than a mere supplier of the material in question in that it actually fabricates them to the specifications of the buyer, that party furnishes construction." *Id.* Fabrication to the specifications of the buyer is the lynchpin of the "furnishing construction" issue. *Schermerhorn v. Anchor Electric Co. et al.*, Del.Super., 1992 WL 301636, 2 (1992).

In *City of Dover v. International Telephone and Telegraph Corp.*, the court held that off-site fabrication of utility poles constituted "furnishing construction," although the defendant only manufactured and delivered the poles and did not install them, because it manufactured the poles according to the specifications provided by a company involved with designing the pole system. 514 A.2d at 1089.

In *Hiab Cranes and Loaders Inc., et al. v. Service Unlimited Inc. et al.*, Del.Super., C.A. No. 82C-FE-98, Martin J. (August 16, 1983), *modified*, C.A. 82C-FE-98, Martin J. (October 4, 1983), the defendant met the "furnishing construction" requirement by manufacturing and selling an oil furnace designed to be incorporated into a building under construction, according to mechanical specifications of a co-defendant. C.A. 82C-FE-98 at 6-7.

*5 In *Standard Chlorine of Delaware, Inc. v. Dover Steel Co., Inc.*, Del.Super., 1988 WL 32044 (1988), the court held a liquid storage tank manufacturer, who did not install the tank, "furnished construction" where the tank was constructed according to the specifications supplied by the plaintiff. *Id.* at 1.

By contrast, in *Kirkwood Dodge v. Krapf*, Del.Super., 1989 Lexis 201 (1989), the court held that the manufacturer of a circuit breaker panel box did not meet the requirement of "furnishing construction" where the panel box was not manufactured according to any specifications, but was a generally available item. *Id.* at 7-8.

In *Schermerhorn*, the plaintiff was injured by a kilowatt hour meter and brought suit against the manufacturer of the meter pan and receptacle. As in *Kirkwood Dodge*, the item was not fabricated according to specifications provided to the manufacturer and the court held the defendant did not furnish construction, stating "[t]he public policy behind the statute of repose does not apply to items manufactured by a general supplier not designed for specific application to a particular construction project." *Schermerhorn*, 1992 WL301636 at 2.

In the cases at bar, the contract between Wilmington Trust and Signtactics provided that Signtactics will "meet, survey, design, manufacture, erect, and install" signage, *within Wilmington Trust's specifications*, for the bank branch in question. (*Hartford*, D.I. 7, Exhibit 1A at 1)(emphasis added). This suggests that Signtactics was more than just a supplier of a generally available item [FN3], and is entitled to the status of one who furnished construction under the Builders' Statute.

> FN3. Although there may be a factual dispute as to whether Signtactics actually "constructed" Sign # 6 or "caused" the construction of Sign # 6 (*see Federal*, D.I. 10, Exhibit 1 at para. 6), the dispute is not material under the language of the statute. The Builders' Statute protects parties "performing or furnishing any construction of an improvement to real property, *as well as those causing* to perform or furnish, any design, plan, supervision of or observation of any construction of an improvement. *City of Dover v. International Telephone and Telegraph Corp.*, 151 A.2d at 1089 (emphasis added). This language indicates the courts' recognition that a party to a contract may generally delegate his or her duties under the contract and that such delegation does not relieve the original promisee of primary responsibility for performance. Therefore, whether Signtactics caused Keith Sign Company to perform or furnish Sign # 6, pursuant to Wilmington Trust's specification, or performed and furnished Sign # 6 itself, Signtactics is entitled to the status of one who furnished construction under the Builders' Statute.

b. Improvement to Real Property

The second requirement of the Builders' Statute is that the item constructed qualify as an improvement to real property. 10 Del. C. § 8127(b)(1). This is a question of law. *Windley*, 888 F.Supp. at 613. Thus, there can be no genuine issue of material fact for a jury to decide and a summary judgment review is appropriate.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
(Cite as: 1998 WL 175882 (D.Del.))

Page 5

The Builders' Statute defines "improvement" to include "buildings, highways, roads, streets, bridges, entrances and walkways of any type constructed thereon, and other structures affixed to and on land, as well as the land itself...." 10 Del. C. § 8127(a)(2). The Delaware Supreme Court, using the rules of statutory construction, interpreted this listing to be "exemplary, not exclusive." City of Dover v. International Telephone and Telegraph Corp., 514 A.2d at 1089 (citing Gage v. City of Wilmington, Del.Supr., 293 A.2d 555, 557 (1972)). Thus, the case law has further defined what constitutes an improvement.

