## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SSGT. JASON A. ADKINS, USAF, | ) | C.A. NO.: 04-1453 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPLY TO PLAINTIFF'S** |
| | ) | **ANSWERING BRIEF IN** |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | **OPPOSITION TO** |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | **DEFENDANTS' MOTION** |
| GEN JOHN W. HANDY, Commander Air Mobility | ) | **TO DISMISS AND** |
| Command; COL JOHN I. PRAY, JR., 436th Air | ) | **DEFENDANTS'** |
| Wing Commander, in their official capacities, | ) | **ANSWERING BRIEF** |
| | ) | **IN OPPOSITION TO** |
| Defendants. | ) | **PLAINTIFF'S MOTION** |
| | ) | **TO STRIKE** |

Dated: May 2, 2006

Of Counsel:

LT COL DONNA MARIE VERCHIO
Staff Judge Advocate
Dover Air Force Base
MAJ CHARLES D. MUSSELMAN, JR.
Military Personnel Branch
General Litigation Division
Air Force Legal Operations Agency

PETER D. KEISLER
Assistant Attorney General
COLM F. CONNOLLY
United States Attorney
DOUGLAS EDWARD McCANN
Assistant United States Attorney
VINCENT M. GARVEY
Deputy Branch Director
SAMUEL C. KAPLAN (DC Bar # 463350)
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel:  (202) 514-4686
Fax: (202) 616-8202
samuel.c.kaplan@usdoj.gov

*Attorneys for Defendants*

## INTRODUCTION

With the withdrawal of plaintiff's claim for reinstatement, plaintiff no longer seeks any relief to which he would be legally entitled even if his claims had merit. Instead, he now seeks only (1) the production of documents about the anthrax vaccine even though such documents are unrelated to, and would not redress, his alleged injuries, and even though he has no First Amendment right to such documents; (2) the removal of a letter of reprimand from his personnel file that is not and has never been in his personnel file; and (3) a frivolous request for the insertion of a mandatory apology into his personnel file. The absence of any coherent request for relief makes it unnecessary for the Court even to address the legal deficiencies in plaintiff's claims.

If, however, the Court were to reach those issues, plaintiff's opposition only confirms that his claims are subject to dismissal. The Federal Rules of Civil Procedure do not permit plaintiff to sue first and ask questions later, but this is the stratagem that plaintiff has adopted. Rather than assert that the letter of reprimand had been placed in plaintiff's personnel file when the Inspector General had made clear (prior to the filing of plaintiff's initial complaint) that it had not, plaintiff alleges only that it "may" have been placed in some other unnamed personnel file and that the existence of other personnel files is a question for discovery. Rather than allege, for example, that the person who issued the allegedly retaliatory letter of reprimand knew of plaintiff's speech prior to issuing the letter of reprimand, plaintiff asserts that his knowledge is a question for discovery. Plaintiff further alleges (on information and belief) that the Secretary of Defense knew of and acquiesced in illegal activity without making allegations sufficient to show that there was any illegal retaliation to know of in the first place.

With no legally cognizable claims or requests for relief, plaintiff is now treating expansive and burdensome discovery as an end in itself by submitting a Rule 56(f) affidavit requesting the opportunity to conduct discovery on a laundry list of fifteen topics. Because this lawsuit is subject to dismissal under Rule 12(b)(1) and 12(b)(6), the affidavit is irrelevant. Yet even if it were necessary to treat the motion as a motion for summary judgment, plaintiff does not even attempt to explain how discovery into these topics would preclude summary judgment, or do anything other than burden the Court and the parties. Plaintiff's application for a fishing license does not justify the continuation of this lawsuit.[1]

## ARGUMENT

### I.    THE COURT LACKS JURISDICTION BECAUSE PLAINTIFF WOULD NOT BE LEGALLY ENTITLED TO THE REMAINING RELIEF THAT HE SEEKS EVEN IF HIS CLAIMS HAD MERIT

Plaintiff's answering brief informs the Court and defendants that "Plaintiff is withdrawing his claim for reinstatement." Docket No. 36, Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") at 16. With the withdrawal of this requested relief, the Court may now dismiss this action without even addressing most of the issues addressed in defendants' motion to dismiss. As an initial matter, none of the requested relief is even nominally related to plaintiff's retaliation claim, which must be

---

[1] With respect to defendants' Motion for a Privacy Act Protective Order and For Permission to File Four Exhibits in Support of Defendants' Motion to Dismiss Under Seal, the parties agree that Exhibits 5A-C should remain under seal and be subject to the protective order. The parties further agree that defendants will submit only part of Exhibit 6-B under seal and anticipate that they will be able to agree as to the appropriate redactions. Once the parties have agreed to a redacted version, defendants will submit the revised version. Plaintiff agrees that it will provide a release under the Privacy Act as to information concerning the plaintiff that plaintiff does not wish to be redacted.

dismissed for this reason alone.  *See* Docket No. 25, First Amendment Complaint ("Am.

Compl."), Prayer for Relief, at 23.  Further, plaintiff is not entitled as a matter of law to the

mandatory production of documents regarding the anthrax vaccine, or to a mandatory

apology.  His request for removal of the letter of reprimand from his personnel file is not

justiciable because the letter of reprimand is not (and indeed was never) in his personnel file.

Moreover, defendants have submitted additional affidavits to make clear that the letter is not

in any other personnel file.  Plaintiff has also received an honorable discharge and has

withdrawn his request to be reinstated to the military, and therefore would not sustain an

injury even assuming that the letter of reprimand had been retained in any file about him.

Because plaintiff is not legally entitled to any of the relief that he seeks, this action (even if

successful) could not redress his alleged injuries (even if they existed), and his claim must

therefore be dismissed.

