**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SSGT. JASON A. ADKINS, USAF, | ) | C.A. NO.: 04-1453 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPLY TO PLAINTIFF'S** |
| | ) | **ANSWERING BRIEF IN** |
| DONALD H. RUMSFELD, Secretary of Defense; | ) | **OPPOSITION TO** |
| JAMES G. ROCHE, Secretary of the Air Force; | ) | **DEFENDANTS' MOTION** |
| GEN. JOHN W. HANDY, Commander Air Mobility | ) | **TO DISMISS AND** |
| Command; COL. JOHN I. PRAY, JR., 436th Air | ) | **DEFENDANTS' ANSWERING** |
| Wing Commander, in their official capacities, | ) | **BRIEF IN OPPOSITION TO** |
| | ) | **PLAINTIFF'S MOTION** |
| Defendants. | ) | **TO STRIKE** |

**EXHIBIT 4:**

**COPIES OF UNPUBLISHED OPINIONS REQUIRED UNDER
LOCAL RULE 7.1.3(a)(G)**

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 50266 (N.D.Cal.)
(Cite as: 1997 WL 50266 (N.D.Cal.))
<KeyCite History>

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
Melvin E. JERMON and Sonoma County Organization of
Public and Private
Employees, Service Employees International Union, Local
707, AFL-CIO,
Plaintiffs,
v.
COUNTY OF SONOMA, Community Hospital, Larry
Caldwell, and Donna Elliott,
Defendants.
No. C 96-0340 FMS.

Feb. 3, 1997.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

INTRODUCTION
*1 Pending before the Court is individual defendants', Larry Caldwell ("Caldwell") and Donna Elliot ("Elliot") (collectively "defendants"), motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. [FN1] Defendants contend that plaintiff Melvin E. Jermon's ("plaintiff" or "Jermon") First Amended Complaint ("Complaint") should be dismissed on the grounds of both federal and state immunity. These motions require the Court to determine whether plaintiff's complaint, and the other evidence proffered, allege facts upon which his claims for relief could be supported against these defendants.

> FN1. This motion does not appear to be brought on behalf of the County of Sonoma or the Community Hospital, the other named defendants in this action. The Court's disposition of defendants' motion, therefore, does not affect plaintiff's claims against those defendants.

BACKGROUND
Plaintiff Jermon [FN2] is a black man who was employed as a janitor at Community Hospital during the time period relevant to this action. On January 23, 1995, plaintiff reported to work and proceeded to lock himself in the employee break room. (Dfts.' Motion at 3.) Plaintiff alleges he did so because he was ill and unable to work. (Complaint ¶ 12.) Elliot was the House Supervisor on duty that night; after she became aware that plaintiff had been in the employee break room for several hours, Elliot alerted Caldwell, plaintiff's direct supervisor. Caldwell arrived at the Hospital to assist Elliot in handling the situation. (Dfts.' Motion at 3.) Defendants entered the locked employee break room and found plaintiff asleep and difficult to rouse. (Dfts.' Motion at 4.) At that point, defendants either directed, (Complaint ¶ 12), or asked, (Dfts.' Motion at 4), plaintiff to take a "fitness for duty" examination, which included having his urine and blood tested in the emergency room of Community Hospital. The results of the tests were negative for alcohol or drugs, and plaintiff was eventually diagnosed as having gastroenteritis. (Complaint ¶ 12; Dfts.' Motion at 4.)

> FN2. The second named plaintiff in this action is the Sonoma County Organization of Public and Private Employees, Service Employees International Union, Local 707, AFL-CIO ("SCOPE"). Two of the seven causes of action alleged in the complaint are brought on behalf of SCOPE. To the extent those causes of action are against the individual defendants, they are covered by the Court's order. For ease of reference, however, the Court will refer throughout this order to plaintiff Jermon only.

Plaintiff alleges that he was directed to submit to the urine and blood testing "as a condition of continued employment" and that plaintiff only submitted to the testing "because he was directed to do so." (Complaint ¶ 12.) Defendants contend that Dr. Landman, the Emergency Room doctor who examined and tested plaintiff, explained the entire situation to plaintiff, and that plaintiff "willingly gave his consent for the blood draw." (Dfts.' Motion at 4.) Defendants also dispute that plaintiff was directed to submit to the testing as a condition of continuing employment. (Dfts.' Motion at 5.) [FN3]

> FN3. Although plaintiff alleges in his Complaint that he was required to take the fitness for duty test to keep his job, at his deposition he stated that nobody required or directed him to take the test as a condition of continued employment. (Depo. of Melvin Jermon at 155.) That testimony is an admission, thereby removing this issue from dispute.