The seminal case on this issue in Delaware is Hiab Cranes and Loaders Inc., et al. v. Service Unlimited Inc. et al., Del.Super., C.A. No. 82C-FE-98, Martin J. (August 16, 1983), modified, C.A. 82C-FE-98, Martin J. (October 4, 1983). In that case, the court was asked to determine whether an oil furnace was an improvement to real property. After noting that challenges to the statute's application, based on the definition of "improvement," had not previously been addressed in Delaware, the court analyzed how other jurisdictions approached the issue. The court found that "those decisions which have interpreted the 'improvement' to real property provision of the builders' statute indicate that the term is susceptible of definition employing either of two basic approaches." Hiab at 3. The first is a common law fixture analysis. Id. In Delaware, such analysis focuses mainly on the "intention of the annexor as to whether or not a chattel was affixed to realty for a temporary or permanent purpose." Hiab at 6, n. 10 (citing Del-Tan Corporation v. Wilmington Housing Authority, Del.Supr., 269 A.2d 209, 210 (1970)).

*6 The second approach is a "common sense" interpretation, defining "improvement" as
a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor and money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.
Hiab at 4.

Additionally, the Hiab court cited a New Jersey case, Brown v. Central Jersey Power & Light Co., 163 N.J.Super. 179, 394 A.2d 397 (N.J.Super.1978), where the court used a vitality test, holding that a transfer switch assembly was an improvement because it "constituted a permanent part of one of the mechanical systems necessary to the normal function of the particular improvement to real estate ... By contrast, equipment or chattels brought into a structure after it is architecturally and mechanically suitable for occupancy for the purpose intended should be exempted from the statute, e.g., furniture, production machinery, appliances, etc." Hiab at 5 (citing Brown, 394 A.2d at 405-406).

(1) Vitality Test
Ultimately, the Hiab court, citing Brown, used the vitality test and held that the heating system, with the oil furnace at issue, was an improvement because it "comprised the permanent entirety of one of the mechanical systems vital to the normal function of the [building]. Without the heating system, the [building] would have been neither functional nor architecturally and mechanically suitable for occupancy." Hiab at 5.

This court applied the vitality test in Windley, holding that a large air preheater in a power plant was an improvement because it was "central to the plant's function." 888 F.Supp. at 613.

In the instant cases, Sign # 6 fails the vitality test. It was not essential to one of the mechanical systems of the building, necessary for occupancy, nor central to the building's function. The building at issue could be occupied and used without this sign. Thus, under this approach, Sign # 6 would not meet the definition of "improvement" to real property and the Builders' Statute would not apply.

(2) Common Sense Interpretation Approach
Utilizing the common sense interpretation of "improvement," in Davis v. Catalytic Inc., Del.Super., 1985 WL 189329 (1985), the court reviewed the factors constituting the common sense definition of "improvement" and held that a slurry cooler, a large free standing structure encased in steel with other significant parts cemented into the ground and bolted to it, was an improvement to real property. Id. at 4. The court found that the physical structure of the cooler clearly indicated a permanent addition; the cooler enhanced the capital value of the property by enabling an increase in product production, as well as being a capitalized item on the owner's books; its construction required an expenditure of money and labor; and the cooler made the property more useful because it facilitated increased production. Id.

*7 In Standard Chlorine, a liquid storage tank was found to be an improvement. 1988 WL 32044 at 2. The decision furnished minimal analysis, simply relying on the tank weighing approximately 74,000 pounds, containing 320,000 gallons of toxic liquid, costing $24,000 to construct, and being "attached to

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
(Cite as: 1998 WL 175882 (D.Del.))

Page 6

the realty through a system of pipes, valves, manifolds, wires, scaffolds, catwalks, and a foundation." *Id.* The court also found that the tank enhanced the value of the real property, but provided no basis for this conclusion. *Id.*

In *Kirkwood Dodge*, the court held that a circuit breaker panel box, installed when the building was originally constructed, qualified as an improvement under the common sense definition. 1989 Lexis 201 at 3-4. Again, the court did not provide much analysis, stating only that the box was "a permanent fixture to the building which is certainly designed to make the property more useful than it otherwise would be." *Id.*

Perhaps the most related case to the instant actions is *Fountain v. Colonial Chevrolet Co., et al.*, Del.Super., 1988 WL 40019 (1988). In *Fountain*, the Builders' Statute was held to apply to a pole bearing a rotating sign. Although the primary issue in *Fountain* was whether the defendant had furnished construction, application of the statute implied that the item was an improvement to real property, since both requirements must be met to fall within § 8127. However, unlike the matters under consideration, the focus of the *Fountain* court was not whether the sign was an improvement, but whether the pole was an improvement. Here, the sign is the focus of the improvement inquiry. Thus, *Fountain* is not as helpful as it appears at first glance.