### A.    Plaintiff Is Not Entitled As a Matter of Law to an Injunction Ordering the Production of Documents Relating to the Anthrax Vaccine

Defendants pointed out in their initial memorandum that plaintiff's request for

records about the anthrax vaccine would not remedy his alleged injuries – *i.e.*, a reprimand

and alleged retaliation for filing a lawsuit   Docket Nos. 28-29, Defendants' Memorandum

of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 34-35.  Plaintiff

offers no answer to this point, and his request for relief is subject to dismissal for this reason

alone.

Defendants also previously established that plaintiff's request for an injunction

requiring defendants to provide information regarding the effects of the anthrax vaccine is

3

meritless as a matter of law because there is no First Amendment right of access to government information.  *Id*. at 35-36.  Plaintiff responds that there is a "qualified right of access to government information" under the First Amendment that requires the Court to ask only whether release of the requested records would "enhance the functioning of a particular government process."  Pl. Opp. at 35-36.  If so, according to plaintiff, the records must be released unless there is a compelling governmental interest that requires denial of access.  *Id*. at 36-37.  Plaintiff asserts that the "particular process" that would be furthered in this instance is the "democratic process" and the military's response to issues related the anthrax vaccine.  *Id*. at 36.  There is no legal basis for this claim for relief.

As purported support for their position, plaintiff selectively excerpts various decisions that recognize only a right of access to certain criminal and, in one case, trial-like administrative proceedings.  Pl. Opp. at 35-37.[2]  Plaintiff does not seek access to a proceeding or a transcript of a proceeding, let alone a criminal justice proceeding.  Plaintiff omits all mention of the limitations of this precedent in favor of the pretense that courts have applied this standard generally to government records.  In fact, the opposite is true:  plaintiff

---

[2]  *Press-Enterprise Co. v. Superior Ct. Of Cal. For County of Riverside*, 478 U.S. 1 (1986) (preliminary hearings in criminal prosecution);  *Globe Newspaper Co. v. Superior Ct. For County of Norfolk*, 457 U.S. 596 (1982) (closure of criminal trial involving victims under the age of 18); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (right of access to criminal trials); *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979) (denying access to pre-trial suppression hearing); *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) (right to attend deportation proceedings); *United States v. Simone*, 14 F.3d 833 (3d Cir. 1994) (post-trial in camera examination of jurors for misconduct); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 572-73 (8th Cir. 1988) (documents submitted in support of search warrant applications); *United States v. Criden*, 675 F.2d 550 (3d Cir. 1982) (right of access to pre-trial hearings).

and defendants' research have not identified a single case finding a First Amendment right of access to agency records – whether "qualified" or "unqualified."[3]

Instead, the Supreme Court has specifically held that there is no right of access to government information. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control"); *id.* at 16 (Stewart, J., concurring in the judgment) ("The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government. . . . The Constitution does no more than assure the public and the press equal access once government has opened its doors").

Plaintiff does not address *Houchins*, and his apparent suggestion that the Supreme Court has rejected only a "general" as opposed to a "qualified" right of access to government

---

[3] While unnecessary given that this case involves a request for records rather than a request for access to trial-like proceedings, it nonetheless bears noting that plaintiff misstates the *Richmond Newspapers* test as understood by this Circuit and does not address binding authority from this Circuit that specifically addresses and precludes plaintiff's characterization of the test. Specifically, recognizing that there is no tradition of access to the type of records plaintiff seeks and relying on *United States v. Simone*, 14 F.3d 833, 838, 842 (3d Cir. 1994), plaintiff argues that courts "have primarily relied on the logic portion of the two-part *Richmond Newspapers* test," and discounted the importance of history. Pl. Opp. at 36. This assertion is untenable. This Court's later precedent specifically rejects this reading of *Simone*, holding instead that the experience prong is less relevant only in the *criminal* context where there is "*overwhelming historical support for access in other phases of the criminal process.*" *North Jersey Media Law Group, Inc. v. Ashcroft*, 308 F.3d 198, 214 (3d Cir. 2002) (quoting *Simone*, 14 F.3d at 838) (emphasis in original). In the context of administrative proceedings, by contrast, the Court held that courts "must rigorously apply *both* prongs of the *Richmond Newspapers* test" and even noted that "[r]elaxing the *Richmond Newspapers* experience requirement would lead to perverse consequences." *Id.* at 215 (emphasis added). As a result, the Court held that "there is no fundamental right of access to administrative proceedings." *Id.* Plaintiff's heavy reliance on *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 694-95 (6th Cir. 2002), *see* Pl. Opp. at 35, is also inexplicable given that this Circuit reached the exact opposite conclusion from the Sixth Circuit, in holding that there is no right of access to deportation proceedings.

information is wrong.  Rather than applying a case-by-case analysis to determine whether the press should have access to prisons, a majority of the Court (the three-justice plurality and Justice Stewart) held instead that there was no right of access because there was no right of access to information.  *Id*. at 15-16.  The Court further recognized that:

> [t]here is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information.  Because the Constitution affords no guidelines, absent statutory standards, hundreds of judges would . . . be at large to fashion ad hoc standards, in individual cases, according to their own ideas of what seems 'desirable' or expedient.

438 U.S. at 14.[4]

The Supreme Court later confirmed the absence of such a right in *Los Angeles Police Dep't v. United Reporting*, 528 U.S. 32, 340 (1999).  In the face of a constitutional claim of access to information about arrestees, the Court concluded, citing *Houchins* (and without resort to a case-by-case analysis of the "benefits" of providing the information), that "California could decide not to give out arrestee information at all without violating the First Amendment." *Id*. at 40.  *See Center for Nat'l Sec. Studies v. U.S. Department of Justice*, 331 F.3d 918, 935 (D.C. Cir. 2003) ("to the extent the Supreme Court has addressed the constitutional right of access to information outside the criminal trial context, the Court has applied the general rule of *Houchins*, not *Richmond Newspapers*") (citing *LAPD v. United Reporting Publ'g Co.*, 528 U.S. at 40).