Plaintiff alleges the following five causes of action, all of which focus on his submission to the urine and blood testing:
   1. Invasion of Privacy - 42 U.S.C. § 1983. Plaintiff's First Cause of Action is for unlawful invasion of privacy in violation of the Fourth Amendment to the United States

Constitution. Plaintiff requests general and special damages as well as injunctive relief to prohibit defendants from engaging in blood and/or urine testing of Community Hospital employees.

2. Race Discrimination - 42 U.S.C. § 1983. Plaintiff's Second Cause of Action charges that defendants discriminated against plaintiff because of his race, thereby violating his right to equal protection of the laws and depriving him of other unspecified constitutional rights.

*2 3. Conspiracy - 42 U.S.C. § 1985. Plaintiff's Third Cause of Action alleges that defendants conspired to discriminate against plaintiff and deprive him of his right to privacy.

4. Invasion of Privacy - State Law. Plaintiff's Fourth Cause of Action is for invasion of privacy in violation of Article I, § 1 of the California Constitution.

5. Battery - State Law. Plaintiff's Fifth Cause of action alleges that defendants committed battery against plaintiff when they "caused a needle to be placed into and dr[a]w blood from plaintiff's body" without his consent.

6. Injunctive Relief for Invasion of Privacy - 42 U.S.C. § 1983. SCOPE brings the Sixth Cause of Action seeking to enjoin the "custom, pattern and practice of subjecting employees represented by SCOPE to blood and urine testing as a condition of continued employment."

7. Injunctive Relief for Invasion of Privacy -- State Law. SCOPE brings the Seventh Cause of Action seeking injunctive relief for invasion of privacy in violation of Article I, § 1 of the California Constitution.

Defendants seek to dismiss plaintiff's complaint on the basis that they are immune from liability for their actions.

DISCUSSION

I. Legal Standards

A. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "The accepted rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 796-97 (9th Cir. 1996).

In reviewing defendants' 12(b)(6) motion, the Court must assume all factual allegations in plaintiff's complaint to be true and must construe them in the light most favorable to plaintiff. North Star, 720 F.2d at 580. The Court must also draw all reasonable inferences from plaintiff's factual allegations, but the Court "need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." Bureerong v. Uvawas, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981)).

B. Summary Judgment

To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed. R. Civ. P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

*3 In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. He "must produce at least some 'significant probative evidence tending to support the complaint."' T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).

The Court does not make credibility determinations with respect to evidence offered and is required to draw all inferences in the light most favorable to the non-moving party. T.W. Elec. Serv., Inc., 809 F.2d at 630-31 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts ...." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

II. Federal Claims

A. Legal Standard for Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability for their performance of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The relevant inquiry for purposes of qualified immunity "is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir. 1988). This criterion of "objective legal reasonableness," adopted by the Supreme Court in Harlow, allows "the defeat of insubstantial claims without resort to trial." Behrens v. Pelletier, 116 S. Ct. 834, 838 (1996).

The Court applies a two-part analysis to determine whether

defendants are entitled to qualified immunity: (1) the Court must determine whether plaintiff has alleged a violation of a right that is clearly established; (2) the Court must consider whether, under the facts as alleged in plaintiff's complaint, a reasonable hospital supervisor in defendants' position could have believed his conduct was lawful. See Collins, et al., v. Jordan, 102 F.3d 406, 412 (9th Cir. 1996).

Plaintiff argues that defendants cannot properly style their motion as a motion to dismiss because qualified immunity requires a factually intensive determination. Because qualified immunity provides immunity from suit and is not merely a defense to liability, however, it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (internal citation and quotation marks omitted). The Ninth Circuit has indicated that "qualified immunity may be established as a matter of law by the district court on a motion to dismiss, for summary judgment, or for a directed verdict." Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir. 1988); see also Landstrom v. Illinois Dep't of Children & Family Serv., 892 F.2d 670, 675 n.8 (7th Cir. 1990) (holding that dismissal for failure to state a claim is proper when the plaintiff's pleadings insufficiently allege a violation of any clearly established right).

*4 In a motion to dismiss based on qualified immunity, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" Behrens, 116 S. Ct. at 840. The Court must determine whether defendants' actions, as alleged by plaintiff, "are actions that a reasonable officer could have believed lawful. If they are, then [defendants are] entitled to dismissal prior to discovery." Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987).

In order to overcome defendants' qualified immunity argument, plaintiff cannot rely on "bare allegations of malice." Harlow, 475 U.S. at 818. Moreover, the Court applies a heightened pleading standard to plaintiff's claims of racial discrimination and a conspiracy to violate his civil rights, because both require a showing of subjective intent. See Branch v. Tunnell, 937 F.2d 1382, 1383 (9th Cir. 1991), cert. denied, 114 S. Ct. 2704 (1994). To survive this motion to dismiss, plaintiff "must state in [his] complaint nonconclusory allegations setting forth evidence of unlawful intent." Id.