Reviewing the four common sense factors as they apply to the cases at bar, Sign # 6 does not meet the common sense definition of "improvement." Clearly, there was an expenditure of money and labor, given the sign cost $10,500 and required labor to create it. (*Hartford*, D.I. 7, Exhibit 1A) Furthermore, the addition of Sign # 6 was not an ordinary repair to the building. It made the property more useful to Wilmington Trust than it otherwise would have been by announcing the exact location of the bank branch within the shopping center to both existing and potential bank customers.

However, the physical structure of Sign # 6 does not indicate that it was a permanent addition to the building. Sign # 6 is described as compromising 15 individual lightweight, portable letters, each with its own wires, that could be attached to and detached from the permanent wires in the building, without damage to the building or the sign. (Affidavit of Clifford Patton, *Federal*, D.I. 10, Exhibit 2; Wilmington Trust/Signtactics contract, *Hartford*, D.I. 7, Exhibit 1A)

Nor did Sign # 6 add any capital value to the real property, although an improvement does not necessarily *require* value enhancement to be defined as such. *City of Dover v. International Telephone and Telegraph Corp.*, 514 A.2d at 1089-90. There is no evidence that Sign # 6 increased the value of the property to Limestone L.P., the owner of the real property, or that Wilmington Trust characterized Sign # 6 as a capital expenditure, as in *Davis*. Signtactics argues that Limestone L.P. may have had difficulty securing a tenant for the property without permitting commercial signs, thus decreasing the property value if signs were excluded. While this proposition may be accurate, the court must focus on the sign at issue, not signs in general. The issue is whether Sign # 6 added capital value to the real property. Sign # 6 was a sign *located on a building*. Signtactics submitted no evidence to support that the absence of a sign on a building would decrease the value of the property.

*8 Using common sense and comparing Sign # 6 to those items deemed an improvement by the Delaware courts, there is an obvious difference, as a matter of law, between a sign on the side of a building and a slurry cooler, circuit breaker panel box, liquid storage tank, or a pole. Therefore, the court finds that Sign # 6 is not an improvement to real property under the common sense interpretation approach.

(3) Common Law Fixture Analysis
Employing the common law fixture analysis approach, "the dominant inquiry in according a chattel the status of fixture is the intention of the annexor as to whether or not the chattel was affixed to realty for a temporary or permanent purpose." *Hiab* at 6, n. 10 (citing *Del-Tan Corp.*, 269 A.2d at 210). Factors that should be considered include "the nature of the chattel, the mode of its annexation to the real estate, the purpose or use for which the annexation has been made, and the relation of the person annexing the chattel to the property." *Del-Tan Corp.*, 269 A.2d at 210.

In *Hiab*, the court applied the fixture analysis, as well as the common sense interpretation, regarding whether an oil furnace was an improvement to real property. *Hiab* at 6, n. 10. The court concluded, without elaborating on its analysis, that "the oil furnace was intended as a permanent structure and that plaintiff did not contemplate its removal prior to the expiration of its useful life." *Id.*

Application of the fixture analysis to the cases at bar

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 175882 (D.Del.)
(Cite as: 1998 WL 175882 (D.Del.))

Page 7

results in the conclusion that Sign # 6 was not a fixture. The nature of the chattel was a sign, consisting of fifteen lightweight, portable letters, that could be attached to and detached from the building's permanent electrical system without damage to the building or the sign. (Patton Affidavit, *Federal*, D.I. 10, Exhibit 2) The annexation was achieved by mounting each letter on the wall with two-inch pins. (*Hartford*, D.I. 7, Exhibit 1A at 3) Each of the fifteen individual letters had its own wires that could be attached to and detached from the permanent wires in the building. (Patton Affidavit, *Federal*, D.I. 10, Exhibit 2) The removal of the letters from the building could be accomplished with no damage to the building or the letters themselves. (*Id*) Wilmington Trust was a lessee to the property. (*Hartford*, D.I. 10, Exhibit A)

Additionally, the lease between Wilmington Trust and Limestone L.P. evidences that Wilmington Trust intended the sign to be affixed on the building temporarily, as Paragraph 10(d) specifically provides that

> signs or moveable trade fixtures shall not be deemed part of the [premises] and may be removed by Lessee at any time or times during the term of this lease and upon the termination of the term of this Lease.... In the event that Lessee removes signs and removable trade fixtures not deemed to be part of the [premises], Lessee must restore [the premises] to its original condition. All improvements, except signs and removable trade fixtures, shall belong to Lessor at the termination of this Lease.