---

[4]  The plurality further explained (relying on a prior article by Justice Stewart) that the "Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." *Id*. (citation and internal quotation marks omitted).  Instead, the Constitution "establishes the contest, not its resolution.  Congress may provide a resolution at least in some instances, through carefully drawn legislation.  For the rest, we must rely, as so often in our system we must, on the tug and pull of the political forces in American society." *Id*.

Likewise, relying on the *Houchins /LAPD* rule, and recognizing that the *Richmond Newspapers* standard applies only in the criminal context, federal courts from various circuits, including this Circuit, have uniformly rejected claims that there is a First Amendment right to access government records.[5]  Without exception, plaintiff ignores these cases, including this Circuit's decision in *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3d Cir. 1986), which defendants previously cited, *see* Def. Mem. at 35, and which rejected the claim of a constitutional right of access to state environmental records.  After careful analysis establishing that constitutional history precluded the assertion of such a right, the Court in *Capital Cities* recognized the continuing vitality of *Houchins* and the various

---

[5]  *See Center for Nat'l Sec. Studies v. U.S. Department of Justice*, 331 F.3d 918, 935 (D.C. Cir. 2003) (rejecting a First Amendment right of access to information and noting that "neither [the D.C. Circuit] nor the Supreme Court has ever *indicated* that it would apply the *Richmond Newspapers* test to anything other than criminal judicial proceedings" and that "the First Amendment is not implicated by the executive's refusal to disclose the identities of the detainees and information concerning their detention") (emphasis in original); *United States v. Gonzales*, 150 F.3d 1246, 1255 (10th Cir. 1998) (rejecting constitutional claim of access to Criminal Justice Act documents, notwithstanding the fact that they are judicial documents, and stating that "it is clear that no First Amendment right of access applies to CJA documents any more than it applies to administrative documents located in the executive branch") (citing cases); *Pfeiffer v. Central Intelligence Agency*, 60 F.3d 861, 865 (D.C. Cir. 1995) (holding that there is no First Amendment right of access to information"); *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 494-95 (1st Cir. 1992) ("While the Supreme Court has recognized a qualified First Amendment right of access to records and proceedings connected to the criminal justice system [citations omitted] the Court has never recognized a corresponding right of access to Executive Branch documents"); *American Civil Liberties Union of Mississippi, Inc. v. Mississippi*, 911 F.2d 1066, 1071-72 (5th Cir. 1990) (rejecting the claim of a First Amendment right of access to records of the Mississippi State Sovereignty Commission and further rejecting the applicability of *Richmond Newspapers*); *Spottsville v. Barnes*, 135 F. Supp. 2d 1316, 1323 (N.D. Ga. 2001) (holding that "there is no First Amendment right of access to public information" and specifically rejecting a claim of a right of access to accident reports); *United States v. Miami University*, 91 F. Supp. 2d 1132, 1154, 1155 (S.D. Ohio 2000) ("there is no affirmative constitutional duty requiring the government to disclose non-public information within its possession. . . . Setting the scope of access to government records is a legislative matter that does not implicate First Amendment principles"); *Gartner v. U.S. Information Agency*, 726 F. Supp. 1183, 1188 (S.D. Iowa 1989) ("It is for Congress to establish the extent of access to government documents; the first amendment does not do so").

problems with creating what the Court referred to as "a constitutional freedom of information act." *Id.* at 1168-70, 1173, 1176.[6]  In addition to failing to address any of the cases specifically precluding such a right, plaintiff addresses none of the consequences of recognizing one, including the inability to fashion principled standards and the fact that such a right would virtually eliminate the relevance of the Freedom of Information Act and generally constitutionalize an area of the law that has always been left to the democratic process.  This claim should be dismissed.

### B. Plaintiff Is Not Entitled As a Matter of Law to an Order for Removal of "Adverse Materials" From His Personnel File Because There Are No Such Materials in His Personnel File and Because He Would Not Be Injured Even if There Were

Plaintiff seeks an injunction "directing defendants to remove any and all adverse materials from plaintiff's personnel file, including the LOR."  Am. Compl., Prayer for Relief, ¶ E.  As defendant has noted previously, however, as of the date of the original lawsuit, there was no letter of reprimand in his official personnel files to remove.  *See* Def. Mem. at 20, 31 and Ex. 6-A.  Plaintiff asserts in response that "letters of reprimand  will affect an airman's career, even if they do not form part of the unique file known as the 'PIF'" and that there are "other personnel files . . . as can be clarified with further discovery."  Pl. Opp. at 21, 29.[7]

---

[6]  For example, the Court stated that "decisions as to how much governmental information must be disclosed in order to make democracy work historically have been regarded as political decisions to be made by the people and their elected representatives.  Conversely, the judiciary has never asserted the institutional competence to make such decisions" because there is "no principled basis for deciding which government information must be made available to the citizenry and which need not."  *Id.* at 1171.

[7]  Tellingly, the existence of other personnel files is not one of the categories of discovery that plaintiff's Rule 56(f) affidavit asserts is necessary to oppose summary judgment. *See* Pl. Opp. Ex. A, Rule 56(f) Affidavit.

8

This response is unavailing for several reasons. *First*, if it was not already clear, the attached affidavits of MSgt Joseph A. Helman, (attached as Exhibit 1) ("Helman Aff."), SMSgt Ronald J. Mahoney (attached as Exhibit 2) ("Mahoney Aff."), and SSgt Regina A Nesbitt (attached as Exhibit 3) ("Nesbitt Aff.") make clear that the letter of reprimand is not in *any* Air Force personnel file.