In a motion for summary judgment based on qualified immunity, the Court must examine the evidence proffered by both plaintiff and defendants and make a determination of whether a reasonable hospital employer could have believed that defendants' request for a fitness for duty examination was lawful. See Hunter, 502 U.S. at 226. This inquiry is made in light of clearly established law and the information possessed by the defendants. Id.

B. Plaintiff's Federal Claims

1. Invasion of Privacy - First Cause of Action

Plaintiff alleges that "[i]n submitting to the urine and blood testing, [he] was subjected to unlawful invasion of his privacy as guaranteed by the Fourth Amendment." (Complaint ¶ 13.) Defendants counter that they acted in accordance with the Sonoma County Personnel Department Guidelines to Assist Supervisors in the Management of the Employee Under the Influence of Alcohol or Drugs (the "Sonoma County policy"). [FN4] (Dfts.' Motion at 6.) The Court must determine (1) whether plaintiff alleges a violation of a law that was clearly established and (2) whether under the facts as alleged by plaintiff, defendants' belief that they were acting lawfully was reasonable.

> FN4. Even on a motion to dismiss, the Court can take judicial notice of the Sonoma County policy, as a public record outside pleadings. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

a. Clearly Established Law

Plaintiff asserts, and defendants do not dispute, that the law at issue in this case was clearly established. That law, as defined by plaintiff, is that employers can subject public employees in non-safety sensitive positions to reasonable suspicion drug testing only where there is a "reasonable, articulable, and individualized suspicion that a specific employee may be under the influence of drugs." National Treasury Employees Union v. Lyng, 706 F. Supp. 934, 949 (D.D.C. 1988). Although the Ninth Circuit recently summarized the law on reasonable suspicion more broadly, the Court agrees with both parties that the law was clearly established in this case. [FN5] The Court therefore turns to the second prong of its analysis, determining the reasonableness of defendants' belief that it was lawful to request that plaintiff undergo a urinalysis. See Collins v. Jordan, 102 F.3d at 412.

> FN5. In American Federation of Government Employees, AFL-CIO v. Roberts, 9 F.3d 1464, 1466 (9th Cir. 1993), the Ninth Circuit stated: "Urinalysis, when required by the government, is a search of the body that is constitutionally prohibited unless it is reasonable.... Particular suspicion of an individual is not necessarily a precondition .... What the government must show is a reasonable accommodation of the tested employees' privacy expectations to the special needs the government serves by testing."

b. Reasonableness of Defendants' Belief

*5 Pursuant to the Sonoma County policy, a supervisor can direct an employee to submit to a medical evaluation to determine whether the employee is "fit for duty." The policy lists certain criteria upon which supervisors can rely in determining whether a medical evaluation is needed. (Affidavit of Richard Gearhart ("Gearhart Aff.") Ex. C.)

Plaintiff only alleges that defendants had no reasonable suspicion for believing that plaintiff was under the influence of drugs or alcohol. (Complaint ¶ 12.)

The relevant inquiry is not whether defendants' suspicion about plaintiff's condition was reasonable but rather whether defendants' belief that they were acting lawfully was reasonable. See Anderson, 483 U.S. at 641. Under clearly established law in the Ninth Circuit, an employer acts reasonably in subjecting an employee to a drug test if the employer reasonably believes that the employer afforded sufficient accommodation to the employee's privacy, relative to "the special needs of government" served by the administration of the test. See American Fed'n of Gov't Employees, 9 F.3d at 1466.

i. Motion to Dismiss First Cause of Action

On a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" Behrens, 116 S. Ct. at 840. In this case, plaintiff alleges that defendants subjected plaintiff to a blood and urine test without any suspicion that plaintiff was under the influence of drugs or alcohol. (Complaint ¶ 12.) The Court must assume all factual allegations in plaintiff's Complaint to be true and must construe the facts in the light most favorable to plaintiff. See North Star, 720 F.2d at 580. Because the Complaint sufficiently alleges that defendants' did not act with objective legal reasonableness, defendants' motion to dismiss plaintiff's First Cause of Action, invasion of privacy in violation of 42 U.S.C. § 1983, is DENIED.

ii. Motion for Summary Judgment on First Cause of Action

On this motion for summary judgment on the issue of qualified immunity, the relevant inquiry is whether a reasonable employee could have believed that defendants' request for a fitness for duty examination was lawful, in light of the clearly established law and the information that defendants possessed. See Hunter, 502 U.S. at 226; Anderson, 483 U.S. at 641. Even if defendants "reasonably but mistakenly" concluded that plaintiff should be subjected to a fitness for duty test, they are entitled to qualified immunity. See Hunter, 502 U.S. at 227.