*9 (*Hartford*, D.I. 10, Exhibit A) Also, the affidavit by Cindy Bartoshesky confirms that the signs were not part of the premises and could be removed by Wilmington Trust at any time, that Wilmington Trust was obligated to remove the signs at the termination of the lease, and that the signs were not a permanent part of the premises "inasmuch as they were not owned by the owner of the premises." (*Hartford*, D.I. 10, Exhibit A, para. 7, 8, 9)

Signtactics claims that the lease between Wilmington Trust and Limestone L.P. cannot preclude assertion of a statutorily created right for its benefit, citing *McHughs Electric Co. v. Hessler Realty & Development Co.*, Del.Supr., 129 A.2d 654 (1957). The plaintiff, a subcontractor, had installed lights and wiring on various buildings and when he was not paid, sought a mechanic's lien on the entire theater. The defendant, a lessee, claimed the lights and wiring were personal property, not fixtures, because the lease provided that upon termination,

removal of all installations made during the lease was allowed. The court held that the lights and wiring were fixtures, stating the defendant could not contract away a statutory right created for the benefit of the plaintiff.

*McHughs* is distinguishable from this case. Here, the lease is being offered as evidence of Wilmington Trust's intent that Sign # 6 was not a permanent improvement to the building, but merely a temporary addition. Plaintiffs are not claiming that the lease, in and of itself, makes Sign # 6 a temporary addition. Additionally, there are other factors which lead to the conclusion that Sign # 6 was temporary, such as its physical composition and the method of attachment.

Therefore, under any of the three possible approaches to determine whether an item is an improvement under the Builders' Statute, the court concludes that Sign # 6 was not an improvement to real property as a matter of law. Therefore, Signtactics is not entitled to protection under the Builders' Statute.

III. CONCLUSION

For the reasons stated, defendant Signtactics' motions to dismiss/summary judgment shall be denied.

An order shall issue.

Not Reported in F.Supp., 1998 WL 175882 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97cv00343 (Docket) (Jun. 23, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SSGT JASON A. ADKINS, USAF,  )<br>  )<br>   Plaintiff,  )<br>  )<br> v.  )<br>  )<br>DONALD H. RUMSFELD, Secretary of Defense;  )<br>JAMES G. ROCHE, Secretary of the Air Force;  )<br>GEN. JOHN W. HANDY, Commander Air  )<br>Mobility Command, COL. JOHN I. PRAY, JR.,  )<br>436th Air Wing Commander, in their official  )<br>capacities,  )<br>  )<br>   Defendants.  ) | Civ. Act. No. 04-1453-JJF |

**[PLAINTIFF'S PROPOSED] ORDER**

  Having heard all parties, **IT IS HEREBY ORDERED,** that Plaintiff's Motion to Strike Certain Exhibits With Defendants' Motion to Dismiss for Failing to Comply With Fed. R. Civ. P. 12(b) is **GRANTED.**

  **IT IS FURTHER ORDERED,** that Exhibits 1, 2, 3, 4, 6, 8, and 9 shall be stricken from the record on Defendant's Motion to Dismiss.

Dated: _____

                       _____
                        JOSEPH J. FARNAN, JR.
                        United States District Judge

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on March 15, 2006, I electronically filed this Motion to Strike Certain Exhibits Filed With Defendants' Motion to Dismiss for Failure to Comply With Fed. R. Civ. P. 12(b)(6) with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Rudolph Contreras, Esq.
>Assistant U.S. Attorney
>Chief, Civil Division, U.S. Department of Justice
>1007 N. Orange Street, Suite 700
>Wilmington, DE 19899-2046
>Rudolph.Contreras@usdoj.gov
>
>Jeffrey D. Kahn, Esq.
>Trial Attorney, Federal Programs Branch
>Civil Division, U.S. Department of Justice
>P.O. Box 883 Ben Franklin Station
>20 Massachusetts Ave., N.W.
>Washington, DC 20044
>Jeffrey.Kahn@usdoj.gov
>
>
>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**