*Second*, even assuming that a copy of the letter remains in another personnel file, plaintiff would not be injured by this state of affairs. The only potential injury plaintiff has identified is that such letters "will affect an airman's career." Pl. Opp. at 21. Even assuming the truth of this unsupported statement, plaintiff is no longer an airman, and he has withdrawn his request to be reinstated as one. Plaintiff has therefore identified no way that he could possibly be injured by the existence of this letter in a hypothetical personnel file that is not his official personnel file. With no injury to redress, the Court lacks jurisdiction to grant, and plaintiff is not entitled to, the requested relief.

### C. Plaintiff Is Not Entitled As a Matter of Law to "A Signed Letter of Apology," and It Would Not Redress His Alleged Injury

In the final section of his opposition, plaintiff asserts that he is entitled to an order mandating that a letter of apology be placed in his personnel file. Pl. Opp. at 39. Defendants previously established that there is no basis for such an order and, specifically, explained why plaintiff satisfies none of the requirements for the extraordinary remedy of mandamus. Def. Mem. at 36. In response, plaintiff offers no authority for such a remedy, and does not even attempt to explain how the requested remedy meets the requirements for mandamus relief. Instead, plaintiff offers only conclusory statements and boilerplate quotations about

9

mandamus and injunctive relief.  Nor does plaintiff explain why such a remedy would be "necessary relief" to remedy any wrong plaintiff alleges.  Pl. Opp. at 39-40.  If anything, the apology would only highlight an incident that is not mentioned in his personnel file. Moreover, even assuming (contrary to fact) that he would be injured by the absence of an apology if he were still in the military, and even assuming (contrary to law) that he would be legally entitled to such relief, plaintiff is no longer in the military and has withdrawn his request for reinstatement.  This request is therefore meritless for various reasons.

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM AND THE COURT OTHERWISE LACKS JURISDICTION

The prior section establishes that, because plaintiff is not legally entitled to any of the remedies that he seeks, and because they would not redress any of his alleged injuries, the issues addressed in defendants' initial memorandum are now beside the point.  Nonetheless, for the sake of completeness, defendants address plaintiff's discussion of the other reasons that plaintiff's claims are subject to dismissal.

### A.    Plaintiff Has Failed to State a Claim Because He Has Failed to Allege that SMSgt Mahoney Knew of His Inquiry to His Doctor About Anthrax

With respect to defendants' 12(b)(6) motion, the fundamental defect in Count I of plaintiff's complaint is his failure, in either his initial or amended complaint, to allege that the official who issued the letter of reprimand (Senior Master Sergeant Mahoney) was aware of the speech that allegedly formed the basis for the retaliation.  Plaintiff incorrectly argues that the knowledge of SMSgt Mahoney is a question of fact for discovery as opposed to something that must be alleged in the complaint.  Pl. Opp. at 29.  Because there can be no claim of retaliation without causation and no causation without knowledge of the speech that

10

allegedly formed the basis for the retaliation, the absence of an allegation of knowledge means that plaintiff has failed to state a claim for retaliation.

Plaintiff attempts to substitute for his admitted inability to allege knowledge on the part of the officer who issued the Letter of Reprimand ("LOR") by listing six allegations and pronouncing his claim "anything but frivolous." Pl. Opp. at 29. This list establishes only that six multiplied by zero still equals zero. As an initial matter, the six allegations really amount to only two: that (1) certain individuals "knew" of a tainted vaccine program that caused "a variety of health problems, including headaches," and that (2) plaintiff's supervisor issued an LOR immediately after he learned that plaintiff had been put on Do Not Fly status as a result of headaches. Pl. Opp. at 29.[8] Plaintiff's list also omits the contents of the letter of reprimand, which is attached to the complaint and thus may be considered in evaluating defendants' Rule 12(b)(6) motion. That letter mentions nothing about anthrax and offers an entirely different basis for the LOR. *See* Am. Compl., Ex. A. While plaintiff is entitled to the benefit of reasonable inferences from the complaint's allegations, the inference that he asks the Court to draw from these facts (one that he himself is unwilling to make expressly) – *i.e.*, that SMSgt Mahoney knew that the plaintiff had discussed anthrax with his doctor and retaliated on that basis – is not reasonable. Def. Opp. at 29.

Plaintiff also ventures still further into the realm of unreasonableness by suggesting that the flight surgeon need not have told anyone about the conversation. Pl. Opp. at 20.

---

[8] In general, plaintiff's allegations are deliberately vague: he describes a series of events, including the issuance of a letter of reprimand, Am. Compl ¶¶ 58-78, and then without ever expressly alleging the connection between the letter of reprimand and speech (a connection that would require an allegation of knowledge on the part of SMSgt Mahoney), he begins to refer to "retaliatory adverse action." *Id.* at ¶¶ 79-80.

11

According to plaintiff, the mere fact that SMSgt Mahoney knew about his headaches, coupled with press coverage about the health-related effects of the anthrax vaccine, is enough to "raise a factual dispute" as to whether SMSgt Mahoney (1) guessed that the conversation with the doctor must have included a question about anthrax, and (2) issued a pretextual letter of reprimand on this basis. *Id*. Such unlikely speculation does not constitute a reasonable inference. Plaintiff then inexplicably grasps for the straw of *Waters v. Churchill*, 511 U.S. 661, 676-77 (1994), Pl. Opp. at 20, but his conclusory discussion of the case offers no coherent explanation as to why it is relevant. Under *Waters*, an employer who disciplines an employee for protected speech that the employer believed to be unprotected may be liable if the employer lacked a reasonable basis for his understanding of what was said. *Waters*, 511 U.S. at 676-77. In other words, *Waters* only is relevant when it has been established that the basis for discipline was protected speech that the employer mistakenly believed to be unprotected. Plaintiff has never alleged that SMSgt Mahoney based his decision to issue the letter of reprimand on a misunderstanding of the content of that conversation. Because he has not, he has failed to state a claim, and *Waters* is irrelevant.