The information possessed by defendants was as follows: Plaintiff locked himself in the employee break room when he arrived at work on January 23, 1995 and remained there for several hours. After learning that plaintiff was locked in the break room, defendants' proceeded to unlock the break room and ascertain why plaintiff was not working. Defendants had difficulty waking plaintiff. After waking plaintiff, defendants noticed that plaintiff had bloodshot eyes and slurred his speech. They asked him if he could walk to the emergency room, and plaintiff responded that he did not know. (Depo. of Melvin E. Jermon at 59, Gearhart Aff. Ex. C.) Plaintiff had extreme difficulty walking down the stairs to the emergency room. Id. at 67. A reasonable hospital supervisor could have concluded, based on those facts, that plaintiff was under the influence of alcohol or drugs, even though the ultimate result of the fitness for duty test showed that plaintiff was not under the influence of any substance. See Bryant, 502 U.S. at 229 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'")

*6 Defendants' motion for summary adjudication on plaintiff's First Cause of Action alleging invasion of plaintiff's privacy in violation of 42 U.S.C. § 1983 is GRANTED.

2. Race Discrimination - Second Cause of Action

Plaintiff's Second Cause of Action alleges that "[i]n acting as alleged [in the Complaint], defendants subjected plaintiff to discrimination because of his race...." (Complaint ¶ 18.) In order to prove race discrimination, plaintiff must show that defendants acted with the intent to discriminate. See Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1113 (9th Cir. 1991). Plaintiff, however, does no more than conclusorily allege that defendants discriminated against him on the basis of his race. He fails to set forth any facts which would support a finding of intentional discrimination under the heightened pleading standard employed in evaluating a motion to dismiss where a defendant's subjective intent is at issue. See Branch v. Tunnell, 937 F.2d at 1383. Plaintiff's Second Cause of Action for race discrimination is therefore DISMISSED.

3. Conspiracy - Third Cause of Action

Plaintiff also alleges that defendants "willfully acted in concert to discriminate against plaintiff and to deprive him of his right to privacy.... [[[D]efendants were engaged in a scheme or conspiracy to deny him rights guaranteed him under the Constitution and law of the United States in violation of 42 U.S.C. § 1985." (Complaint ¶ 20.) Like plaintiff's claim of race discrimination, however, § 1985(3) requires proof of an "invidiously discriminatory motivation." Griffen v. Breckenridge, 403 U.S. 88, 102 (1971). Again, plaintiff sets forth no facts in support of his conclusion that defendants conspired to deprive him of his constitutional rights; plaintiff's Third Cause of Action does not satisfy the heightened pleading standard, which requires "nonconclusory allegations setting forth evidence of unlawful intent." Branch, 937 F.2d at 1383. Plaintiff's Third Cause of Action for conspiracy in violation of 42 U.S.C. § 1985 is therefore DISMISSED.

4. Injunctive Relief - Sixth Cause of Action

SCOPE brings the sixth cause of action, a violation of 42 U.S.C. section 1983, seeking to enjoin defendants from implementing their policy of blood and urine testing. (Complaint ¶¶ 27-33.) To the extent that SCOPE asserts the claim against the individual defendants at issue in this motion, the claim is also DISMISSED.

III. State Claims

A. Legal Standards

1. Pendent Jurisdiction

The Court "may decline to exercise supplemental jurisdiction ... if ... [it] has dismissed all claims over which it has original jurisdiction." Hansen v. California Dep't of Corrections, 920 F. Supp. 1480, 1500 (N.D. Cal. 1996) (citing 28 U.S.C. § 1367(c)(3)). Pendent jurisdiction, however, still exists over a state claim if the "federal claim is sufficiently substantial to confer federal jurisdiction .... The ultimate lack of merit of the federal claim does not mean that pendent jurisdiction cannot attach." Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1994). "[T]he federal claim must be absolutely devoid of merit or obviously frivolous to divest the court of pendent jurisdiction." Id. (internal quotations and citation omitted).

*7 The Court considers certain factors in determining whether to retain jurisdiction over the state law claims in the event that it dismisses all federal claims, including "economy, convenience, fairness, and comity." Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992), cert. denied, 507 U.S. 1004 (1995). The Ninth Circuit frequently upholds "decisions to retain pendent claims on the basis that returning them to state court would be a waste of judicial resources." Id. at 1309.

2. State Immunity

Under California law, a government official has "personal immunity from lawsuits challenging his or her discretionary acts within the scope of authority." Caldwell v. Montoya, 897 P.2d 1320, 1324 (Cal. 1995). The California Tort Claims Act (the "Act") establishes that "public employees are liable for their torts except as otherwise provided by" other provisions of the Act. Id. (citing Cal. Gov't Code § 820(a)). One such exception is for performance of discretionary duties. Cal. Gov't Code § 820.2.