The Court's order on defendants' initial motion to dismiss held that "SMSgt Mahoney's knowledge of Plaintiff's protected speech is not necessarily a prerequisite to establishing Plaintiff's claim against Defendants, particularly to the extent that those claims are based on supervisory liability." *Adkins v. Rumsfeld*, 389 F. Supp. 2d 579, 585 (D. Del. 2005). Plaintiff's theory of supervisory liability, however, rests on the defendants' alleged knowledge and acquiescence in allegedly illegal conduct. Am. Compl. ¶¶ 13-16. Given that the supervisor could not acquiesce in illegal conduct if there was no illegal conduct, *see*

12

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), and given that there could be no illegal conduct if the Msgt. Mahoney did not know of the speech that formed the basis for the alleged retaliation, Senior Master Sergeant Mahoney's knowledge, which plaintiff has never alleged, remains the linchpin of plaintiff's case.[9] Plaintiff has offered the Court no theory (reasonable or even unreasonable) for how superiors could be liable for the issuance of the LOR when the subordinates who decided to issue it are not.

Moreover, with the withdrawal of plaintiff's claims for reinstatement, the doctrine of supervisory liability has no possible relevance to this case. Instead, this case now involves a claim for purely equitable relief against federal defendants in their official capacities to remedy alleged constitutional violations. In such cases, the question of supervisory knowledge is irrelevant.[10] The "supervisory liability" cases cited by the parties and the Court in this area address the different question of when state and local officials may be sued for damages under 42 U.S.C. § 1983.[11] Plaintiff therefore need not establish supervisory

---

[9] In all of the supervisory liability cases cited by plaintiff involving knowledge and acquiescence, plaintiff alleged that both the subordinates and the supervisors had violated the Constitution as well. *See* note 11, *infra.*

[10] *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 n.8 (1949) (the head of an agency was "of course, a proper party" in a lawsuit seeking "specific relief" based on the alleged wrongdoing of his subordinates, notwithstanding his lack of knowledge of those acts); *Ogburn v. Elrod*, No. 87 C 4492, 1989 WL 24127, *3 (N.D. Ill. March 13, 1989) ("One is sued in one's official capacity usually when . . . the official's subordinate has performed acts, and complete relief from the onus of the acts requires legal and equitable remedies that run against the government agency").

[11] *See* Pl. Opp. at 22 (citing *Robinson*, 120 F.3d at 1292-93 (section 1983 suit against chief of police based on his knowledge and acquiescence in sexual harassment by subordinates); *Evancho v. Fisher*, 423 F.3d 347, 349 (3d Cir. 2005) (section 1983 suit against Attorney General in his individual capacity for alleged retaliation by subordinates); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (section 1983 and 1985 lawsuit against Governor and Attorney General based on alleged knowledge of and acquiescence in subordinates' alleged

knowledge of and acquiescence in illegal activity to prevail in this kind of suit, but he must establish *illegal activity* to prevail. Allegations of "knowledge and acquiescence" on the part of the Secretary of Defense and other officials, Am. Compl. at ¶¶ 13-16, 86, only distract from that central question, and cannot justify plaintiff's efforts to conduct wide-ranging and burdensome discovery. *See infra* at 18-20. In other words, to clear the second hurdle of supervisory liability (knowledge of and acquiescence in illegal retaliation by a subordinate), plaintiff must first clear the first hurdle (illegal retaliation by a subordinate), and in this kind of lawsuit, the second hurdle is beside the point.

**B.**    **Plaintiff's Retaliation Claim Fails Because His Original Lawsuit Was Frivolous**

The foregoing section and defendants' initial motion to dismiss established that the filing of his initial lawsuit was not protected activity because it was frivolous and that plaintiff had therefore failed to state a claim for retaliation for filing his lawsuit. Based on the letter from the Inspector General, plaintiff knew that he  the remedy that he sought in the lawsuit – *i.e.*, removal of the letter from his personnel file – was unnecessary because the letter was not in his personnel file. Def. Mem. at 31. Plaintiff's lone response is that when his complaint referred to "personnel file" in the singular, he really meant "personnel fil̲e̲s̲" in the plural. Pl. Opp. at 29. Putting aside the evident dubiousness of this response, plaintiff ignores the fact that, once informed that the letter was not in his "official personnel file," he would have had no basis for assuming that it was in another personnel file and thus no basis

---

retaliatory harassment)); *Bowers v. Mounet*, No. 99-553, 2001 WL 826556, at \*\*4-5 (D. Del. July 18, 2001) (section 1983 suit brought by former inmate against a warden for alleged Eighth Amendment violations) (*see* Def. Mem., Ex. 4).

for filing the lawsuit.  Indeed, as the attached affidavits establish, the letter of reprimand was not in any other file.  *See* Ex. 1, Helman Aff; Ex. 2, Mahoney Aff.; and Ex. 3, Nesbitt Aff.

Plaintiff inadvertently confirms the point with the assertion that "*[a]s can be clarified with further discovery*, there are a number of 'personnel files' in the Air Force, such as Unfavorable Information Files (UIFs) and Personnel Information Files (PIFs), that *may* have contained the LOR."  Pl. Opp. at 29 (emphasis added).  (As stated above, the existence of other personnel files is not even a topic listed in plaintiff's Rule 56(f) affidavit.)  Plaintiff, in other words, had no basis for believing that the LOR was in any personnel file when he filed the complaint (and it was not), and sought to use the litigation to determine if he had a claim.  He therefore filed a frivolous lawsuit that does not constitute "protected activity."