The California Supreme Court has not adopted a literal or semantic definition of the term "discretion." Johnson v. California, 447 P.2d 352, 356 (Cal. 1968) (citing Ham v. County of Los Angeles, 189 P. 462, 468 (Cal. Ct. App. 1920) ("[I]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.")). Rather, "immunity is reserved for those basic policy decisions [which have] ... been [[[expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." Caldwell, 897 P.2d at 1326 (internal citation and quotation marks omitted); see also Nunn v. California, 677 P.2d 846, 849 (Cal. 1984) (holding that a failure promptly to enact a regulation which would allow security guards to carry firearms was discretionary); Johnson, 447 P.2d at 358 (holding that a school board's vote on whether to renew a superintendent's contract was discretionary). California courts, relying on Caldwell and Johnson, have refused to interfere with an official's final judgment regarding how to protect a community's welfare or how to handle personnel problems. See, e.g., Lipman v. Brisbane Elem. Sch. Dist., 359 P.2d 465, 466 (Cal. 1961) (granting immunity to trustees of a school district who discredited the school superintendent and forced her from her position reasoning that there "is a vital public interest in securing free and independent judgment of school trustees in dealing with personnel problems"); Alicia T. v. Los Angeles, 271 Cal. Rptr. 513, 519 (Cal. Ct. App. 1990) (granting immunity to social workers because social workers need to have freedom to action "in favor of the protection of minor children").

On the other hand, state officials who carry out lower-level ministerial decisions "that merely implement a basic policy already formulated" are not afforded immunity. Caldwell, 897 P.2d at 1326 (internal citation omitted). The California Supreme Court has rejected numerous claims asserting immunity on the ground that those situations involved operational rather than policy decisions. Id.; see Lopez v. Southern Cal. Rapid Transit Dist., 710 P.2d 907, 915 (Cal. 1985) (holding that a bus driver's failure to intervene in an assault against a passenger was not discretionary); Peterson v. San Francisco Community College Dist., 685 P.2d 1193, 1194-95 (Cal. 1984) (holding that a college's failure to warn individuals of dangerous crime in a parking lot was not discretionary).

*8 The Court can properly grant a motion to dismiss or a motion for summary judgment based on an immunity defense under California law. See, e.g., Fenton v. Groveland Community Serv. Dist., 185 Cal. Rptr. 758, 764 (Cal. Ct. App. 1982). Immunity will only be granted, however, if defendants can establish that their actions were discretionary pursuant to section 820.2 of the California Government Code.

B. Plaintiff's State Claims

1. Pendent Jurisdiction

Even though the Court has dismissed all federal claims against the moving defendants, the Court will retain supplemental jurisdiction over plaintiff's state law claims against the individual defendants for three reasons. First, returning the remaining claims to state court would result in a waste of judicial resources. See Imagineering, Inc., 976 F.2d at 1309. The remaining claims against the individual defendants arise from the same facts as the federal claims asserted against defendant Hospital and present neither a complex nor novel issue of state law. Second, even though the federal claims against the individual defendants were resolved prior to trial, only where the federal claims are "absolutely devoid of merit or obviously frivolous" is the Court divested of jurisdiction to hear the remaining state claims. Brady, 51 F.3d at 816. Finally, out of fairness to the litigants, the Court will not require the parties to maintain or defend two separate suits arising under the same set of facts when the Court "can

move toward final resolution much more efficiently." See Hansen, 920 F. Supp. at 1500.

2. Invasion of Privacy under California Law - Fourth Cause of Action

Plaintiff's fourth cause of action alleges invasion of privacy in violation of Article I, § 1 of the California Constitution. Defendants argue that they made "a balanced, measured, and careful analysis of" plaintiff's "observable condition ... which clearly called for the exercise of their discretion under" the Sonoma County policy. (Reply at 4.) Plaintiff argues that defendants are not entitled to state immunity because they were "merely implement[ing] a basic policy already formulated." (Plt.'s Opp. at 6.)

Defendants' conduct was the result of deliberate and considered policy decisions. The Sonoma County policy leaves the final decision of whether to implement a fitness for duty examination to the supervisor on duty. The policy states that the supervisor is "in a position of trust and confidence and [has] been delegated authority to manage on the job problems" including problems associated with drug and alcohol abuse. (Sonoma County policy, Gearhart Aff. Ex. C.)