Further, as discussed in the prior section, without the allegation and basis for alleging that his supervisor knew about his speech, plaintiff had no valid or justiciable claim.  Plaintiff confirms the point by asserting that this essential element of his claim is a "question[] of fact that must still be discovered."  Pl. Opp. at 29.  Plaintiff ignores the fact that the filing of a federal lawsuit requires the plaintiff to have a basis for alleging the fundamental elements of his claim *before* he files the lawsuit.  *See* note 14, *infra*.

## III.    PLAINTIFF'S MOTION TO STRIKE IS MERITLESS AND HIS RULE 56(f) AFFIDAVIT PROVIDES NO BASIS FOR THE CONTINUATION OF THIS LAWSUIT

### A.    Plaintiff's Motion to Strike Should Be Denied

With their initial motion to dismiss, defendants submitted several affidavits and other exhibits in support of their motion.  With their answering brief, plaintiff filed a motion to strike seven of those exhibits on the grounds that the exhibits "fail to comply with Rule

15

12(b)(6) of the Federal Rules of Civil Procedure."  Plaintiff's Motion to Strike Certain Exhibits ("Pl. MTS") at 1.  This motion should be denied.  *First*, defendants rely on Exhibits 1-4, 6, and 7 in support of defendants' Rule 12(b)(1) motion.  *See* Def. Mem. at 14, 19-20. Specifically, defendants rely on Exhibit 6 to establish that Count I of plaintiff's Complaint is moot, *id*. at 21, and rely on Exhibits 1-3, 7 to establish plaintiff's lack of standing.  *Id*. at 17-20.  Given that the basis for plaintiff's motion is the alleged incompatibility of these exhibits with a Rule 12(b)(6) motion, and given that plaintiff does not and could not deny that defendants may rely on material outside the record in support of a Rule 12(b)(1) motion, plaintiff's motion must be denied as to these exhibits.[12]

*Second*, the remaining exhibits (an official Dover Air Force Base instruction (Exhibit 8) and an excerpt from the United States Air Force Almanac (Exhibit 9)) describing the chain of command, discussed in Def. Mem. at 22-23, are subject to judicial notice and thus properly considered in evaluating defendants' Rule 12(b)(6) motion.  *See Golden v. Cook*, 293 F. Supp. 2d 546, 551 (W.D. Pa. 2003) (records and reports of administrative bodies are subject to judicial notice); *Jermon v. County of Sonoma*, No. C 96-0340, 1997 WL 50266, *4 n.4 (N.D. Cal. Feb. 3, 1997) (taking judicial notice of county's alcohol and drug policy in addressing a motion to dismiss); Fed. R. Evid. 201(b)(2) (a judicially noticed fact is one

---

[12] Plaintiff does not address the relevance of Exhibit 6 to defendants' mootness argument, and thus does not offer a basis for striking the exhibit.  Similarly, Exhibit 4 supported defendants' argument that the Court lacked jurisdiction because plaintiff was (prior to withdrawal of the request for reinstatement) seeking damages.  Def. Mem. at 14.  Plaintiff asserts in a footnote that Exhibits 1-3 and 7 should be stricken because the argument that they support – *i.e.*, that plaintiff has failed to meet element two of the test for standing – is wrong.  Pl. MTS at 1. Plaintiff offers no support for the proposition that causation is not jurisdictional but, even if correct, this point would only justify a decision by the Court to decline to dismiss the lawsuit on that basis, not the striking of materials submitted in support of the claim.

that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").  The Court also may consider the fact of plaintiff's receipt of Exhibit 6-A, which is part of the administrative record, to establish his knowledge, prior to filing the lawsuit, that the LOR was not part of his personnel file.  Def. Mem. at 31. Plaintiff does not and could not reasonably suggest that the facts for which those sources are cited are inaccurate.

*Third*, even if there were exhibits that (1) had been submitted only in support of defendants' Rule 12(b)(6) motion and (2) could not be considered in resolving such a motion, the proper remedy would be to convert the motion to a motion for summary judgment.  Plaintiff suggests that this would be inappropriate "due to the fact-filled nature of plaintiff's claim."  Pl. MTS at 4.  However, as discussed in the next section, plaintiff's Rule 56(f) affidavit is wholly deficient and fails to identify any basis for allowing discovery prior to the resolution of this motion.[13]

**B.     Plaintiff's Rule 56(f) Affidavit Provides No Basis for the Continuation of This Lawsuit and Fails to Meet the Rule's Requirements**

Plaintiff's Rule 56(f) affidavit provides no basis for the continuation of this lawsuit for several reasons.  Most obviously, the affidavit is irrelevant because plaintiff's lawsuit is subject to dismissal under Rule 12(b)(1) and 12(b)(6) for all of the reasons discussed above in sections I and II.  The affidavit would be relevant only if the Court  concluded that there

---

[13]  Even if this were not the case, striking the affidavits would serve no purpose.  The affidavits demonstrate that there never has been any factual basis for this lawsuit, and plaintiff cannot hide from them forever.  Even if the Court believed that further discovery were necessary, the Court could convert the motion but allow additional time for discovery.

was no basis for dismissal under Rule 12(b)(1) and Rule 12(b)(6), but converted the Rule 12(b)(6) motion into a motion for summary judgment.