Defendants are entitled to immunity under California law for their decision to require plaintiff to undergo a fitness for duty test. The underlying purpose of immunity is "that fear of civil lawsuits might deter officials from the zealous and unflinching discharge of their public duties." Caldwell, 897 P.2d at 1324 (citations omitted). Defendants have been granted the authority under the Sonoma County policy to handle personnel problems faced by the Hospital. It would be an unseemly interference for any court to review every decision made by hospital supervisor when the supervisor has final authority to make that decision. See Caldwell, 897 P.2d at 1326. The concerns articulated by the California Supreme Court in Caldwell are well taken and dictate that the judiciary should not micro-manage every policy decision undertaken by an employee in order to ensure that supervisors such as defendants properly discharge their duties.

*9 Plaintiff's Fourth Cause of Action for invasion of privacy in violation of the California Constitution is DISMISSED as to the individual defendants.

3. Battery - Fifth Cause of Action

For the reasons set forth immediately above, plaintiff's fifth cause of action for battery is also DISMISSED as to the individual defendants.

4. Injunctive Relief - Seventh Cause of Action

SCOPE brings the seventh cause of action, for invasion of privacy in violation of state law, seeking to enjoin defendants from implementing their policy of blood and urine testing. (Complaint ¶¶ 27-33.) To the extent that SCOPE asserts the claim against the individual defendants at issue in this motion, the claim is also DISMISSED.

CONCLUSION

For the foregoing reasons, the individual defendants' motion to dismiss plaintiff's Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action is GRANTED, without prejudice. Defendants' motion to dismiss plaintiff's First Cause of Action is DENIED. Defendants' motion for summary judgment on plaintiff's First Cause of Action is GRANTED. [FN6]

> FN6. This dismissal only applies to defendants Elliot and Caldwell, the individual named defendants on whose behalf this motion to dismiss was brought.

SO ORDERED.

Not Reported in F.Supp., 1997 WL 50266 (N.D.Cal.)

Motions, Pleadings and Filings (Back to top)

. 3:96cv00340 (Docket) (Jan. 23, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1989 WL 24127
Not Reported in F.Supp., 1989 WL 24127 (N.D.Ill.)
(Cite as: 1989 WL 24127 (N.D.Ill.))
<KeyCite History>
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Grant OGBURN, Plaintiff,
v.
Richard ELROD, Ralph Axelrod and Richard Lowthorp, Defendants.
No. 87 C 4492.

March 13, 1989.

MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

*1 Ogburn was a probationary Cook County correctional officer in March 1986. Before and during this time the Sheriff's office was the subject of adverse legal action and publicity over various occurrences (e.g., the alleged attempt murder by a deputy in an organized crime setting, the conviction of a number of deputy sheriffs for serious crimes, the alleged failure to enforce laws against prostitution). Election for Sheriff was scheduled for November 1986.

During his training in 1985, Ogburn had reported the improper acts of another correctional officer who was then disciplined. Ogburn's friend (and ride to work) was warned thereafter to stay away from Ogburn, and the tires on the friend's car were slashed when he continued to associate with Ogburn.

In early March 1986 Ogburn, his training complete, was assigned to a division in the jail. Unbeknownst to him an inmate had previously informed an Internal Affairs investigator of officers smuggling drugs in that division. An undercover investigation was started and drug buys were made. When Ogburn began work, he learned about contraband smuggling and informed Internal Affairs where he was told his information corroborated previous evidence. Ogburn was asked to get any further information he could.

Over the next few days he became concerned about his own safety, fearing a leak about his role. He then went to the State's Attorney's office and was referred to the United States Attorney's office though he did not go there. Instead he went to defendant Axelrod, then Undersheriff, who complimented him, told him his life was in danger and that he should stay home while Axelrod called a police agency. Axelrod said he would get back to the plaintiff. Ogburn stayed home, called in each day and reported that he was not sick but would not be at work.

Some weeks later (on April 15) Ogburn went to Axelrod again and was referred to defendant Lowthorp who was Director of Internal Investigations for the Sheriff. Ogburn told Lowthorp that his complaints were being ignored, he was in danger and concerned about his job (he had missed 25 work days). Lowthorp told him that he would protect Ogburn and investigate his complaints if he did not go to the media or the U.S. Attorney's office. Lowthorp told Ogburn to continue staying home and Lowthorp would get him to a doctor to provide a medical excuse for his absence. (Lowthorp did give Ogburn a doctor's name.)

In late April 1986 Ogburn went to the jail to get a medical release form. There he was told by a superior officer that he had been sent, by certified mail, a written order to report to work and was, therefore, absent from work without justification. Ogburn never received the order. He was told his hearing on this violation was scheduled for May 12. He called Lowthorp who told him to see the doctor soon.