Under such circumstances, plaintiff's affidavit would not provide a basis for forestalling the entry of judgment in defendants' favor because the affidavit fails to comply with all of the requirements of Rule 56(f). A Rule 56(f) affidavit "must identify with specificity 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained.'" *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988)); *see also Chips Plus, Inc. v. Federal Express Corp.*, 281 F. Supp. 2d 758, 766 (E.D. Pa. 2003) (plaintiff did not comply with Rule 56(f) when plaintiff "failed to demonstrate how the information sought would preclude" summary judgment on the relevant issue); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1990) ("The party seeking additional discovery also bears the burden of showing that the evidence sought exists."). Plaintiff's explanation for how further discovery would preclude summary judgment must also amount to more than mere speculation.[14]

---

[14] *See Jeffries v. Deloitte Touche Tohmatsu Int'l*, 893 F. Supp. 455, 458 (E.D. Pa. 1995) ("where a plaintiff's Rule 56(f) motion is based upon 'pure speculation and raises merely colorable claims' regarding potential liability, the court acts within its discretion when it denies the motion."); *Hancock Industries v. Schaeffer*, 619 F. Supp. 322, 327 (E.D. Pa. 1985) (in evaluating a Rule 56(f) affidavit, "the court must determine whether the party seeking the extension is able to present adequate need for it or whether the party is merely speculating about what might be uncovered through discovery"); *United States v. Donlon*, 355 F. Supp. 220, 225 (D. Del. 1973) ("The Court cannot deny the Government's motion for summary judgment on Donlon's sheer conjecture."); *Terrell v. Brewer*, 935 F.2d at 1018 ("Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation."). *Compare also United Presbyterian Church in the U.S.A. v. Reagan*, 557 F. Supp. 61, 63 (D.D.C. 1982), *aff'd* 738 F.3d 1375 (D.C. Cir. 1984) (rejecting attempt by the plaintiff to conduct a "fishing expedition of the most obvious kind . . . in the hope that some cause of action might be uncovered").

Plaintiff's affidavit seeks the opportunity to conduct expansive discovery on topics as far afield as "discovery to third-party scientists" on the effects of squalene both generally and on airmen at Dover Air Force Base. Plaintiff's Rule 56(f) Affidavit in Support of His Response to Defendants' Summary Judgment Motion ("Pl. Rule 56(f) Aff.") ¶ 4. Plaintiff, however, does not even make the barest effort to explain how the identified discovery would preclude summary judgment. Instead, he simply lists topics with no explanation, let alone a non-speculative explanation, as to how discovery on the topics would preclude summary judgment. For example, plaintiff lists as a topic "the government's knowledge as to the inclusion of squalene in the vaccines administered to airmen at Dover Air Force Base, who within the government was privy to this knowledge and when they knew." *Id*. Plaintiff fails to explain how this discovery would preclude the granting of summary judgment in defendants' favor.

Further, even had plaintiff attempted to explain how the requested discovery would preclude summary judgment, any explanation would undoubtedly have been based upon pure speculation. Taking as an example the issue of SMSsgt. Mahoney's knowledge of defendants' questions to his doctor, defendants have submitted sworn affidavits from three Air Force officers all making clear that plaintiff's questions to his doctor about anthrax played no role in the issuance of the LOR. SMSgt Mahoney has stated under penalty of perjury that he did not know of the conversation with the doctor prior to issuing the letter of reprimand. Def. Mem., Ex. 1, Affidavit of Ronald J. Mahoney ¶¶ 4- 5. The Air Force doctor who had the conversation with Adkins confirms that he told no one about the conversation prior to the issuance of the Letter of Reprimand. Def. Mem., Ex. 3, Affidavit of Ronald M.

19

Bernardin III  ¶ 3.    Tsgt Miller, who informed Ssgt. Mahoney of Adkins' inability to participate in the mission, has likewise attested that he was unaware of what Adkins said to the flight surgeon who examined him.  Def. Mem., Ex. 2, Affidavit of Terrence Miller ¶ 5. In short, any such discovery would only further confirm that this case should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).


Dated: May 2, 2006                                Respectfully submitted,

                                                  PETER D. KEISLER
Of Counsel:                                       Assistant Attorney General

LT COL DONNA MARIE VERCHIO                         COLM F. CONNOLLY
Staff Judge Advocate                               United States Attorney
Dover Air Force Base
MAJ CHARLES D. MUSSELMAN, JR.                       DOUGLAS McCANN
Military Personnel Branch                          Assistant United States Attorney
General Litigation Division                        Chief, Civil Division
Air Force Legal Services Agency
                                                  VINCENT M. GARVEY
                                                  Deputy Branch Director


                                                  /s/ Samuel C. Kaplan
                                                  SAMUEL C. KAPLAN (DC Bar # 463350)
                                                  Trial Attorney, Federal Programs Branch
                                                  Civil Division, U.S. Department of Justice
                                                  P.O. Box 883, 20 Massachusetts Ave., N.W.
                                                  Washington, D.C. 20044
                                                  Tel:  (202) 514-4686
                                                  Fax: (202) 616-8202
                                                  samuel.kaplan@usdoj.gov

                                                  *Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    THE COURT LACKS JURISDICTION BECAUSE PLAINTIFF WOULD NOT
      BE LEGALLY ENTITLED TO THE REMAINING RELIEF THAT HE SEEKS
      EVEN IF HIS CLAIMS HAD MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Plaintiff Is Not Entitled As a Matter of Law to an Injunction Ordering the
            Production of Documents Relating to the Anthrax Vaccine . . . . . . . . . . 3

      B.    Plaintiff Is Not Entitled As a Matter of Law to an Order for Removal of
            "Adverse Materials" From His Personnel File Because There Are No Such
            Materials in His Personnel File and Because He Would Not Be Injured
            Even if There Were . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    Plaintiff Is Not Entitled As a Matter of Law to a Signed Letter of Apology,
            and It Would Not Redress His Alleged Injury . . . . . . . . . . . . . . . . . . . . . 9

II.   PLAINTIFF HAS FAILED TO STATE A CLAIM AND THE COURT
      OTHERWISE LACKS JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    Plaintiff Has Failed to State a Claim Because He Has Failed to Allege
            That SMSgt Mahoney Knew of His Inquiries to his Doctor About Anthrax 10