On May 1 Ogburn went to the doctor who, despite having made no examination, issued a note containing a diagnosis and saying Ogburn was unable to work. On May 2 (shortly before a federal criminal trial of two high ranking deputy sheriffs was to begin) Ogburn brought his medical excuse into the warden. The warden did not want Ogburn back to work, but Lowthorp interceded on his behalf, and the warden agreed to take him back if Lowthorp could keep him under control. Lowthorp later told Ogburn not to take his information outside the office or face a job action against him. This because the Sheriff did not want to be embarrassed.

*2 Ogburn later talked to the warden, who wanted him transferred out of the jail. On May 6 the media reported allegations of significant corruption in the Sheriff's office which were made on the first day of the criminal trial. On May 7 Ogburn met with Axelrod who told him to resign because they didn't want him back at the jail.

On May 12 Ogburn had his hearing at which he presented his medical excuse but refused to say he was sick. He was terminated for excessive absenteeism and for "paranoia."

In September 1986 Ogburn contacted the election opponent of defendant Elrod and told him what occurred. On October 29, 1986, Ogburn told the media his story. They contacted Elrod and the warden who accused Ogburn of being less than truthful and that he came to them with the

drug smuggling story after he got into trouble over absenteeism.

Ogburn now works again for the Sheriff's office. His life has been threatened. His fear has required hospitalization, sedation and psychiatric care. There is no likelihood that he will achieve his ambition to become a police officer.

There are four counts. Count I says Elrod, Axelrod and Lowthorp fired Ogburn or caused his firing because of Ogburn's exercise of his First Amendment rights to report misconduct. All this was done in their official capacities pursuant to official policy. Count II alleges the same violation pursuant to custom and practice. Count III alleges Elrod personally stigmatized Ogburn depriving him of his liberty of occupation (because he is unable to obtain employment as a police officer). Count IV alleges Elrod is personally liable under state law for defaming Ogburn by knowingly or recklessly making untrue statements about Ogburn intending to injure Ogburn, and chill his and others' right to comment about Elrod's candidacy. All the claims seek damages.

Several motions are ripe for decision.

Ogburn seeks to rename the warden, Hardiman, as a defendant in Count III. Hardiman was dismissed in a prior opinion. Ogburn v. Elrod, 87 C 4492 (N.D.Ill. 30 Nov. 1987). Ogburn was given fourteen days to replead against Hardiman. Ogburn took ten months to do so. The information sought to justify the new complaint was obtainable, at least in some form, earlier. Discovery has been taken. Hardiman was deposed without counsel. Some of the discovery would have to be repeated, and the plaintiffs may properly have to bear the cost of this additional work, it would be unfair to impose it and the attendant delay upon the other defendants. Moreover, it does not seem that the new allegations would even repair the defect of the original complaint against Hardiman. Denial of the motion to rename Hardiman would best serve the interests of justice, and it is denied.

Count III is, in any event, an improper claim. Claims based on termination accompanied by stigmatizing statements are actionable only when the termination occurs without notice and opportunity to be heard. Colaizzi v. Walker, 542 F.2d 969 (7th Cir.1976). There was notice and an opportunity to be heard in this case, and no claim of inadequacy of the notice or hearing is made. Further the stigmatizing statements did not occur as part of the termination, and this too is a required element of the claim. Colaizzi v. Walker, 542 F.2d at 973. A post-termination publication of defamation may be so remote in time from the termination that it is no longer within the course of termination "thereby eviscerating the nexus required by the stigma plus test. Hadley v. County of Du Page, 715 F.2d 1238, 1246 (7th Cir.1983). Here the statements were made nearly six months after firing (and then only after Ogburn opened the door with his own statements). See Albamante v. Bickley, 573 F.Supp. 77 (N.D.Ill.1983) (12 and 32 days interval); Holly v. Naperville, 603 F.Supp. 220 (N.D.Ill.1985) (eleven months). Nor has the stigma operated to bar plaintiff from similar employment. See Jungels v. Pierce, 825 F.2d 1127, 1131 (7th Cir.1987). Ogburn now, again, works for the Sheriff's office and does not allege that the difference, if any, between present and past employment is due to Elrod's statements. To the extent he alleges inability to pursue other work it is due to his personality and the effect his experience as an informant has had upon him. No fair reading of the complaint attributes Ogburn's present problems to Elrod's statements in October. Ogburn candidly admits that the law is as just stated and indicates he advances the claim "for purposes of the record." This I take to mean he may wish, on appeal, to seek a change in law. But without such a change, Count III is dismissed.