      B.    Plaintiff's Retaliation Claim Fails Because His Original Lawsuit Was
            Frivolous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  PLAINTIFF'S MOTION TO STRIKE IS MERITLESS AND HIS RULE 56(F)
      AFFIDAVIT PROVIDES NO BASIS FOR THE CONTINUATION OF THIS
      LAWSUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    Plaintiff's Motion to Strike Should Be Denied . . . . . . . . . . . . . . . . . . . 16

      B.    Plaintiff's Rule 56(f) Affidavit Provides No Basis for the Continuation of
            This Lawsuit, and Fails to Meet the Rule's Requirements . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## <u>TABLE OF AUTHORITIES</u>

Pursuant to Local Rule 7.1.3(a)(G), copies of unreported opinions
cited in this memorandum are attached as Defendants' Exhibit 4

<u>Adkins v. Rumsfeld</u>, 389 F. Supp. 2d 579 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>American Civil Liberties Union, Inc. v. Mississippi</u>, 911 F.2d 1066 (5th Cir. 1990) . . . . 7

<u>Bowers v. Mounet</u>, No. 99-553, 2001 WL 826556 (D. Del. July 18, 2001) . . . . . . . . . . 14

<u>Capital Cities Media, Inc. v. Chester</u>, 797 F.2d 1164 (3d Cir. 1986) . . . . . . . . . . . . . 7-8

<u>Center for Nat'l Sec. Studies v. U.S. Department of Justice</u>, 331 F.3d 918 (D.C. Cir.
2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>Chips Plus, Inc. v. Federal Express Corp., ,</u> 281 F. Supp. 2d 758 (E.D. Pa. 2003) . . . . . 18

<u>Detroit Free Press v. Ashcroft</u>, 303 F.3d 681 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 4, 5

<u>Dowling v. City of Philadelphia</u>, 855 F.2d 136 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . 18

<u>El Dia, Inc. v. Hernandez Colon</u>, 963 F.2d 488 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . 7

<u>Evancho v. Fisher</u>, 423 F.3d 347 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Gannett Co., Inc. v. DePasquale</u>, 443 U.S. 368 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Gartner v. U.S. Information Agency</u>, 726 F. Supp. 1183 (S.D. Iowa 1989) . . . . . . . . . . 7

<u>Globe Newspaper Co. v. Superior Ct. For County of Norfolk</u>, 457 U.S. 596 (1982) . . . . 4

<u>Golden v. Cook</u>, 293 F. Supp. 2d 546 (W.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Hancock Industries v. Schaeffer</u>, 619 F. Supp. 322 (E.D. Pa. 1985) . . . . . . . . . . . . . . . 18

<u>Houchins v. KQED, Inc.</u>, 438 U.S. 1 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 7

<u>Jeffries v. Deloitte Touche Tohmatsu Int'l</u>, 893 F. Supp. 455 (E.D. Pa. 1995) . . . . . . . . 18

<u>Jermon v. County of Sonoma</u>, No. C 96-0340, 1997 WL 50266 (N.D. Cal. Feb. 3, 1997)16

<u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682 (1949) . . . . . . . . . . . . . 13

ii

<u>Los Angeles Police Dep't v. United Reporting</u>, 528 U.S. 32 (1999) . . . . . . . . . . . . . . 6, 7

<u>Lunderstadt v. Colafella</u>, 885 F.2d 66 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>North Jersey Media Law Group, Inc. v. Ashcroft</u>, 308 F.3d 198 (3d Cir. 2002) . . . . . . . . 5

<u>Ogburn v. Elrod</u>, No. 87-4492, 1989 WL 24127 (N.D. Ill. March 13, 1989) . . . . . . . . 13

<u>Pfeiffer v. Central Intelligence Agency</u>, 60 F.3d 861 (D.C. Cir. 1995) . . . . . . . . . . . . . . 7

<u>Press-Enterprise Co. v. Superior Ct. Of Cal. For County of Riverside</u>, 478 U.S. 1 (1986) 4

<u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . 4, 5

<u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997) . . . . . . . . . . . . . . . . . 12-13

<u>Rode v. Dellarciprete</u>, 845 F.2d 1195 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>In re Search Warrant for Secretarial Area Outside Office of Gunn</u>, 855 F.2d 569
 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Spottsville v. Barnes</u>, 135 F. Supp. 2d 1316 (N.D. Ga. 2001) . . . . . . . . . . . . . . . . . . . . . 7

<u>Terrell v. Brewer</u>, 935 F.2d 1015 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>United Presbyterian Church in the U.S.A. v. Reagan</u>, 557 F. Supp. 61(D.D.C. 1982) . . 18

<u>United States v. Criden</u>, 675 F.2d 550 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>United States v. Donlon</u>, 355 F. Supp. 220 (D. Del. 1973) . . . . . . . . . . . . . . . . . . . . . . 18

<u>United States v. Gonzales</u>, 150 F.3d 1246 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 7

<u>United States v. Miami University</u>, 91 F. Supp. 2d 1132 (S.D. Ohio 2000) . . . . . . . . . . 7

<u>United States v. Simone</u>, 14 F.3d 833 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

<u>Waters v. Churchill</u>, 511 U.S. 661, Pl. Opp. at 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **STATUTES & RULES**

Fed. R. Civ. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Fed R. Civ. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 2, 2006, I electronically filed the foregoing Reply to

Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss and

Defendants' Answering Brief in Opposition to Plaintiff's Motion to Strike with the Clerk

of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger
Email: tsn@neubergerlaw.com

Stephen J. Neuberger
Email: SJN@NeubergerLaw.com

 

_____
SAMUEL C. KAPLAN (DC Bar No.
463350)