*3 Count IV charges state law defamation, and Elrod claims an absolute executive privilege under state law for his statements. Blair v. Walker, 64 Ill.2d 1, 349 N.E.2d 385 (1976) (Governor); Ware v. Carey, 75 Ill.App.3d 906, 394 N.E.2d 690 (1979) (State's Attorney); Morton v. Hartigan, 145 Ill.App.3d 417, 495 N.E.2d 1159 (1986) (Attorney General). Ogburn correctly concedes the privilege does protect the Sheriff and is applicable to the set of facts alleged here. He contends the scope of the privilege is violative of the First Amendment. This is so, he argues, because the privilege permits a public official to punish one who speaks out against the public official. As the facts are now alleged Ogburn's statements were protected by the First Amendment. Punishing someone for exercising these rights is unlawful. The question raised by Ogburn was mentioned but not decided in Carson v. Block, 790 F.2d 562, 566 (7th Cir.1986).

Ogburn's argument is unpersuasive. Defamation is not punishment in the constitutional sense. If it were, then Colaizzi v. Walker, 542 F.2d 969 (7th Cir.1976), and Hadley v. County of Du Page, 715 F.2d 1238 (7th Cir.1983), would not be the law. If stigma is not enough to give rise to a claim under 1983, defamation whose product is stigma cannot be a constitutional harm (punishment). It is difficult to see how Ogburn's inability to collect money from Elrod will deter Ogburn's exercise of his First Amendment rights. Ogburn's argument is an odd invocation of the First Amendment. The policy of New York Times v. Sullivan, 376 U.S. 254 (1964), is that free speech is advanced to the extent that the speaker cannot be made to pay damages for exercise of this right. That policy is served by the application of state law rules which permitted Elrod to speak about matters "legitimately related to matters committed to his responsibility" without fear of a damage award. The limits of the First Amendment policy of speech protection do not mark a point beyond which the target of speech then has a First Amendment right to sue those who speak against him. A state court is free to expand the protection of speech

beyond that required by the First Amendment without violating that Amendment. This the Illinois Supreme Court has done, and it was within its authority to do so.

Elrod, Axelrod and Lowthorp all seek dismissal of Counts I and II in which they are sued in their official capacities. There is no dispute that none of the three now occupy the official positions they had when the claims arose, nor did they occupy them when this case was filed. If the suit sought equitable relief they would not be proper parties. The question of whether a damage suit may be maintained is more difficult to answer.

One may be sued individually in this kind of case for one's own acts, whether authorized or not, if done under color of law. One is sued in one's official capacity usually when one has not performed any act at all, or merely a legal and ministerial one; the official's subordinate has performed acts, and complete relief from the onus of the acts requires legal and equitable remedies that run against the government agency. Suits against individuals in their official capacity are essentially suits against the government agency itself. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Such suits do not lie when the official no longer holds office. Brown v. Town of Allenstown, 698 F.Supp. 831 (D.N.H.1986). See Mass. Hosp. Assn. v. Harris, 500 F.Supp. 1270, 1283 (D.Mass.1980); Moore v. Knowles, 482 F.2d 1069, 1075 (5th Cir.1973).

*4 Ogburn cites some authority for the proposition that official capacity suits do not evaporate even where the suit is filed after the official capacity is lost. But the cases either involved suits filed before official capacity ended (Jackson v. Elrod, 655 F.Supp. 1130 (N.D.Ill.1987)), or cases where it seems that the case was an individual capacity suit (Heller v. Bushey, 759 F.2d 1371 (9th Cir.1985)).

Ogburn's essential argument is that it would be ridiculous to follow the logic of defendants' argument because he then is driven to sue the current Sheriff for a wrongful act of the former Sheriff.

Defendants are right on the law and Ogburn is right on the equities, but the conflict is a chimera; it exists only because Ogburn has in fact filed a suit against defendants in their individual capacities and mischaracterized, in captions and in his mind, the nature of his claims. This suit is founded upon individual acts of the defendants who, because they held particular offices, were able to perform them. This is not, at bottom, a suit against persons in their official capacities. For this reason, Axelrod and Lowthorp's motion to dismiss is denied, and Elrod's motion to dismiss on this ground is denied.

Elrod finally argues that, in fact, no personal acts of his are alleged sufficient to state a claim under Counts I and II. This argument I review in light of the fact that the second amended complaint, now the operative complaint, was filed after most or all discovery was had. Ogburn points to several paragraphs in Counts I and II as containing allegations that establish Elrod's personal involvement in the constitutional wrongdoing. Having examined these paragraphs, I am not persuaded that they sufficiently demonstrate Elrod's personal involvement. Nor am I convinced, as Ogburn contends, that Patton v. Przybylski, 822 F.2d 697 (7th Cir.1987), is no longer good law. Elrod's motion is granted.

Not Reported in F.Supp., 1989 WL 24127 (N.D.Ill.)

END OF DOCUMENT

Case 1:04-cv-01453-JJF    Document 42-5    Filed 05/02/2006    Page 12 of 12